PROPERTY OF ARKANSAS SUPREME COURT/COURT OF APPEALS

# SUPREME COURT CR-17-654

KENNETH REAMS **APPELLANT(S)**

V. JEFFERSON COUNTY CIRCUIT COURT

JOHN W COLE

35CR-1993-301

STATE OF ARKANSAS **APPELLEE(S)**

26__ VOLUME RECORD LODGED

***COUNSEL***

ATTORNEY GENERAL APPELLEE COUNSEL
323 CENTER STREET, SUITE 200
LITTLE ROCK AR 72201

CORINNE IRISH APPELLANT COUNSEL
30 ROCKEFELLER PLAZA
NEW YORK NY 10112

DAVID ROBERT RAUPP APPELLEE COUNSEL
323 CENTER STREET, SUITE 200
LITTLE ROCK AR 72201

GEORGE KENDALL APPELLANT COUNSEL
30 ROCKEFELLER PLAZA
NEW YORK NY 10112

JIN HEE LEE APPELLANT COUNSEL
40 RECTOR STREET, 5TH FLOOR
NEW YORK NY 10006

JOHN WINFRED WALKER APPELLANT COUNSEL
1723 BROADWAY
LITTLE ROCK AR 72206

RECORD FILED AUGUST 4, 2017

**STACEY PECTOL, CLERK**

BY RENEE R. HERNDON, DEPUTY CLERK

VOLUME 26

Respondent's Exhibit E

Volume 26

ARGUMENT

ORIGINAL

I.

THE STATE DID NOT VIOLATE APPELLANT REAMS' CONSTITUTIONAL RIGHT TO EQUAL PROTECTION OF THE LAW BY ITS USE OF ITS PEREMPTORY CHALLENGES TO EXCLUDE BLACK VENIREPERSONS FROM THE JURY.

For his first allegation of error appellant Reams asserts that the trial court erred in denying his objections to the State's peremptory challenges of venirepersons Irma Johnson, Matthew Henry and Muriel Hayes. Appellant Reams, who is black, objected to the State's peremptory challenges of Ms. Johnson, Mr. Henry and Ms. Hayes, all of whom are black, on the basis of the United States Supreme Court's decision in Batson v. Kentucky, 476 U.S. 79 (1986). In Batson v. Kentucky, the United States Supreme Court held, in essence, that equal protection principles prohibited the State from using its peremptory challenges in a criminal case to remove venirepersons from the jury on the basis of their race. The trial court did not err in denying appellant Reams' Batson-based objections to the State's use of its peremptory challenges to remove Ms. Johnson, Mr. Henry and Ms. Hayes from the jury.

The trial court did not err in denying Reams' counsel's Batson objection to the State's peremptory challenges of venirepersons Irma Johnson, Matthew Henry and Muriel Hayes. This Court has recently summarized the case law principles that govern Batson challenges. In Hollamon v. State, 312

Ark. 48, 846 S.W.2d 663 (1993) this Court summarized as follows the pertinent case law principles that govern Batson challenges:

> In Batson v. Kentucky, [476 U.S. 79 (1986)], the United States Supreme Court held that a defendant who makes a prima facie showing of purposeful racial discrimination in juror challenges shifts the burden to the state to prove that the exclusion of jurors is not based on race. The Court, however, refrained from formulating procedures to implement Batson, and the states have been forced to chart their own way in devising procedures for the time, place, and manner of the Batson process.
>
> We have held that when the neutral explanation given by the state is sufficient, no sensitive inquiry is required. Colbert v. State, 304 Ark. 250, 801 S.W.2d 643 (1990). In Colbert, we declared:
>
> > We now believe that our previous interpretations of the Batson holding were misdirected only to the extent that we have said that Batson requires a "sensitive inquiry" by the trial court in every instance, notwithstanding the validity of the state's explanation for its peremptory challenges.
> >
> > We now hold that upon a showing by a defendant of circumstances which raise an inference that the prosecutor exercised one or more of his peremptory challenges to exclude venire persons from the jury on account of race, the burden then shifts to the state to establish that the peremptory strike(s) were for racially neutral reasons. The trial court shall then determine from all relevant circumstances the sufficiency of the racially neutral explanation. If the state's explanation appears insufficient, the trial court must then conduct a sensitive inquiry into the basis for each of the

challenges by the state.

> The standard of review for reversal of the trial court's evaluation of the sufficiency of the explanation must test whether the court's findings are clearly against the preponderance of the evidence. In every instance, however, the court shall state, in response to the defendant's objections, its rulings as to the sufficiency or insufficiency of the racially neutral explanation provided by the state.
>
> 304 Ark. at 254-255, 801 S.W.2d at 646.
>
> Accordingly, the defendant must first establish a prima facie case of purposeful discrimination. . . .

Hollamon, 312 Ark. at 52-3, 846 S.W.2d at 665-66. Accord Sims v. State, 320 Ark. 528, 532-33, ___ S.W.2d ___, ___ (1995); Bradley v. State, 320 Ark. 100, 108-09, 896 S.W.2d 425, 429-30 (1995); Franklin v. State, 314 Ark. 329, 338, 863 S.W.2d 268, 273 (1993); and Watson v. State, 308 Ark. 444, 448-50, 825 S.W.2d 569, 571-72 (1992). Recently, the United States Supreme Court has held that the State satisfies its burden of offering a race-neutral explanation as to why a particular venireperson was peremptorily challenged even if the race-neutral explanation, on its face, appears silly, implausible, fantastic or superstitious. Purkett v. Elem, 115 S. Ct. 1769, 1771 (1995). In Purkett v. Elem, the United States Supreme Court made clear that the State's race-neutral explanation for its exercise of a peremptory challenge need not be reasonable, in the sense of logical, but only that the explanation be race-neutral. Id.

With regard to venirepersons Matthew Henry and Muriel Hayes, the State notes that at the trial court level the deputy prosecuting attorneys offered race-neutral explanations for their decision to peremporily excuse Mr. Henry and to peremporily excuse Ms. Hayes. With regard to Mr. Henry, the deputy prosecuting attorneys explained that they peremporily excused him from the jury because they believed that he was inconsistent in answering questions put to him on voir dire regarding whether the accomplice in a robbery-murder was deserving of the same punishment as the principal. (R. 446-47) Review of Mr. Henry's answers to questions put to him on voir dire reveals that there was some inconsistency in his answers regarding the relative culpability of an accomplice and a principal in a robbery-murder. On voir dire examination by the State, Mr. Henry stated that the guilt of an accomplice and a principal in a robbery-murder would be "inseparable." (R. 39) However, when examined on voir dire by defense counsel concerning whether, as a general proposition, an accomplice should receive the same punishment as a principal when the two commit a criminal offense, Mr. Henry seemed to state that an accomplice an a principal might receive different punishment depending upon ". . . the difference in the state of mind." (R. 444) After the State had peremporily challenged Mr. Henry and after argument from counsel on this point, the trial court directed that Mr. Henry be brought back and that further voir dire examination be conducted. In the

course of this additional voir dire Mr. Henry seemed to affirm that when considering what punishment to impose on a defendant guilty of robbery-murder, he would take account of the defendant's "intent." (R. 452-53; 454-55)

With regard to venirewoman Muriel Hayes, one of the deputy prosecuting attorneys explained that she was peremptorily removed from the jury because, ". . . she [Ms. Hayes] said from the start that you would practically have to put a gun to her head in order to get her to give the death penalty." (R. 55) Examination of the record reveals that Ms. Hayes did make this statement. (R. 501)

The State submits that the reasons given by counsel for the State explaining why they peremptorily removed venireperson Matthew Henry and venireperson Muriel Hayes from the jury are, on their face, race-neutral. Because these explanations are race-neutral, the State did not violate Batson v. Kentucky.

With regard to venireperson Irma Johnson, the State notes that after defense counsel made a Batson-based objection to the State's peremptorily removing Ms. Johnson from the jury, the trial court denied the objection on the basis that defense counsel had not established that the State had made a prima facie showing of purposeful racial discrimination by counsel for the State in exercising a peremptory challenge against Ms. Johnson. (R. 226) The State submits that this decision by the trial court was

1357

correct. Examination of the record reveals that Ms. Johnson was the first venireperson examined. Moreover, examination of the State's voir dire of Ms. Johnson does not reveal that she was asked any questions that would indicate that counsel for the State had a racially discriminatory motive for peremptorily excusing her from the jury. Had counsel for the State been asked to provide their explanation for their decision to peremptorily excuse Ms. Johnson from the jury, they doubtlessly would have pointed out that during their voir dire of Ms. Johnson she admitted that in 1992 her nephew was prosecuted for having committed a robbery and that in that same year her sister was prosecuted in federal court for possession of drugs. (R. 216-17)

II.

THE TRIAL COURT DID NOT ERR IN DENYING REAMS' REQUEST THAT THE JURY BE INSTRUCTED WITH THE AFFIRMATIVE DEFENSE TO THE DEATH PENALTY OF MENTAL RETARDATION.

For his second allegation of error appellant Reams asserts that during the penalty phase of his trial the trial court erred in denying his request to instruct the jury on the affirmative defense to the death penalty of mental retardation, as defined in Ark. Code Ann. § 5-4-618 (Repl. 1993). Reams' counsel first requested this jury instruction after the jury had found Reams guilty of capital murder. (R. 820-24) The trial court refused to instruct the jury on the affirmative defense of mental retardation because this defense did not, as a matter of law, exist at the time Reams

committed the capital murder at issue. (R. 825-30) The trial court's decision to refuse to instruct the jury on the affirmative defense to the death penalty of mental retardation was correct for two reasons.

In the first place, the affirmative defense to the death penalty of mental retardation must be raised prior to trial. Arkansas Code Annotated § 5-4-618(d)(1) states, "A defendant on trial for capital murder shall raise the special sentencing provisions of mental retardation by motion prior to trial." Reams did not raise the affirmative defense of mental retardation prior to trial. In fact, just prior to the beginning of the guilt/innocence phase of Reams' trial, his counsel asked the trial court, "Do you want to take up my motion on the retardation aspect if it arises during sentencing?" (R. 605) The trial court replied, "Yes, sir." (R. 605) Affirmative defenses that are not raised in a timely manner are defaulted. See Remeta v. State, 300 Ark. 92, 96-7, 777 S.W.2d 833, 835-36 (1989).

Moreover, Reams admits in his brief that on the date, May 5, 1993, he committed the capital murder at issue the affirmative defense to the death penalty of mental retardation was not in effect. (Reams' brief at page 11-3.) This Court has repeatedly held that sentencing in criminal cases is governed by the substantive sentencing statutes that were in effect on the date the criminal offense at issue was committed. See State v. Dennis, 318 Ark. 80, 883 S.W.2d 811

(1994); State v. Murphy, 315 Ark. 68, 71, 864 S.W.2d 842, 844 (1993); and State v. Townsend, 314 Ark. 427, 429-30, 863 S.W.2d 288, 289 (1993). The existence of a defense in a criminal case is a substantive matter. See Mauppin v. State, 309 Ark. 235, 251-52, 831 S.W.2d 104, 112 (1992); see also Ridenhour v. State, 305 Ark. 90, 94-5, 805 S.W.2d 639, 641-42 (1991) (a statute operates in a forbidden ex post facto fashion if, among other things, it deprives a defendant of any defense available according to the law at the time the criminal offense at issue was committed). Moreover, this Court has repeatedly held that it will apply an amendment to existing statutes defining substantive criminal law or criminal procedure only when the General Assembly expressly so provides that the statutory amendment at issue should be applied retroactively. See Elders v. State, 321 Ark. 60, 67, ___ S.W.2d ___, ___ (1995); State v. Murphy, supra; and Redman v. State, 265 Ark. 774, 779, 580 S.W.2d 945, 948 (1979).

In his brief Reams presents a whole host of constitutional theories that, according to Reams, required the trial judge to instruct the jury with the affirmative defense to the death penalty of mental retardation, as defined in § 5-4-618(a). These constitutional arguments that Reams presents in his brief run the gamut from "cruel and unusual punishment" to "equal protection" to "substantive due process." Examination of the record reveals that none of

these constitutional issues was raised before the trial court as the basis upon which the trial court was required to instruct the jury with the affirmative defense to the death penalty of mental retardation. This Court has held that even in death penalty cases issues that are not raised at the trial court level are defaulted and that the defendant cannot obtain review from this Court of a legal issue that he did not raise at the trial court level. See Parker v. State, 292 Ark. 421, 436, 731 S.W.2d 756, 764 (1987) and Fretwell v. State, 289 Ark. 91, 98, 708 S.W.2d 630, 634 (1986).

III.

THE TRIAL COURT'S SUBMISSION TO THE JURY, IN THE PENALTY PHASE OF APPELLANT REAMS' TRIAL, OF PECUNIARY GAIN AS AN AGGRAVATING CIRCUMSTANCE WAS NOT VIOLATIVE OF THE EIGHTH AND FOURTEENTH AMENDMENTS' PROHIBITION AGAINST CRUEL AND UNUSUAL PUNISHMENT.

For his third allegation of error appellant Reams asserts that the trial court erred in submitting the aggravating circumstance of pecuniary gain, as defined in Ark. Code Ann. § 5-4-604(6) (Repl. 1993), to the jury during the penalty phase of his trial. According to Reams, the trial court erred in submitting the pecuniary gain aggravating circumstance to the jury because this aggravating circumstance merely duplicates an element of the underlying capital felony murder charge --murder committed in the course of an aggravated robbery. According to Reams, this "double-counting" of the pecuniary gain aggravating circumstance is a violative of the Eighth and Fourteenth Amendments' prohibition

against cruel and unusual punishment because this aggravating circumstance fails to genuinely narrow the set of all murderers into a subset of murderers that truly deserves to die. In support of this allegation of error Reams relies principally on two cases: 1) Collins v. Lockhart, 754 F.2d 258 (8th Cir.), cert. denied, 474 U.S. 1013 (1985) and 2) State v. Middlebrooks, 840 S.W.2d 317 (Tenn. 1992), cert. dismissed as improvidently granted, 114 S. Ct. 651 (1993). Reams preserved this allegation of error by raising it in a written pretrial motion in which he asked the trial court not to submit the pecuniary gain aggravating circumstance to the jury. (R. 68-71) The trial court denied this motion.

Reams' Collins v. Lockhart-based "double-counting" allegation of error is meritless. In his brief Reams confounds two important case law principles of Eighth and Fourteenth Amendment death penalty jurisprudence. These two case law principles are represented by the United States Supreme Court decisions in Lowenfield v. Phelps, 484 U.S. 231 (1988) and Tison v. Arizona, 481 U.S. 137 (1987). Moreover, Reams further confuses this area of the law by arguing in his brief that the holding of the Tennessee Supreme Court in Middlebrooks, supra, has revived the "double-counting" issue that has been previously laid to rest by the United States Supreme Court, by this Court and by the United States Eighth Circuit Court of Appeals. In the following paragraphs, the State will review the decisions of this Court and of other

courts that resolve the "double-counting" issue in favor of the State, will explain why the Middlebrooks decision has no bearing on Arkansas' death penalty sentencing procedure and will explain why the United States Supreme Court's holding in Tison v. Arizona has nothing to do with the "double-counting" issue.

In essence, the "double-counting" argument asserts that a death penalty is invalid if an aggravating circumstance that the jury considered in the penalty phase of the proceeding was duplicative of an element of the statutory definition of capital murder of which the defendant was convicted. See Collins v. Lockhart, 754 F.2d 258 (8th Cir.), cert. denied, 474 U.S. 1013 (1985) and Robert Weisberg, Deregulating Death 1983 Sup. Ct. Rev. 305, 330-33 (1984). Both the United States Supreme Court, the United States Eighth Circuit Court of Appeals and this Court have specifically rejected the "double-counting" argument. Lowenfield v. Phelps, supra; Perry v. Lockhart, 871 F.2d 1384, 1393-94 (8th Cir.), cert. denied, 493 U.S. 959 (1989); Cox v. State, 313 Ark. 184, 195-96, 853 S.W.2d 266, 271-72 (1993); Ward v. State, 308 Ark. 415, 418-19, 827 S.W.2d 110, 111, cert. denied, 113 S. Ct. 124 (1992); and Ruiz v. State, 299 Ark. 144, 154-55, 772 S.W.2d 297, 302 (1989).

In an effort to dodge this mass of authority Reams has presented in his brief a lengthy argument that confounds two important case law principles of Eighth and Fourteenth

Amendment death penalty jurisprudence. These two case law principles are represented by the United States Supreme Court decisions in Lowenfield v. Phelps, supra, and Tison v. Arizona, 481 U.S. 137 (1987). In the following paragraphs, the State will discuss each of these Eighth Amendment case law principles separately and will explain why Reams' arguments are meritless.

Lowenfield v. Phelps, supra, holds that a state's death penalty sentencing procedure is not violative of the Eighth Amendment merely because an element of the definition of capital murder at issue is duplicated by an aggravating circumstance that a jury is required to find in order to impose the death penalty. That issue in Lowenfield v. Phelps was whether the "double-counting" of an element of the definition of capital murder at issue by an aggravating circumstance violated the Eight Amendment's "genuine narrowing" requirement. The United States Supreme Court has interpreted the Eighth Amendment's prohibition against cruel and unusual punishment to require that a state's death penalty sentencing procedure genuinely narrow the set of all murderers into a subset that truly deserves to die. Tuileapa v. California, 114 S. Ct. 2630, 2635 (1994); Zant v. Stephens, 462 U.S. 862, 877 n.15 (1993); and Godfrey v. Georgia, 446 U.S. 420 (1980).

Reams goes on at some length in his brief in an effort to undermine the correctness of this Court's rejection of the

"double-counting" holding of Collins v. Lockhart, but Reams never explains how it is that this Court can ignore the doctrine of stare decisis and somehow overrule or otherwise just ignore the United States Supreme Court's holding in Lowenfield v. Phelps. What Reams should have done in his brief, rather than pick nits by way of comparing Louisiana's definition of capital felony murder with Arkansas', was to explain how Arkansas' definition of capital felony murder fails to meet the Eight Amendment's "genuine narrowing" test on some basis other than "double-counting." To the extent that Reams did discuss Arkansas' definition of capital felony murder, he confounded the case law requirement of "genuine narrowing" with an entirely separate, threshold Eighth Amendment requirement for capital felony murder, set forth by the United States Supreme Court in Tison v. Arizona, 481 U.S. 137 (1987).

In his brief Reams discusses the United States Supreme Court's holding in Tison v. Arizona and attempts to fit Tison somewhere into his discussion of the Eight Amendment's requirement of "genuine narrowing." Reams' discussion of Tison v. Arizona seems to be premised on his assumption that Tison v. Arizona has something to do with the Eighth Amendment's requirement of "genuine narrowing." Reams' assumption in this regard is wrong. Tison v. Arizona is not a "genuine narrowing" Eighth Amendment case. Tison v. Arizona does not address any "genuine narrowing" issue but,

instead, addresses a threshold issue having to do with whether a defendant who has been found guilty of felony murder is even eligible to be considered for the death penalty. Tuilaepa, 114 S. Ct. at 2634 and U.S. V. Cheely, 36 F.3d 1439, 1442 (9th Cir. 1994). In Tison v. Arizona the United States Supreme Court did not address the "genuine narrowing" issue, but instead, addressed the issue of whether the death penalty is even permitted by the Eighth Amendment as a proportional punishment for certain kinds of felony murder. If a defendant convicted of felony murder does not meet the standards set in Tison, then the defendant is not eligible to be considered for the imposition of the death penalty. To put the matter another way, if a defendant convicted of felony murder does not meet the standard set forth in Tison, then the defendant is not placed into the class of murderers that a state's death penalty sentencing procedure must genuinely narrow into a subset of murderers that truly deserves to die. See Cheely, 37 F.3d at 1442. In Tison the United States Supreme Court held that the Eighth Amendment's prohibition against cruel and unusual punishment prohibits the imposition of the death penalty on the defendant in a felony murder case unless the state proves that the defendant killed the victim or intended that the victim be killed or acted with reckless indifference to the possibility of the victim's death.

The State is not entirely sure of the precise point that

Reams is attempting to make when he cites and discusses Tison v. Arizona. It does not appear to the State that Reams is asserting that his conduct does not meet the standard set in Tison v. Arizona. Moreover, it does not seem to the State that Reams is asserting that Arkansas' definition of capital felony murder, as it stood in May of 1993 when Reams committed the capital murder at issue, failed to meet the Tison standard. If Reams were making such an argument, it would be meritless. This Court has held that Arkansas' definition of capital felony murder does meet the standard set in Tison v. Arizona. This Court so held in Burnett v. State, 295 Ark. 401, 411-12, 749 S.W.2d 308, 314 (1988). Accord Fairchild v. Norris, 21 F.3d 299 (8th Cir. 1994).[1]

---

[1]The definition of capital felony murder at issue in this case is codified as Ark. Code Ann. § 5-10-101(a)(1)(Repl. 1993). This definition of capital felony murder states:

> A person commits capital murder if: acting alone or with one (1) or more other persons, he commits or attempts to attempt rape, kidnapping, arson, vehicular piracy, robbery, burglary,...or escape in the first degree, and in the course of and in furtherance of the felony, or in immediate flight therefrom, he or an accomplice causes the death of any person under circumstances manifesting extreme indifference to the value of human life....

The State submits that Arkansas' present definition of capital felony murder as it exists today performs the requisite genuine narrowing of the set of all murderers into a subset that truly deserves to die because Arkansas' definition of capital felony murder includes the attendant circumstance of "under circumstances manifesting extreme indifference to the value of human life" and this Court has interpreted this attendant circumstance to be the equivalent of the culpable mental state of intent.

Prior to the landmark decision of Furman v. Georgia, 408 U.S. 238 (1972), capital murder in Arkansas was defined in Arkansas Statute Annotated § 41-2205 (Repl. 1964) as follows:

> All murder which shall be perpetrated by means of poison, or by lying in wait, or by any other kind of wilful, deliberate, malicious and premeditated killing, or which shall be committed in the perpetration of or in the attempt to perpetrate, arson, rape, robbery, burglary or larceny, shall be deemed murder in the first degree.

In 1975, three years after Furman, Arkansas narrowed the definition of capital felony murder by reformulating the offense into the form it now has. Specifically, Arkansas narrowed its definition of capital felony murder by adding the attendant circumstances of ". . . under circumstances manifesting extreme indifference to the value of human life . . . ." See n.1, supra. Reams seems to argue that this attendant circumstance amounts to nothing more than the culpable mental state of "recklessly" and that all felony

murders occur "under circumstances manifesting extreme indifference to the value of human life." This implication is incorrect. This Court has interpreted the attendant circumstance "under circumstances manifesting extreme indifference to the value of human life" set forth in the statutory definition of first degree battery as being the equivalent of the culpable mental state of "intention." This Court has so held in the cases of Nolen v. State, 278 Ark. 17, 21-2, 643 S.W.2d 257, 259-60 (1982) and State v. Vowell, 276 Ark. 258, 634 S.W.2d 118 (1982). Both Nolen and Vowell involved defendants who, while driving while intoxicated, caused automobile crashes, thereby causing injury to other persons. Although neither Nolen nor Vowell were cases involving a charge of felony murder, in both cases this Court stated that it considered the attendant circumstance "under circumstances manifesting extreme indifference to the value of human life" to be in the nature of a culpable mental state and to be akin to intentional conduct. Accord Tigue v. State, 319 Ark. 147, 151, 889 S.W.2d 760, 762 (1994) and Weger v. State, 315 Ark. 555, 560-61, 869 S.W.2d 688, 690 (1994). The limitation imposed on the definition of capital felony murder by this Court's interpretation in Nolen and Vowell of the attendant circumstance "under circumstances manifesting extreme indifference to the value of human life" distinguishes Arkansas' capital punishment sentencing procedure from that

in other jurisdictions, notably Tennessee and Wyoming. Reams relies on recent state supreme court decisions from these two states to buttress his contention that Arkansas' capital punishment sentencing procedure does not perform the requisite genuine narrowing.

The state supreme court decisions that Reams relies on are the decisions by the Tennessee Supreme Court in State v. Middlebrooks, 840 S.W.2d 317 (Tenn. 1992), cert. dismissed as improvidently granted, 114 S. Ct. 651 (1993) and by the Wyoming Supreme Court in Engberg v. Meyer, 820 P.2d 70 (Wyo. 1991). The definitions of capital felony murder at issue in Middlebrooks and Engberg did not have the attendant circumstance of the "under circumstances manifesting extreme indifference to the value of human life," much less an interpretation of that attendant circumstance that treated it as the equivalent of the culpable mental state of intent. The definition of capital felony murder at issue in Middlebrooks defined the offense, in pertinent part, as, "[e]very murder . . . committed in the perpetration of, or attempt to perpetrate, any murder in the first degree, arson, rape, robbery, burglary, larceny, kidnapping, aircraft piracy, or the unlawful throwing, placing or discharging of a destructive device or bomb." Middlebrooks, 840 S.W.2d at 335-36. The definition of capital robbery murder at issue in Engberg defined the offense as, "[w]hoever . . . in the perpetration of, or attempt to perpetrate, any . . . robbery

. . . kills any human being . . . is guilty of murder in the first degree." Engberg 820 P.2d at 87. Given the interpretation of the attendant circumstance, "under circumstances manifesting extreme indifference to the value of human life" by this Court in Nolen and Vowell, Arkansas' definition of capital felony murder is substantially narrower than the definition of capital felony murder at issue in Middlebrooks and at issue in Engberg.

Reams makes much of the fact that Arkansas has a "weighing" component in its death penalty sentencing procedure. By statute Arkansas requires that jurors who are deliberating whether to impose the death penalty on a defendant weigh the aggravating circumstances present and also requires that the jurors unanimously conclude that the aggravating circumstances outweigh the mitigating circumstances beyond a reasonable doubt. Arkansas Code Annotated § 5-4-603(a)(2) (Repl. 1993). This balancing component is not required by the Eighth Amendment. See Harris v. Alabama, 115 S. Ct. 1031, 1035-36 (1995) and Zant v. Stephens, 462 U.S. 862, 875 n.13 (1983). Reams uses the United States Supreme Court's decision in Stringer v. Black, 503 U.S. ____, 112 S. Ct. 1130, 117 L.Ed.2d 367 (1992) as the spearhead of his attack.

In Stringer v. Black the issue was whether the Supreme Court's decisions in Maynard v. Cartwright, 486 U.S. 356 (1988) and Clemons v. Mississippi, 494 U.S. 738 (1990)

established a "new rule" for purposes of the application of the retroactivity doctrine set forth in Teague v. Lane, 489 U.S. 288 (1989) with regard to the claim by a Mississippi death row inmate that his death sentence was invalid because the jury that sentenced him to death had weighed an invalid aggravating circumstance. In Stringer v. Black the Supreme Court held that Maynard v. Cartwright and Clemons v. Mississippi did not establish a "new rule" for Teague v. Lane retroactivity purposes and, therefore, the defendant's death sentence was violative of the Eighth Amendment because the jury weighed an invalid aggravating circumstances. In its opinion in Stringer v. Black the Supreme Court noted that the issue present in the case had little to do with the "genuine narrowing" issue that was decided in Lowenfield v. Phelps. Stringer v. Black, 112 S. Ct. at 1139, 117 L.Ed.2d at 382. Appellee Norris makes the same observation about the argument based on Stringer v. Black presented by Reams, it has very little to do with the Eighth Amendment genuine narrowing issue that is before this Court in the instant case.

The "weighing" component of the various capital punishment sentencing procedures that were at issue in Stringer v. Black and the Supreme Court's prior decisions leading to Stringer v. Black were the focus of Eighth Amendment analysis by the Supreme Court solely because the jurors' weighing of aggravating circumstances in the respective cases was alleged to be violative of the Eighth

Amendment because, in each case, the jury had considered an invalid aggravating circumstance. The invalid circumstance at issue in Stringer v. Black, in Maynard v. Cartwright and in Clemons v. Mississippi was the aggravating circumstance of "especially heinous, atrocious, or cruel." In Maynard v. Cartwright the Supreme Court had held that this aggravating circumstance was invalid because it was so vague that a person of ordinary sensibility could find the aggravating circumstance present in almost every murder. Maynard v. Cartwright, 486 U.S. at 363-64. Whatever else Reams has had to say about the aggravating circumstances of "murder committed for pecuniary gain," the aggravating circumstance involved in the instant case, Reams has not stated that it was so vague that a person of ordinary sensibility could find it present in almost every murder.

If, as the State contends, the statutory definition of robbery-murder set forth in Ark. Code Ann. § 5-10-101(a)(2) (Repl. 1993) performs the genuine narrowing required by the Eighth Amendment, then the "weighing" component of Arkansas' death penalty sentencing procedure is not tainted. If the statutory definition of robbery-murder performs the genuine narrowing required by the Eighth Amendment, then "pecuniary gain" need not perform any further "genuine narrowing"

function.[2] If valid aggravating circumstances are weighed by the jury, then Stringer v. Black and the Supreme Court's decisions leading to it are not applicable.

IV.

THIS COURT DOES NOT CONDUCT A PROPORTIONALITY REVIEW OF DEATH SENTENCES.

For his fourth allegation of error appellant Reams asserts that his death sentence is invalid because it is unduly harsh in that it is out of proportion to his participation in the murder at issue. In his brief invites this Court to compare the facts of his case to those of other cases in which this Court has invalidated death sentences on the basis that the death sentence was too harsh, given the defendant's relatively less culpable role in the murder at issue. See, e.g., Henry v. State, 278 Ark. 478, 488-89, 647 S.W.2d 419, 425, cert. denied, 464 U.S. 835 (1983).

Reams' contention that the death sentence imposed on him, when compared to the death sentences imposed on the

---

[2] "Pecuniary gain" is a valid aggravating circumstance. See Woodard v. State, 261 Ark. 895, 905-06, 557 S.W.2d 259, 265 (1977), cert. denied, 439 U.S. 1122 (1979) and Neal v. State, 259 Ark. 27, 32, 531 S.W.2d 17, 20 (1979). See generally James R. Acker and C.S. Lanier, "Passing This Lexicon of Death": Aggravating Factors in Capital Sentencing Statutes, 30 Crim. Law Bulletin 107, 135-38 (1994).

other inmates on Arkansas' Death Row, is unduly harsh is not an allegation of error that Reams can pursue before this Court. This Court has recently held that it will no longer conduct comparative review of death sentences. Sasser v. State, CR 94-933, slip op. at 13-4 (July 17, 1995) and Williams v. State, CR 93-988 slip op. at 10-11 (July 10, 1995). Comparative review of death sentences by an appellate court is not required by the Eighth and Fourteenth Amendments' prohibition against cruel and unusual punishment. Pulley v. Harris, 465 U.S. 37 (1984) and Wainwright v. Norris, 872 F. Supp. 574, 596 (E.D. Ark. 1994).

V.

THE JURY GAVE ADEQUATE CONSIDERATION TO THE MITIGATING CIRCUMSTANCE OF APPELLANT REAMS' AGE.

For his fifth allegation of error appellant Reams asserts that the jury erred in its penalty phase deliberations when it concluded that Reams had introduced some evidence of his youth but that this evidence did not amount to a mitigating circumstance. (R. 161-62) In his brief Reams asserts that the jury was required to find that Reams' age at the time he committed the murder at issue, eighteen years of age, was a mitigating circumstance. During the guilt/innocence phase of the trial, Reams testified that he was then eighteen years of age and that he had been born on December 21, 1974. Reams' trial was held in Jefferson County Circuit Court on December 13-5, 1993. Therefore, at the time of his trial Reams was approximately one week away

from his nineteenth birthday and at the time he committed the murder at issue, May 5, 1993, he had been eighteen years of age for approximately four and one-half months.

Reams is procedurally barred from obtaining relief from this Court on the basis of this allegation of error. In any event, Reams' contention that the jury was required to conclude that his age was a mitigating circumstance is erroneous.

Reams is procedurally barred from obtaining relief on the basis of this allegation of error because he never raised it at the trial court level. Reams could have raised this issue at the time the trial court asked Reams ". . . is there any legal reason that you can think of that the Court should not impose sentence at this time?" (R. 917) Reams did not take advantage of his opportunity to object to his death sentence on the basis that the jury had erred in failing to determine that proof of his age amounted to an aggravating circumstance. Because Reams never raised this issue before the trial court, he is procedurally barred from obtaining relief from this Court on the basis of this allegation of error. Even in death penalty cases, in order to preserve allegations of error for review by this Court, a defendant must have raised the allegation of error at the trial court level by having made a specific, timely objection. See Parker v. State, 292 Ark. 421, 436, 731 S.W.2d 756, 764 (1987) and Fretwell v. State, 289 Ark. 91, 98, 708 S.W.2d

630, 634 (1986).

In any event, Reams' allegation of error is meritless. Reams' argument amounts to an assertion that the defendant's youth is an "automatic" mitigating circumstance that the jury must find if the defendant introduces proof that he is a teenager. The defendant's relative youth is not an "automatic" mitigating circumstance. This Court has specifically held that if a defendant in a death penalty case introduces proof of his youth, the jury is not required to find that the defendant's youth was a mitigating circumstance. Hill v. State, 289 Ark. 387, 396, 703 S.W.2d 233, 237-38 (1986), cert. denied, 479 U.S. 1101 (1987).

VI.

THE VERDICT FORM FILLED OUT BY THE JURY IN THE PENALTY PHASE OF APPELLANT REAMS' TRIAL DID NOT LEAVE MEMBERS OF THE JURY WITH THE IMPRESSION THAT EACH JUROR COULD NOT CONSIDER EVIDENCE OF A MITIGATING CIRCUMSTANCE UNLESS THE JURY UNANAMOUSLY AGREED THAT THE EVIDENCE PROVED THE MITIGATING CIRCUMSTANCE EXISTED.

For his sixth allegation of error appellant Reams asserts that the part of the verdict form that the trial court gave the jury in the penalty phase of his trial that sets forth the mitigating circumstances was a violative of the Eighth and Fourteenth Amendments. According to Reams, the verdict form that the trial court gave the jury regarding mitigating circumstances was phrased in such a way so as to inform each juror that he or she could not consider evidence of a mitigating circumstance unless all the jurors unanimously agreed that the evidence supported the finding of

the mitigating circumstance. Reams cites as authority for this argument the United States Supreme Court decision in Mills v. Maryland, 486 U.S. 367 (1988). In Mills v. Maryland the United States Supreme Court held that the Eighth and Fourteenth Amendments' prohibition against cruel and unusual punishment prohibited a trial court from instructing the jurors in the penalty phase of a death penalty case that each juror could not consider evidence of a mitigating circumstance unless all the jurors unanimously agreed that the mitigating evidence amounted to a mitigating circumstance.

Reams is procedurally barred from obtaining relief from this Court on the basis of this allegation of error. In any event, this allegation of error is meritless.

Reams' counsel never made a Mills v. Maryland-based objection at the trial court level to the verdict form or the jury instructions pertaining to mitigating circumstances. Because Reams' trial counsel did not make this objection at the trial court level, Reams is procedurally barred from obtaining relief on the basis of this allegation of error. See Parker v. State, 292 Ark. 421, 436, 731 S.W.2d 756, 764 (1987) and Fretwell v. State, 289 Ark. 91, 98, 708 S.W.2d 630, 634 (1986). In any event, had Reams' counsel made a Mills v. Maryland-based objection to the instructions that the trial court gave the jury defining mitigating circumstances, such an objection would have been meritless.

This Court has specifically rejected a Mills v. Maryland-based challenge to the standard jury instructions and verdict forms that are given to juries in Arkansas death penalty cases. Pickens v. State, 301 Ark. 244, 249, 783 S.W.2d 341, 344, cert. denied, 497 U.S. 1011 (1990). Accord Ruiz v. Norris, 868 F. Supp. 1471, 1533-48 (E.D. Ark. 1994) and Parker v. Norris, 859 F. Supp. 1203, 1223-24 (E.D. Ark. 1994).

VII.

THE JURY RECEIVED ADEQUATE INSTRUCTIONS REGARDING ITS CONSIDERATION OF NONSTATUTORY MITIGATING EVIDENCE.

For his seventh allegation of error appellant Reams asserts that the verdict form that the trial court gave the jury during the penalty phase of his trial pertaining to mitigating circumstances was violative of the Eighth and Fourteenth Amendments. According to Reams, the verdict form that the trial court gave the jury regarding mitigating circumstances was phrased in such a way so as to preclude the jurors from considering evidence of mitigating circumstances that were not specifically listed on the verdict form.

Appellant Reams is procedurally barred from obtaining relief from this Court on the basis of this allegation of error. In any event, this allegation of error is meritless.

Reams' counsel never objected at the trial court level to the part of the verdict form pertaining to mitigating circumstances nor did Reams' counsel object to the trial court's instructions to the jury pertaining to mitigating

circumstances on the basis that either the verdict form or the jury instructions were phrased in such a way that the jury was prohibited from considering evidence of mitigating circumstances unless those circumstances were specifically listed on the verdict form. Because Reams' trial counsel did not make an objection on this basis at the trial court level, Reams is procedurally barred from obtaining relief on the basis of this allegation of error. See Parker v. State, 292 Ark. 421, 436, 731 S.W.2d 756, 764 (1987) and Fretwell v. State, 289 Ark. 91, 98, 708 S.W.2d 630, 634 (1986).

In any event, had Reams' counsel objected to the part of the verdict form pertaining to mitigating circumstances or had Reams' counsel objected to the trial court's instructions to the jury pertaining to mitigating circumstances on the basis that either was phrased in such a way so as to preclude the jurors from considering evidence of a mitigating circumstance unless that circumstance was listed on the verdict form, such allegation of error would have been meritless. This Court has specifically rejected this attack on the standard jury instructions and the verdict forms pertaining to mitigating circumstances that are given to juries in Arkansas death penalty cases. Dansby v. State, 319 Ark. 506, 525-29, 893 S.W.2d 331, 341-43 (1995).

VIII.

THE JURY DID NOT ERR IN EVALUATING THE STATE'S PROOF OF AGGRAVATING CIRCUMSTANCES AND APPELLANT REAMS' PROOF OF MITIGATING CIRCUMSTANCES.

If this Court affirms Reams' death sentence, then this Court could compare Reams' death sentence to that received by other inmates on death row in order to make certain that Reams' death sentence is proportional when compared to death sentences received by other inmates on death row who committed murders similar to that committed by Reams. However, this Court has recently held that it will no longer conduct proportionality review of death sentences. Sasser v. State, CR 94-933, slip op. at 13-4 (July 17, 1995). But, this Court has stated that in death penalty cases it will continue to review ". . . the aggravating and mitigating circumstances presented to the jury and a harmless error review of the jury's findings." Williams v. State, CR 93-988, slip op. at 10-11 (July 10, 1995). The State submits that the jury properly evaluated the State's proof of aggravating circumstances and Reams' proof of mitigating circumstances.

In the penalty phase of Reams' trial the jury found two aggravating circumstances: 1) that Reams had committed the murder at issue in order to realize a pecuniary gain and 2) that Reams had previously committed another felony, an element of which was the use or threat of violence to another person for the creation of a substantial risk of death or serious physical injury to another person. (R. 158) The "pecuniary gain" aggravating circumstance is set forth in Ark. Code Ann. § 5-4-604(6) (Repl. 1993). There was

substantial evidence before the jury from which it could infer that Reams was an accomplice to the murder at issue and that the motive for Reams and his co-defendant to commit the murder was their desire to steal cash from the victim. In the guilt/innocence phase of the trial, Reams himself took the stand and admitted that he and his co-defendant planned to commit an aggravated robbery at a bank automatic teller machine because his co-defendant had told him (Reams) ". . . he needed the money for his graduation." (R. 731) Reams testified further that he and his co-defendant, who was armed with a .32 revolver waited at a local automatic teller machine for someone to drive up so they could rob them. (R. 734-36) Reams testified further that:

> . . . about three or four minutes later someone was pulling up to the teller machine. We looked up and Alford (Reams co-defendant) said, "This is a lick right there. Let's do this person. Let's rob this person." So we got up. We walked across the street. Alford was in front. We walked across the street towards the man in the truck.

(R. 736)

The aggravating circumstance of "prior violent felony" is set forth in Ark. Code Ann. § 5-4-604(3) (Repl. 1993). During the penalty phase of Reams' trial the State introduced proof that Reams had two prior convictions for aggravated robbery. (R. 849-50; 973-74) This Court has held that the State's proof that the defendant has prior convictions for robbery constitutes proof of the "prior violent felony"

aggravating circumstance because the threat of violence is inherent in the definition of robbery. See Whitmore v. State, 296 Ark. 308, 314, 756 S.W.2d 890, 894 (1988); Henderson v. State, 281 Ark. 406, 410-11, 664 S.W.2d 451, 454 (1984); and Hill v. State, 278 Ark. 194, 200-01, 644 S.W.2d 282, 285 (1983). Moreover, the prior felony that the State proved Reams had committed two times previously, aggravated robbery, is defined in Ark. Code Ann. § 5-12-103(a) (Repl. 1993) in such a way that a defendant cannot commit this offense unless he is armed with a deadly weapon or represents that he is so armed or inflicts or attempts to inflict death or serious physical injury upon another person.[3]

The State submits that examination of the part of the verdict form pertaining to mitigating circumstances that the jury filled out during its penalty phase deliberation reveals that the jury carefully weighed the mitigating evidence that

---

[3]Arkansas Code Annotated § 5-12-103(a) (Repl. 1993) defines aggravated robbery as follows:

> A person commits aggravated robbery if he commits robbery as defined in § 5-12-102, and he:
>
> Is armed with a deadly weapon or represents by word or conduct that he is so armed; or
>
> Inflicts or attempts to inflict death or serious physical injury upon another person.

Reams had introduced. The part of the verdict form that pertains to mitigating circumstances appears in the abstract that Reams has prepared at pages xxxv-xxxvi and at R. 159-163. Examination of the part of the verdict form dealing with mitigating circumstances that the jury filled out during its penalty phase deliberations reveals that the jurors carefully evaluated Reams' mitigating evidence. The jury did not unanimously find that Reams' mitigating evidence amounted to a mitigating circumstance or circumstances. (R. 159-60) However, one or more members of the jury did find that Reams put on sufficient mitigating evidence to prove the mitigating circumstances that the murder was committed while Reams' capacity to appreciate the wrongfulness of his conduct was impaired as a result of mental defect, intoxication or drug abuse and that Reams has abilities that would allow him to be a productive member of society even in prison. (R. 160-61) Moreover, some members of the jury found there was some evidence of six mitigating circumstances, but the jury unanimously agreed that this mitigating evidence did not amount to proof of any of the mitigating circumstances. (R. 161-62) The mitigating circumstances that Reams did not prove, but that he at least put on some evidence of, were as follows: 1) the capital murder was committed while Reams was under extreme mental or emotional disturbance; 2) the capital murder was committed while Reams was acting under unusual pressures or influences or under the domination of another

person; 3) Reams' youth at the time of his commission of the murder; 4) the murder was committed by another person and Reams was an accomplice and his participation was relatively minor; 5) Reams had no significant history of prior criminal activity; and 6) Reams suffered from borderline mental retardation. (R. 161-62) Finally, the jury did not find that Reams had failed to put on any mitigating evidence. (R. 163) The State submits that, given that the jury found that two aggravating circumstances existed and did not find that any mitigating circumstances existed, the jury did not err when, during its penalty phase deliberations, it filled out the part of the verdict form pertaining to its conclusion that the aggravating circumstances outweighed beyond a reasonable doubt any mitigating circumstances and that the aggravating circumstances justified beyond a reasonable doubt Reams' death sentence. (R. 164)

CONCLUSION AND STATEMENT OF COMPLIANCE

Based upon the authorities cited above and the facts recited above, the State, as appellee, respectfully requests that this Court affirm the judgment and commitment order (R. 167) that the Jefferson County Circuit Court caused to be entered in the instant case against appellant Reams on September 1, 1993. This judgment and commitment order recites that a jury found appellant Reams guilty of capital murder and sentenced him to death by lethal injection.

Given appellant Reams' sentence of death, pursuant to

Ark. Code Ann. § 16-91-113(a) (1987), Arkansas Rule of Criminal Procedure 36.24 and Arkansas Supreme Court Rule 4-3(h), the State has reviewed the entire record of appellant Reams's trial in Jefferson County Circuit Court. Pursuant to the authority noted above, appellant Reams has presented with his brief an abstract that sets forth all the rulings made by the Jefferson County Circuit Court that were adverse to him. The State has prepared a brief supplemental abstract. Pursuant to the authority noted above, the State has briefed the seven issues raised by appellant Reams. The State has added an additional issue in which the State discusses the jury's evaluation during the penalty phase of Reams' trial of the State's proof of aggravating circumstances and Reams' proof of mitigating circumstances. Based upon its counsel's examination of the entire record in the instant case, the State believes that there are no other issues in this case, other than those addressed by the parties, that involve potentially prejudicial error to appellant Reams.

In closing, the State notes that, pursuant to the authorities noted above, its obligation to assist this Court in reviewing appellant Reams' trial to make certain that no prejudicial error occurred extends only to actual rulings made by the trial court that were adverse to Reams and does not extend to potential errors that could have been brought to the trial court's attention in a specific, timely manner, but were not. It is well established that defendants in

cases reviewed pursuant to the authorities noted above must make proper contemporaneous objections at trial in order to preserve claims of error for review by this Court on direct appeal. Greene v. State, 317 Ark. 350, 353, 878 S.W.2d 384, 386 (1994); Parker v. State, 292 Ark. 421, 436, 731 S.W.2d 756, 764 (1987); and Fretwell v. State, 289 Ark. 91, 98, 708 S.W.2d 630, 634 (1986).

IN THE ARKANSAS SUPREME COURT

KENNETH REAMS — APPELLANT

V. — No. CR 94-558

STATE OF ARKANSAS — APPELLEE

AN APPEAL FROM THE
JEFFERSON COUNTY CIRCUIT COURT

THE HONORABLE FRED D. DAVIS
CIRCUIT JUDGE

# BRIEF OF APPELLEE

TABLE OF CONTENTS

PAGE

TABLE OF CONTENTS....................................i

POINTS TO BE RELIED UPON.............................ii

TABLE OF AUTHORITIES.................................iv

SUPPLEMENTAL ABSTRACT

1. Verdict forms filled out by the jury during penalty phase of the trial..................................AS1

2. Questions asked of defense counsel at the close of penalty phase after the jury was excused............AS10

ARGUMENT.............................................1

CONCLUSION...........................................33

POINTS TO BE RELIED UPON

I.

THE STATE DID NOT VIOLATE APPELLANT REAMS' CONSTITUTIONAL RIGHT TO EQUAL PROTECTION OF THE LAW BY ITS USE OF ITS PEREMPTORY CHALLENGES TO EXCLUDE BLACK VENIREPERSONS FROM THE JURY..........................1

II.

THE TRIAL COURT DID NOT ERR IN DENYING REAMS' REQUEST THAT THE JURY BE INSTRUCTED WITH THE AFFIRMATIVE DEFENSE TO THE DEATH PENALTY OF MENTAL RETARDATION....6

III.

THE TRIAL COURT'S SUBMISSION TO THE JURY, IN THE PENALTY PHASE OF APPELLANT REAMS' TRIAL, OF PECUNIARY GAIN AS AN AGGRAVATING CIRCUMSTANCE WAS NOT VIOLATIVE OF THE EIGHTH AND FOURTEENTH AMENDMENTS' PROHIBITION AGAINST CRUEL AND UNUSUAL PUNISHMENT...................9

IV.

THIS COURT DOES NOT CONDUCT A PROPORTIONALITY REVIEW OF DEATH SENTENCES........................................22

V.

THE JURY GAVE ADEQUATE CONSIDERATION TO THE MITIGATING CIRCUMSTANCE OF APPELLANT REAMS' AGE..................23

VI.

THE VERDICT FORM FILLED OUT BY THE JURY IN THE PENALTY PHASE OF APPELLANT REAMS' TRIAL DID NOT LEAVE MEMBERS OF THE JURY WITH THE IMPRESSION THAT EACH JUROR COULD NOT CONSIDER EVIDENCE OF A MITIGATING CIRCUMSTANCE UNLESS THE JURY UNANAMOUSLY AGREED THAT THE EVIDENCE PROVED THE MITIGATING CIRCUMSTANCE EXISTED............25

POINTS TO BE RELIED UPON

VII.

THE JURY RECEIVED ADEQUATE INSTRUCTIONS REGARDING ITS CONSIDERATION OF NONSTATUTORY MITIGATING EVIDENCE.....27

VIII.

THE JURY DID NOT ERR IN EVALUATING THE STATE'S PROOF OF AGGRAVATING CIRCUMSTANCES AND APPELLANT REAMS' PROOF OF MITIGATING CIRCUMSTANCES............................28

TABLE OF AUTHORITIES

CASES PAGE

Batson v. Kentucky, 476 U.S. 79 (1986)..................1,2,5

Bradley v. State, 320 Ark. 100, 896 S.W.2d 425 (1995).......3

Burnett v. State, 295 Ark. 401, 749 S.W.2d 308 (1988)......15

Clemons v. Mississippi, 494 U.S. 738 (1990).............19,21

Collins v. Lockhart, 754 F.2d 258 (8th Cir.), cert. denied, 474 U.S. 1013 (1985)...............................10,11,13

Cox v. State, 313 Ark. 184, 853 S.W.2d 266 (1993)..........11

Dansby v. State, 319 Ark. 506, 893 S.W.2d 331 (1995).......28

Elders v. State, 321 Ark. 60, ___ S.W.2d ___ (1995).........8

Engberg v. Meyer, 820 P.2d 70 (Wyo. 1991)...............18,19

Fairchild v. Norris, 21 F.3d 299 (8th Cir. 1994)...........15

Franklin v. State, 314 Ark. 329, 863 S.W.2d 268 (1993)......3

Fretwell v. State, 289 Ark. 91, 708 S.W.2d 630 (1986)........................................9,24,26,28,35

Furman v. Georgia, 408 U.S. 238 (1972)....................16

Godfrey v. Georgia, 446 U.S. 420 (1980)...................12

Greene v. State, 317 Ark. 350, 878 S.W.2d 384 (1994).......35

Harris v. Alabama, 115 S. Ct. 1031 (1995)..................19

Henderson v. State, 281 Ark. 406, 664 S.W.2d 451 (1984)....31

Henry v. State, 278 Ark. 478, 647 S.W.2d 419, cert. denied, 464 U.S. 835 (1983)......................................22

Hill v. State, 278 Ark. 194, 644 S.W.2d 282 (1983).........31

Hill v. State, 289 Ark. 387, 703 S.W.2d 233 (1986), cert. denied, 479 U.S. 1101 (1987)..............................25

Hollamon v. State, 312 Ark. 48, 846 S.W.2d 663 (1993).......1

Lowenfield v. Phelps, 484 U.S. 231 (1988)...............10,20

TABLE OF AUTHORITIES

CASES PAGE

Mauppin v. State, 309 Ark. 235, 831 S.W.2d 104 (1992).......8

Maynard v. Cartwright, 486 U.S. 356 (1988)...........19,20,21

Mills v. Maryland, 486 U.S. 367 (1988).................26,27

Nolen v. State, 278 Ark. 17, 643 S.W.2d 257 (1982).........17

Parker v. Norris, 859 F. Supp. 1203 (E.D. Ark. 1994).......27

Parker v. State, 292 Ark. 421, 731 S.W.2d 756 (1987).....................................9,24,26,28,35

Perry v. Lockhart, 871 F.2d 1384 (8th Cir.), cert. denied, 493 U.S. 959 (1989)......................................11

Pickens v. State, 301 Ark. 244, 783 S.W.2d 341, cert. denied, 497 U.S. 1011 (1990)......................................27

Pulley v. Harris, 465 U.S. 37 (1984)......................23

Purkett v. Elem, 115 S. Ct. 1769 (1995)....................3

Redman v. State, 265 Ark. 774, 580 S.W.2d 945 (1979)........8

Remeta v. State, 300 Ark. 92, 777 S.W.2d 833 (1989).........7

Ridenhour v. State, 305 Ark. 90, 805 S.W.2d 639 (1991)......8

Ruiz v. Norris, 868 F. Supp. 1471, (E.D. Ark. 1994)........27

Ruiz v. State, 299 Ark. 144, 772 S.W.2d 297 (1989).........11

Sasser v. State, CR 94-933, slip op. at 13-4 (July 17, 1995)..............................................23,29

Sims v. State, 320 Ark. 528 ___ S.W.2d ___ (1995)...........3

State v. Dennis, 318 Ark. 80, 883 S.W.2d 811 (1994).........7

State v. Middlebrooks, 840 S.W.2d 317 (Tenn. 1992), cert. dismissed as improvidently granted, 114 S. Ct. 651 (1993).............................................10,11

TABLE OF AUTHORITIES

CASES PAGE

State v. Middlebrooks, 840 S.W.2d 317 (Tenn. 1992)......18,19

State v. Murphy, 315 Ark. 68, 864 S.W.2d 842 (1993).........8

State v. Townsend, 314 Ark. 427, 863 S.W.2d 288 (1993)......8

State v. Vowell, 276 Ark. 258, 634 S.W.2d 118 (1982).......17

Stringer v. Black, 503 U.S. ____, 112 S. Ct. 1130, 117 L.Ed.2d 367 (1992)..................................19,20,21

Teague v. Lane, 489 U.S. 288 (1989).......................20

Tigue v. State, 319 Ark. 147, 889 S.W.2d 760 (1994)........17

Tison v. Arizona, 481 U.S. 137 (1987).............10,11,14,15

Tuileapa v. California, 114 S. Ct. 2630 (1994)..........12,14

U.S. V. Cheely, 36 F.3d 1439 (9th Cir. 1994)...............14

Wainwright v. Norris, 872 F. Supp. 574 (E.D. Ark. 1994)....23

Ward v. State, 308 Ark. 415, 827 S.W.2d 110, cert. denied, 113 S. Ct. 124 (1992)....................................11

Watson v. State, 308 Ark. 444, 825 S.W.2d 569 (1992)........3

Weger v. State, 315 Ark. 555, 869 S.W.2d 688 (1994)........17

Whitmore v. State, 296 Ark. 308, 756 S.W.2d 890 (1988).....31

Williams v. State, CR 93-988 slip op. at 10-11 (July 10, 1995).............................................23,29

Zant v. Stephens, 462 U.S. 862, 875 n.13 (1983)............19

Zant v. Stephens, 462 U.S. 862, 877 n.15 (1993)............12

RULES/STATUTES

Ark. Code Ann. § 16-91-113(a) (1987).......................34

Ark. Code Ann. § 5-10-101(a)(2) (Repl. 1993)...............21

Ark. Code Ann. § 5-12-103(a) (Repl. 1993)..................31

TABLE OF AUTHORITIES

RULES/STATUTES

PAGE

Ark. Code Ann. § 5-4-604(3) (Repl. 1993)....................30

Ark. Code Ann. § 5-4-604(6) (Repl. 1993)..................9,29

Ark. Code Ann. § 5-4-618 (Repl. 1993).....................6,7

Arkansas Code Annotated § 5-4-603(a)(2) (Repl. 1993).......19

Arkansas Rule of Criminal Procedure 36.24..................34

Arkansas Statute Annotated § 41-2205 (Repl. 1964)..........16

Arkansas Supreme Court Rule 4-3(h).........................34

MISCELLANEOUS

Robert Weisberg, Deregulating Death 1983 Sup. Ct. Rev. 305 (1984)......................................................11

SUPPLEMENTAL ABSTRACT

(ABSTRACTOR'S NOTE: During its penalty phase deliberations, the jury filled out the following verdict forms.)

FORM 1

AGGRAVATING CIRCUMSTANCES

WE, THE JURY, AFTER CAREFUL DELIBERATION, HAVE UNANIMOUSLY DETERMINED THAT THE FOLLOWING AGGRAVATING CIRCUMSTANCE EXISTED BEYOND A REASONABLE DOUBT AT THE TIME OF THE COMMISSION OF THE CAPITAL MURDER. (R. 158)

1. (X) THE CAPITAL MURDER WAS COMMITTED FOR PECUNIARY GAIN.
2. (X) KENNETH REAMS PREVIOUSLY COMMITTED ANOTHER FELONY, AN ELEMENT OF WHICH WAS THE USE OR THREAT OF VIOLENCE TO ANOTHER PERSON OR THE CREATION OF A SUBSTANTIAL RISK OF DEATH OR SERIOUS PHYSICAL INJURY TO ANOTHER PERSON.

s/ Dwight A. Robinson
FOREMAN

FORM 2

MITIGATING CIRCUMSTANCES

A. ( ) WE UNANIMOUSLY FIND THAT THE FOLLOWING MITIGATING CIRCUMSTANCES PROBABLY EXIST: (CHECK APPLICABLE CIRCUMSTANCES AND SPECIFY ANY ADDITIONAL ONES.)

1. ( ) THE CAPITAL MURDER WAS COMMITTED WHILE KENNETH REAMS WAS UNDER EXTREME MENTAL OR EMOTIONAL DISTURBANCE.

2. ( ) THE CAPITAL MURDER WAS COMMITTED WHILE KENNETH REAMS WAS ACTING UNDER UNUSUAL PRESSURES OR INFLUENCES OR UNDER THE DOMINATION OF ANOTHER PERSON. (R. 159)

3. ( ) THE CAPITAL MURDER WAS COMMITTED WHILE THE CAPACITY OF KENNETH REAMS TO APPRECIATE THE WRONGFULNESS OF HIS CONDUCT OR TO CONFORM HIS CONDUCT TO THE REQUIREMENTS OF LAW WAS IMPAIRED AS A RESULT OF MENTAL DISEASE OR DEFECT, INTOXICATION, OR DRUG ABUSE.

4. ( ) THE YOUTH OF KENNETH REAMS AT THE TIME OF THE COMMISSION OF THE CAPITAL MURDER.

5. ( ) THE CAPITAL MURDER WAS COMMITTED BY ANOTHER PERSON AND KENNETH REAMS WAS AN ACCOMPLICE AND HIS PARTICIPATION RELATIVELY MINOR.

6. ( ) KENNETH REAMS HAS NO SIGNIFICANT HISTORY OF PRIOR CRIMINAL ACTIVITY. (R. 159)

FORM 2

MITIGATING CIRCUMSTANCES - PAGE 2

7. ( ) KENNETH REAMS SUFFERS FROM BORDERLINE MENTAL RETARDATION. (R. 160)

8. ( ) KENNETH REAMS HAS ABILITIES THAT WOULD ALLOW HIM TO BE A PRODUCTIVE MEMBER OF SOCIETY EVEN IN PRISON.

9. ( ) OTHER: SPECIFY IN WRITING. ____________________

____________________________________________

____________________________________________

B. ( ) ONE OR MORE MEMBERS OF THE JURY BELIEVED THAT THE FOLLOWING MITIGATING CIRCUMSTANCES PROBABLY EXISTED, BUT THE JURY DID NOT UNANIMOUSLY AGREE:

1. ( ) THE CAPITAL MURDER WAS COMMITTED WHILE KENNETH REAMS WAS UNDER EXTREME MENTAL OR EMOTIONAL DISTURBANCE.

2. ( ) THE CAPITAL MURDER WAS COMMITTED WHILE KENNETH REAMS WAS ACTING UNDER UNUSUAL PRESSURES OR INFLUENCES OR UNDER THE DOMINATION OF ANOTHER PERSON.

3. (X ) THE CAPITAL MURDER WAS COMMITTED WHILE THE CAPACITY OF KENNETH REAMS TO APPRECIATE THE WRONGFULNESS OF HIS CONDUCT OR TO CONFORM HIS CONDUCT TO THE REQUIREMENTS OF LAW WAS IMPAIRED AS A RESULT OF MENTAL DISEASE OR DEFECT, INTOXICATION, OR DRUG ABUSE. (R. 160)

FORM 2

MITIGATING CIRCUMSTANCES - PAGE 3

4. ( ) THE YOUTH OF KENNETH REAMS AT THE TIME OF THE COMMISSION OF THE CAPITAL MURDER.

5. ( ) THE CAPITAL MURDER WAS COMMITTED BY ANOTHER PERSON AND KENNETH REAMS WAS AN ACCOMPLICE AND HIS PARTICIPATION RELATIVELY MINOR. (R.161)

6. ( ) KENNETH REAMS HAS NO SIGNIFICANT HISTORY OF PRIOR CRIMINAL ACTIVITY.

7. ( ) KENNETH REAMS SUFFERS FROM BORDERLINE MENTAL RETARDATION.

8. (X ) KENNETH REAMS HAS ABILITIES THAT WOULD ALLOW HIM TO BE A PRODUCTIVE MEMBER OF SOCIETY EVEN IN PRISON.

9. ( ) OTHER: SPECIFY IN WRITING. ______________________

______________________________________________

______________________________________________

C. (X ) THERE WAS EVIDENCE OF THE FOLLOWING MITIGATING CIRCUMSTANCES, BUT THE JURY UNANIMOUSLY AGREED THAT THEY DID NOT EXIST AT THE TIME OF THE MURDER:

1. (X ) THE CAPITAL MURDER WAS COMMITTED WHILE KENNETH REAMS WAS UNDER EXTREME MENTAL OR EMOTIONAL DISTURBANCE.

2. (X ) THE CAPITAL MURDER WAS COMMITTED WHILE KENNETH REAMS WAS ACTING UNDER UNUSUAL PRESSURES OR INFLUENCES OR UNDER THE DOMINATION OF ANOTHER PERSON. (R. 161)

FORM 2

MITIGATING CIRCUMSTANCES - PAGE 4

3. ( ) THE CAPITAL MURDER WAS COMMITTED WHILE THE CAPACITY OF KENNETH REAMS TO APPRECIATE THE WRONGFULNESS OF HIS CONDUCT OR TO CONFORM HIS CONDUCT TO THE REQUIREMENTS OF LAW WAS IMPAIRED AS A RESULT OF MENTAL DISEASE OR DEFECT, INTOXICATION, OR DRUG ABUSE. (R. 162)

4. (X ) THE YOUTH OF KENNETH REAMS AT THE TIME OF THE COMMISSION OF THE CAPITAL MURDER.

5. (X ) THE CAPITAL MURDER WAS COMMITTED BY ANOTHER PERSON AND KENNETH REAMS WAS AN ACCOMPLICE AND HIS PARTICIPATION RELATIVELY MINOR.

6. (X ) KENNETH REAMS HAS NO SIGNIFICANT HISTORY OF PRIOR CRIMINAL ACTIVITY.

7. (X ) KENNETH REAMS SUFFERS FROM BORDERLINE MENTAL RETARDATION.

8. ( ) KENNETH REAMS HAS ABILITIES THAT WOULD ALLOW HIM TO BE A PRODUCTIVE MEMBER OF SOCIETY EVEN IN PRISON.

9. ( ) OTHER: SPECIFY IN WRITING. ______________________

______________________________________________

______________________________________________

FORM 2

MITIGATING CIRCUMSTANCES - PAGE 5

D. ( ) THERE WAS NO EVIDENCE OF ANY MITIGATING CIRCUMSTANCE. (CHECK IF APPLICABLE). (R. 163)

s/ Dwight A. Robinson
FOREMAN

1401

-SA6-

7086 Respondent's Exhibit E

FORM 3

CONCLUSIONS

THE JURY, HAVING REACHED ITS FINAL CONCLUSIONS, WILL SO INDICATE BY HAVING ITS FOREMAN PLACE A CHECK MARK (X) IN THE APPROPRIATE SPACE IN ACCORDANCE WITH THE JURY'S FINDINGS. IN ORDER TO CHECK ANY SPACE, YOUR CONCLUSIONS MUST BE UNANIMOUS. THE FOREMAN OF THE JURY WILL THEN SIGN AT THE END OF THIS FORM. (R. 164)

WE THE JURY CONCLUDE:

(A) (X ) ONE OR MORE AGGRAVATING CIRCUMSTANCES DID EXIST BEYOND A REASONABLE DOUBT, AT THE TIME OF THE COMMISSION OF THE CAPITAL MURDER.

(IF YOU DO NOT UNANIMOUSLY AGREE TO CHECK PARAGRAPH (A) THEN SKIP (B) AND (C), AND SENTENCE KENNETH REAMS TO LIFE IMPRISONMENT WITHOUT PAROLE ON FORM 4.)

(B) (X ) THE AGGRAVATING CIRCUMSTANCES OUTWEIGH BEYOND A REASONABLE DOUBT ANY MITIGATING CIRCUMSTANCES.

(IF YOU DO NOT UNANIMOUSLY AGREE TO CHECK (B) THEN SKIP (C) AND SENTENCE KENNETH REAMS TO LIFE IMPRISONMENT WITHOUT PAROLE ON FORM 4.)

(C) (X ) THE AGGRAVATING CIRCUMSTANCE JUSTIFY BEYOND A REASONABLE DOUBT A SENTENCE OF DEATH.

(IF YOU DO NOT UNANIMOUSLY AGREE TO CHECK PARAGRAPH (C) THEN SENTENCE KENNETH REAMS TO LIFE IMPRISONMENT WITHOUT PAROLE ON FORM 4.) (R. 164)

FORM 3

CONCLUSIONS - PAGE 2

IF YOU HAVE CHECKED PARAGRAPHS (A), (B), AND (C) THEN
SENTENCE KENNETH REAMS TO DEATH BY LETHAL INJECTION ON
FORM 4. (R. 165)

s/ Dwight A. Robinson
FOREMAN

1403                           -SA8-

7088Respondent's Exhibit E

FORM 4

VERDICT

WE, THE JURY, AFTER CAREFUL DELIBERATION, HAVE DETERMINED THAT FOR THE CAPITAL FELONY MURDER OF GARY TURNER THAT KENNETH REAMS SHALL BE SENTENCED TO:

A. ( ) LIFE IMPRISONMENT WITHOUT PAROLE.

B. (X ) DEATH BY LETHAL INJECTION.

(EACH JUROR MUST SIGN THIS VERDICT.)

| | |
|---|---|
| s/ Dwight A. Robinson | s/ Kelly Ruggeri |
| s/ Jerry Lindsey | s/ Carolyn Phillips |
| s/ Larry R. Tipton | s/ Linda Messina |
| s/ Mary Denise Hoffman | s/ David R. (illegible) |
| s/ Dorothy Hodges | s/ Gary H. Johnson |
| s/ Bruce E. Hornsby | s/ Della M. Horace |

(ABSTRACTOR'S NOTE: At the close of the penalty phase of Reams' trial, after the trial court excused the jury, the trial court asked Reams' counsel the following questions.)

TRIAL COURT: Mr. Kizer (defense counsel), is there any desire that the defendant's sentence be postponed?

DEFENSE COUNSEL: I know of no legal reason why Your Honor.

TRIAL COURT: Okay. The next thing I was going to ask you is there any legal reason that you can think of that the Court should not impose sentence at this time?

DEFENSE COUNSEL: None that I'm aware of, Your Honor. (R. 917)

TRIAL COURT: Other than those that have previously been raised. All right Mr. Reams, will you stand up if you would, please, sir. Kenneth Reams, the jury of your peers having considered the evidence in this case and having found you guilty of the offense of the capital felony murder and having again heard evidence and deliberated and returned a sentence of death by lethal injection and no legal reason having been shown to the Court why sentence should not be imposed, it is the judgment and sentence of the Court that you be remanded to the Sheriff of Jefferson County and by him transported to the Department of Correction where on a day prescribed by the Governor of this State, the Superintendent of the Department6 of Correction will carry out the sentence of this Court and you will be put to death by lethal injection. (R. 918)

ARGUMENT

I.

THE STATE DID NOT VIOLATE APPELLANT REAMS' CONSTITUTIONAL RIGHT TO EQUAL PROTECTION OF THE LAW BY ITS USE OF ITS PEREMPTORY CHALLENGES TO EXCLUDE BLACK VENIREPERSONS FROM THE JURY.

For his first allegation of error appellant Reams asserts that the trial court erred in denying his objections to the State's peremptory challenges of venirepersons Irma Johnson, Matthew Henry and Muriel Hayes. Appellant Reams, who is black, objected to the State's peremptory challenges of Ms. Johnson, Mr. Henry and Ms. Hayes, all of whom are black, on the basis of the United States Supreme Court's decision in Batson v. Kentucky, 476 U.S. 79 (1986). In Batson v. Kentucky, the United States Supreme Court held, in essence, that equal protection principles prohibited the State from using its peremptory challenges in a criminal case to remove venirepersons from the jury on the basis of their race. The trial court did not err in denying appellant Reams' Batson-based objections to the State's use of its peremptory challenges to remove Ms. Johnson, Mr. Henry and Ms. Hayes from the jury.

The trial court did not err in denying Reams' counsel's Batson objection to the State's peremptory challenges of venirepersons Irma Johnson, Matthew Henry and Muriel Hayes. This Court has recently summarized the case law principles that govern Batson challenges. In Hollamon v. State, 312

Ark. 48, 846 S.W.2d 663 (1993) this Court summarized as follows the pertinent case law principles that govern Batson challenges:

> In Batson v. Kentucky, [476 U.S. 79 (1986)], the United States Supreme Court held that a defendant who makes a prima facie showing of purposeful racial discrimination in juror challenges shifts the burden to the state to prove that the exclusion of jurors is not based on race. The Court, however, refrained from formulating procedures to implement Batson, and the states have been forced to chart their own way in devising procedures for the time, place, and manner of the Batson process.
>
> We have held that when the neutral explanation given by the state is sufficient, no sensitive inquiry is required. Colbert v. State, 304 Ark. 250, 801 S.W.2d 643 (1990). In Colbert, we declared:
>
> We now believe that our previous interpretations of the Batson holding were misdirected only to the extent that we have said that Batson requires a "sensitive inquiry" by the trial court in every instance, notwithstanding the validity of the state's explanation for its peremptory challenges.
>
> We now hold that upon a showing by a defendant of circumstances which raise an inference that the prosecutor exercised one or more of his peremptory challenges to exclude venire persons from the jury on account of race, the burden then shifts to the state to establish that the peremptory strike(s) were for racially neutral reasons. The trial court shall then determine from all relevant circumstances the sufficiency of the racially neutral explanation. If the state's explanation appears insufficient, the trial court must then conduct a sensitive inquiry into the basis for each of the

> challenges by the state.
>
> The standard of review for reversal of the trial court's evaluation of the sufficiency of the explanation must test whether the court's findings are clearly against the preponderance of the evidence. In every instance, however, the court shall state, in response to the defendant's objections, its rulings as to the sufficiency or insufficiency of the racially neutral explanation provided by the state.
>
> 304 Ark. at 254-255, 801 S.W.2d at 646.
>
> Accordingly, the defendant must first establish a prima facie case of purposeful discrimination....

Hollamon, 312 Ark. at 52-3, 846 S.W.2d at 665-66. Accord Sims v. State, 320 Ark. 528, 532-33, ___ S.W.2d ___, ___ (1995); Bradley v. State, 320 Ark. 100, 108-09, 896 S.W.2d 425, 429-30 (1995); Franklin v. State, 314 Ark. 329, 338, 863 S.W.2d 268, 273 (1993); and Watson v. State, 308 Ark. 444, 448-50, 825 S.W.2d 569, 571-72 (1992). Recently, the United States Supreme Court has held that the State satisfies its burden of offering a race-neutral explanation as to why a particular venireperson was peremptorily challenged even if the race-neutral explanation, on its face, appears silly, implausible, fantastic or superstitious. Purkett v. Elem, 115 S. Ct. 1769, 1771 (1995). In Purkett v. Elem, the United States Supreme Court made clear that the State's race-neutral explanation for its exercise of a peremptory challenge need not be reasonable, in the sense of logical, but only that the explanation be race-neutral. Id.

With regard to venirepersons Matthew Henry and Muriel Hayes, the State notes that at the trial court level the deputy prosecuting attorneys offered race-neutral explanations for their decision to peremporily excuse Mr. Henry and to peremporily excuse Ms. Hayes. With regard to Mr. Henry, the deputy prosecuting attorneys explained that they peremporily excused him from the jury because they believed that he was inconsistent in answering questions put to him on voir dire regarding whether the accomplice in a robbery-murder was deserving of the same punishment as the principal. (R. 446-47) Review of Mr. Henry's answers to questions put to him on voir dire reveals that there was some inconsistency in his answers regarding the relative culpability of an accomplice and a principal in a robbery-murder. On voir dire examination by the State, Mr. Henry stated that the guilt of an accomplice and a principal in a robbery-murder would be "inseparable." (R. 39) However, when examined on voir dire by defense counsel concerning whether, as a general proposition, an accomplice should receive the same punishment as a principal when the two commit a criminal offense, Mr. Henry seemed to state that an accomplice an a principal might receive different punishment depending upon ". . . the difference in the state of mind." (R. 444) After the State had peremporily challenged Mr. Henry and after argument from counsel on this point, the trial court directed that Mr. Henry be brought back and that further voir dire examination be conducted. In the

course of this additional voir dire Mr. Henry seemed to affirm that when considering what punishment to impose on a defendant guilty of robbery-murder, he would take account of the defendant's "intent." (R. 452-53; 454-55)

With regard to venirewoman Muriel Hayes, one of the deputy prosecuting attorneys explained that she was peremptorily removed from the jury because, ". . . she [Ms. Hayes] said from the start that you would practically have to put a gun to her head in order to get her to give the death penalty." (R. 55) Examination of the record reveals that Ms. Hayes did make this statement. (R. 501)

The State submits that the reasons given by counsel for the State explaining why they peremptorily removed venireperson Matthew Henry and venireperson Muriel Hayes from the jury are, on their face, race-neutral. Because these explanations are race-neutral, the State did not violate Batson v. Kentucky.

With regard to venireperson Irma Johnson, the State notes that after defense counsel made a Batson-based objection to the State's peremptorily removing Ms. Johnson from the jury, the trial court denied the objection on the basis that defense counsel had not established that the State had made a prima facie showing of purposeful racial discrimination by counsel for the State in exercising a peremptory challenge against Ms. Johnson. (R. 226) The State submits that this decision by the trial court was

correct. Examination of the record reveals that Ms. Johnson was the first venireperson examined. Moreover, examination of the State's voir dire of Ms. Johnson does not reveal that she was asked any questions that would indicate that counsel for the State had a racially discriminatory motive for peremptorily excusing her from the jury. Had counsel for the State been asked to provide their explanation for their decision to peremptorily excuse Ms. Johnson from the jury, they doubtlessly would have pointed out that during their voir dire of Ms. Johnson she admitted that in 1992 her nephew was prosecuted for having committed a robbery and that in that same year her sister was prosecuted in federal court for possession of drugs. (R. 216-17)

II.

THE TRIAL COURT DID NOT ERR IN DENYING REAMS' REQUEST THAT THE JURY BE INSTRUCTED WITH THE AFFIRMATIVE DEFENSE TO THE DEATH PENALTY OF MENTAL RETARDATION.

For his second allegation of error appellant Reams asserts that during the penalty phase of his trial the trial court erred in denying his request to instruct the jury on the affirmative defense to the death penalty of mental retardation, as defined in Ark. Code Ann. § 5-4-618 (Repl. 1993). Reams' counsel first requested this jury instruction after the jury had found Reams guilty of capital murder. (R. 820-24) The trial court refused to instruct the jury on the affirmative defense of mental retardation because this defense did not, as a matter of law, exist at the time Reams

committed the capital murder at issue. (R. 825-30) The trial court's decision to refuse to instruct the jury on the affirmative defense to the death penalty of mental retardation was correct for two reasons.

In the first place, the affirmative defense to the death penalty of mental retardation must be raised prior to trial. Arkansas Code Annotated § 5-4-618(d)(1) states, "A defendant on trial for capital murder shall raise the special sentencing provisions of mental retardation by motion prior to trial." Reams did not raise the affirmative defense of mental retardation prior to trial. In fact, just prior to the beginning of the guilt/innocence phase of Reams' trial, his counsel asked the trial court, "Do you want to take up my motion on the retardation aspect if it arises during sentencing?" (R. 605) The trial court replied, "Yes, sir." (R. 605) Affirmative defenses that are not raised in a timely manner are defaulted. See Remeta v. State, 300 Ark. 92, 96-7, 777 S.W.2d 833, 835-36 (1989).

Moreover, Reams admits in his brief that on the date, May 5, 1993, he committed the capital murder at issue the affirmative defense to the death penalty of mental retardation was not in effect. (Reams' brief at page 11-3.) This Court has repeatedly held that sentencing in criminal cases is governed by the substantive sentencing statutes that were in effect on the date the criminal offense at issue was committed. See State v. Dennis, 318 Ark. 80, 883 S.W.2d 811

(1994); State v. Murphy, 315 Ark. 68, 71, 864 S.W.2d 842, 844 (1993); and State v. Townsend, 314 Ark. 427, 429-30, 863 S.W.2d 288, 289 (1993). The existence of a defense in a criminal case is a substantive matter. See Mauppin v. State, 309 Ark. 235, 251-52, 831 S.W.2d 104, 112 (1992); see also Ridenhour v. State, 305 Ark. 90, 94-5, 805 S.W.2d 639, 641-42 (1991) (a statute operates in a forbidden ex post facto fashion if, among other things, it deprives a defendant of any defense available according to the law at the time the criminal offense at issue was committed). Moreover, this Court has repeatedly held that it will apply an amendment to existing statutes defining substantive criminal law or criminal procedure only when the General Assembly expressly so provides that the statutory amendment at issue should be applied retroactively. See Elders v. State, 321 Ark. 60, 67, ___ S.W.2d ___, ___ (1995); State v. Murphy, supra; and Redman v. State, 265 Ark. 774, 779, 580 S.W.2d 945, 948 (1979).

In his brief Reams presents a whole host of constitutional theories that, according to Reams, required the trial judge to instruct the jury with the affirmative defense to the death penalty of mental retardation, as defined in § 5-4-618(a). These constitutional arguments that Reams presents in his brief run the gamut from "cruel and unusual punishment" to "equal protection" to "substantive due process." Examination of the record reveals that none of

these constitutional issues was raised before the trial court as the basis upon which the trial court was required to instruct the jury with the affirmative defense to the death penalty of mental retardation. This Court has held that even in death penalty cases issues that are not raised at the trial court level are defaulted and that the defendant cannot obtain review from this Court of a legal issue that he did not raise at the trial court level. See Parker v. State, 292 Ark. 421, 436, 731 S.W.2d 756, 764 (1987) and Fretwell v. State, 289 Ark. 91, 98, 708 S.W.2d 630, 634 (1986).

III.

THE TRIAL COURT'S SUBMISSION TO THE JURY, IN THE PENALTY PHASE OF APPELLANT REAMS' TRIAL, OF PECUNIARY GAIN AS AN AGGRAVATING CIRCUMSTANCE WAS NOT VIOLATIVE OF THE EIGHTH AND FOURTEENTH AMENDMENTS' PROHIBITION AGAINST CRUEL AND UNUSUAL PUNISHMENT.

For his third allegation of error appellant Reams asserts that the trial court erred in submitting the aggravating circumstance of pecuniary gain, as defined in Ark. Code Ann. § 5-4-604(6) (Repl. 1993), to the jury during the penalty phase of his trial. According to Reams, the trial court erred in submitting the pecuniary gain aggravating circumstance to the jury because this aggravating circumstance merely duplicates an element of the underlying capital felony murder charge --murder committed in the course of an aggravated robbery. According to Reams, this "double-counting" of the pecuniary gain aggravating circumstance is a violative of the Eighth and Fourteenth Amendments' prohibition

against cruel and unusual punishment because this aggravating circumstance fails to genuinely narrow the set of all murderers into a subset of murderers that truly deserves to die. In support of this allegation of error Reams relies principally on two cases: 1) Collins v. Lockhart, 754 F.2d 258 (8th Cir.), cert. denied, 474 U.S. 1013 (1985) and 2) State v. Middlebrooks, 840 S.W.2d 317 (Tenn. 1992), cert. dismissed as improvidently granted, 114 S. Ct. 651 (1993). Reams preserved this allegation of error by raising it in a written pretrial motion in which he asked the trial court not to submit the pecuniary gain aggravating circumstance to the jury. (R. 68-71) The trial court denied this motion.

Reams' Collins v. Lockhart-based "double-counting" allegation of error is meritless. In his brief Reams confounds two important case law principles of Eighth and Fourteenth Amendment death penalty jurisprudence. These two case law principles are represented by the United States Supreme Court decisions in Lowenfield v. Phelps, 484 U.S. 231 (1988) and Tison v. Arizona, 481 U.S. 137 (1987). Moreover, Reams further confuses this area of the law by arguing in his brief that the holding of the Tennessee Supreme Court in Middlebrooks, supra, has revived the "double-counting" issue that has been previously laid to rest by the United States Supreme Court, by this Court and by the United States Eighth Circuit Court of Appeals. In the following paragraphs, the State will review the decisions of this Court and of other

courts that resolve the "double-counting" issue in favor of the State, will explain why the Middlebrooks decision has no bearing on Arkansas' death penalty sentencing procedure and will explain why the United States Supreme Court's holding in Tison v. Arizona has nothing to do with the "double-counting" issue.

In essence, the "double-counting" argument asserts that a death penalty is invalid if an aggravating circumstance that the jury considered in the penalty phase of the proceeding was duplicative of an element of the statutory definition of capital murder of which the defendant was convicted. See Collins v. Lockhart, 754 F.2d 258 (8th Cir.), cert. denied, 474 U.S. 1013 (1985) and Robert Weisberg, Deregulating Death 1983 Sup. Ct. Rev. 305, 330-33 (1984). Both the United States Supreme Court, the United States Eighth Circuit Court of Appeals and this Court have specifically rejected the "double-counting" argument. Lowenfield v. Phelps, supra; Perry v. Lockhart, 871 F.2d 1384, 1393-94 (8th Cir.), cert. denied, 493 U.S. 959 (1989); Cox v. State, 313 Ark. 184, 195-96, 853 S.W.2d 266, 271-72 (1993); Ward v. State, 308 Ark. 415, 418-19, 827 S.W.2d 110, 111, cert. denied, 113 S. Ct. 124 (1992); and Ruiz v. State, 299 Ark. 144, 154-55, 772 S.W.2d 297, 302 (1989).

In an effort to dodge this mass of authority Reams has presented in his brief a lengthy argument that confounds two important case law principles of Eighth and Fourteenth

Amendment death penalty jurisprudence. These two case law principles are represented by the United States Supreme Court decisions in Lowenfield v. Phelps, supra, and Tison v. Arizona, 481 U.S. 137 (1987). In the following paragraphs, the State will discuss each of these Eighth Amendment case law principles separately and will explain why Reams' arguments are meritless.

Lowenfield v. Phelps, supra, holds that a state's death penalty sentencing procedure is not violative of the Eighth Amendment merely because an element of the definition of capital murder at issue is duplicated by an aggravating circumstance that a jury is required to find in order to impose the death penalty. That issue in Lowenfield v. Phelps was whether the "double-counting" of an element of the definition of capital murder at issue by an aggravating circumstance violated the Eight Amendment's "genuine narrowing" requirement. The United States Supreme Court has interpreted the Eighth Amendment's prohibition against cruel and unusual punishment to require that a state's death penalty sentencing procedure genuinely narrow the set of all murderers into a subset that truly deserves to die. Tuileapa v. California, 114 S. Ct. 2630, 2635 (1994); Zant v. Stephens, 462 U.S. 862, 877 n.15 (1993); and Godfrey v. Georgia, 446 U.S. 420 (1980).

Reams goes on at some length in his brief in an effort to undermine the correctness of this Court's rejection of the

"double-counting" holding of Collins v. Lockhart, but Reams never explains how it is that this Court can ignore the doctrine of stare decisis and somehow overrule or otherwise just ignore the United States Supreme Court's holding in Lowenfield v. Phelps. What Reams should have done in his brief, rather than pick nits by way of comparing Louisiana's definition of capital felony murder with Arkansas', was to explain how Arkansas' definition of capital felony murder fails to meet the Eight Amendment's "genuine narrowing" test on some basis other than "double-counting." To the extent that Reams did discuss Arkansas' definition of capital felony murder, he confounded the case law requirement of "genuine narrowing" with an entirely separate, threshold Eighth Amendment requirement for capital felony murder, set forth by the United States Supreme Court in Tison v. Arizona, 481 U.S. 137 (1987).

In his brief Reams discusses the United States Supreme Court's holding in Tison v. Arizona and attempts to fit Tison somewhere into his discussion of the Eight Amendment's requirement of "genuine narrowing." Reams' discussion of Tison v. Arizona seems to be premised on his assumption that Tison v. Arizona has something to do with the Eighth Amendment's requirement of "genuine narrowing." Reams' assumption in this regard is wrong. Tison v. Arizona is not a "genuine narrowing" Eighth Amendment case. Tison v. Arizona does not address any "genuine narrowing" issue but,

instead, addresses a threshold issue having to do with whether a defendant who has been found guilty of felony murder is even eligible to be considered for the death penalty. Tuilaepa, 114 S. Ct. at 2634 and U.S. V. Cheely, 36 F.3d 1439, 1442 (9th Cir. 1994). In Tison v. Arizona the United States Supreme Court did not address the "genuine narrowing" issue, but instead, addressed the issue of whether the death penalty is even permitted by the Eighth Amendment as a proportional punishment for certain kinds of felony murder. If a defendant convicted of felony murder does not meet the standards set in Tison, then the defendant is not eligible to be considered for the imposition of the death penalty. To put the matter another way, if a defendant convicted of felony murder does not meet the standard set forth in Tison, then the defendant is not placed into the class of murderers that a state's death penalty sentencing procedure must genuinely narrow into a subset of murderers that truly deserves to die. See Cheely, 37 F.3d at 1442. In Tison the United States Supreme Court held that the Eighth Amendment's prohibition against cruel and unusual punishment prohibits the imposition of the death penalty on the defendant in a felony murder case unless the state proves that the defendant killed the victim or intended that the victim be killed or acted with reckless indifference to the possibility of the victim's death.

The State is not entirely sure of the precise point that

Reams is attempting to make when he cites and discusses Tison v. Arizona. It does not appear to the State that Reams is asserting that his conduct does not meet the standard set in Tison v. Arizona. Moreover, it does not seem to the State that Reams is asserting that Arkansas' definition of capital felony murder, as it stood in May of 1993 when Reams committed the capital murder at issue, failed to meet the Tison standard. If Reams were making such an argument, it would be meritless. This Court has held that Arkansas' definition of capital felony murder does meet the standard set in Tison v. Arizona. This Court so held in Burnett v. State, 295 Ark. 401, 411-12, 749 S.W.2d 308, 314 (1988). Accord Fairchild v. Norris, 21 F.3d 299 (8th Cir. 1994).[1]

---

[1]The definition of capital felony murder at issue in this case is codified as Ark. Code Ann. § 5-10-101(a)(1)(Repl. 1993). This definition of capital felony murder states:

> A person commits capital murder if: acting alone or with one (1) or more other persons, he commits or attempts to attempt rape, kidnapping, arson, vehicular piracy, robbery, burglary,...or escape in the first degree, and in the course of and in furtherance of the felony, or in immediate flight therefrom, he or an accomplice causes the death of any person under circumstances manifesting extreme indifference to the value of human life....

The State submits that Arkansas' present definition of capital felony murder as it exists today performs the requisite genuine narrowing of the set of all murderers into a subset that truly deserves to die because Arkansas' definition of capital felony murder includes the attendant circumstance of "under circumstances manifesting extreme indifference to the value of human life" and this Court has interpreted this attendant circumstance to be the equivalent of the culpable mental state of intent.

Prior to the landmark decision of Furman v. Georgia, 408 U.S. 238 (1972), capital murder in Arkansas was defined in Arkansas Statute Annotated § 41-2205 (Repl. 1964) as follows:

> All murder which shall be perpetrated by means of poison, or by lying in wait, or by any other kind of wilful, deliberate, malicious and premeditated killing, or which shall be committed in the perpetration of or in the attempt to perpetrate, arson, rape, robbery, burglary or larceny, shall be deemed murder in the first degree.

In 1975, three years after Furman, Arkansas narrowed the definition of capital felony murder by reformulating the offense into the form it now has. Specifically, Arkansas narrowed its definition of capital felony murder by adding the attendant circumstances of ". . . under circumstances manifesting extreme indifference to the value of human life . . . ." See n.1, supra. Reams seems to argue that this attendant circumstance amounts to nothing more than the culpable mental state of "recklessly" and that all felony

murders occur "under circumstances manifesting extreme indifference to the value of human life." This implication is incorrect. This Court has interpreted the attendant circumstance "under circumstances manifesting extreme indifference to the value of human life" set forth in the statutory definition of first degree battery as being the equivalent of the culpable mental state of "intention." This Court has so held in the cases of Nolen v. State, 278 Ark. 17, 21-2, 643 S.W.2d 257, 259-60 (1982) and State v. Vowell, 276 Ark. 258, 634 S.W.2d 118 (1982). Both Nolen and Vowell involved defendants who, while driving while intoxicated, caused automobile crashes, thereby causing injury to other persons. Although neither Nolen nor Vowell were cases involving a charge of felony murder, in both cases this Court stated that it considered the attendant circumstance "under circumstances manifesting extreme indifference to the value of human life" to be in the nature of a culpable mental state and to be akin to intentional conduct. Accord Tigue v. State, 319 Ark. 147, 151, 889 S.W.2d 760, 762 (1994) and Weger v. State, 315 Ark. 555, 560-61, 869 S.W.2d 688, 690 (1994). The limitation imposed on the definition of capital felony murder by this Court's interpretation in Nolen and Vowell of the attendant circumstance "under circumstances manifesting extreme indifference to the value of human life" distinguishes Arkansas' capital punishment sentencing procedure from that

in other jurisdictions, notably Tennessee and Wyoming. Reams relies on recent state supreme court decisions from these two states to buttress his contention that Arkansas' capital punishment sentencing procedure does not perform the requisite genuine narrowing.

The state supreme court decisions that Reams relies on are the decisions by the Tennessee Supreme Court in State v. Middlebrooks, 840 S.W.2d 317 (Tenn. 1992), cert. dismissed as improvidently granted, 114 S. Ct. 651 (1993) and by the Wyoming Supreme Court in Engberg v. Meyer, 820 P.2d 70 (Wyo. 1991) The definitions of capital felony murder at issue in Middlebrooks and Engberg did not have the attendant circumstance of the "under circumstances manifesting extreme indifference to the value of human life," much less an interpretation of that attendant circumstance that treated it as the equivalent of the culpable mental state of intent. The definition of capital felony murder at issue in Middlebrooks defined the offense, in pertinent part, as, "[e]very murder . . . committed in the perpetration of, or attempt to perpetrate, any murder in the first degree, arson, rape, robbery, burglary, larceny, kidnapping, aircraft piracy, or the unlawful throwing, placing or discharging of a destructive device or bomb." Middlebrooks, 840 S.W.2d at 335-36. The definition of capital robbery murder at issue in Engberg defined the offense as, "[w]hoever . . . in the perpetration of, or attempt to perpetrate, any . . . robbery

. . . kills any human being . . . is guilty of murder in the first degree." Engberg 820 P.2d at 87. Given the interpretation of the attendant circumstance, "under circumstances manifesting extreme indifference to the value of human life" by this Court in Nolen and Vowell, Arkansas' definition of capital felony murder is substantially narrower than the definition of capital felony murder at issue in Middlebrooks and at issue in Engberg.

Reams makes much of the fact that Arkansas has a "weighing" component in its death penalty sentencing procedure. By statute Arkansas requires that jurors who are deliberating whether to impose the death penalty on a defendant weigh the aggravating circumstances present and also requires that the jurors unanimously conclude that the aggravating circumstances outweigh the mitigating circumstances beyond a reasonable doubt. Arkansas Code Annotated § 5-4-603(a)(2) (Repl. 1993). This balancing component is not required by the Eighth Amendment. See Harris v. Alabama, 115 S. Ct. 1031, 1035-36 (1995) and Zant v. Stephens, 462 U.S. 862, 875 n.13 (1983). Reams uses the United States Supreme Court's decision in Stringer v. Black, 503 U.S. ____, 112 S. Ct. 1130, 117 L.Ed.2d 367 (1992) as the spearhead of his attack.

In Stringer v. Black the issue was whether the Supreme Court's decisions in Maynard v. Cartwright, 486 U.S. 356 (1988) and Clemons v. Mississippi, 494 U.S. 738 (1990)

established a "new rule" for purposes of the application of the retroactivity doctrine set forth in Teague v. Lane, 489 U.S. 288 (1989) with regard to the claim by a Mississippi death row inmate that his death sentence was invalid because the jury that sentenced him to death had weighed an invalid aggravating circumstance. In Stringer v. Black the Supreme Court held that Maynard v. Cartwright and Clemons v. Mississippi did not establish a "new rule" for Teague v. Lane retroactivity purposes and, therefore, the defendant's death sentence was violative of the Eighth Amendment because the jury weighed an invalid aggravating circumstances. In its opinion in Stringer v. Black the Supreme Court noted that the issue present in the case had little to do with the "genuine narrowing" issue that was decided in Lowenfield v. Phelps. Stringer v. Black, 112 S. Ct. at 1139, 117 L.Ed.2d at 382. Appellee Norris makes the same observation about the argument based on Stringer v. Black presented by Reams, it has very little to do with the Eighth Amendment genuine narrowing issue that is before this Court in the instant case.

The "weighing" component of the various capital punishment sentencing procedures that were at issue in Stringer v. Black and the Supreme Court's prior decisions leading to Stringer v. Black were the focus of Eighth Amendment analysis by the Supreme Court solely because the jurors' weighing of aggravating circumstances in the respective cases was alleged to be violative of the Eighth

Amendment because, in each case, the jury had considered an invalid aggravating circumstance. The invalid circumstance at issue in Stringer v. Black, in Maynard v. Cartwright and in Clemons v. Mississippi was the aggravating circumstance of "especially heinous, atrocious, or cruel." In Maynard v. Cartwright the Supreme Court had held that this aggravating circumstance was invalid because it was so vague that a person of ordinary sensibility could find the aggravating circumstance present in almost every murder. Maynard v. Cartwright, 486 U.S. at 363-64. Whatever else Reams has had to say about the aggravating circumstances of "murder committed for pecuniary gain," the aggravating circumstance involved in the instant case, Reams has not stated that it was so vague that a person of ordinary sensibility could find it present in almost every murder.

If, as the State contends, the statutory definition of robbery-murder set forth in Ark. Code Ann. § 5-10-101(a)(2) (Repl. 1993) performs the genuine narrowing required by the Eighth Amendment, then the "weighing" component of Arkansas' death penalty sentencing procedure is not tainted. If the statutory definition of robbery-murder performs the genuine narrowing required by the Eighth Amendment, then "pecuniary gain" need not perform any further "genuine narrowing"

function.[2] If valid aggravating circumstances are weighed by the jury, then Stringer v. Black and the Supreme Court's decisions leading to it are not applicable.

IV.

THIS COURT DOES NOT CONDUCT A PROPORTIONALITY REVIEW OF DEATH SENTENCES.

For his fourth allegation of error appellant Reams asserts that his death sentence is invalid because it is unduly harsh in that it is out of proportion to his participation in the murder at issue. In his brief invites this Court to compare the facts of his case to those of other cases in which this Court has invalidated death sentences on the basis that the death sentence was too harsh, given the defendant's relatively less culpable role in the murder at issue. See, e.g., Henry v. State, 278 Ark. 478, 488-89, 647 S.W.2d 419, 425, cert. denied, 464 U.S. 835 (1983).

Reams' contention that the death sentence imposed on him, when compared to the death sentences imposed on the

[2] "Pecuniary gain" is a valid aggravating circumstance. See Woodard v. State, 261 Ark. 895, 905-06, 557 S.W.2d 259, 265 (1977), cert. denied, 439 U.S. 1122 (1979) and Neal v. State, 259 Ark. 27, 32, 531 S.W.2d 17, 20 (1979). See generally James R. Acker and C.S. Lanier, "Passing This Lexicon of Death": Aggravating Factors in Capital Sentencing Statutes, 30 Crim. Law Bulletin 107, 135-38 (1994).

other inmates on Arkansas' Death Row, is unduly harsh is not an allegation of error that Reams can pursue before this Court. This Court has recently held that it will no longer conduct comparative review of death sentences. Sasser v. State, CR 94-933, slip op. at 13-4 (July 17, 1995) and Williams v. State, CR 93-988 slip op. at 10-11 (July 10, 1995). Comparative review of death sentences by an appellate court is not required by the Eighth and Fourteenth Amendments' prohibition against cruel and unusual punishment. Pulley v. Harris, 465 U.S. 37 (1984) and Wainwright v. Norris, 872 F. Supp. 574, 596 (E.D. Ark. 1994).

V.

THE JURY GAVE ADEQUATE CONSIDERATION TO THE MITIGATING CIRCUMSTANCE OF APPELLANT REAMS' AGE.

For his fifth allegation of error appellant Reams asserts that the jury erred in its penalty phase deliberations when it concluded that Reams had introduced some evidence of his youth but that this evidence did not amount to a mitigating circumstance. (R. 161-62) In his brief Reams asserts that the jury was required to find that Reams' age at the time he committed the murder at issue, eighteen years of age, was a mitigating circumstance. During the guilt/innocence phase of the trial, Reams testified that he was then eighteen years of age and that he had been born on December 21, 1974. Reams' trial was held in Jefferson County Circuit Court on December 13-5, 1993. Therefore, at the time of his trial Reams was approximately one week away

from his nineteenth birthday and at the time he committed the murder at issue, May 5, 1993, he had been eighteen years of age for approximately four and one-half months.

Reams is procedurally barred from obtaining relief from this Court on the basis of this allegation of error. In any event, Reams' contention that the jury was required to conclude that his age was a mitigating circumstance is erroneous.

Reams is procedurally barred from obtaining relief on the basis of this allegation of error because he never raised it at the trial court level. Reams could have raised this issue at the time the trial court asked Reams ". . . is there any legal reason that you can think of that the Court should not impose sentence at this time?" (R. 917) Reams did not take advantage of his opportunity to object to his death sentence on the basis that the jury had erred in failing to determine that proof of his age amounted to an aggravating circumstance. Because Reams never raised this issue before the trial court, he is procedurally barred from obtaining relief from this Court on the basis of this allegation of error. Even in death penalty cases, in order to preserve allegations of error for review by this Court, a defendant must have raised the allegation of error at the trial court level by having made a specific, timely objection. <u>See</u> <u>Parker v. State</u>, 292 Ark. 421, 436, 731 S.W.2d 756, 764 (1987) and <u>Fretwell v. State</u>, 289 Ark. 91, 98, 708 S.W.2d

630, 634 (1986).

In any event, Reams' allegation of error is meritless. Reams' argument amounts to an assertion that the defendant's youth is an "automatic" mitigating circumstance that the jury must find if the defendant introduces proof that he is a teenager. The defendant's relative youth is not an "automatic" mitigating circumstance. This Court has specifically held that if a defendant in a death penalty case introduces proof of his youth, the jury is not required to find that the defendant's youth was a mitigating circumstance. Hill v. State, 289 Ark. 387, 396, ~~703~~ 713 S.W.2d 233, 237-38 (1986), cert. denied, 479 U.S. 1101 (1987).

VI.

THE VERDICT FORM FILLED OUT BY THE JURY IN THE PENALTY PHASE OF APPELLANT REAMS' TRIAL DID NOT LEAVE MEMBERS OF THE JURY WITH THE IMPRESSION THAT EACH JUROR COULD NOT CONSIDER EVIDENCE OF A MITIGATING CIRCUMSTANCE UNLESS THE JURY UNANAMOUSLY AGREED THAT THE EVIDENCE PROVED THE MITIGATING CIRCUMSTANCE EXISTED.

For his sixth allegation of error appellant Reams asserts that the part of the verdict form that the trial court gave the jury in the penalty phase of his trial that sets forth the mitigating circumstances was a violative of the Eighth and Fourteenth Amendments. According to Reams, the verdict form that the trial court gave the jury regarding mitigating circumstances was phrased in such a way so as to inform each juror that he or she could not consider evidence of a mitigating circumstance unless all the jurors unanimously agreed that the evidence supported the finding of

the mitigating circumstance. Reams cites as authority for this argument the United States Supreme Court decision in Mills v. Maryland, 486 U.S. 367 (1988). In Mills v. Maryland the United States Supreme Court held that the Eighth and Fourteenth Amendments' prohibition against cruel and unusual punishment prohibited a trial court from instructing the jurors in the penalty phase of a death penalty case that each juror could not consider evidence of a mitigating circumstance unless all the jurors unanimously agreed that the mitigating evidence amounted to a mitigating circumstance.

Reams is procedurally barred from obtaining relief from this Court on the basis of this allegation of error. In any event, this allegation of error is meritless.

Reams' counsel never made a Mills v. Maryland-based objection at the trial court level to the verdict form or the jury instructions pertaining to mitigating circumstances. Because Reams' trial counsel did not make this objection at the trial court level, Reams is procedurally barred from obtaining relief on the basis of this allegation of error. See Parker v. State, 292 Ark. 421, 436, 731 S.W.2d 756, 764 (1987) and Fretwell v. State, 289 Ark. 91, 98, 708 S.W.2d 630, 634 (1986). In any event, had Reams' counsel made a Mills v. Maryland-based objection to the instructions that the trial court gave the jury defining mitigating circumstances, such an objection would have been meritless.

This Court has specifically rejected a Mills v. Maryland-based challenge to the standard jury instructions and verdict forms that are given to juries in Arkansas death penalty cases. Pickens v. State, 301 Ark. 244, 249, 783 S.W.2d 341, 344, cert. denied, 497 U.S. 1011 (1990). Accord Ruiz v. Norris, 868 F. Supp. 1471, 1533-48 (E.D. Ark. 1994) and Parker v. Norris, 859 F. Supp. 1203, 1223-24 (E.D. Ark. 1994).

VII.

THE JURY RECEIVED ADEQUATE INSTRUCTIONS REGARDING ITS CONSIDERATION OF NONSTATUTORY MITIGATING EVIDENCE.

For his seventh allegation of error appellant Reams asserts that the verdict form that the trial court gave the jury during the penalty phase of his trial pertaining to mitigating circumstances was violative of the Eighth and Fourteenth Amendments. According to Reams, the verdict form that the trial court gave the jury regarding mitigating circumstances was phrased in such a way so as to preclude the jurors from considering evidence of mitigating circumstances that were not specifically listed on the verdict form.

Appellant Reams is procedurally barred from obtaining relief from this Court on the basis of this allegation of error. In any event, this allegation of error is meritless.

Reams' counsel never objected at the trial court level to the part of the verdict form pertaining to mitigating circumstances nor did Reams' counsel object to the trial court's instructions to the jury pertaining to mitigating

circumstances on the basis that either the verdict form or the jury instructions were phrased in such a way that the jury was prohibited from considering evidence of mitigating circumstances unless those circumstances were specifically listed on the verdict form. Because Reams' trial counsel did not make an objection on this basis at the trial court level, Reams is procedurally barred from obtaining relief on the basis of this allegation of error. See Parker v. State, 292 Ark. 421, 436, 731 S.W.2d 756, 764 (1987) and Fretwell v. State, 289 Ark. 91, 98, 708 S.W.2d 630, 634 (1986). but see Ruiz v. Norris, 868 F.Supp 1471, 1545

In any event, had Reams' counsel objected to the part of the verdict form pertaining to mitigating circumstances or had Reams' counsel objected to the trial court's instructions to the jury pertaining to mitigating circumstances on the basis that either was phrased in such a way so as to preclude the jurors from considering evidence of a mitigating circumstance unless that circumstance was listed on the verdict form, such allegation of error would have been meritless. This Court has specifically rejected this attack on the standard jury instructions and the verdict forms pertaining to mitigating circumstances that are given to juries in Arkansas death penalty cases. Dansby v. State, 319 Ark. 506, 525-29, 893 S.W.2d 331, 341-43 (1995).

VIII.

THE JURY DID NOT ERR IN EVALUATING THE STATE'S PROOF OF AGGRAVATING CIRCUMSTANCES AND APPELLANT REAMS' PROOF OF MITIGATING CIRCUMSTANCES.

If this Court affirms Reams' death sentence, then this Court could compare Reams' death sentence to that received by other inmates on death row in order to make certain that Reams' death sentence is proportional when compared to death sentences received by other inmates on death row who committed murders similar to that committed by Reams. However, this Court has recently held that it will no longer conduct proportionality review of death sentences. Sasser v. State, CR 94-933, slip op. at 13-4 (July 17, 1995). But, this Court has stated that in death penalty cases it will continue to review ". . . the aggravating and mitigating circumstances presented to the jury and a harmless error review of the jury's findings." Williams v. State, CR 93-988, slip op. at 10-11 (July 10, 1995). The State submits that the jury properly evaluated the State's proof of aggravating circumstances and Reams' proof of mitigating circumstances.

In the penalty phase of Reams' trial the jury found two aggravating circumstances: 1) that Reams had committed the murder at issue in order to realize a pecuniary gain and 2) that Reams had previously committed another felony, an element of which was the use or threat of violence to another person for the creation of a substantial risk of death or serious physical injury to another person. (R. 158) The "pecuniary gain" aggravating circumstance is set forth in Ark. Code Ann. § 5-4-604(6) (Repl. 1993). There was

substantial evidence before the jury from which it could infer that Reams was an accomplice to the murder at issue and that the motive for Reams and his co-defendant to commit the murder was their desire to steal cash from the victim. In the guilt/innocence phase of the trial, Reams himself took the stand and admitted that he and his co-defendant planned to commit an aggravated robbery at a bank automatic teller machine because his co-defendant had told him (Reams) ". . . he needed the money for his graduation." (R. 731) Reams testified further that he and his co-defendant, who was armed with a .32 revolver waited at a local automatic teller machine for someone to drive up so they could rob them. (R. 734-36) Reams testified further that:

> . . . about three or four minutes later someone was pulling up to the teller machine. We looked up and Alford (Reams co-defendant) said, "This is a lick right there. Let's do this person. Let's rob this person." So we got up. We walked across the street. Alford was in front. We walked across the street towards the man in the truck.

(R. 736)

The aggravating circumstance of "prior violent felony" is set forth in Ark. Code Ann. § 5-4-604(3) (Repl. 1993). During the penalty phase of Reams' trial the State introduced proof that Reams had two prior convictions for aggravated robbery. (R. 849-50; 973-74) This Court has held that the State's proof that the defendant has prior convictions for robbery constitutes proof of the "prior violent felony"

aggravating circumstance because the threat of violence is inherent in the definition of robbery. See Whitmore v. State, 296 Ark. 308, 314, 756 S.W.2d 890, 894 (1988); Henderson v. State, 281 Ark. 406, 410-11, 664 S.W.2d 451, 454 (1984); and Hill v. State, 278 Ark. 194, 200-01, 644 S.W.2d 282, 285 (1983). Moreover, the prior felony that the State proved Reams had committed two times previously, aggravated robbery, is defined in Ark. Code Ann. § 5-12-103(a) (Repl. 1993) in such a way that a defendant cannot commit this offense unless he is armed with a deadly weapon or represents that he is so armed or inflicts or attempts to inflict death or serious physical injury upon another person.[3]

The State submits that examination of the part of the verdict form pertaining to mitigating circumstances that the jury filled out during its penalty phase deliberation reveals that the jury carefully weighed the mitigating evidence that

---

[3]Arkansas Code Annotated § 5-12-103(a) (Repl. 1993) defines aggravated robbery as follows:

> A person commits aggravated robbery if he commits robbery as defined in § 5-12-102, and he:
>
> Is armed with a deadly weapon or represents by word or conduct that he is so armed; or
>
> Inflicts or attempts to inflict death or serious physical injury upon another person.

Reams had introduced. The part of the verdict form that pertains to mitigating circumstances appears in the abstract that Reams has prepared at pages xxxv-xxxvi and at R. 159-163. Examination of the part of the verdict form dealing with mitigating circumstances that the jury filled out during its penalty phase deliberations reveals that the jurors carefully evaluated Reams' mitigating evidence. The jury did not unanimously find that Reams' mitigating evidence amounted to a mitigating circumstance or circumstances. (R. 159-60) However, one or more members of the jury did find that Reams put on sufficient mitigating evidence to prove the mitigating circumstances that the murder was committed while Reams' capacity to appreciate the wrongfulness of his conduct was impaired as a result of mental defect, intoxication or drug abuse and that Reams has abilities that would allow him to be a productive member of society even in prison. (R. 160-61) Moreover, some members of the jury found there was some evidence of six mitigating circumstances, but the jury unanimously agreed that this mitigating evidence did not amount to proof of any of the mitigating circumstances. (R. 161-62) The mitigating circumstances that Reams did not prove, but that he at least put on some evidence of, were as follows: 1) the capital murder was committed while Reams was under extreme mental or emotional disturbance; 2) the capital murder was committed while Reams was acting under unusual pressures or influences or under the domination of another

person; 3) Reams' youth at the time of his commission of the murder; 4) the murder was committed by another person and Reams was an accomplice and his participation was relatively minor; 5) Reams had no significant history of prior criminal activity; and 6) Reams suffered from borderline mental retardation. (R. 161-62) Finally, the jury did not find that Reams had failed to put on any mitigating evidence. (R. 163) The State submits that, given that the jury found that two aggravating circumstances existed and did not find that any mitigating circumstances existed, the jury did not err when, during its penalty phase deliberations, it filled out the part of the verdict form pertaining to its conclusion that the aggravating circumstances outweighed beyond a reasonable doubt any mitigating circumstances and that the aggravating circumstances justified beyond a reasonable doubt Reams' death sentence. (R. 164)

## CONCLUSION AND STATEMENT OF COMPLIANCE

Based upon the authorities cited above and the facts recited above, the State, as appellee, respectfully requests that this Court affirm the judgment and commitment order (R. 167) that the Jefferson County Circuit Court caused to be entered in the instant case against appellant Reams on September 1, 1993. This judgment and commitment order recites that a jury found appellant Reams guilty of capital murder and sentenced him to death by lethal injection.

Given appellant Reams' sentence of death, pursuant to

Ark. Code Ann. § 16-91-113(a) (1987), Arkansas Rule of Criminal Procedure 36.24 and Arkansas Supreme Court Rule 4-3(h), the State has reviewed the entire record of appellant Reams's trial in Jefferson County Circuit Court. Pursuant to the authority noted above, appellant Reams has presented with his brief an abstract that sets forth all the rulings made by the Jefferson County Circuit Court that were adverse to him. The State has prepared a brief supplemental abstract. Pursuant to the authority noted above, the State has briefed the seven issues raised by appellant Reams. The State has added an additional issue in which the State discusses the jury's evaluation during the penalty phase of Reams' trial of the State's proof of aggravating circumstances and Reams' proof of mitigating circumstances. Based upon its counsel's examination of the entire record in the instant case, the State believes that there are no other issues in this case, other than those addressed by the parties, that involve potentially prejudicial error to appellant Reams.

In closing, the State notes that, pursuant to the authorities noted above, its obligation to assist this Court in reviewing appellant Reams' trial to make certain that no prejudicial error occurred extends only to actual rulings made by the trial court that were adverse to Reams and does not extend to potential errors that could have been brought to the trial court's attention in a specific, timely manner, but were not. It is well established that defendants in

cases reviewed pursuant to the authorities noted above must make proper contemporaneous objections at trial in order to preserve claims of error for review by this Court on direct appeal. Greene v. State, 317 Ark. 350, 353, 878 S.W.2d 384, 386 (1994); Parker v. State, 292 Ark. 421, 436, 731 S.W.2d 756, 764 (1987); and Fretwell v. State, 289 Ark. 91, 98, 708 S.W.2d 630, 634 (1986).

ed therein, was that a defendant in a criminal bench trial cannot challenge the sufficiency of the evidence on a particular basis below and then change the basis on appeal. That holding is no more than an application of the general rule (which remained unaffected by *Igwe*) that, in order to preserve arguments for appellate review, they must be presented to the trial court for a ruling—for there can be no appellate review if there is no ruling to review. Therefore, *Stricklin* effectively held that a defendant in a criminal bench trial must challenge the sufficiency of the evidence at some point in the trial. Such a holding is consistent with the original non-expanded holding of *Igwe*—that a criminal defendant need not renew a motion for directed verdict *once made*.

The majority's application of the assumption expressed in *Igwe* that a motion for directed verdict is superfluous in a bench trial because the judge would only be directing his own verdict in a trial, the main purpose of which was to have a judge rather than a jury ascertain the sufficiency of the evidence, runs afoul of the principle that the state be allowed the opportunity to supply any missing evidence identified by the defendant. Preservation of this principle is essential to the people's right to a fair trial—a right that should exist in both bench and jury trials. The majority's decision today deprives the state of its right to a fair trial because it allows a defendant in a bench trial to remain obtuse and silent during the course of the trial and then possibly obtain reversal on appeal on an issue that was never identified to the trial court.

It is quite fair and reasonable to presume, as the majority does in this case, that a trial court knows the elements of a crime. However, it is unreasonable to expect the people of this state and the trial court to be subject to a trial by ambush, such as when multiple offenses with different elements are tried or when a multitude of witnesses extend the trial for several days or weeks. While this state is blessed with very capable trial judges, they are still human and susceptible to human weakness. A motion for a directed verdict should be specific so as to inform the trial court what insufficiencies are exposed by failure of proof, and to allow the trial court to reflect on the issue and give an informed decision. That is the basis upon which I wrote *Stricklin* and the reason I continue to support a requirement that the state be treated equally in a bench trial as well as a jury trial, in that both classes of defendants must identify the alleged insufficiency in the proceedings below when challenging the sufficiency of the evidence on appeal. Judicial economy alone would justify such a requirement. This principle is so closely related to the contemporaneous objection rule as to be the norm, rather than the exception. I would therefore affirm the judgment of conviction on the basis that the issue of the sufficiency of the evidence was not preserved for appeal.

GLAZE, J., joins in this concurrence.

322 Ark. 336

Kenneth REAMS, Appellant,

v.

STATE of Arkansas, Appellee.

No. CR 94-558.

Supreme Court of Arkansas.

Nov. 6, 1995.

Defendant was convicted of capital felony and sentenced to death in the Circuit Court, Jefferson County, Fred D. Davis, J., and he appealed. The Supreme Court, Glaze, J., held that: (1) proportional review was not required; (2) evidence supported aggravating circumstances of pecuniary gain and prior felony with element of use or threat of violence to another person; (3) mental retardation did not preclude the death penalty; (4) prosecutor's reasons for striking black jurors were race neutral; and (5) even in death penalty cases, defendant must have raised allegations of error at trial

court level by having made specific, timely objection.

Affirmed.

1. Criminal Law ⟹1134(3)

Proportional review is not required in death penalty case, but Supreme Court will continue to review aggravating and mitigating circumstances presented to jury and conduct harmless error review of jury's findings.

2. Homicide ⟹357(9)

Defendant's own testimony in capital murder prosecution supported death penalty aggravating circumstance that murder was committed in order to realize pecuniary gain, in light of defendant's testimony as to planning with accomplice a robbery in which the accomplice shot the victim.

3. Homicide ⟹357(5)

Aggravated robbery offenses, by definition, constituted prior crimes involving threat of violence to another, as aggravating circumstance for purposes of supporting death penalty in capital murder prosecution. A.C.A. § 5-12-103(a).

4. Criminal Law ⟹1208.1(5)

To impose death penalty, jury need only unanimously agree that one aggravating circumstance exists.

5. Constitutional Law ⟹250.3(1), 270(2)
Criminal Law ⟹1213.8(8)
Homicide ⟹357(4)

Defendant's mental retardation did not preclude jury from imposing death penalty for capital murder, under constitutional guarantees of due process and equal protection, and against cruel and unusual punishment, in case in which defendant's intelligence quotient was above the 65 quotient prescribed by law to create rebuttable presumption of mental retardation and in which, in any event, defense was not asserted prior to trial. U.S.C.A. Const.Amends. 8, 14; Const. Art. 2, § 9; A.C.A. §§ 5-4-618, 5-4-618(d)(1).

6. Criminal Law ⟹1213.8(8)

Imposition of death penalty did not constitute cruel and unusual punishment on theory that submission of pecuniary gain to jury as aggravating circumstance in penalty phase was unconstitutional "double-counting," and that definition of capital murder does not sufficiently narrow the crime for which death penalty can be imposed and that providing narrowing during penalty stage only is insufficient. U.S.C.A. Const.Amends. 8, 14.

7. Criminal Law ⟹1158(3)

Standard of review for reversal of *Batson* ruling on peremptory strike of jurors is whether trial court's findings are clearly against preponderance of the evidence.

8. Jury ⟹33(5.15)

Defendant may make prima facie case of racial discrimination of prosecutor's jury challenges by showing that: totality of the relevant factors gives rise to inference of discriminatory purpose; total or seriously disproportionate exclusion of blacks from jury venires; or pattern of strikes, or questions and statements by prosecuting attorney during voir dire.

9. Jury ⟹33(5.15)

Defendant did not make prima facie case under *Batson* by objecting to prosecutor's peremptory strike of first venireperson, who was black, as no strike pattern or discriminatory purpose was evident merely because first juror called and struck happened to be black.

10. Jury ⟹33(5.15)

State's explanation of reason for strike of black juror, that prosecutor believed juror was of the opinion that, if defendant was not the shooter during robbery, juror could not impose the death penalty on defendant, was race neutral.

11. Jury ⟹33(5.15)

Prosecutor's reason for striking black juror in capital murder prosecution, that juror had stated during voir dire that she did not want to be a person who would cause someone to be put to death, was race neutral.

12. Criminal Law ⟹1030(1)

Even in death penalty cases, defendant must have raised allegations of error at trial court level by having made specific, timely objection.

Maxie G. Kizer, Pine Bluff, for appellant.

Clint Miller, Asst. Attorney General, Pine Bluff, for appellee.

GLAZE, Justice.

Kenneth Reams appeals from his capital felony conviction sentence for which he was sentenced to death. He raises seven points on appeal, but only four are properly preserved. Upon review, we conclude none of the points are meritorious.

[1] We first consider Reams's suggestion that we conduct a proportional review. Such a review is not required. *Sasser v. State,* 321 Ark. 438, 902 S.W.2d 773 (1995); *Williams v. State,* 321 Ark. 344, 902 S.W.2d 767 (1995). However, this court has said that, in death penalty cases, it will continue to review the aggravating and mitigating circumstances presented to the jury and a harmless error review of the jury's findings. *Id.* In reviewing those circumstances, we point out that the jury unanimously found two aggravating and no mitigating circumstances. The two aggravating circumstances were that (1) Reams had committed the murder in issue in order to realize a pecuniary gain and (2) he had previously committed another felony, an element of which was the use or threat of violence to another person or the creation of a substantial risk of death or serious physical injury to another person.

[2, 3] Here, Reams's own testimony supported the first aggravating circumstance. Reams, who was charged as an accomplice with Alford Goodwin in the murder of Gary W. Turner, testified that he and Goodwin planned to commit an aggravated robbery at a bank automatic teller machine because Goodwin said, "He needed the money for graduation." Reams admitted that he and Goodwin, who was armed with a .32 revolver, waited at a local automatic teller machine for someone to drive up so they could rob them. He further described how he and Goodwin approached Turner's vehicle at the machine; he also related Goodwin shot Turner. Regarding the jury's second aggravating circumstance, Reams was shown to have previously been convicted of two aggravated robbery offenses and these offenses, by their definition, reflect Reams had committed prior crimes involving the threat of violence to another. *See Whitmore v. State,* 296 Ark. 308, 756 S.W.2d 890 (1988); Ark.Code Ann. § 5–12–103(a) (Repl.1993).

[4] Concerning the review of mitigating circumstances, we note that there was some evidence of six mitigating circumstances, but the jury unanimously agreed that those mitigating circumstances did not exist.[1] Suffice it to say, the record supports the jury's unanimous findings that two aggravating circumstances existed beyond a reasonable doubt and no mitigating circumstances existed. To impose the death penalty, this court has held that a jury need only unanimously agree that one aggravating circumstance exists. *Dansby v. State,* 319 Ark. 506, 893 S.W.2d 331 (1995). Here, two were shown.

[5] In another point, Reams contends that, because of his mental retardation, his execution would violate state and federal guarantees against cruel and unusual punishment and deprive him of due process and equal protection of the law. Reams relies on Act 420 of 1993, now codified at Ark.Code Ann. § 5–4–618 (Repl.1993), to support his argument that his mental retardation precludes the jury from imposing the death penalty sentence. His argument is without merit.

Reams concedes that he is not entitled to the rebuttable presumption of mental retardation under the Act, since his intelligence quotient is above that 65 quotient prescribed by law. This may well be the reason Reams failed to raise the defense of mental retardation as an affirmative defense as is required

1. The evidence considered but not unanimously found by the jury suggested the following: (1) the capital murder was committed while Reams was under extreme mental or emotional disturbance; (2) the capital murder was committed while Reams was acting under unusual pressures or influences or under the domination of another person; (3) Reams's youth at the time of his commission of the murder; (4) the murder was committed by another person and Reams was an accomplice and his participation was relatively minor; (5) Reams had no significant history of prior criminal activity; and (6) Reams suffered from borderline mental retardation.

by Act 420. *See* § 5-4-618(d)(1). In any event, he did not assert Act 420 as a defense prior to trial, and for this reason alone, Reams's argument must fail. While Reams mentions other constitutional arguments connected with his purported mental retardation, those arguments were not properly raised below, so we do not address those for the first time on appeal. *See Parker v. State,* 292 Ark. 421, 731 S.W.2d 756 (1987).

[6] In a third point, Reams asserts that the trial court's submission of pecuniary gain to the jury as an aggravating circumstance in the penalty phase was an unconstitutional "double-counting" which violated the Eighth and Fourteenth Amendments' prohibition against cruel and unusual punishment. He argues in part that Arkansas's definition of capital murder does not sufficiently narrow the crime for which the death penalty can be imposed and that Arkansas's law, providing narrowing during the penalty stage only, fails to meet the Eighth Amendment requirements. The Supreme Court, the United States Eighth Circuit Court of Appeals and this court have rejected this "double-counting" and narrowing argument. *Lowenfield v. Phelps,* 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988); *Perry v. Lockhart,* 871 F.2d 1384 (8th Cir.); *cert. denied,* 493 U.S. 959, 110 S.Ct. 378, 107 L.Ed.2d 363 (1989); *Nooner v. State,* 322 Ark. 87, 907 S.W.2d 677 (1995); *Porter v. State,* 321 Ark. 555, 905 S.W.2d 835 (1995); *Cox v. State,* 313 Ark. 184, 853 S.W.2d 266 (1993); *Johnson v. State,* 308 Ark. 7, 823 S.W.2d 800, *cert. denied,* 505 U.S. 1225, 112 S.Ct. 3043, 120 L.Ed.2d 911 (1992). We see no need to revisit or reconsider this issue, yet again.

[7] In a fourth point, Reams states he is black and the victim was white and racial overtones were involved in the commission of the crime. He urges that, contrary to the holding in *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the prosecutor here unconstitutionally used his peremptory strikes to exclude blacks from the jury. In *Rockett v. State,* 318 Ark. 831, 890 S.W.2d 235 (1994), this court set out the following required procedures when a *Batson* objection is raised:

> First, the defendant must make a prima facie case that racial discrimination is the basis of a juror challenge. In the event the defendant makes a prima facie case, the state has the burden of showing that the challenge was not based on race. Only if the defendant makes a prima facie case and the state fails to give a racially neutral reason for the challenge is the court required to conduct a sensitive inquiry.

This court has further held that, on appeal, the standard of review for reversal of a *Batson* ruling is whether the trial court's findings are clearly against the preponderance of the evidence. *Bradley v. State,* 320 Ark. 100, 896 S.W.2d 425 (1995).

[8] Here, the trial court ruled that Reams made no prima facie case by showing racial discrimination was the basis of the prosecutor's juror challenges. In *Ward v. State,* 293 Ark. 88, 733 S.W.2d 728 (1987), this court held that a defendant may make a prima facie case by showing that (1) the totality of the relevant factors gives rise to an inference of discriminatory purpose, (2) the total or seriously disproportionate exclusion of negroes from the jury venires or (3) a pattern of strikes, or questions and statements by a prosecuting attorney during voir dire.

[9] In this appeal, Reams cites *Franklin v. State,* 314 Ark. 329, 863 S.W.2d 268 (1993), in support of his argument that he made a prima facie case by objecting to the prosecutor's peremptory strike of the first venire person, Irma Johnson, who was black. Of course, no strike pattern or discriminatory purpose was evident merely because the first juror called and struck happened to be black. Nonetheless, the trial court assured Reams that, if a pattern developed later, it would require the prosecutor to provide a race-neutral explanation for striking Johnson. Reams never later renewed his objection regarding Johnson. Contrary to Reams's suggestion, the *Franklin* decision is unhelpful here, because there, four other jurors had been voir dired when the first black juror was called and subsequently challenged by the state, and by the time the court ruled on the *Batson* objection, the jury was composed of only white jurors.

In sum, no strike pattern was shown when Johnson was struck by the state, nor did the state's questions asked of her reflect a racially discriminatory motive. In fact, had the prosecutor been requested to provide an explanation for his decision to peremptorily excuse Johnson, he undoubtedly would have related Johnson's concessions that her brother had been unsuccessfully prosecuted for robbery in 1988, her nephew had robbed a store in 1992 and her sister had been charged for a drug offense in federal court in 1992.

Reams next argues that the trial court erred in upholding the state's peremptory challenge of black venireman, Matthew Henry. At this stage of voir dire, the state had used four peremptory challenges, including the one striking Mr. Henry—two strikes involved black jurors, Johnson and Henry, and two involved white jurors. Again the trial court ruled no prima facie "pattern" of discrimination was exhibited by the prosecutor, but it also delved into the state's "race neutral" explanation for its peremptory strike of Henry.

Reams couches his argument on appeal in terms suggesting that the state's disparate treatment of venire members not only established a pattern, but also showed the specious nature of the state's explanation in striking Henry. Reams points out that the state purportedly wanted assurances from the potential jurors that they were aware of accomplice liability and could find an accomplice as guilty as the person who actually shot the victim. He argues white venire members Linda Messina, Carolyn Phillips and Dorothy Hodges had indicated the person who actually shot the victim should be punished more severely, but the state accepted them after each finally concluded that she could impose the death penalty, if accomplice liability was established. Reams asserts that, contrary to its treatment of Messina, Phillips and Hodges, the state struck Henry even though Henry indicated he could impose the death penalty if an accomplice was found guilty of capital murder.

[10] Reams's argument breaks down when examining Henry's answer when voir dired by defense counsel. While he previously said that he could impose the death penalty, he steadfastly adhered to his belief that "[he] could consider the level of participation of the defendant or the role he played in the crime when it came to punishment if he could discern the difference in the state of mind." He further said, "I could do that if I could by some way see the difference in the state of mind and understand it or what is going to happen or whatever." After Henry's remarks, the prosecutor explained he wished to strike Henry because he believed Henry was of the opinion that, if Reams was not the shooter, he could not impose the death penalty.

The trial court voiced dissatisfaction with the state's explanation of striking Henry, and instead ruled Reams showed no prima facie case. While we agree with the trial court's ruling finding no discriminatory purpose or pattern, we also conclude the state's explanation was clearly race neutral.

[11] Reams's *Batson* argument also included black venire member, Muriel M. Hayes, who the state struck because of her reservations about imposing the death penalty. Mrs. Hayes said, "I really do not want to be a person who would cause someone being put to death, I would not want a guilty conscience, I would not want to feel guilty, and I would not want to be a part of saying that this person gets the electric chair."[2] The prosecutor's explanation here was clearly based on something other than Ms. Hayes's race and without anything more, his reason offered in striking her must be deemed race neutral. *See Hernandez v. New York*, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991). For the reasons above, we affirm the trial court's *Batson* rulings.

[12] As previously mentioned, Reams argues three additional points on appeal, but those arguments were not argued or preserved below. His arguments are that (1) the jury did not adequately consider his youth (age 18 years) as a mitigating circum-

2. Reams suggests Ms. Hayes was rehabilitated when she agreed she could consider the death penalty, but, at the same time, she again stated that she would rather not do so.

stance, (2) form 2, as a part of the verdict form, violated the Eighth and Fourteenth Amendments, and (3) jury members were given inadequate instructions on non-statutory mitigating evidence. Although we see no merit in these issues, it is unnecessary to discuss them further, since even in death penalty cases, a defendant must have raised the allegations of error at the trial court level by having made a specific, timely objection. *See Parker v. State,* 292 Ark. 421, 731 S.W.2d 756 (1987).

The record has been examined in accordance with Ark.Sup.Ct.R. 4-3(h), and it has been determined that there were no rulings adverse to Reams which constituted prejudicial error. Therefore, we affirm.

322 Ark. 453

Eugene HUNT, Individually and for a Class, Appellants,

v.

Jerry RILEY, et al., Appellees,

Jerry Riley, Leon Jones, Sr., Jessie Jones, Michael Glover, Cross-Appellants,

Eugene Hunt, Individually and for a Class, Cross-Appellees.

No. 95-387.

Supreme Court of Arkansas.

Nov. 13, 1995.

Attorney brought suit alleging tortious interference with business expectancy and outrage against persons who, on behalf of attorneys, solicited accident victims for legal representation. The Circuit Court, Jefferson County, Russell Rogers, J., dismissed complaint for failure to state claim and denied defendants' motions for sanctions. Cross-appeals were taken. The Supreme Court, Brown, J., held that: (1) bald allegations of contractual relationship or business expectancy with accident victims failed to plead claim for tortious interference with contract or business expectancy; (2) allegations that soliciting victims was tortious conduct failed to state outrage claim; and (3) inadequate record precluded appellate review of denial sanctions motion.

Affirmed.

1. Appeal and Error ⟹919

When reviewing trial court's decision on motion to dismiss for failure to state claim, appellate court treats facts alleged in complaint as true and views those facts in light most favorable to party who filed complaint. Rules Civ.Proc., Rule 12(b)(6).

2. Pretrial Procedure ⟹681

Trial court must look only to allegations in complaint when deciding dismissal motions. Rules Civ.Proc., Rule 12(b)(6).

3. Pleading ⟹48

In order to state cause of action, complaint must allege facts and not mere conclusions. Rules Civ.Proc., Rule 8.

4. Pretrial Procedure ⟹695

When complaint is dismissed without prejudice, plaintiff has option of pleading further or appeal but, if plaintiff appeals, option to plead further is waived in event of affirmance by appellate court. Rules Civ.Proc., Rule 12(b)(6).

5. Torts ⟹10(1), 12

Elements of tortious interference claim are: existence of valid contractual relationship or business expectancy; knowledge of relationship or expectancy on part of interfering parties; intentional interference inducing or causing breach or termination of relationship or expectancy; and resultant damage to party whose relationship or expectancy has been disrupted.

6. Torts ⟹10(1), 12

Interference with contractual relationship or business expectancy must be improper in order to be actionable by claim for tortious interference.

ed therein, was that a defendant in a criminal bench trial cannot challenge the sufficiency of the evidence on a particular basis below and then change the basis on appeal. That holding is no more than an application of the general rule (which remained unaffected by *Igwe*) that, in order to preserve arguments for appellate review, they must be presented to the trial court for a ruling—for there can be no appellate review if there is no ruling to review. Therefore, *Stricklin* effectively held that a defendant in a criminal bench trial must challenge the sufficiency of the evidence at some point in the trial. Such a holding is consistent with the original non-expanded holding of *Igwe*—that a criminal defendant need not renew a motion for directed verdict *once made*.

The majority's application of the assumption expressed in *Igwe* that a motion for directed verdict is superfluous in a bench trial because the judge would only be directing his own verdict in a trial, the main purpose of which was to have a judge rather than a jury ascertain the sufficiency of the evidence, runs afoul of the principle that the state be allowed the opportunity to supply any missing evidence identified by the defendant. Preservation of this principle is essential to the people's right to a fair trial—a right that should exist in both bench and jury trials. The majority's decision today deprives the state of its right to a fair trial because it allows a defendant in a bench trial to remain obtuse and silent during the course of the trial and then possibly obtain reversal on appeal on an issue that was never identified to the trial court.

It is quite fair and reasonable to presume, as the majority does in this case, that a trial court knows the elements of a crime. However, it is unreasonable to expect the people of this state and the trial court to be subject to a trial by ambush, such as when multiple offenses with different elements are tried or when a multitude of witnesses extend the trial for several days or weeks. While this state is blessed with very capable trial judges, they are still human and susceptible to human weakness. A motion for a directed verdict should be specific so as to inform the trial court what insufficiencies are exposed by failure of proof, and to allow the trial court to reflect on the issue and give an informed decision. That is the basis upon which I wrote *Stricklin* and the reason I continue to support a requirement that the state be treated equally in a bench trial as well as a jury trial, in that both classes of defendants must identify the alleged insufficiency in the proceedings below when challenging the sufficiency of the evidence on appeal. Judicial economy alone would justify such a requirement. This principle is so closely related to the contemporaneous objection rule as to be the norm, rather than the exception. I would therefore affirm the judgment of conviction on the basis that the issue of the sufficiency of the evidence was not preserved for appeal.

GLAZE, J., joins in this concurrence.

322 Ark. 336

Kenneth REAMS, Appellant,

v.

STATE of Arkansas, Appellee.

No. CR 94–558.

Supreme Court of Arkansas.

Nov. 6, 1995.

Defendant was convicted of capital felony and sentenced to death in the Circuit Court, Jefferson County, Fred D. Davis, J., and he appealed. The Supreme Court, Glaze, J., held that: (1) proportional review was not required; (2) evidence supported aggravating circumstances of pecuniary gain and prior felony with element of use or threat of violence to another person; (3) mental retardation did not preclude the death penalty; (4) prosecutor's reasons for striking black jurors were race neutral; and (5) even in death penalty cases, defendant must have raised allegations of error at trial

court level by having made specific, timely objection.

Affirmed.

1. **Criminal Law** ⇐1134(3)

Proportional review is not required in death penalty case, but Supreme Court will continue to review aggravating and mitigating circumstances presented to jury and conduct harmless error review of jury's findings.

2. **Homicide** ⇐357(9)

Defendant's own testimony in capital murder prosecution supported death penalty aggravating circumstance that murder was committed in order to realize pecuniary gain, in light of defendant's testimony as to planning with accomplice a robbery in which the accomplice shot the victim.

3. **Homicide** ⇐357(5)

Aggravated robbery offenses, by definition, constituted prior crimes involving threat of violence to another, as aggravating circumstance for purposes of supporting death penalty in capital murder prosecution. A.C.A. § 5–12–103(a).

4. **Criminal Law** ⇐1208.1(5)

To impose death penalty, jury need only unanimously agree that one aggravating circumstance exists.

5. **Constitutional Law** ⇐250.3(1), 270(2)
**Criminal Law** ⇐1213.8(8)
**Homicide** ⇐357(4)

Defendant's mental retardation did not preclude jury from imposing death penalty for capital murder, under constitutional guarantees of due process and equal protection, and against cruel and unusual punishment, in case in which defendant's intelligence quotient was above the 65 quotient prescribed by law to create rebuttable presumption of mental retardation and in which, in any event, defense was not asserted prior to trial. U.S.C.A. Const.Amends. 8, 14; Const. Art. 2, § 9; A.C.A. §§ 5–4–618, 5–4–618(d)(1).

6. **Criminal Law** ⇐1213.8(8)

Imposition of death penalty did not constitute cruel and unusual punishment on theory that submission of pecuniary gain to jury as aggravating circumstance in penalty phase was unconstitutional "double-counting," and that definition of capital murder does not sufficiently narrow the crime for which death penalty can be imposed and that providing narrowing during penalty stage only is insufficient. U.S.C.A. Const.Amends. 8, 14.

7. **Criminal Law** ⇐1158(3)

Standard of review for reversal of *Batson* ruling on peremptory strike of jurors is whether trial court's findings are clearly against preponderance of the evidence.

8. **Jury** ⇐33(5.15)

Defendant may make prima facie case of racial discrimination of prosecutor's jury challenges by showing that: totality of the relevant factors gives rise to inference of discriminatory purpose; total or seriously disproportionate exclusion of blacks from jury venires; or pattern of strikes, or questions and statements by prosecuting attorney during voir dire.

9. **Jury** ⇐33(5.15)

Defendant did not make prima facie case under *Batson* by objecting to prosecutor's peremptory strike of first venireperson, who was black, as no strike pattern or discriminatory purpose was evident merely because first juror called and struck happened to be black.

10. **Jury** ⇐33(5.15)

State's explanation of reason for strike of black juror, that prosecutor believed juror was of the opinion that, if defendant was not the shooter during robbery, juror could not impose the death penalty on defendant, was race neutral.

11. **Jury** ⇐33(5.15)

Prosecutor's reason for striking black juror in capital murder prosecution, that juror had stated during voir dire that she did not want to be a person who would cause someone to be put to death, was race neutral.

12. **Criminal Law** ⇐1030(1)

Even in death penalty cases, defendant must have raised allegations of error at trial court level by having made specific, timely objection.

Maxie G. Kizer, Pine Bluff, for appellant.

Clint Miller, Asst. Attorney General, Pine Bluff, for appellee.

GLAZE, Justice.

Kenneth Reams appeals from his capital felony conviction sentence for which he was sentenced to death. He raises seven points on appeal, but only four are properly preserved. Upon review, we conclude none of the points are meritorious.

[1] We first consider Reams's suggestion that we conduct a proportional review. Such a review is not required. *Sasser v. State,* 321 Ark. 438, 902 S.W.2d 773 (1995); *Williams v. State,* 321 Ark. 344, 902 S.W.2d 767 (1995). However, this court has said that, in death penalty cases, it will continue to review the aggravating and mitigating circumstances presented to the jury and a harmless error review of the jury's findings. *Id.* In reviewing those circumstances, we point out that the jury unanimously found two aggravating and no mitigating circumstances. The two aggravating circumstances were that (1) Reams had committed the murder in issue in order to realize a pecuniary gain and (2) he had previously committed another felony, an element of which was the use or threat of violence to another person or the creation of a substantial risk of death or serious physical injury to another person.

[2, 3] Here, Reams's own testimony supported the first aggravating circumstance. Reams, who was charged as an accomplice with Alford Goodwin in the murder of Gary W. Turner, testified that he and Goodwin planned to commit an aggravated robbery at a bank automatic teller machine because Goodwin said, "He needed the money for graduation." Reams admitted that he and Goodwin, who was armed with a .32 revolver, waited at a local automatic teller machine for someone to drive up so they could rob them. He further described how he and Goodwin approached Turner's vehicle at the machine; he also related Goodwin shot Turner. Regarding the jury's second aggravating circumstance, Reams was shown to have previously been convicted of two aggravated robbery offenses and these offenses, by their definition, reflect Reams had committed prior crimes involving the threat of violence to another. *See Whitmore v. State,* 296 Ark. 308, 756 S.W.2d 890 (1988); Ark.Code Ann. § 5-12-103(a) (Repl.1993).

[4] Concerning the review of mitigating circumstances, we note that there was some evidence of six mitigating circumstances, but the jury unanimously agreed that those mitigating circumstances did not exist.[1] Suffice it to say, the record supports the jury's unanimous findings that two aggravating circumstances existed beyond a reasonable doubt and no mitigating circumstances existed. To impose the death penalty, this court has held that a jury need only unanimously agree that one aggravating circumstance exists. *Dansby v. State,* 319 Ark. 506, 893 S.W.2d 331 (1995). Here, two were shown.

[5] In another point, Reams contends that, because of his mental retardation, his execution would violate state and federal guarantees against cruel and unusual punishment and deprive him of due process and equal protection of the law. Reams relies on Act 420 of 1993, now codified at Ark.Code Ann. § 5-4-618 (Repl.1993), to support his argument that his mental retardation precludes the jury from imposing the death penalty sentence. His argument is without merit.

Reams concedes that he is not entitled to the rebuttable presumption of mental retardation under the Act, since his intelligence quotient is above that 65 quotient prescribed by law. This may well be the reason Reams failed to raise the defense of mental retardation as an affirmative defense as is required

1. The evidence considered but not unanimously found by the jury suggested the following: (1) the capital murder was committed while Reams was under extreme mental or emotional disturbance; (2) the capital murder was committed while Reams was acting under unusual pressures or influences or under the domination of another person; (3) Reams's youth at the time of his commission of the murder; (4) the murder was committed by another person and Reams was an accomplice and his participation was relatively minor; (5) Reams had no significant history of prior criminal activity; and (6) Reams suffered from borderline mental retardation.

Case 4:22-cv-00699-LPR-JTR Document 19-34 Filed 11/02/22 Page 99 of 205

by Act 420. *See* § 5-4-618(d)(1). In any event, he did not assert Act 420 as a defense prior to trial, and for this reason alone, Reams's argument must fail. While Reams mentions other constitutional arguments connected with his purported mental retardation, those arguments were not properly raised below, so we do not address those for the first time on appeal. *See Parker v. State,* 292 Ark. 421, 731 S.W.2d 756 (1987).

[6] In a third point, Reams asserts that the trial court's submission of pecuniary gain to the jury as an aggravating circumstance in the penalty phase was an unconstitutional "double-counting" which violated the Eighth and Fourteenth Amendments' prohibition against cruel and unusual punishment. He argues in part that Arkansas's definition of capital murder does not sufficiently narrow the crime for which the death penalty can be imposed and that Arkansas's law, providing narrowing during the penalty stage only, fails to meet the Eighth Amendment requirements. The Supreme Court, the United States Eighth Circuit Court of Appeals and this court have rejected this "double-counting" and narrowing argument. *Lowenfield v. Phelps,* 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988); *Perry v. Lockhart,* 871 F.2d 1384 (8th Cir.); *cert. denied,* 493 U.S. 959, 110 S.Ct. 378, 107 L.Ed.2d 363 (1989); *Nooner v. State,* 322 Ark. 87, 907 S.W.2d 677 (1995); *Porter v. State,* 321 Ark. 555, 905 S.W.2d 835 (1995); *Cox v. State,* 313 Ark. 184, 853 S.W.2d 266 (1993); *Johnson v. State,* 308 Ark. 7, 823 S.W.2d 800, *cert. denied,* 505 U.S. 1225, 112 S.Ct. 3043, 120 L.Ed.2d 911 (1992). We see no need to revisit or reconsider this issue, yet again.

[7] In a fourth point, Reams states he is black and the victim was white and racial overtones were involved in the commission of the crime. He urges that, contrary to the holding in *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the prosecutor here unconstitutionally used his peremptory strikes to exclude blacks from the jury. In *Rockett v. State,* 318 Ark. 831, [illegible] S.W.2d 235 (1994), this court set out the following required procedures when a *Batson* objection is raised:

> First, the defendant must make a prima facie case that racial discrimination is the basis of a juror challenge. In the event the defendant makes a prima facie case, the state has the burden of showing that the challenge was not based on race. Only if the defendant makes a prima facie case and the state fails to give a racially neutral reason for the challenge is the court required to conduct a sensitive inquiry.

This court has further held that, on appeal, the standard of review for reversal of a *Batson* ruling is whether the trial court's findings are clearly against the preponderance of the evidence. *Bradley v. State,* 320 Ark. 100, 896 S.W.2d 425 (1995).

[8] Here, the trial court ruled that Reams made no prima facie case by showing racial discrimination was the basis of the prosecutor's juror challenges. In *Ward v. State,* 293 Ark. 88, 733 S.W.2d 728 (1987), this court held that a defendant may make a prima facie case by showing that (1) the totality of the relevant factors gives rise to an inference of discriminatory purpose, (2) the total or seriously disproportionate exclusion of negroes from the jury venires or (3) a pattern of strikes, or questions and statements by a prosecuting attorney during voir dire.

[9] In this appeal, Reams cites *Franklin v. State,* 314 Ark. 329, 863 S.W.2d 268 (1993), in support of his argument that he made a prima facie case by objecting to the prosecutor's peremptory strike of the first venire person, Irma Johnson, who was black. Of course, no strike pattern or discriminatory purpose was evident merely because the first juror called and struck happened to be black. Nonetheless, the trial court assured Reams that, if a pattern developed later, it would require the prosecutor to provide a race-neutral explanation for striking Johnson. Reams never later renewed his objection regarding Johnson. Contrary to Reams's suggestion, the *Franklin* decision is unhelpful here, because there, four other jurors had been voir dired when the first black juror was called and subsequently challenged by the state, and by the time the court ruled on the *Batson* objection, the jury was composed of only white jurors.

In sum, no strike pattern was shown when Johnson was struck by the state, nor did the state's questions asked of her reflect a racially discriminatory motive. In fact, had the prosecutor been requested to provide an explanation for his decision to peremptorily excuse Johnson, he undoubtedly would have related Johnson's concessions that her brother had been unsuccessfully prosecuted for robbery in 1988, her nephew had robbed a store in 1992 and her sister had been charged for a drug offense in federal court in 1992.

Reams next argues that the trial court erred in upholding the state's peremptory challenge of black venireman, Matthew Henry. At this stage of voir dire, the state had used four peremptory challenges, including the one striking Mr. Henry—two strikes involved black jurors, Johnson and Henry, and two involved white jurors. Again the trial court ruled no prima facie "pattern" of discrimination was exhibited by the prosecutor, but it also delved into the state's "race neutral" explanation for its peremptory strike of Henry.

Reams couches his argument on appeal in terms suggesting that the state's disparate treatment of venire members not only established a pattern, but also showed the specious nature of the state's explanation in striking Henry. Reams points out that the state purportedly wanted assurances from the potential jurors that they were aware of accomplice liability and could find an accomplice as guilty as the person who actually shot the victim. He argues white venire members Linda Messina, Carolyn Phillips and Dorothy Hodges had indicated the person who actually shot the victim should be punished more severely, but the state accepted them after each finally concluded that she could impose the death penalty, if accomplice liability was established. Reams asserts that, contrary to its treatment of Messina, Phillips and Hodges, the state struck Henry even though Henry indicated he could impose the death penalty if an accomplice was found guilty of capital murder.

[10] Reams's argument breaks down when examining Henry's answer when voir dired by defense counsel. While he previously said that he could impose the death penalty, he steadfastly adhered to his belief that "[he] could consider the level of participation of the defendant or the role he played in the crime when it came to punishment if he could discern the difference in the state of mind." He further said, "I could do that if I could by some way see the difference in the state of mind and understand it or what is going to happen or whatever." After Henry's remarks, the prosecutor explained he wished to strike Henry because he believed Henry was of the opinion that, if Reams was not the shooter, he could not impose the death penalty.

The trial court voiced dissatisfaction with the state's explanation of striking Henry, and instead ruled Reams showed no prima facie case. While we agree with the trial court's ruling finding no discriminatory purpose or pattern, we also conclude the state's explanation was clearly race neutral.

[11] Reams's *Batson* argument also included black venire member, Muriel M. Hayes, who the state struck because of her reservations about imposing the death penalty. Mrs. Hayes said, "I really do not want to be a person who would cause someone being put to death, I would not want a guilty conscience, I would not want to feel guilty, and I would not want to be a part of saying that this person gets the electric chair."[2] The prosecutor's explanation here was clearly based on something other than Ms. Hayes's race and without anything more, his reason offered in striking her must be deemed race neutral. *See Hernandez v. New York*, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991). For the reasons above, we affirm the trial court's *Batson* rulings.

[12] As previously mentioned, Reams argues three additional points on appeal, but those arguments were not argued or preserved below. His arguments are that (1) the jury did not adequately consider his youth (age 18 years) as a mitigating circum-

2. Reams suggests Ms. Hayes was rehabilitated when she agreed she could consider the death penalty, but, at the same time, she again stated that she would rather not do so.

1451

stance, (2) form 2, as a part of the verdict form, violated the Eighth and Fourteenth Amendments, and (3) jury members were given inadequate instructions on non-statutory mitigating evidence. Although we see no merit in these issues, it is unnecessary to discuss them further, since even in death penalty cases, a defendant must have raised the allegations of error at the trial court level by having made a specific, timely objection. *See Parker v. State,* 292 Ark. 421, 731 S.W.2d 756 (1987).

The record has been examined in accordance with Ark.Sup.Ct.R. 4-3(h), and it has been determined that there were no rulings adverse to Reams which constituted prejudicial error. Therefore, we affirm.

322 Ark. 453

**Eugene HUNT, Individually and for a Class, Appellants,**

**v.**

**Jerry RILEY, et al., Appellees,**

**Jerry Riley, Leon Jones, Sr., Jessie Jones, Michael Glover, Cross-Appellants,**

**Eugene Hunt, Individually and for a Class, Cross-Appellees.**

**No. 95-387.**

Supreme Court of Arkansas.

Nov. 13, 1995.

Attorney brought suit alleging tortious interference with business expectancy and outrage against persons who, on behalf of attorneys, solicited accident victims for legal representation. The Circuit Court, Jefferson County, Russell Rogers, J., dismissed complaint for failure to state claim and denied defendants' motions for sanctions. Cross-appeals were taken. The Supreme Court, Brown, J., held that: (1) bald allegations of contractual relationship or business expectancy with accident victims failed to plead claim for tortious interference with contract or business expectancy; (2) allegations that soliciting victims was tortious conduct failed to state outrage claim; and (3) inadequate record precluded appellate review of denial sanctions motion.

Affirmed.

**1. Appeal and Error ⚷919**

When reviewing trial court's decision on motion to dismiss for failure to state claim, appellate court treats facts alleged in complaint as true and views those facts in light most favorable to party who filed complaint. Rules Civ.Proc., Rule 12(b)(6).

**2. Pretrial Procedure ⚷681**

Trial court must look only to allegations in complaint when deciding dismissal motions. Rules Civ.Proc., Rule 12(b)(6).

**3. Pleading ⚷48**

In order to state cause of action, complaint must allege facts and not mere conclusions. Rules Civ.Proc., Rule 8.

**4. Pretrial Procedure ⚷695**

When complaint is dismissed without prejudice, plaintiff has option of pleading further or appeal but, if plaintiff appeals, option to plead further is waived in event of affirmance by appellate court. Rules Civ.Proc., Rule 12(b)(6).

**5. Torts ⚷10(1), 12**

Elements of tortious interference claim are: existence of valid contractual relationship or business expectancy; knowledge of relationship or expectancy on part of interfering parties; intentional interference inducing or causing breach or termination of relationship or expectancy; and resultant damage to party whose relationship or expectancy has been disrupted.

**6. Torts ⚷10(1), 12**

Interference with contractual relationship or business expectancy must be improper in order to be actionable by claim for tortious interference.

ed therein, was that a defendant in a criminal bench trial cannot challenge the sufficiency of the evidence on a particular basis below and then change the basis on appeal. That holding is no more than an application of the general rule (which remained unaffected by *Igwe*) that, in order to preserve arguments for appellate review, they must be presented to the trial court for a ruling—for there can be no appellate review if there is no ruling to review. Therefore, *Stricklin* effectively held that a defendant in a criminal bench trial must challenge the sufficiency of the evidence at some point in the trial. Such a holding is consistent with the original non-expanded holding of *Igwe*—that a criminal defendant need not renew a motion for directed verdict *once made*.

The majority's application of the assumption expressed in *Igwe* that a motion for directed verdict is superfluous in a bench trial because the judge would only be directing his own verdict in a trial, the main purpose of which was to have a judge rather than a jury ascertain the sufficiency of the evidence, runs afoul of the principle that the state be allowed the opportunity to supply any missing evidence identified by the defendant. Preservation of this principle is essential to the people's right to a fair trial—a right that should exist in both bench and jury trials. The majority's decision today deprives the state of its right to a fair trial because it allows a defendant in a bench trial to remain obtuse and silent during the course of the trial and then possibly obtain reversal on appeal on an issue that was never identified to the trial court.

It is quite fair and reasonable to presume, as the majority does in this case, that a trial court knows the elements of a crime. However, it is unreasonable to expect the people of this state and the trial court to be subject to a trial by ambush, such as when multiple offenses with different elements are tried or when a multitude of witnesses extend the trial for several days or weeks. While this state is blessed with very capable trial judges, they are still human and susceptible to human weal ... A motion for a directed verdict should ... pecific so as to inform the ...

by failure of proof, and to allow the trial court to reflect on the issue and give an informed decision. That is the basis upon which I wrote *Stricklin* and the reason I continue to support a requirement that the state be treated equally in a bench trial as well as a jury trial, in that both classes of defendants must identify the alleged insufficiency in the proceedings below when challenging the sufficiency of the evidence on appeal. Judicial economy alone would justify such a requirement. This principle is so closely related to the contemporaneous objection rule as to be the norm, rather than the exception. I would therefore affirm the judgment of conviction on the basis that the issue of the sufficiency of the evidence was not preserved for appeal.

GLAZE, J., joins in this concurrence.

322 Ark. 336

Kenneth REAMS, Appellant,

v.

STATE of Arkansas, Appellee.

No. CR 94–558.

Supreme Court of Arkansas.

Nov. 6, 1995.

Defendant was convicted of capital felony and sentenced to death in the Circuit Court, Jefferson County, Fred D. Davis, J., and he appealed. The Supreme Court, Glaze, J., held that: (1) proportional review was not required; (2) evidence supported aggravating circumstances of pecuniary gain and prior felony with element of use or threat of violence to another person; (3) mental retardation did not preclude the death penalty; (4) prosecutor's reasons for striking black jurors were race neutral; and (5) even in death penalty cases, defendant ...

court level by having made specific, timely objection.

Affirmed.

**1. Criminal Law ⟹1134(3)**

Proportional review is not required in death penalty case, but Supreme Court will continue to review aggravating and mitigating circumstances presented to jury and conduct harmless error review of jury's findings.

**2. Homicide ⟹357(9)**

Defendant's own testimony in capital murder prosecution supported death penalty aggravating circumstance that murder was committed in order to realize pecuniary gain, in light of defendant's testimony as to planning with accomplice a robbery in which the accomplice shot the victim.

**3. Homicide ⟹357(5)**

Aggravated robbery offenses, by definition, constituted prior crimes involving threat of violence to another, as aggravating circumstance for purposes of supporting death penalty in capital murder prosecution. A.C.A. § 5–12–103(a).

**4. Criminal Law ⟹1208.1(5)**

To impose death penalty, jury need only unanimously agree that one aggravating circumstance exists.

**5. Constitutional Law ⟹250.3(1), 270(2)**
**Criminal Law ⟹1213.8(8)**
**Homicide ⟹357(4)**

Defendant's mental retardation did not preclude jury from imposing death penalty for capital murder, under constitutional guarantees of due process and equal protection, and against cruel and unusual punishment, in case in which defendant's intelligence quotient was above the 65 quotient prescribed by law to create rebuttable presumption of mental retardation and in which, in any event, defense was not asserted prior to trial. U.S.C.A. Const.Amends. 8, 14; Const. Art. 2, § 9; A.C.A. §§ 5–4–618, 5–4–618(d)(1).

**6. Criminal Law ⟹1213.8(8)**

Imposition of death penalty did not constitute cruel and unusual punishment on theory that submission of pecuniary gain to jury as aggravating circumstance in penalty phase was unconstitutional "double-counting," and that definition of capital murder does not sufficiently narrow the crime for which death penalty can be imposed and that providing narrowing during penalty stage only is insufficient. U.S.C.A. Const.Amends. 8, 14.

**7. Criminal Law ⟹1158(3)**

Standard of review for reversal of *Batson* ruling on peremptory strike of jurors is whether trial court's findings are clearly against preponderance of the evidence.

**8. Jury ⟹33(5.15)**

Defendant may make prima facie case of racial discrimination of prosecutor's jury challenges by showing that: totality of the relevant factors gives rise to inference of discriminatory purpose; total or seriously disproportionate exclusion of blacks from jury venires; or pattern of strikes, or questions and statements by prosecuting attorney during voir dire.

**9. Jury ⟹33(5.15)**

Defendant did not make prima facie case under *Batson* by objecting to prosecutor's peremptory strike of first venireperson, who was black, as no strike pattern or discriminatory purpose was evident merely because first juror called and struck happened to be black.

**10. Jury ⟹33(5.15)**

State's explanation of reason for strike of black juror, that prosecutor believed juror was of the opinion that, if defendant was not the shooter during robbery, juror could not impose the death penalty on defendant, was race neutral.

**11. Jury ⟹33(5.15)**

Prosecutor's reason for striking black juror in capital murder prosecution, that juror had stated during voir dire that she did not want to be a person who would cause someone to be put to death, was race neutral.

**12. Criminal Law ⟹1030(1)**

Even in death penalty cases, defendant must have raised allegations of error at trial court level by having m... pecific, timely objection.

Case 4:22-cv-00699-LPR-JTR Document 19-34 Filed 11/02/22 Page 103 of 205

Maxie G. Kizer, Pine Bluff, for appellant.

Clint Miller, Asst. Attorney General, Pine Bluff, for appellee.

GLAZE, Justice.

Kenneth Reams appeals from his capital felony conviction sentence for which he was sentenced to death. He raises seven points on appeal, but only four are properly preserved. Upon review, we conclude none of the points are meritorious.

[1] We first consider Reams's suggestion that we conduct a proportional review. Such a review is not required. *Sasser v. State*, 321 Ark. 438, 902 S.W.2d 773 (1995); *Williams v. State*, 321 Ark. 344, 902 S.W.2d 767 (1995). However, this court has said that, in death penalty cases, it will continue to review the aggravating and mitigating circumstances presented to the jury and a harmless error review of the jury's findings. *Id.* In reviewing those circumstances, we point out that the jury unanimously found two aggravating and no mitigating circumstances. The two aggravating circumstances were that (1) Reams had committed the murder in issue in order to realize a pecuniary gain and (2) he had previously committed another felony, an element of which was the use or threat of violence to another person or the creation of a substantial risk of death or serious physical injury to another person.

[2, 3] Here, Reams's own testimony supported the first aggravating circumstance. Reams, who was charged as an accomplice with Alford Goodwin in the murder of Gary W. Turner, testified that he and Goodwin planned to commit an aggravated robbery at a bank automatic teller machine because Goodwin said, "He needed the money for graduation." Reams admitted that he and Goodwin, who was armed with a .32 revolver, waited at a local automatic teller machine for someone to drive up so they could rob them. He further described how he and Goodwin approached Turner's vehicle at the machine; he also related Goodwin shot Turner. Regarding the jury's second aggravating circumstance, Reams was shown to have previously been convicted of two aggravated robbery offenses and these offenses, by their definition, reflect Reams had committed prior crimes involving the threat of violence to another. *See Whitmore v. State*, 296 Ark. 308, 756 S.W.2d 890 (1988); Ark.Code Ann. § 5-12-103(a) (Repl.1993).

[4] Concerning the review of mitigating circumstances, we note that there was some evidence of six mitigating circumstances, but the jury unanimously agreed that those mitigating circumstances did not exist.[1] Suffice it to say, the record supports the jury's unanimous findings that two aggravating circumstances existed beyond a reasonable doubt and no mitigating circumstances existed. To impose the death penalty, this court has held that a jury need only unanimously agree that one aggravating circumstance exists. *Dansby v. State*, 319 Ark. 506, 893 S.W.2d 331 (1995). Here, two were shown.

[5] In another point, Reams contends that, because of his mental retardation, his execution would violate state and federal guarantees against cruel and unusual punishment and deprive him of due process and equal protection of the law. Reams relies on Act 420 of 1993, now codified at Ark.Code Ann. § 5-4-618 (Repl.1993), to support his argument that his mental retardation precludes the jury from imposing the death penalty sentence. His argument is without merit.

Reams concedes that he is not entitled to the rebuttable presumption of mental retardation under the Act, since his intelligence quotient is above that 65 quotient prescribed by law. This may well be the reason Reams failed to raise the defense of mental retardation as an affirmative defense as is required by Act 420. *See* § 5-4-618(d)(1). In any event, he did not assert Act 420 as a defense prior to trial, and for this reason alone, Reams's argument must fail. While Reams mentions other constitutional arguments connected with his purported mental retardation, those arguments were not properly raised below, so we do not address those for the first time on appeal. *See Parker v. State*, 292 Ark. 421, 731 S.W.2d 756 (1987).

[6] In a third point, Reams asserts that the trial court's submission of pecuniary gain to the jury as an aggravating circumstance in the penalty phase was an unconstitutional "double-counting" which violated the Eighth and Fourteenth Amendments' prohibition against cruel and unusual punishment. He argues in part that Arkansas's definition of capital murder does not sufficiently narrow the crime for which the death penalty can be imposed and that Arkansas's law, providing narrowing during the penalty stage only, fails to meet the Eighth Amendment requirements. The Supreme Court, the United States Eighth Circuit Court of Appeals and this court have rejected this "double-counting" and narrowing argument. *Lowenfield v. Phelps*, 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988); *Perry v. Lockhart*, 871 F.2d 1384 (8th Cir.); *cert. denied*, 493 U.S. 959, 110 S.Ct. 378, 107 L.Ed.2d 363 (1989); *Nooner v. State*, 322 Ark. 87, 907 S.W.2d 677 (1995); *Porter v. State*, 321 Ark. 555, 905 S.W.2d 835 (1995); *Cox v. State*, 313 Ark. 184, 853 S.W.2d 266 (1993); *Johnson v. State*, 308 Ark. 7, 823 S.W.2d 800, *cert. denied*, 505 U.S. 1225, 112 S.Ct. 3043, 120 L.Ed.2d 911 (1992). We see no need to revisit or reconsider this issue, yet again.

[7] In a fourth point, Reams states he is black and the victim was white and racial overtones were involved in the commission of the crime. He urges that, contrary to the holding in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the prosecutor here unconstitutionally used his peremptory strikes to exclude blacks from the jury. In *Rockett v. State*, 318 Ark. 831, 890 S.W.2d 235 (1994), this court set out the following required procedures when a *Batson* objection ...

First, the defendant must make a prima facie case that racial discrimination is the basis of a juror challenge. In the event the defendant makes a prima facie case, the state has the burden of showing that the challenge was not based on race. Only if the defendant makes a prima facie case and the state fails to give a racially neutral reason for the challenge is the court required to conduct a sensitive inquiry.

This court has further held that, on appeal, the standard of review for reversal of a *Batson* ruling is whether the trial court's findings are clearly against the preponderance of the evidence. *Bradley v. State*, 320 Ark. 100, 896 S.W.2d 425 (1995).

[8] Here, the trial court ruled that Reams made no prima facie case by showing racial discrimination was the basis of the prosecutor's juror challenges. In *Ward v. State*, 293 Ark. 88, 733 S.W.2d 728 (1987), this court held that a defendant may make a prima facie case by showing that (1) the totality of the relevant factors gives rise to an inference of discriminatory purpose, (2) the total or seriously disproportionate exclusion of negroes from the jury venires or (3) a pattern of strikes, or questions and statements by a prosecuting attorney during voir dire.

[9] In this appeal, Reams cites *Franklin v. State*, 314 Ark. 329, 863 S.W.2d 268 (1993), in support of his argument that he made a prima facie case by objecting to the prosecutor's peremptory strike of the first venire person, Irma Johnson, who was black. Of course, no strike pattern or discriminatory purpose was evident merely because the first juror called and struck happened to be black. Nonetheless, the trial court assured Reams that, if a pattern developed later, it would require the prosecutor to provide a race-neutral explanation for striking Johnson. Reams never later renewed his objection regarding Johnson. Contrary to Reams's suggestion, the *Franklin* decision is unhelpful here, because there, four other jurors had been voir dired when the first b[illegible]ck juror was called and subsequently [illegible]ged by the state, and by the time th[illegible] [illegible]led on the *Batson* objection, the jury was composed ...

1. The evidence [illegible]ered but not unanimously found by the j[illegible] [illegible]sted the following: (1) the capital murd[illegible] [illegible]mitted while Reams was under extreme n[illegible] [illegible]r emotional disturbance; (2) the capital murder was committed while [illegible] person; (3) Reams's youth at the time of his commission of the murder; (4) the murder was committed by another person and Reams was an accomplice and his participation was relatively minor; (5) Reams had no significant history of

1454

In sum, no strike pattern was shown when Johnson was struck by the state, nor did the state's questions asked of her reflect a racially discriminatory motive. In fact, had the prosecutor been requested to provide an explanation for his decision to peremptorily excuse Johnson, he undoubtedly would have related Johnson's concessions that her brother had been unsuccessfully prosecuted for robbery in 1988, her nephew had robbed a store in 1992 and her sister had been charged for a drug offense in federal court in 1992.

Reams next argues that the trial court erred in upholding the state's peremptory challenge of black venireman, Matthew Henry. At this stage of voir dire, the state had used four peremptory challenges, including the one striking Mr. Henry—two strikes involved black jurors, Johnson and Henry, and two involved white jurors. Again the trial court ruled no prima facie "pattern" of discrimination was exhibited by the prosecutor, but it also delved into the state's "race neutral" explanation for its peremptory strike of Henry.

Reams couches his argument on appeal in terms suggesting that the state's disparate treatment of venire members not only established a pattern, but also showed the specious nature of the state's explanation in striking Henry. Reams points out that the state purportedly wanted assurances from the potential jurors that they were aware of accomplice liability and could find an accomplice as guilty as the person who actually shot the victim. He argues white venire members Linda Messina, Carolyn Phillips and Dorothy Hodges had indicated the person who actually shot the victim should be punished more severely, but the state accepted them after each finally concluded that she could impose the death penalty, if accomplice liability was established. Reams asserts that, contrary to its treatment of Messina, Phillips and Hodges, the state struck Henry even though Henry indicated he could impose the death penalty if an accomplice was found of capital murder.

[10] Reams's argument breaks down when examining Henry's answer when voir dired by defense counsel. While he previously said that he could impose the death penalty, he steadfastly adhered to his belief that "[he] could consider the level of participation of the defendant or the role he played in the crime when it came to punishment if he could discern the difference in the state of mind." He further said, "I could do that if I could by some way see the difference in the state of mind and understand it or what is going to happen or whatever." After Henry's remarks, the prosecutor explained he wished to strike Henry because he believed Henry was of the opinion that, if Reams was not the shooter, he could not impose the death penalty.

The trial court voiced dissatisfaction with the state's explanation of striking Henry, and instead ruled Reams showed no prima facie case. While we agree with the trial court's ruling finding no discriminatory purpose or pattern, we also conclude the state's explanation was clearly race neutral.

[11] Reams's *Batson* argument also included black venire member, Muriel M. Hayes, who the state struck because of her reservations about imposing the death penalty. Mrs. Hayes said, "I really do not want to be a person who would cause someone being put to death, I would not want a guilty conscience, I would not want to feel guilty, and I would not want to be a part of saying that this person gets the electric chair."[2] The prosecutor's explanation here was clearly based on something other than Ms. Hayes's race and without anything more, his reason offered in striking her must be deemed race neutral. *See Hernandez v. New York*, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991). For the reasons above, we affirm the trial court's *Batson* rulings.

[12] As previously mentioned, Reams argues three additional points on appeal, but those arguments were not argued or preserved below. His arguments are that (1) the jury did not adequately consider his youth (age 18 years) as a mitigating circumstance, (2) form 2, as a part of the verdict form, violated the Eighth and Fourteenth Amendments, and (3) jury members were given inadequate instructions on non-statutory mitigating evidence. Although we see no merit in these issues, it is unnecessary to discuss them further, since even in death penalty cases, a defendant must have raised the allegations of error at the trial court level by having made a specific, timely objection. *See Parker v. State*, 292 Ark. 421, 731 S.W.2d 756 (1987).

The record has been examined in accordance with Ark.Sup.Ct.R. 4-3(h), and it has been determined that there were no rulings adverse to Reams which constituted prejudicial error. Therefore, we affirm.

2. . . . suggests Ms. Hayes was rehabilitated . . . penalty, but, at the same time, she again sta . . .

322 Ark. 453

Eugene HUNT, Individually and for a Class, Appellants,

v.

Jerry RILEY, et al., Appellees,

Jerry Riley, Leon Jones, Sr., Jessie Jones, Michael Glover, Cross-Appellants,

Eugene Hunt, Individually and for a Class, Cross-Appellees.

No. 95-387.

Supreme Court of Arkansas.

Nov. 13, 1995.

Attorney brought suit alleging tortious interference with business expectancy and outrage against persons who, on behalf of attorneys, solicited accident victims for legal representation. The Circuit Court, Jefferson County, Russell Rogers, J., dismissed complaint for failure to state claim and denied defendants' motions for sanctions. Cross-appeals were taken. The Supreme Court, Brown, J., held that: (1) bald allegations of contractual relationship or business expectancy with accident victims failed to plead claim for tortious interference with contract or business expectancy; (2) allegations that soliciting victims was tortious conduct failed to state outrage claim; and (3) inadequate record precluded appellate review of denial sanctions motion.

Affirmed.

1. Appeal and Error ⟹919

When reviewing trial court's decision on motion to dismiss for failure to state claim, appellate court treats facts alleged in complaint as true and views those facts in light most favorable to party who filed complaint. Rules Civ.Proc., Rule 12(b)(6).

2. Pretrial Procedure ⟹681

Trial court must look only to allegations in complaint when deciding dismissal motions. Rules Civ.Proc., Rule 12(b)(6).

3. Pleading ⟹48

In order to state cause of action, complaint must allege facts and not mere conclusions. Rules Civ.Proc., Rule 8.

4. Pretrial Procedure ⟹695

When complaint is dismissed without prejudice, plaintiff has option of pleading further or appeal but, if plaintiff appeals, option to plead further is waived in event of affirmance by appellate court. Rules Civ.Proc., Rule 12(b)(6).

5. Torts ⟹10(1), 12

Elements of tortious interference claim are: existence of valid contractual relationship or business expectancy; knowledge of relationship or expectancy on part of interfering parties; intentional interference inducing or causing breach or termination of relationship or expectancy; and resultant damage to party whose relationship or expectancy has been disrupted.

6. Torts ⟹10(1), 12

Interference with contractual relationship or business expectancy must be improper in order to be actiona[ble] . . . y claim for tortious interference.

# SUPREME COURT OF ARKANSAS

No. CR94-558

Opinion Delivered NOV 6 1995

KENNETH REAMS, APPELLANT,

v.

STATE OF ARKANSAS, APPELLEE.

APPEAL FROM THE CIRCUIT COURT OF JEFFERSON COUNTY, ARKANSAS, NO. CR-93-301-3; HONORABLE FRED D. DAVIS, CIRCUIT JUDGE

AFFIRMED

TOM GLAZE, Associate Justice

Kenneth Reams appeals from his capital felony conviction sentence for which he was sentenced to death. He raises seven points on appeal, but only four are properly preserved. Upon review, we conclude none of the points are meritorious.

We first consider Reams's suggestion that we conduct a proportional review. Such a review is not required. *Sasser v. State*, 321 Ark. 438, ____ S.W.2d ____ (1995); *Williams v. State*, 321 Ark. 344, ____ S.W.2d ____ (1995). However, this court has said that, in death penalty cases, it will continue to review the aggravating and mitigating circumstances presented to the jury and a harmless error review of the jury's findings. *Id.* In reviewing those circumstances, we point out that the jury unanimously found two aggravating and no mitigating circumstances. The two aggravating circumstances were that (1) Reams had committed the murder in issue in order to realize a pecuniary gain and (2) he had previously committed another felony, an element of which was the

violence to another person or the creation of a death or serious physical injury to another

s own testimony supported the first aggravating ams, who was charged as an accomplice with Alford urder of Gary W. Turner, testified that he and o commit an aggravated robbery at a bank automatic because Goodwin said, "He needed the money for ams admitted that he and Goodwin, who was armed er, waited at a local automatic teller machine for up so they could rob them. He further described in approached Turner's vehicle at the machine; he odwin shot Turner. Regarding the jury's second umstance, Reams was shown to have previously been gravated robbery offenses and these offenses, by n, reflect Reams had committed prior crimes hreat of violence to another. *See Whitmore v.* 308, 756 S.W.2d 890 (1988); Ark. Code Ann. § 5-12- 993).

the review of mitigating circumstances, we note some evidence of six mitigating circumstances, but usly agreed that those mitigating circumstances did iffice it to say, the record supports the jury's

---

nce considered but not unanimously found by the jury following: (1) the capital murder was committed under extreme mental or emotional disturbance; (2) rder was committed while Reams was acting under es or influences or under the domination of another



clude blacks
) S.W.2d 235
cedures when

se that
llenge.
se, the
ige was
prima
neutral
conduct

rd of review
ial court's
e evidence.

prima facie
sis of the
rk. 88, 733
may make a
he relevant
urpose, (2)
egroes from
estions and

In this appeal, Reams cites *Franklin v. State*, 314 Ark. 329, 863 S.W.2d 268 (1993), in support of his argument that he made a prima facie case by objecting to the prosecutor's peremptory strike of the first venire person, Irma Johnson, who was black. Of course, no strike pattern or discriminatory purpose was evident merely because the first juror called and struck happened to be black. Nonetheless, the trial court assured Reams that, if a pattern developed later, it would require the prosecutor to provide a race-neutral explanation for striking Johnson. Reams never later renewed his objection regarding Johnson. Contrary to Reams's suggestion, the *Franklin* decision is unhelpful here, because there, four other jurors had been voir dired when the first black juror was called and subsequently challenged by the state, and by the time the court ruled on the *Batson* objection, the jury was composed of only white jurors.

In sum, no strike pattern was shown when Johnson was struck by the state, nor did the state's questions asked of her reflect a racially discriminatory motive. In fact, had the prosecutor been requested to provide an explanation for his decision to peremptorily excuse Johnson, he undoubtedly would have related Johnson's concessions that her brother had been unsuccessfully prosecuted for robbery in 1988, her nephew had robbed a store in 1992 and her sister had been charged for a drug offense in federal court in 1992.

Reams next argues that the trial court erred in upholding the state's peremptory challenge of black venireman, Matthew Henry. At

this stage of voir dire, the state had used four peremptory challenges, including the one striking Mr. Henry -- two strikes involved black jurors, Johnson and Henry, and two involved white jurors. Again the trial court ruled no prima facie "pattern" of discrimination was exhibited by the prosecutor, but it also delved into the state's "race neutral" explanation for its peremptory strike of Henry.

Reams couches his argument on appeal in terms suggesting that the state's disparate treatment of venire members not only established a pattern, but also showed the specious nature of the state's explanation in striking Henry. Reams points out that the state purportedly wanted assurances from the potential jurors that they were aware of accomplice liability and could find an accomplice as guilty as the person who actually shot the victim. He argues white venire members Linda Messina, Carolyn Phillips and Dorothy Hodges had indicated the person who actually shot the victim should be punished more severely, but the state accepted them after each finally concluded that she could impose the death penalty, if accomplice liability was established. Reams asserts that, contrary to its treatment of Messina, Phillips and Hodges, the state struck Henry even though Henry indicated he could impose the death penalty if an accomplice was found guilty of capital murder.

Reams's argument breaks down when examining Henry's answer when voir dired by defense counsel. While he previously said that he could impose the death penalty, he steadfastly adhered to his

Respondent's Exhibit E

belief that "[he] could consider the level of participation of the defendant or the role he played in the crime when it came to punishment if he could discern the difference in the state of mind." He further said, "I could do that if I could by some way see the difference in the state of mind and understand it or what is going to happen or whatever." After Henry's remarks, the prosecutor explained he wished to strike Henry because he believed Henry was of the opinion that, if Reams was not the shooter, he could not impose the death penalty.

The trial court voiced dissatisfaction with the state's explanation of striking Henry, and instead ruled Reams showed no prima facie case. While we agree with the trial court's ruling finding no discriminatory purpose or pattern, we also conclude the state's explanation was clearly race neutral.

Reams's *Batson* argument also included black venire member, Muriel M. Hayes, who the state struck because of her reservations about imposing the death penalty. Mrs. Hayes said, "I really do not want to be a person who would cause someone being put to death, I would not want a guilty conscience, I would not want to feel guilty, and I would not want to be a part of saying that this person gets the electric chair."[2] The prosecutor's explanation here was clearly based on something other than Ms. Hayes's race and without anything more, his reason offered in striking her must be deemed race neutral. *See Hernandez v. New York*, 500 U.S. 352

[2]Reams suggests Ms. Hayes was rehabilitated when she agreed she could consider the death penalty, but, at the same time, she again stated that she would rather not do so.

(1991). For the reasons above, we affirm the trial court's *Batson* rulings.

As previously mentioned, Reams argues three additional points on appeal, but those arguments were not argued or preserved below. His arguments are that (1) the jury did not adequately consider his youth (age 18 years) as a mitigating circumstance, (2) form 2, as a part of the verdict form, violated the Eighth and Fourteenth Amendments, and (3) jury members were given inadequate instructions on non-statutory mitigating evidence. Although we see no merit in these issues, it is unnecessary to discuss them further, since even in death penalty cases, a defendant must have raised the allegations of error at the trial court level by having made a specific, timely objection. *See Parker v. State*, 292 Ark. 421, 731 S.W.2d 756 (1987).

The record has been examined in accordance with Ark. Sup. Ct. R. 4-3(h), and it has been determined that there were no rulings adverse to Reams which constituted prejudicial error. Therefore, we affirm.

# SUPREME COURT OF ARKANSAS

No. CR94-558

Opinion Delivered NOV 6 1995

KENNETH REAMS,
APPELLANT,

V.

STATE OF ARKANSAS,
APPELLEE.

APPEAL FROM THE CIRCUIT COURT OF JEFFERSON COUNTY, ARKANSAS, NO. CR-93-301-3; HONORABLE FRED D. DAVIS, CIRCUIT JUDGE

AFFIRMED

TOM GLAZE, Associate Justice

Kenneth Reams appeals from his capital felony conviction sentence for which he was sentenced to death. He raises seven points on appeal, but only four are properly preserved. Upon review, we conclude none of the points are meritorious.

We first consider Reams's suggestion that we conduct a proportional review. Such a review is not required. *Sasser v. State*, 321 Ark. 438, ____ S.W.2d ____ (1995); *Williams v. State*, 321 Ark. 344, ____ S.W.2d ____ (1995). However, this court has said that, in death penalty cases, it will continue to review the aggravating and mitigating circumstances presented to the jury and a harmless error review of the jury's findings. *Id.* In reviewing those circumstances, we point out that the jury unanimously found two aggravating and no mitigating circumstances. The two aggravating circumstances were that (1) Reams had committed the murder in issue in order to realize a pecuniary gain and (2) he had previously committed another felony, an element of which was the

unconstitutionally used his peremptory strikes to exclude blacks from the jury. In *Rockett v. State*, 318 Ark. 831, 890 S.W.2d 235 (1994), this court set out the following required procedures when a *Batson* objection is raised:

> First, the defendant must make a prima facie case that racial discrimination is the basis of a juror challenge. In the event the defendant makes a prima facie case, the state has the burden of showing that the challenge was not based on race. Only if the defendant makes a prima facie case and the state fails to give a racially neutral reason for the challenge is the court required to conduct a sensitive inquiry.

This court has further held that, on appeal, the standard of review for reversal of a *Batson* ruling is whether the trial court's findings are clearly against the preponderance of the evidence. *Bradley v. State*, 320 Ark. 100, 896 S.W.2d 425 (1995).

Here, the trial court ruled that Reams made no prima facie case by showing racial discrimination was the basis of the prosecutor's juror challenges. In *Ward v. State*, 293 Ark. 88, 733 S.W.2d 728 (1987), this court held that a defendant may make a prima facie case by showing that (1) the totality of the relevant factors gives rise to an inference of discriminatory purpose, (2) the total or seriously disproportionate exclusion of negroes from the jury venires or (3) a pattern of strikes, or questions and statements by a prosecuting attorney during voir dire.

arguments were not properly raised below, so we do not address those for the first time on appeal. *See Parker v. State*, 292 Ark. 421, 731 S.W.2d 756 (1987).

In a third point, Reams asserts that the trial court's submission of pecuniary gain to the jury as an aggravating circumstance in the penalty phase was an unconstitutional "double-counting" which violated the Eighth and Fourteenth Amendments' prohibition against cruel and unusual punishment. He argues in part that Arkansas's definition of capital murder does not sufficiently narrow the crime for which the death penalty can be imposed and that Arkansas's law, providing narrowing during the penalty stage only, fails to meet the Eighth Amendment requirements. The Supreme Court, the United States Eighth Circuit Court of Appeals and this court have rejected this "double-counting" and narrowing argument. *Lowenfield v. Phelps*, 484 U.S. 231 (1988); *Perry v. Lockhart*, 871 F.2d 1384 (8th Cir.); *cert. denied*, 493 U.S. 959 (1989); *Nooner v. State*, ____ Ark. ____, ____ S.W.2d ____ (1995); *Porter v. State*, ____ Ark. ____, ____ S.W.2d ____ (1995); *Cox v. State*, 313 Ark. 184, 853 S.W.2d 266 (1993); *Johnson v. State*, 308 Ark. 7, 823 S.W.2d 800, *cert. denied*, 112 S.Ct. 3043 (1992). We see no need to revisit or reconsider this issue, yet again.

In a fourth point, Reams states he is black and the victim was white and racial overtones were involved in the commission of the crime. He urges that, contrary to the holding in *Batson v. Kentucky*, 476 U.S. 79 (1986), the prosecutor here

unanimous findings that two aggravating circumstances existed beyond a reasonable doubt and no mitigating circumstances existed. To impose the death penalty, this court has held that a jury need only unanimously agree that one aggravating circumstance exists. *Dansby v. State*, 319 Ark. 506, 893 S.W.2d 331 (1995). Here, two were shown.

In another point, Reams contends that, because of his mental retardation, his execution would violate state and federal guarantees against cruel and unusual punishment and deprive him of due process and equal protection of the law. Reams relies on Act 420 of 1993, now codified at Ark. Code Ann. § 5-4-618 (Repl. 1993), to support his argument that his mental retardation precludes the jury from imposing the death penalty sentence. His argument is without merit.

Reams concedes that he is not entitled to the rebuttable presumption of mental retardation under the Act, since his intelligence quotient is above that 65 quotient prescribed by law. This may well be the reason Reams failed to raise the defense of mental retardation as an affirmative defense as is required by Act 420. *See* § 5-4-618(d)(1). In any event, he did not assert Act 420 as a defense prior to trial, and for this reason alone, Reams's argument must fail. While Reams mentions other constitutional arguments connected with his purported mental retardation, those

---

person; (3) Reams's youth at the time of his commission of the murder; (4) the murder was committed by another person and Reams was an accomplice and his participation was relatively minor; (5) Reams had no significant history of prior criminal activity; and Reams suffered from borderline mental retardation.

use or threat of violence to another person or the creation of a substantial risk of death or serious physical injury to another person.

Here, Reams's own testimony supported the first aggravating circumstance. Reams, who was charged as an accomplice with Alford Goodwin in the murder of Gary W. Turner, testified that he and Goodwin planned to commit an aggravated robbery at a bank automatic teller machine because Goodwin said, "He needed the money for graduation." Reams admitted that he and Goodwin, who was armed with a .32 revolver, waited at a local automatic teller machine for someone to drive up so they could rob them. He further described how he and Goodwin approached Turner's vehicle at the machine; he also related Goodwin shot Turner. Regarding the jury's second aggravating circumstance, Reams was shown to have previously been convicted of two aggravated robbery offenses and these offenses, by their definition, reflect Reams had committed prior crimes involving the threat of violence to another. *See Whitmore v. State*, 296 Ark. 308, 756 S.W.2d 890 (1988); Ark. Code Ann. § 5-12-103(a) (Repl. 1993).

Concerning the review of mitigating circumstances, we note that there was some evidence of six mitigating circumstances, but the jury unanimously agreed that those mitigating circumstances did not exist.[1] Suffice it to say, the record supports the jury's

[1] The evidence considered but not unanimously found by the jury suggested the following: (1) the capital murder was committed while Reams was under extreme mental or emotional disturbance; (2) the capital murder was committed while Reams was acting under unusual pressures or influences or under the domination of another

In this appeal, Reams cites *Franklin v. State*, 314 Ark. 329, 863 S.W.2d 268 (1993), in support of his argument that he made a prima facie case by objecting to the prosecutor's peremptory strike of the first venire person, Irma Johnson, who was black. Of course, no strike pattern or discriminatory purpose was evident merely because the first juror called and struck happened to be black. Nonetheless, the trial court assured Reams that, if a pattern developed later, it would require the prosecutor to provide a race-neutral explanation for striking Johnson. Reams never later renewed his objection regarding Johnson. Contrary to Reams's suggestion, the *Franklin* decision is unhelpful here, because there, four other jurors had been voir dired when the first black juror was called and subsequently challenged by the state, and by the time the court ruled on the *Batson* objection, the jury was composed of only white jurors.

In sum, no strike pattern was shown when Johnson was struck by the state, nor did the state's questions asked of her reflect a racially discriminatory motive. In fact, had the prosecutor been requested to provide an explanation for his decision to peremptorily excuse Johnson, he undoubtedly would have related Johnson's concessions that her brother had been unsuccessfully prosecuted for robbery in 1988, her nephew had robbed a store in 1992 and her sister had been charged for a drug offense in federal court in 1992.

Reams next argues that the trial court erred in upholding the state's peremptory challenge of black venireman, Matthew Henry. At

this stage of voir dire, the state had used four peremptory challenges, including the one striking Mr. Henry -- two strikes involved black jurors, Johnson and Henry, and two involved white jurors. Again the trial court ruled no prima facie "pattern" of discrimination was exhibited by the prosecutor, but it also delved into the state's "race neutral" explanation for its peremptory strike of Henry.

Reams couches his argument on appeal in terms suggesting that the state's disparate treatment of venire members not only established a pattern, but also showed the specious nature of the state's explanation in striking Henry. Reams points out that the state purportedly wanted assurances from the potential jurors that they were aware of accomplice liability and could find an accomplice as guilty as the person who actually shot the victim. He argues white venire members Linda Messina, Carolyn Phillips and Dorothy Hodges had indicated the person who actually shot the victim should be punished more severely, but the state accepted them after each finally concluded that she could impose the death penalty, if accomplice liability was established. Reams asserts that, contrary to its treatment of Messina, Phillips and Hodges, the state struck Henry even though Henry indicated he could impose the death penalty if an accomplice was found guilty of capital murder.

Reams's argument breaks down when examining Henry's answer when voir dired by defense counsel. While he previously said that he could impose the death penalty, he steadfastly adhered to his

belief that "[he] could consider the level of participation of the defendant or the role he played in the crime when it came to punishment if he could discern the difference in the state of mind." He further said, "I could do that if I could by some way see the difference in the state of mind and understand it or what is going to happen or whatever." After Henry's remarks, the prosecutor explained he wished to strike Henry because he believed Henry was of the opinion that, if Reams was not the shooter, he could not impose the death penalty.

The trial court voiced dissatisfaction with the state's explanation of striking Henry, and instead ruled Reams showed no prima facie case. While we agree with the trial court's ruling finding no discriminatory purpose or pattern, we also conclude the state's explanation was clearly race neutral.

Reams's *Batson* argument also included black venire member, Muriel M. Hayes, who the state struck because of her reservations about imposing the death penalty. Mrs. Hayes said, "I really do not want to be a person who would cause someone being put to death, I would not want a guilty conscience, I would not want to feel guilty, and I would not want to be a part of saying that this person gets the electric chair."[2] The prosecutor's explanation here was clearly based on something other than Ms. Hayes's race and without anything more, his reason offered in striking her must be deemed race neutral. *See Hernandez v. New York*, 500 U.S. 352

[2]Reams suggests Ms. Hayes was rehabilitated when she agreed she could consider the death penalty, but, at the same time, she again stated that she would rather not do so.

(1991). For the reasons above, we affirm the trial court's *Batson* rulings.

As previously mentioned, Reams argues three additional points on appeal, but those arguments were not argued or preserved below. His arguments are that (1) the jury did not adequately consider his youth (age 18 years) as a mitigating circumstance, (2) form 2, as a part of the verdict form, violated the Eighth and Fourteenth Amendments, and (3) jury members were given inadequate instructions on non-statutory mitigating evidence. Although we see no merit in these issues, it is unnecessary to discuss them further, since even in death penalty cases, a defendant must have raised the allegations of error at the trial court level by having made a specific, timely objection. *See Parker v. State*, 292 Ark. 421, 731 S.W.2d 756 (1987).

The record has been examined in accordance with Ark. Sup. Ct. R. 4-3(h), and it has been determined that there were no rulings adverse to Reams which constituted prejudicial error. Therefore, we affirm.

# JUDGMENT AND COMMITMENT ORDER

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ARKANSAS
ELEVENTH DISTRICT WEST THIRD DIVISION

On September 30, 1993, the defendant personally appeared before the Court with legal counsel and, having been informed by the Court of the nature of the charge(s), of his constitutional and legal rights, of the effect of a guilty plea upon those rights, and of his right to make a statement before sentencing, the Court made the following findings: (check one applicable)

- XX Defendant voluntarily, intelligently, and knowingly entered a plea of XX guilty or ☐ Nolo Contendere to the charge(s) herein enumerated and acknowledged factual bases for charge(s);
- ☐ Defendant is found guilty of said charge(s) by the Court, sitting as trier of fact;
- ☐ Defendant was found guilty at jury trial.

| CHANGE OF VENUE FROM: | DEFENDANT'S FULL NAME | DATE OF BIRTH | RACE | SEX | SID NUMBER |
|---|---|---|---|---|---|
| | Kenneth Reams | 12/21/74 | B | M | |

| DEFENDANT'S ATTORNEY | | PROSECUTING ATTORNEY OR DEPUTY | AT NUMBER |
|---|---|---|---|
| Maxie G. Kizer | ☐ PV XX AP ☐ PD ☐ SELF | Carol Billings | 122564 |

There being no legal cause shown by the defendant, as requested, why judgment should not be pronounced against him, a judgment of conviction is hereby entered against the defendant on each charge enumerated and court costs assessed. The County Sheriff is hereby ordered and directed to transport the defendant to XX The Arkansas Department of Correction or ☐ ________ County Jail, where he is sentenced to hard labor for the term specified on each charge:

| STATUTE NO. | OFFENSE | OFFENSE DATE | DOCKET NO. | COUNTS | F/M | CLASS | SENTENCE | SUSPENDED |
|---|---|---|---|---|---|---|---|---|
| 5-12-103 | Aggravated Robbery | 4/28/93 | 93-299-3 | 1 | F | Y | 40 years | |
| | | | | | | | | |
| | | | | | | | | |

If consecutive, explain:

TIME TO SERVE AT A.D.C.: Forty (40) years

**OTHER SENTENCING PROVISIONS**

- ☐ HABITUAL (5-4-501)
- ☐ FIREARM (5-4-505/16-90-120)
- ☐ DEADLY WEAPON (16-90-121)
- ☐ HABITUAL CHILD SEX OFFENDER (12-12-902)
- ☐ OTHER: ________

**PAROLE PROVISIONS — ACT 378 ONLY**

Alternative Services (Act 378) (16-93-502). The defendant knowingly and willingly consents to sentence provisions:

- ☐ 16-93-507(b)(4) — Eligible for parole immediately
- ☐ 16-93-507(b)(5) — Eligible for parole as normal

EXPLANATORY NOTES: This sentence shall run concurrent with the sentences received in Jefferson County Case Numbers CR-93-298-3 and CR-93-300-3.

OTHER: FINE $ ________
RESTITUTION $ ________
COURT COSTS $ ________

☐ DEATH PENALTY
EXECUTION DATE: ________

☐ DEFENDANT INFORMED OF RIGHT TO APPEAL
JAIL TIME CREDIT: ~~143 days~~ OR ☐ NONE
BOND PROVISIONS: ________

| DATE | CIRCUIT JUDGE (Print or Type) | CIRCUIT JUDGE (Signature) |
|---|---|---|
| 9/30/93 | FRED D. DAVIS, III | [signature] |
| DATE | I certify this is a true and correct record of this Court with short report of circumstances attached. | CIRCUIT CLERK/DEPUTY SEAL |
| DATE | I acknowledge receipt of judgment. | DEFENDANT (Signature) |

FILED SEP 3 0 1993 DOROTHY G. PEARSON Circuit & Chancery Clerk JEFFERSON COUNTY, ARKANSAS

**SHERIFF'S RETURN**

| DATE REL. ON APPEAL BOND | DATE RET. TO CUSTODY | I certify the defendant named within was delivered to: ☐ The A.D.C. or ☐ ________ County Jail | DATE | SHERIFF/DEPUTY (Signature) |
|---|---|---|---|---|
| | | | | |

DISTRIBUTION: White: Court File, Blue: ADC, Yellow: Sheriff's Return, Pink: Defendant, Golden Rod: Prosecutor

1371

AJD #15 2/28/89
4955

# JUDGMENT AND COMMITMENT ORDER

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ARKANSAS
ELEVENTH DISTRICT WEST THIRD DIVISION

On September 30, 1993, the defendant personally appeared before the Court with legal counsel and, having been informed by the Court of the nature of the charge(s), of his constitutional and legal rights, of the effect of a guilty plea upon those rights, and of his right to make a statement before sentencing, the Court made the following findings: (check one applicable)

XX Defendant voluntarily, intelligently, and knowingly entered a plea of ☒ guilty or ☐ Nolo Contendere to the charge(s) herein enumerated and acknowledged factual bases for charge(s);

☐ Defendant is found guilty of said charge(s) by the Court, sitting as trier of fact;

☐ Defendant was found guilty at jury trial.

| CHANGE OF VENUE FROM: | DEFENDANT'S FULL NAME | DATE OF BIRTH | RACE | SEX | SID NUMBER |
|---|---|---|---|---|---|
| | Kenneth Reams | 12/21/74 | B | M | |

| DEFENDANT'S ATTORNEY | | PROSECUTING ATTORNEY OR DEPUTY | AT NUMBER |
|---|---|---|---|
| Maxie G. Kizer | ☐ PV ☒ AP ☐ PD ☐ SELF | Carol Billings | 122602 |

There being no legal cause shown by the defendant, as requested, why judgment should not be pronounced against him, a judgment of conviction is hereby entered against the defendant on each charge enumerated and court costs assessed. The County Sheriff is hereby ordered and directed to transport the defendant to XX The Arkansas Department of Correction or ☐ ____________ County Jail, where he is sentenced to hard labor for the term specified on each charge:

| STATUTE NO. | OFFENSE | OFFENSE DATE | DOCKET NO. | COUNTS | F/M | CLASS | SENTENCE | SUSPENDED |
|---|---|---|---|---|---|---|---|---|
| 5-12-103 | Aggravated Robbery | 4/29/93 | 93-300-3 | 1 | F | Y | 40 years | |
| | | | | | | | | |
| | | | | | | | | |

If consecutive, explain:

**TIME TO SERVE AT A.D.C.:** Forty (40) years

**OTHER SENTENCING PROVISIONS**
- ☐ HABITUAL (5-4-501)
- ☐ FIREARM (5-4-505/16-90-120)
- ☐ DEADLY WEAPON (16-90-121)
- ☐ HABITUAL CHILD SEX OFFENDER (12-12-902)
- ☐ OTHER: ____________

**PAROLE PROVISIONS — ACT 378 ONLY**
Alternative Services (Act 378) (16-93-502). The defendant knowingly and willingly consents to sentence provisions:
- ☐ 16-93-507(b)(4) — Eligible for parole immediately
- ☐ 16-93-507(b)(5) — Eligible for parole as normal

EXPLANATORY NOTES: This sentence shall run concurrent with the sentences received in Jefferson County Case Numbers CR-93-298-3 and CR-93-299-3.

OTHER: FINE $ ________ ☐ DEATH PENALTY
RESTITUTION $ ________
COURT COSTS $ ________ EXECUTION DATE: ________

☐ DEFENDANT INFORMED OF RIGHT TO APPEAL BOND PROVISIONS: ________
JAIL TIME CREDIT: 143 Days OR ☐ NONE

| DATE | CIRCUIT JUDGE (Print or Type) | CIRCUIT JUDGE (Signature) |
|---|---|---|
| 9/30/93 | FRED D. DAVIS, III | [signature] |
| DATE | I certify this is a true and correct record of this Court with short report of circumstances attached. | CIRCUIT CLERK/DEPUTY (SEAL) |
| DATE | I acknowledge receipt of judgment. | DEFENDANT (Signature) |

FILED
SEP 30 1993
DOROTHY G. PEARSON
Circuit & Chancery Clerk
JEFFERSON COUNTY, ARKANSAS

**SHERIFF'S RETURN**

| DATE REL. ON APPEAL BOND | DATE RET. TO CUSTODY | I certify the defendant named within was delivered to: ☐ The A.D.C. or ☐ ________ County Jail | DATE | SHERIFF/DEPUTY (Signature) |
|---|---|---|---|---|
| | | | | |

DISTRIBUTION: White: Court File, Blue: ADC, Yellow: Sheriff's Return, Pink: Defendant, Golden Rod: Prosecutor

AJD #15 2/28/89
4955

7157 Respondent's Exhibit E

1172

# JUDGMENT AND COMMITMENT ORDER

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ARKANSAS

ELEVENTH DISTRICT WEST THIRD DIVISION

On September 30, 1993, the defendant personally appeared before the Court with legal counsel and, having been informed by the Court of the nature of the charge(s), of his constitutional and legal rights, of the effect of a guilty plea upon those rights, and of his right to make a statement before sentencing, the Court made the following findings: (check one applicable)

☒ Defendant voluntarily, intelligently, and knowingly entered a plea of ☒ guilty or ☐ Nolo Contendere to the charge(s) herein enumerated and acknowledged factual bases for charge(s);

☐ Defendant is found guilty of said charge(s) by the Court, sitting as trier of fact;

☐ Defendant was found guilty at jury trial.

| CHANGE OF VENUE FROM: | DEFENDANT'S FULL NAME | DATE OF BIRTH | RACE | SEX | SID NUMBER |
|---|---|---|---|---|---|
| | Kenneth Reams | 12/21/74 | B | M | |

| DEFENDANT'S ATTORNEY | | PROSECUTING ATTORNEY OR DEPUTY | AT NUMBER |
|---|---|---|---|
| Maxie G. Kizer | ☐ PV ☒ AP ☐ PD ☐ SELF | Carol Billings | 122565 |

There being no legal cause shown by the defendant, as requested, why judgment should not be pronounced against him, a judgment of conviction is hereby entered against the defendant on each charge enumerated and court costs assessed. The County Sheriff is hereby ordered and directed to transport the defendant to ☒ The Arkansas Department of Correction or ☐ ______ County Jail, where he is sentenced to hard labor for the term specified on each charge:

| STATUTE NO. | OFFENSE | OFFENSE DATE | DOCKET NO. | COUNTS | F/M | CLASS | SENTENCE | SUSPENDED |
|---|---|---|---|---|---|---|---|---|
| 5-39-201 | Burglary | 4/28/93 | 93-298-3 | 1 | F | B | 10 years | |
| 5-36-103 | Theft of Property | 4/28/93 | 93-298-3 | 1 | F | C | 10 years | |
| | | | | | | | | |

If consecutive, explain:

**TIME TO SERVE AT A.D.C.:** Ten (10) years

**OTHER SENTENCING PROVISIONS**

☐ HABITUAL (5-4-501)
☐ FIREARM (5-4-505/16-90-120)
☐ DEADLY WEAPON (16-90-121)
☐ HABITUAL CHILD SEX OFFENDER (12-12-902)
☐ OTHER: ______

**PAROLE PROVISIONS — ACT 378 ONLY**

Alternative Services (Act 378) (16-93-502). The defendant knowingly and willingly consents to sentence provisions:

☐ 16-93-507(b)(4) — Eligible for parole immediately
☐ 16-93-507(b)(5) — Eligible for parole as normal

EXPLANATORY NOTES: These sentences shall run concurrent with each other and concurrent with the sentences received in Jefferson County Case Numbers CR-93-299-3 and CR-93-300-3.

OTHER: FINE $ ______
RESTITUTION $ ______
COURT COSTS $ ______

☐ DEATH PENALTY

EXECUTION DATE: ______

☐ DEFENDANT INFORMED OF RIGHT TO APPEAL

BOND PROVISIONS: ______

JAIL TIME CREDIT: 143 days OR ☐ NONE

| DATE | CIRCUIT JUDGE (Print or Type) | CIRCUIT JUDGE (Signature) |
|---|---|---|
| 9/30/93 | FRED D. DAVIS, III | [signature] |
| DATE | I certify this is a true and correct record of this Court with short report of circumstances attached. | CIRCUIT CLERK/DEPUTY (SEAL) |
| DATE | I acknowledge receipt of judgment. | DEFENDANT (Signature) |

FILED
SEP 30 1993
DOROTHY G. PEARSON
Circuit & Chancery Clerk
JEFFERSON COUNTY, ARKANSAS

**SHERIFF'S RETURN**

| DATE REL. ON APPEAL BOND | DATE RET. TO CUSTODY | I certify the defendant named within was delivered to: ☐ The A.D.C. or ☐ ______ County Jail | DATE | SHERIFF/DEPUTY (Signature) |
|---|---|---|---|---|
| | | | | |

DISTRIBUTION: White: Court File, Blue: ADC, Yellow: Sheriff's Return, Pink: Defendant, Golden Rod: Prosecutor

1473

AJD #15 2/28/89
4955

JUDGMENT AND COMMITMENT ORDER

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ARKANSAS
ELEVENTH DISTRICT WEST THIRD DIVISION

On December 15, 1993, the defendant personally appeared before the Court with legal counsel and, having been informed by the Court of the nature of the charge(s), of his constitutional and legal rights, of the effect of a guilty plea upon those rights, and of his right to make a statement before sentencing, the Court made the following findings: (check one applicable)

☐ Defendant voluntarily, intelligently, and knowingly entered a plea of ☐ guilty or ☐ Nolo Contendere to the charge(s) herein enumerated and acknowledged factual bases for charge(s);

☐ Defendant is found guilty of said charge(s) by the Court, sitting as trier of fact;

XX Defendant was found guilty at jury trial.

| CHANGE OF VENUE FROM: | DEFENDANT'S FULL NAME | DATE OF BIRTH | RACE | SEX | SID NUMBER |
|---|---|---|---|---|---|
| | Kenneth Reams | 12/21/74 | B | M | |

| DEFENDANT'S ATTORNEY | | PROSECUTING ATTORNEY OR DEPUTY | AT NUMBER |
|---|---|---|---|
| Maxie G. Kizer | ☐ PV XX AP ☐ PD ☐ SELF | Carol Billings & Wayne Juneau | 122601 |

There being no legal cause shown by the defendant, as requested, why judgment should not be pronounced against him, a judgment of conviction is hereby entered against the defendant on each charge enumerated and court costs assessed. The County Sheriff is hereby ordered and directed to transport the defendant to XX The Arkansas Department of Correction or ☐ ________ County Jail, where he is sentenced to ~~xxxxxxxxxxxxxxxxxxxxxxxxxxxxxx~~ death by lethal injection

| STATUTE NO. | OFFENSE | OFFENSE DATE | DOCKET NO | COUNTS | F/M | CLASS | SENTENCE | SUSPENDED |
|---|---|---|---|---|---|---|---|---|
| 5-10-101 | Capital Murder | 5/5/93 | 93-301-3 | 1 | F | Y | Death by Lethal Injection | |
| | | | | | | | | |
| | | | | | | | | |

If consecutive, explain:

TIME TO SERVE AT A.D.C.: Death by Lethal Injection

OTHER SENTENCING PROVISIONS
☐ HABITUAL (5-4-501)
☐ FIREARM (5-4-505/16-90-120)
☐ DEADLY WEAPON (16-90-121)
☐ HABITUAL CHILD SEX OFFENDER (12-12-902)
☐ OTHER: ________

PAROLE PROVISIONS — ACT 378 ONLY
Alternative Services (Act 378) (16-93-502). The defendant knowingly and willingly consents to sentence provisions:
☐ 16-93-507(b)(4) — Eligible for parole immediately
☐ 16-93-507(b)(5) — Eligible for parole as normal

EXPLANATORY NOTES:

OTHER: FINE $ ________
RESTITUTION $ ________
COURT COSTS $ ________

XX DEATH PENALTY
EXECUTION DATE: January 14, 1994

XX DEFENDANT INFORMED OF RIGHT TO APPEAL
JAIL TIME CREDIT: 146 days OR ☐ NONE

BOND PROVISIONS: ________

| DATE | CIRCUIT JUDGE (Print or Type) | CIRCUIT JUDGE (Signature) |
|---|---|---|
| | | [signature] |
| DATE | I certify this is a true and correct record of this Court with short report of circumstances attached. | CIRCUIT CLERK/DEPUTY (SEAL) |
| DATE | I acknowledge receipt of judgment. | DEFENDANT (Signature) |

SHERIFF'S RETURN

| DATE REL. ON APPEAL BOND | DATE RET. TO CUSTODY | I certify the defendant named within was delivered to: ☐ The A.D.C. or ☐ ________ County Jail | DATE | SHERIFF/DEPUTY (Signature) |
|---|---|---|---|---|

FILED
DEC 29 1993
DOROTHY G. PEARSON
Circuit & Chancery Clerk
JEFFERSON COUNTY ARKANSAS

DISTRIBUTION: White: Court File, Blue: ADC, Yellow: Sheriff's Return, Pink: Defendant, Golden Rod: Prosecutor

1698
AJD #15 2/28/89

# JUDGMENT AND COMMITMENT ORDER

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ARKANSAS

ELEVENTH DISTRICT WEST THIRD DIVISION

On December 15, 1993, the defendant personally appeared before the Court with legal counsel and, having been informed by the Court of the nature of the charge(s), of his constitutional and legal rights, of the effect of a guilty plea upon those rights, and of his right to make a statement before sentencing, the Court made the following findings: (check one applicable)

☐ Defendant voluntarily, intelligently, and knowingly entered a plea of ☐ guilty or ☐ Nolo Contendere to the charge(s) herein enumerated and acknowledged factual bases for charge(s);

☐ Defendant is found guilty of said charge(s) by the Court, sitting as trier of fact;

XX Defendant was found guilty at jury trial.

| CHANGE OF VENUE FROM: | DEFENDANT'S FULL NAME | DATE OF BIRTH | RACE | SEX | SID NUMBER |
|---|---|---|---|---|---|
| | Kenneth Reams | 12/21/74 | B | M | |

| DEFENDANT'S ATTORNEY | | PROSECUTING ATTORNEY OR DEPUTY | AT NUMBER |
|---|---|---|---|
| Maxie G. Kizer | ☐ PV XX AP ☐ PD ☐ SELF | Carol Billings & Wayne Juneau | 122601 |

There being no legal cause shown by the defendant, as requested, why judgment should not be pronounced against him, a judgment of conviction is hereby entered against the defendant on each charge enumerated and court costs assessed. The County Sheriff is hereby ordered and directed to transport the defendant to XX The Arkansas Department of Correction or ☐ ______ County Jail, where he is sentenced to ~~hard labor for the term specified on each charge.~~ Death by Lethal Injection [initials]

| STATUTE NO. | OFFENSE | OFFENSE DATE | DOCKET NO | COUNTS | F/M | CLASS | SENTENCE | SUSPENDED |
|---|---|---|---|---|---|---|---|---|
| 5-10-101 | Capital Murder | 5/5/93 | 93-301-3 | 1 | F | Y | Death by Lethal Injection | |
| | | | | | | | | |

If consecutive, explain:

TIME TO SERVE AT A.D.C.: Death by Lethal Injection

**OTHER SENTENCING PROVISIONS**

☐ HABITUAL (5-4-501)
☐ FIREARM (5-4-505/16-90-120)
☐ DEADLY WEAPON (16-90-121)
☐ HABITUAL CHILD SEX OFFENDER (12-12-902)
☐ OTHER: ______

**PAROLE PROVISIONS — ACT 378 ONLY**

Alternative Services (Act 378) (16-93-502). The defendant knowingly and willingly consents to sentence provisions:

☐ 16-93-507(b)(4) — Eligible for parole immediately
☐ 16-93-507(b)(5) — Eligible for parole as normal

EXPLANATORY NOTES:

OTHER: FINE $ ______
RESTITUTION $ ______
COURT COSTS $ ______

☐ DEATH PENALTY

EXECUTION DATE: ______

XX DEFENDANT INFORMED OF RIGHT TO APPEAL

JAIL TIME CREDIT: 146 days OR ☐ NONE

BOND PROVISIONS: ______

| DATE | CIRCUIT JUDGE (Print or Type) | CIRCUIT JUDGE (Signature) |
|---|---|---|
| 12/16/93 | FRED D. DAVIS, III | [signature] |
| DATE | I certify this is a true and correct record of this Court with short report of circumstances attached. | CIRCUIT CLERK/DEPUTY (SEAL) |
| DATE | I acknowledge receipt of judgment. | DEFENDANT (Signature) |

**SHERIFF'S RETURN**

| DATE REL. ON APPEAL BOND | DATE RET. TO CUSTODY | I certify the defendant named within was delivered to: ☐ The A.D.C. or ☐ ______ County Jail | DATE | SHERIFF/DEPUTY (Signature) |
|---|---|---|---|---|
| | | | | |

DISTRIBUTION: White: Court File, Blue: ADC, Yellow: Sheriff Return, Pink: Defendant, Goldenrod: Prosecutor

AJD #15 2/28/89

4955

1475

A TRUE COPY, I CERTIFY
DOROTHY G. PEARSON, Clerk
[signature]

FILED
DEC 15 1993
DOROTHY G. PEARSON
Circuit & Chancery Clerk
JEFFERSON COUNTY, ARKANSAS

Respondent's Exhibit E

# JUDGMENT AND COMMITMENT ORDER

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ARKANSAS

ELEVENTH DISTRICT WEST THIRD DIVISION

On December 15, 1993, the defendant personally appeared before the Court with legal counsel and, having been informed by the Court of the nature of the charge(s), of his constitutional and legal rights, of the effect of a guilty plea upon those rights, and of his right to make a statement before sentencing, the Court made the following findings: (check one applicable)

☐ Defendant voluntarily, intelligently, and knowingly entered a plea of ☐ guilty or ☐ Nolo Contendere to the charge(s) herein enumerated and acknowledged factual bases for charge(s);

☐ Defendant is found guilty of said charge(s) by the Court, sitting as trier of fact;

XX Defendant was found guilty at jury trial.

| CHANGE OF VENUE FROM: | DEFENDANT'S FULL NAME | DATE OF BIRTH | RACE | SEX | SID NUMBER |
|---|---|---|---|---|---|
| | Kenneth Reams | 12/21/74 | B | M | |

| DEFENDANT'S ATTORNEY | | PROSECUTING ATTORNEY OR DEPUTY | AT NUMBER |
|---|---|---|---|
| Maxie G. Kizer | ☐ PV XX AP ☐ PD ☐ SELF | Carol Billings & Wayne Juneau | 122601 |

There being no legal cause shown by the defendant, as requested, why judgment should not be pronounced against him, a judgment of conviction is hereby entered against the defendant on each charge enumerated and court costs assessed. The County Sheriff is hereby ordered and directed to transport the defendant to ☒ The Arkansas Department of Correction or ☐ ______ County Jail, where he is sentenced to ~~hard labor for the term specified on each charge.~~ Death by Lethal Injection [initials]

| STATUTE NO. | OFFENSE | OFFENSE DATE | DOCKET NO. | COUNTS | F/M | CLASS | SENTENCE | SUSPENDED |
|---|---|---|---|---|---|---|---|---|
| 5-10-101 | Capital Murder | 5/5/93 | 93-301-3 | 1 | F | Y | Death by Lethal Injection | |
| | | | | | | | | |

If consecutive, explain:

TIME TO SERVE AT A.D.C.: Death by Lethal Injection

**OTHER SENTENCING PROVISIONS**

☐ HABITUAL (5-4-501)
☐ FIREARM (5-4-505/16-90-120)
☐ DEADLY WEAPON (16-90-121)
☐ HABITUAL CHILD SEX OFFENDER (12-12-902)
☐ OTHER: ______

**PAROLE PROVISIONS — ACT 378 ONLY**

Alternative Services (Act 378) (16-93-502). The defendant knowingly and willingly consents to sentence provisions:

☐ 16-93-507(b)(4) — Eligible for parole immediately
☐ 16-93-507(b)(5) — Eligible for parole as normal

EXPLANATORY NOTES:

OTHER: FINE $ ______
RESTITUTION $ ______
COURT COSTS $ ______

☐ DEATH PENALTY

EXECUTION DATE: ______

XX DEFENDANT INFORMED OF RIGHT TO APPEAL

JAIL TIME CREDIT: 146 days OR ☐ NONE

BOND PROVISIONS: ______

| DATE | CIRCUIT JUDGE (Print or Type) | CIRCUIT JUDGE (Signature) |
|---|---|---|
| 12/16/93 | FRED D. DAVIS, III | [signature] |
| DATE | I certify this is a true and correct record of this Court with short report of circumstances attached. | CIRCUIT CLERK/DEPUTY (SEAL) |
| DATE | I acknowledge receipt of judgment. | DEFENDANT (Signature) |

**SHERIFF'S RETURN**

| DATE REL. ON APPEAL BOND | DATE RET. TO CUSTODY | I certify the defendant named within was delivered to: ☐ The A.D.C. or ☐ ______ County Jail | DATE | SHERIFF/DEPUTY (Signature) |
|---|---|---|---|---|
| | | | | |

DISTRIBUTION: White: Court File, Blue: ADC, Yellow: Sheriff's Return, Pink: Defendant, Golden Rod: Prosecutor

AJD #15 2/28/89
4955

FILED
DEC 1 5 1993
DOROTHY G. PEARSON
Circuit & Chancery Clerk
JEFFERSON COUNTY, ARKANSAS

COPY

# JUDGMENT AND COMMITMENT ORDER

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ARKANSAS

ELEVENTH DISTRICT WEST THIRD DIVISION

On December 15, 1993, the defendant personally appeared before the Court with legal counsel and, having been informed by the Court of the nature of the charge(s), of his constitutional and legal rights, of the effect of a guilty plea upon those rights, and of his right to make a statement before sentencing, the Court made the following findings: (check one applicable)

☐ Defendant voluntarily, intelligently, and knowingly entered a plea of ☐ guilty or ☐ Nolo Contendere to the charge(s) herein enumerated and acknowledged factual bases for charge(s);

☐ Defendant is found guilty of said charge(s) by the Court, sitting as trier of fact;

XX Defendant was found guilty at jury trial.

| CHANGE OF VENUE FROM: | DEFENDANT'S FULL NAME | DATE OF BIRTH | RACE | SEX | SID NUMBER |
|---|---|---|---|---|---|
| | Kenneth Reams | 12/21/74 | B | M | |

| DEFENDANT'S ATTORNEY | | PROSECUTING ATTORNEY OR DEPUTY | AT NUMBER |
|---|---|---|---|
| Maxie G. Kizer | ☐ PV XX AP ☐ PD ☐ SELF | Carol Billings & Wayne Juneau | 122601 |

There being no legal cause shown by the defendant, as requested, why judgment should not be pronounced against him, a judgment of conviction is hereby entered against the defendant on each charge enumerated and court costs assessed. The County Sheriff is hereby ordered and directed to transport the defendant to XX The Arkansas Department of Correction or ☐ ____ County Jail, where he is sentenced to ~~hard labor for the term specified on each charge:~~ Death by Lethal Injection [initials]

| STATUTE NO. | OFFENSE | OFFENSE DATE | DOCKET NO. | COUNTS | F/M | CLASS | SENTENCE | SUSPENDED |
|---|---|---|---|---|---|---|---|---|
| 5-10-101 | Capital Murder | 5/5/93 | 93-301-3 | 1 | F | Y | Death by Lethal Injection | |
| | | | | | | | | |

If consecutive, explain:

TIME TO SERVE AT A.D.C.: Death by Lethal Injection

**OTHER SENTENCING PROVISIONS**

☐ HABITUAL (5-4-501)
☐ FIREARM (5-4-505/16-90-120)
☐ DEADLY WEAPON (16-90-121)
☐ HABITUAL CHILD SEX OFFENDER (12-12-902)
☐ OTHER: ____

**PAROLE PROVISIONS — ACT 378 ONLY**

Alternative Services (Act 378) (16-93-502). The defendant knowingly and willingly consents to sentence provisions:
☐ 16-93-507(b)(4) — Eligible for parole immediately
☐ 16-93-507(b)(5) — Eligible for parole as normal

EXPLANATORY NOTES:

OTHER: FINE $ ____
RESTITUTION $ ____
COURT COSTS $ ____

☐ DEATH PENALTY
EXECUTION DATE: ____

XX DEFENDANT INFORMED OF RIGHT TO APPEAL
JAIL TIME CREDIT: 146 days OR ☐ NONE

BOND PROVISIONS: ____

| DATE | CIRCUIT JUDGE (Print or Type) | CIRCUIT JUDGE (Signature) |
|---|---|---|
| 12/16/93 | FRED D. DAVIS, III | [signature] |
| DATE | I certify this is a true and correct record of this Court with short report of circumstances attached. | CIRCUIT CLERK/DEPUTY (SEAL) |
| DATE | I acknowledge receipt of judgment. | DEFENDANT (Signature) |

**SHERIFF'S RETURN**

| DATE REL. ON APPEAL BOND | DATE RET. TO CUSTODY | I certify the defendant named within was delivered to: ☐ The A.D.C. or ☐ ____ County Jail | DATE | SHERIFF/DEPUTY (Signature) |
|---|---|---|---|---|
| | | | | |

DISTRIBUTION: White: Court File, Blue: ADC, Yellow: Sheriff's Return, Pink: Defendant, Golden Rod: Prosecutor

FILED
DEC 15 1993
DOROTHY G. PEARSON
Circuit & Chancery Clerk
JEFFERSON COUNTY, ARKANSAS

A TRUE COPY, I CERTIFY
DOROTHY G. PEARSON, Clerk
[signature] DC

AJD #15 2/28/89
4955

1477

7162 Respondent's Exhibit E

CR94-558

IN THE ARKANSAS SUPREME COURT

KENNETH REAMS — APPELLANT

V. — No. CR 94-558

STATE OF ARKANSAS — APPELLEE

AN APPEAL FROM THE
JEFFERSON COUNTY CIRCUIT COURT

THE HONORABLE FRED D. DAVIS
CIRCUIT JUDGE

# BRIEF OF APPELLEE

WINSTON BRYANT
Attorney General

BY: CLINT MILLER
Deputy Attorney General
Senior Appellate Advocate
Arkansas Bar No. 83126
200 Tower Building
323 Center Street
Little Rock, Arkansas 72201
(501) 682-3657

ATTORNEYS FOR APPELLEE

IN THE ARKANSAS SUPREME COURT

KENNETH REAMS APPELLANT

V. No. CR 94-558

STATE OF ARKANSAS APPELLEE

AN APPEAL FROM THE
JEFFERSON COUNTY CIRCUIT COURT

THE HONORABLE FRED D. DAVIS
CIRCUIT JUDGE

BRIEF OF APPELLEE

POINTS TO BE RELIED UPON

I.

THE STATE DID NOT VIOLATE APPELLANT REAMS' CONSTITUTIONAL RIGHT TO EQUAL PROTECTION OF THE LAW BY ITS USE OF ITS PEREMPTORY CHALLENGES TO EXCLUDE BLACK VENIREPERSONS FROM THE JURY............................1

II.

THE TRIAL COURT DID NOT ERR IN DENYING REAMS' REQUEST THAT THE JURY BE INSTRUCTED WITH THE AFFIRMATIVE DEFENSE TO THE DEATH PENALTY OF MENTAL RETARDATION....6

III.

THE TRIAL COURT'S SUBMISSION TO THE JURY, IN THE PENALTY PHASE OF APPELLANT REAMS' TRIAL, OF PECUNIARY GAIN AS AN AGGRAVATING CIRCUMSTANCE WAS NOT VIOLATIVE OF THE EIGHTH AND FOURTEENTH AMENDMENTS' PROHIBITION AGAINST CRUEL AND UNUSUAL PUNISHMENT...................9

IV.

THIS COURT DOES NOT CONDUCT A PROPORTIONALITY REVIEW OF DEATH SENTENCES......................................22

V.

THE JURY GAVE ADEQUATE CONSIDERATION TO THE MITIGATING CIRCUMSTANCE OF APPELLANT REAMS' AGE..................23

VI.

THE VERDICT FORM FILLED OUT BY THE JURY IN THE PENALTY PHASE OF APPELLANT REAMS' TRIAL DID NOT LEAVE MEMBERS OF THE JURY WITH THE IMPRESSION THAT EACH JUROR COULD NOT CONSIDER EVIDENCE OF A MITIGATING CIRCUMSTANCE UNLESS THE JURY UNANAMOUSLY AGREED THAT THE EVIDENCE PROVED THE MITIGATING CIRCUMSTANCE EXISTED............25

POINTS TO BE RELIED UPON

VII.

THE JURY RECEIVED ADEQUATE INSTRUCTIONS REGARDING ITS CONSIDERATION OF NONSTATUTORY MITIGATING EVIDENCE.....27

VIII.

THE JURY DID NOT ERR IN EVALUATING THE STATE'S PROOF OF AGGRAVATING CIRCUMSTANCES AND APPELLANT REAMS' PROOF OF MITIGATING CIRCUMSTANCES.....................28

-iii-

1481

7166 Respondent's Exhibit E

TABLE OF AUTHORITIES

CASES

PAGE

Mauppin v. State, 309 Ark. 235, 831 S.W.2d 104 (1992).......8

Maynard v. Cartwright, 486 U.S. 356 (1988)...........19,20,21

Mills v. Maryland, 486 U.S. 367 (1988)..................26,27

Nolen v. State, 278 Ark. 17, 643 S.W.2d 257 (1982).........17

Parker v. Norris, 859 F. Supp. 1203 (E.D. Ark. 1994)........27

Parker v. State, 292 Ark. 421, 731 S.W.2d 756 (1987)...................................9,24,26,28,35

Perry v. Lockhart, 871 F.2d 1384 (8th Cir.), cert. denied, 493 U.S. 959 (1989)..........................................11

Pickens v. State, 301 Ark. 244, 783 S.W.2d 341, cert. denied, 497 U.S. 1011 (1990)......................................27

Pulley v. Harris, 465 U.S. 37 (1984)......................23

Purkett v. Elem, 115 S. Ct. 1769 (1995)....................3

Redman v. State, 265 Ark. 774, 580 S.W.2d 945 (1979)........8

Remeta v. State, 300 Ark. 92, 777 S.W.2d 833 (1989)........7

Ridenhour v. State, 305 Ark. 90, 805 S.W.2d 639 (1991)......8

Ruiz v. Norris, 868 F. Supp. 1471, (E.D. Ark. 1994)........27

Ruiz v. State, 299 Ark. 144, 772 S.W.2d 297 (1989)........11

Sasser v. State, CR 94-933, slip op. at 13-4 (July 17, 1995)...............................................23,29

Sims v. State, 320 Ark. 528 ___ S.W.2d ___ (1995)...........3

State v. Dennis, 318 Ark. 80, 883 S.W.2d 811 (1994).........7

State v. Middlebrooks, 840 S.W.2d 317 (Tenn. 1992), cert. dismissed as improvidently granted, 114 S. Ct. 651 (1993)...............................................10,11

TABLE OF AUTHORITIES

RULES/STATUTES PAGE

Ark. Code Ann. § 5-4-604(3) (Repl. 1993)..................30

Ark. Code Ann. § 5-4-604(6) (Repl. 1993)..................9,29

Ark. Code Ann. § 5-4-618 (Repl. 1993)..................6,7

Arkansas Code Annotated § 5-4-603(a)(2) (Repl. 1993).......19

Arkansas Rule of Criminal Procedure 36.24..................34

Arkansas Statute Annotated § 41-2205 (Repl. 1964)..........16

Arkansas Supreme Court Rule 4-3(h)........................34

MISCELLANEOUS

Robert Weisberg, Deregulating Death 1983 Sup. Ct. Rev. 305 (1984)..................................................11

SUPPLEMENTAL ABSTRACT

(ABSTRACTOR'S NOTE: During its penalty phase deliberations, the jury filled out the following verdict forms.)

FORM 1

AGGRAVATING CIRCUMSTANCES

WE, THE JURY, AFTER CAREFUL DELIBERATION, HAVE UNANIMOUSLY DETERMINED THAT THE FOLLOWING AGGRAVATING CIRCUMSTANCE EXISTED BEYOND A REASONABLE DOUBT AT THE TIME OF THE COMMISSION OF THE CAPITAL MURDER. (R. 158)

1. (X) THE CAPITAL MURDER WAS COMMITTED FOR PECUNIARY GAIN.

2. (X) KENNETH REAMS PREVIOUSLY COMMITTED ANOTHER FELONY, AN ELEMENT OF WHICH WAS THE USE OR THREAT OF VIOLENCE TO ANOTHER PERSON OR THE CREATION OF A SUBSTANTIAL RISK OF DEATH OR SERIOUS PHYSICAL INJURY TO ANOTHER PERSON.

s/ Dwight A. Robinson
FOREMAN

FORM 2

MITIGATING CIRCUMSTANCES

A. ( ) WE UNANIMOUSLY FIND THAT THE FOLLOWING MITIGATING CIRCUMSTANCES PROBABLY EXIST: (CHECK APPLICABLE CIRCUMSTANCES AND SPECIFY ANY ADDITIONAL ONES.)

1. ( ) THE CAPITAL MURDER WAS COMMITTED WHILE KENNETH REAMS WAS UNDER EXTREME MENTAL OR EMOTIONAL DISTURBANCE.

2. ( ) THE CAPITAL MURDER WAS COMMITTED WHILE KENNETH REAMS WAS ACTING UNDER UNUSUAL PRESSURES OR INFLUENCES OR UNDER THE DOMINATION OF ANOTHER PERSON. (R. 159)

3. ( ) THE CAPITAL MURDER WAS COMMITTED WHILE THE CAPACITY OF KENNETH REAMS TO APPRECIATE THE WRONGFULNESS OF HIS CONDUCT OR TO CONFORM HIS CONDUCT TO THE REQUIREMENTS OF LAW WAS IMPAIRED AS A RESULT OF MENTAL DISEASE OR DEFECT, INTOXICATION, OR DRUG ABUSE.

4. ( ) THE YOUTH OF KENNETH REAMS AT THE TIME OF THE COMMISSION OF THE CAPITAL MURDER.

5. ( ) THE CAPITAL MURDER WAS COMMITTED BY ANOTHER PERSON AND KENNETH REAMS WAS AN ACCOMPLICE AND HIS PARTICIPATION RELATIVELY MINOR.

6. ( ) KENNETH REAMS HAS NO SIGNIFICANT HISTORY OF PRIOR CRIMINAL ACTIVITY. (R. 159)

FORM 2

MITIGATING CIRCUMSTANCES - PAGE 2

7. ( ) KENNETH REAMS SUFFERS FROM BORDERLINE MENTAL RETARDATION. (R. 160)

8. ( ) KENNETH REAMS HAS ABILITIES THAT WOULD ALLOW HIM TO BE A PRODUCTIVE MEMBER OF SOCIETY EVEN IN PRISON.

9. ( ) OTHER: SPECIFY IN WRITING. ______________________

______________________________________________

______________________________________________

B. ( ) ONE OR MORE MEMBERS OF THE JURY BELIEVED THAT THE FOLLOWING MITIGATING CIRCUMSTANCES PROBABLY EXISTED, BUT THE JURY DID NOT UNANIMOUSLY AGREE:

1. ( ) THE CAPITAL MURDER WAS COMMITTED WHILE KENNETH REAMS WAS UNDER EXTREME MENTAL OR EMOTIONAL DISTURBANCE.

2. ( ) THE CAPITAL MURDER WAS COMMITTED WHILE KENNETH REAMS WAS ACTING UNDER UNUSUAL PRESSURES OR INFLUENCES OR UNDER THE DOMINATION OF ANOTHER PERSON.

3. ( X ) THE CAPITAL MURDER WAS COMMITTED WHILE THE CAPACITY OF KENNETH REAMS TO APPRECIATE THE WRONGFULNESS OF HIS CONDUCT OR TO CONFORM HIS CONDUCT TO THE REQUIREMENTS OF LAW WAS IMPAIRED AS A RESULT OF MENTAL DISEASE OR DEFECT, INTOXICATION, OR DRUG ABUSE. (R. 160)

FORM 2

MITIGATING CIRCUMSTANCES - PAGE 3

4. ( ) THE YOUTH OF KENNETH REAMS AT THE TIME OF THE COMMISSION OF THE CAPITAL MURDER.

5. ( ) THE CAPITAL MURDER WAS COMMITTED BY ANOTHER PERSON AND KENNETH REAMS WAS AN ACCOMPLICE AND HIS PARTICIPATION RELATIVELY MINOR. (R.161)

6. ( ) KENNETH REAMS HAS NO SIGNIFICANT HISTORY OF PRIOR CRIMINAL ACTIVITY.

7. ( ) KENNETH REAMS SUFFERS FROM BORDERLINE MENTAL RETARDATION.

8. (X ) KENNETH REAMS HAS ABILITIES THAT WOULD ALLOW HIM TO BE A PRODUCTIVE MEMBER OF SOCIETY EVEN IN PRISON.

9. ( ) OTHER: SPECIFY IN WRITING. ______________________

______________________________________________

______________________________________________

C. (X ) THERE WAS EVIDENCE OF THE FOLLOWING MITIGATING CIRCUMSTANCES, BUT THE JURY UNANIMOUSLY AGREED THAT THEY DID NOT EXIST AT THE TIME OF THE MURDER:

1. (X ) THE CAPITAL MURDER WAS COMMITTED WHILE KENNETH REAMS WAS UNDER EXTREME MENTAL OR EMOTIONAL DISTURBANCE.

2. (X ) THE CAPITAL MURDER WAS COMMITTED WHILE KENNETH REAMS WAS ACTING UNDER UNUSUAL PRESSURES OR INFLUENCES OR UNDER THE DOMINATION OF ANOTHER PERSON. (R. 161)

FORM 2

MITIGATING CIRCUMSTANCES - PAGE 4

3. ( ) THE CAPITAL MURDER WAS COMMITTED WHILE THE CAPACITY OF KENNETH REAMS TO APPRECIATE THE WRONGFULNESS OF HIS CONDUCT OR TO CONFORM HIS CONDUCT TO THE REQUIREMENTS OF LAW WAS IMPAIRED AS A RESULT OF MENTAL DISEASE OR DEFECT, INTOXICATION, OR DRUG ABUSE. (R. 162)

4. (X ) THE YOUTH OF KENNETH REAMS AT THE TIME OF THE COMMISSION OF THE CAPITAL MURDER.

5. (X ) THE CAPITAL MURDER WAS COMMITTED BY ANOTHER PERSON AND KENNETH REAMS WAS AN ACCOMPLICE AND HIS PARTICIPATION RELATIVELY MINOR.

6. (X ) KENNETH REAMS HAS NO SIGNIFICANT HISTORY OF PRIOR CRIMINAL ACTIVITY.

7. (X ) KENNETH REAMS SUFFERS FROM BORDERLINE MENTAL RETARDATION.

8. ( ) KENNETH REAMS HAS ABILITIES THAT WOULD ALLOW HIM TO BE A PRODUCTIVE MEMBER OF SOCIETY EVEN IN PRISON.

9. ( ) OTHER: SPECIFY IN WRITING. ________________

__________________________________________

__________________________________________

FORM 2

MITIGATING CIRCUMSTANCES - PAGE 5

D. ( ) THERE WAS NO EVIDENCE OF ANY MITIGATING CIRCUMSTANCE. (CHECK IF APPLICABLE) (R. 163)

s/ Dwight A. Robinson
FOREMAN

-SA6-

1489

7174 Respondent's Exhibit E

FORM 3

CONCLUSIONS

THE JURY, HAVING REACHED ITS FINAL CONCLUSIONS, WILL SO INDICATE BY HAVING ITS FOREMAN PLACE A CHECK MARK (X) IN THE APPROPRIATE SPACE IN ACCORDANCE WITH THE JURY'S FINDINGS. IN ORDER TO CHECK ANY SPACE, YOUR CONCLUSIONS MUST BE UNANIMOUS. THE FOREMAN OF THE JURY WILL THEN SIGN AT THE END OF THIS FORM. (R. 164)

WE THE JURY CONCLUDE:

(A) (X ) ONE OR MORE AGGRAVATING CIRCUMSTANCES DID EXIST BEYOND A REASONABLE DOUBT, AT THE TIME OF THE COMMISSION OF THE CAPITAL MURDER.

(IF YOU DO NOT UNANIMOUSLY AGREE TO CHECK PARAGRAPH (A) THEN SKIP (B) AND (C), AND SENTENCE KENNETH REAMS TO LIFE IMPRISONMENT WITHOUT PAROLE ON FORM 4.)

(B) (X ) THE AGGRAVATING CIRCUMSTANCES OUTWEIGH BEYOND A REASONABLE DOUBT ANY MITIGATING CIRCUMSTANCES.

(IF YOU DO NOT UNANIMOUSLY AGREE TO CHECK (B) THEN SKIP (C) AND SENTENCE KENNETH REAMS TO LIFE IMPRISONMENT WITHOUT PAROLE ON FORM 4.)

(C) (X ) THE AGGRAVATING CIRCUMSTANCE JUSTIFY BEYOND A REASONABLE DOUBT A SENTENCE OF DEATH.

(IF YOU DO NOT UNANIMOUSLY AGREE TO CHECK PARAGRAPH (C) THEN SENTENCE KENNETH REAMS TO LIFE IMPRISONMENT WITHOUT PAROLE ON FORM 4.) (R. 164)

FORM 3

CONCLUSIONS – PAGE 2

IF YOU HAVE CHECKED PARAGRAPHS (A), (B), AND (C) THEN SENTENCE KENNETH REAMS TO DEATH BY LETHAL INJECTION ON FORM 4. (R. 165)

s/ Dwight A. Robinson
FOREMAN

Respondent's Exhibit E

FORM 4

VERDICT

WE, THE JURY, AFTER CAREFUL DELIBERATION, HAVE DETERMINED THAT FOR THE CAPITAL FELONY MURDER OF GARY TURNER THAT KENNETH REAMS SHALL BE SENTENCED TO:

A. ( ) LIFE IMPRISONMENT WITHOUT PAROLE.

B. (X ) DEATH BY LETHAL INJECTION.

(EACH JUROR MUST SIGN THIS VERDICT.)

s/ Dwight A. Robinson

s/ Kelly Ruggeri

s/ Jerry Lindsey

s/ Carolyn Phillips

s/ Larry R. Tipton

s/ Linda Messina

s/ Mary Denise Hoffman

s/ David R. (illegible)

s/ Dorothy Hodges

s/ Gary H. Johnson

s/ Bruce E. Hornsby

s/ Della M. Horace

(ABSTRACTOR'S NOTE: At the close of the penalty phase of Reams' trial, after the trial court excused the jury, the trial court asked Reams' counsel the following questions.)

TRIAL COURT: Mr. Kizer (defense counsel), is there any desire that the defendant's sentence be postponed?

DEFENSE COUNSEL: I know of no legal reason why Your Honor.

TRIAL COURT: Okay. The next thing I was going to ask you is there any legal reason that you can think of that the Court should not impose sentence at this time?

DEFENSE COUNSEL: None that I'm aware of, Your Honor. (R. 917)

TRIAL COURT: Other than those that have previously been raised. All right Mr. Reams, will you stand up if you would, please, sir. Kenneth Reams, the jury of your peers having considered the evidence in this case and having found you guilty of the offense of the capital felony murder and having again heard evidence and deliberated and returned a sentence of death by lethal injection and no legal reason having been shown to the Court why sentence should not be imposed, it is the judgment and sentence of the Court that you be remanded to the Sheriff of Jefferson County and by him transported to the Department of Correction where on a day prescribed by the Governor of this State, the Superintendent of the Department of Correction will carry out the sentence of this Court and you will be put to death by lethal injection. (R. 918)

Respondent's Exhibit E

ARGUMENT

I.

THE STATE DID NOT VIOLATE APPELLANT REAMS' CONSTITUTIONAL RIGHT TO EQUAL PROTECTION OF THE LAW BY ITS USE OF ITS PEREMPTORY CHALLENGES TO EXCLUDE BLACK VENIREPERSONS FROM THE JURY.

For his first allegation of error appellant Reams asserts that the trial court erred in denying his objections to the State's peremptory challenges of venirepersons Irma Johnson, Matthew Henry and Muriel Hayes. Appellant Reams, who is black, objected to the State's peremptory challenges of Ms. Johnson, Mr. Henry and Ms. Hayes, all of whom are black, on the basis of the United States Supreme Court's decision in Batson v. Kentucky, 476 U.S. 79 (1986). In Batson v. Kentucky, the United States Supreme Court held, in essence, that equal protection principles prohibited the State from using its peremptory challenges in a criminal case to remove venirepersons from the jury on the basis of their race. The trial court did not err in denying appellant Reams' Batson-based objections to the State's use of its peremptory challenges to remove Ms. Johnson, Mr. Henry and Ms. Hayes from the jury.

The trial court did not err in denying Reams' counsel's Batson objection to the State's peremptory challenges of venirepersons Irma Johnson, Matthew Henry and Muriel Hayes. This Court has recently summarized the case law principles that govern Batson challenges. In Hollamon v. State, 312

Ark. 48, 846 S.W.2d 663 (1993) this Court summarized as follows the pertinent case law principles that govern Batson challenges:

> In Batson v. Kentucky, [476 U.S. 79 (1986)], the United States Supreme Court held that a defendant who makes a prima facie showing of purposeful racial discrimination in juror challenges shifts the burden to the state to prove that the exclusion of jurors is not based on race. The Court, however, refrained from formulating procedures to implement Batson, and the states have been forced to chart their own way in devising procedures for the time, place, and manner of the Batson process.
>
> We have held that when the neutral explanation given by the state is sufficient, no sensitive inquiry is required. Colbert v. State, 304 Ark. 250, 801 S.W.2d 643 (1990). In Colbert, we declared:
>
> > We now believe that our previous interpretations of the Batson holding were misdirected only to the extent that we have said that Batson requires a "sensitive inquiry" by the trial court in every instance, notwithstanding the validity of the state's explanation for its peremptory challenges.
> >
> > We now hold that upon a showing by a defendant of circumstances which raise an inference that the prosecutor exercised one or more of his peremptory challenges to exclude venire persons from the jury on account of race, the burden then shifts to the state to establish that the peremptory strike(s) were for racially neutral reasons. The trial court shall then determine from all relevant circumstances the sufficiency of the racially neutral explanation. If the state's explanation appears insufficient, the trial court must then conduct a sensitive inquiry into the basis for each of the

1495

challenges by the state.

> The standard of review for reversal of the trial court's evaluation of the sufficiency of the explanation must test whether the court's findings are clearly against the preponderance of the evidence. In every instance, however, the court shall state, in response to the defendant's objections, its rulings as to the sufficiency or insufficiency of the racially neutral explanation provided by the state.
>
> 304 Ark. at 254-255, 801 S.W.2d at 646.
>
> Accordingly, the defendant must first establish a prima facie case of purposeful discrimination....

Hollamon, 312 Ark. at 52-3, 846 S.W.2d at 665-66. Accord Sims v. State, 320 Ark. 528, 532-33, ___ S.W.2d ___, ___ (1995); Bradley v. State, 320 Ark. 100, 108-09, 896 S.W.2d 425, 429-30 (1995); Franklin v. State, 314 Ark. 329, 338, 863 S.W.2d 268, 273 (1993); and Watson v. State, 308 Ark. 444, 448-50, 825 S.W.2d 569, 571-72 (1992). Recently, the United States Supreme Court has held that the State satisfies its burden of offering a race-neutral explanation as to why a particular venireperson was peremptorily challenged even if the race-neutral explanation, on its face, appears silly, implausible, fantastic or superstitious. Purkett v. Elem, 115 S. Ct. 1769, 1771 (1995). In Purkett v. Elem, the United States Supreme Court made clear that the State's race-neutral explanation for its exercise of a peremptory challenge need not be reasonable, in the sense of logical, but only that the explanation be race-neutral. Id.

With regard to venirepersons Matthew Henry and Muriel Hayes, the State notes that at the trial court level the deputy prosecuting attorneys offered race-neutral explanations for their decision to peremporily excuse Mr. Henry and to peremporily excuse Ms. Hayes. With regard to Mr. Henry, the deputy prosecuting attorneys explained that they peremporily excused him from the jury because they believed that he was inconsistent in answering questions put to him on voir dire regarding whether the accomplice in a robbery-murder was deserving of the same punishment as the principal. (R. 446-47) Review of Mr. Henry's answers to questions put to him on voir dire reveals that there was some inconsistency in his answers regarding the relative culpability of an accomplice and a principal in a robbery-murder. On voir dire examination by the State, Mr. Henry stated that the guilt of an accomplice and a principal in a robbery-murder would be "inseparable." (R. 39) However, when examined on voir dire by defense counsel concerning whether, as a general proposition, an accomplice should receive the same punishment as a principal when the two commit a criminal offense, Mr. Henry seemed to state that an accomplice an a principal might receive different punishment depending upon ". . . the difference in the state of mind." (R. 444) After the State had peremporily challenged Mr. Henry and after argument from counsel on this point, the trial court directed that Mr. Henry be brought back and that further voir dire examination be conducted. In the

course of this additional voir dire Mr. Henry seemed to affirm that when considering what punishment to impose on a defendant guilty of robbery-murder, he would take account of the defendant's "intent." (R. 452-53; 454-55)

With regard to venirewoman Muriel Hayes, one of the deputy prosecuting attorneys explained that she was peremptorily removed from the jury because, ". . . she [Ms. Hayes] said from the start that you would practically have to put a gun to her head in order to get her to give the death penalty." (R. 55) Examination of the record reveals that Ms. Hayes did make this statement. (R. 501)

The State submits that the reasons given by counsel for the State explaining why they peremptorily removed venireperson Matthew Henry and venireperson Muriel Hayes from the jury are, on their face, race-neutral. Because these explanations are race-neutral, the State did not violate Batson v. Kentucky.

With regard to venireperson Irma Johnson, the State notes that after defense counsel made a Batson-based objection to the State's peremptorily removing Ms. Johnson from the jury, the trial court denied the objection on the basis that defense counsel had not established that the State had made a prima facie showing of purposeful racial discrimination by counsel for the State in exercising a peremptory challenge against Ms. Johnson. (R. 226) The State submits that this decision by the trial court was

correct. Examination of the record reveals that Ms. Johnson was the first venireperson examined. Moreover, examination of the State's voir dire of Ms. Johnson does not reveal that she was asked any questions that would indicate that counsel for the State had a racially discriminatory motive for peremptorily excusing her from the jury. Had counsel for the State been asked to provide their explanation for their decision to peremptorily excuse Ms. Johnson from the jury, they doubtlessly would have pointed out that during their voir dire of Ms. Johnson she admitted that in 1992 her nephew was prosecuted for having committed a robbery and that in that same year her sister was prosecuted in federal court for possession of drugs. (R. 216-17)

II.

THE TRIAL COURT DID NOT ERR IN DENYING REAMS' REQUEST THAT THE JURY BE INSTRUCTED WITH THE AFFIRMATIVE DEFENSE TO THE DEATH PENALTY OF MENTAL RETARDATION.

For his second allegation of error appellant Reams asserts that during the penalty phase of his trial the trial court erred in denying his request to instruct the jury on the affirmative defense to the death penalty of mental retardation, as defined in Ark. Code Ann. § 5-4-618 (Repl. 1993). Reams' counsel first requested this jury instruction after the jury had found Reams guilty of capital murder. (R. 820-24) The trial court refused to instruct the jury on the affirmative defense of mental retardation because this defense did not, as a matter of law, exist at the time Reams

committed the capital murder at issue. (R. 825-30) The trial court's decision to refuse to instruct the jury on the affirmative defense to the death penalty of mental retardation was correct for two reasons.

In the first place, the affirmative defense to the death penalty of mental retardation must be raised prior to trial. Arkansas Code Annotated § 5-4-618(d)(1) states, "A defendant on trial for capital murder shall raise the special sentencing provisions of mental retardation by motion prior to trial." Reams did not raise the affirmative defense of mental retardation prior to trial. In fact, just prior to the beginning of the guilt/innocence phase of Reams' trial, his counsel asked the trial court, "Do you want to take up my motion on the retardation aspect if it arises during sentencing?" (R. 605) The trial court replied, "Yes, sir." (R. 605) Affirmative defenses that are not raised in a timely manner are defaulted. See Remeta v. State, 300 Ark. 92, 96-7, 777 S.W.2d 833, 835-36 (1989).

Moreover, Reams admits in his brief that on the date, May 5, 1993, he committed the capital murder at issue the affirmative defense to the death penalty of mental retardation was not in effect. (Reams' brief at page 11-3.) This Court has repeatedly held that sentencing in criminal cases is governed by the substantive sentencing statutes that were in effect on the date the criminal offense at issue was committed. See State v. Dennis, 318 Ark. 80, 883 S.W.2d 811

against cruel and unusual punishment because this aggravating circumstance fails to genuinely narrow the set of all murderers into a subset of murderers that truly deserves to die. In support of this allegation of error Reams relies principally on two cases: 1) Collins v. Lockhart, 754 F.2d 258 (8th Cir.), cert. denied, 474 U.S. 1013 (1985) and 2) State v. Middlebrooks, 840 S.W.2d 317 (Tenn. 1992), cert. dismissed as improvidently granted, 114 S. Ct. 651 (1993). Reams preserved this allegation of error by raising it in a written pretrial motion in which he asked the trial court not to submit the pecuniary gain aggravating circumstance to the jury. (R. 68-71) The trial court denied this motion.

Reams' Collins v. Lockhart-based "double-counting" allegation of error is meritless. In his brief Reams confounds two important case law principles of Eighth and Fourteenth Amendment death penalty jurisprudence. These two case law principles are represented by the United States Supreme Court decisions in Lowenfield v. Phelps, 484 U.S. 231 (1988) and Tison v. Arizona, 481 U.S. 137 (1987). Moreover, Reams further confuses this area of the law by arguing in his brief that the holding of the Tennessee Supreme Court in Middlebrooks, supra, has revived the "double-counting" issue that has been previously laid to rest by the United States Supreme Court, by this Court and by the United States Eighth Circuit Court of Appeals. In the following paragraphs, the State will review the decisions of this Court and of other

courts that resolve the "double-counting" issue in favor of the State, will explain why the Middlebrooks decision has no bearing on Arkansas' death penalty sentencing procedure and will explain why the United States Supreme Court's holding in Tison v. Arizona has nothing to do with the "double-counting" issue.

In essence, the "double-counting" argument asserts that a death penalty is invalid if an aggravating circumstance that the jury considered in the penalty phase of the proceeding was duplicative of an element of the statutory definition of capital murder of which the defendant was convicted. See Collins v. Lockhart, 754 F.2d 258 (8th Cir.), cert. denied, 474 U.S. 1013 (1985) and Robert Weisberg, Deregulating Death 1983 Sup. Ct. Rev. 305, 330-33 (1984). Both the United States Supreme Court, the United States Eighth Circuit Court of Appeals and this Court have specifically rejected the "double-counting" argument. Lowenfield v. Phelps, supra; Perry v. Lockhart, 871 F.2d 1384, 1393-94 (8th Cir.), cert. denied, 493 U.S. 959 (1989); Cox v. State, 313 Ark. 184, 195-96, 853 S.W.2d 266, 271-72 (1993); Ward v. State, 308 Ark. 415, 418-19, 827 S.W.2d 110, 111, cert. denied, 113 S. Ct. 124 (1992); and Ruiz v. State, 299 Ark. 144, 154-55, 772 S.W.2d 297, 302 (1989).

In an effort to dodge this mass of authority Reams has presented in his brief a lengthy argument that confounds two important case law principles of Eighth and Fourteenth

Amendment death penalty jurisprudence. These two case law principles are represented by the United States Supreme Court decisions in Lowenfield v. Phelps, supra, and Tison v. Arizona, 481 U.S. 137 (1987). In the following paragraphs, the State will discuss each of these Eighth Amendment case law principles separately and will explain why Reams' arguments are meritless.

Lowenfield v. Phelps, supra, holds that a state's death penalty sentencing procedure is not violative of the Eighth Amendment merely because an element of the definition of capital murder at issue is duplicated by an aggravating circumstance that a jury is required to find in order to impose the death penalty. That issue in Lowenfield v. Phelps was whether the "double-counting" of an element of the definition of capital murder at issue by an aggravating circumstance violated the Eight Amendment's "genuine narrowing" requirement. The United States Supreme Court has interpreted the Eighth Amendment's prohibition against cruel and unusual punishment to require that a state's death penalty sentencing procedure genuinely narrow the set of all murderers into a subset that truly deserves to die. Tuileapa v. California, 114 S. Ct. 2630, 2635 (1994); Zant v. Stephens, 462 U.S. 862, 877 n.15 (1993); and Godfrey v. Georgia, 446 U.S. 420 (1980).

Reams goes on at some length in his brief in an effort to undermine the correctness of this Court's rejection of the

"double-counting" holding of Collins v. Lockhart, but Reams never explains how it is that this Court can ignore the doctrine of stare decisis and somehow overrule or otherwise just ignore the United States Supreme Court's holding in Lowenfield v. Phelps. What Reams should have done in his brief, rather than pick nits by way of comparing Louisiana's definition of capital felony murder with Arkansas', was to explain how Arkansas' definition of capital felony murder fails to meet the Eight Amendment's "genuine narrowing" test on some basis other than "double-counting." To the extent that Reams did discuss Arkansas' definition of capital felony murder, he confounded the case law requirement of "genuine narrowing" with an entirely separate, threshold Eighth Amendment requirement for capital felony murder, set forth by the United States Supreme Court in Tison v. Arizona, 481 U.S. 137 (1987).

In his brief Reams discusses the United States Supreme Court's holding in Tison v. Arizona and attempts to fit Tison somewhere into his discussion of the Eight Amendment's requirement of "genuine narrowing." Reams' discussion of Tison v. Arizona seems to be premised on his assumption that Tison v. Arizona has something to do with the Eighth Amendment's requirement of "genuine narrowing." Reams' assumption in this regard is wrong. Tison v. Arizona is not a "genuine narrowing" Eighth Amendment case. Tison v. Arizona does not address any "genuine narrowing" issue but,

instead, addresses a threshold issue having to do with whether a defendant who has been found guilty of felony murder is even eligible to be considered for the death penalty. Tuilaepa, 114 S. Ct. at 2634 and U.S. V. Cheely, 36 F.3d 1439, 1442 (9th Cir. 1994). In Tison v. Arizona the United States Supreme Court did not address the "genuine narrowing" issue, but instead, addressed the issue of whether the death penalty is even permitted by the Eighth Amendment as a proportional punishment for certain kinds of felony murder. If a defendant convicted of felony murder does not meet the standards set in Tison, then the defendant is not eligible to be considered for the imposition of the death penalty. To put the matter another way, if a defendant convicted of felony murder does not meet the standard set forth in Tison, then the defendant is not placed into the class of murderers that a state's death penalty sentencing procedure must genuinely narrow into a subset of murderers that truly deserves to die. See Cheely, 37 F.3d at 1442. In Tison the United States Supreme Court held that the Eighth Amendment's prohibition against cruel and unusual punishment prohibits the imposition of the death penalty on the defendant in a felony murder case unless the state proves that the defendant killed the victim or intended that the victim be killed or acted with reckless indifference to the possibility of the victim's death.

The State is not entirely sure of the precise point that

Reams is attempting to make when he cites and discusses Tison v. Arizona. It does not appear to the State that Reams is asserting that his conduct does not meet the standard set in Tison v. Arizona. Moreover, it does not seem to the State that Reams is asserting that Arkansas' definition of capital felony murder, as it stood in May of 1993 when Reams committed the capital murder at issue, failed to meet the Tison standard. If Reams were making such an argument, it would be meritless. This Court has held that Arkansas' definition of capital felony murder does meet the standard set in Tison v. Arizona. This Court so held in Burnett v. State, 295 Ark. 401, 411-12, 749 S.W.2d 308, 314 (1988). Accord Fairchild v. Norris, 21 F.3d 299 (8th Cir. 1994).[1]

---

[1]The definition of capital felony murder at issue in this case is codified as Ark. Code Ann. § 5-10-101(a)(1)(Repl. 1993). This definition of capital felony murder states:

> A person commits capital murder if: acting alone or with one (1) or more other persons, he commits or attempts to attempt rape, kidnapping, arson, vehicular piracy, robbery, burglary, ...or escape in the first degree, and in the course of and in furtherance of the felony, or in immediate flight therefrom, he or an accomplice causes the death of any person under circumstances manifesting extreme indifference to the value of human life...

The State submits that Arkansas' present definition of capital felony murder as it exists today performs the requisite genuine narrowing of the set of all murderers into a subset that truly deserves to die because Arkansas' definition of capital felony murder includes the attendant circumstance of "under circumstances manifesting extreme indifference to the value of human life" and this Court has interpreted this attendant circumstance to be the equivalent of the culpable mental state of intent.

Prior to the landmark decision of Furman v. Georgia, 408 U.S. 238 (1972), capital murder in Arkansas was defined in Arkansas Statute Annotated § 41-2205 (Repl. 1964) as follows:

> All murder which shall be perpetrated by means of poison, or by lying in wait, or by any other kind of wilful, deliberate, malicious and premeditated killing, or which shall be committed in the perpetration of or in the attempt to perpetrate, arson, rape, robbery, burglary or larceny, shall be deemed murder in the first degree.

In 1975, three years after Furman, Arkansas narrowed the definition of capital felony murder by reformulating the offense into the form it now has. Specifically, Arkansas narrowed its definition of capital felony murder by adding the attendant circumstances of ". . . under circumstances manifesting extreme indifference to the value of human life . . . ." See n.1, supra. Reams seems to argue that this attendant circumstance amounts to nothing more than the culpable mental state of "recklessly" and that all felony

murders occur "under circumstances manifesting extreme indifference to the value of human life." This implication is incorrect. This Court has interpreted the attendant circumstance "under circumstances manifesting extreme indifference to the value of human life" set forth in the statutory definition of first degree battery as being the equivalent of the culpable mental state of "intention." This Court has so held in the cases of Nolen v. State, 278 Ark. 17, 21-2, 643 S.W.2d 257, 259-60 (1982) and State v. Vowell, 276 Ark. 258, 634 S.W.2d 118 (1982). Both Nolen and Vowell involved defendants who, while driving while intoxicated, caused automobile crashes, thereby causing injury to other persons. Although neither Nolen nor Vowell were cases involving a charge of felony murder, in both cases this Court stated that it considered the attendant circumstance "under circumstances manifesting extreme indifference to the value of human life" to be in the nature of a culpable mental state and to be akin to intentional conduct. Accord Tigue v. State, 319 Ark. 147, 151, 889 S.W.2d 760, 762 (1994) and Weger v. State, 315 Ark. 555, 560-61, 869 S.W.2d 688, 690 (1994). The limitation imposed on the definition of capital felony murder by this Court's interpretation in Nolen and Vowell of the attendant circumstance "under circumstances manifesting extreme indifference to the value of human life" distinguishes Arkansas' capital punishment sentencing procedure from that

in other jurisdictions, notably Tennessee and Wyoming. Reams relies on recent state supreme court decisions from these two states to buttress his contention that Arkansas' capital punishment sentencing procedure does not perform the requisite genuine narrowing.

The state supreme court decisions that Reams relies on are the decisions by the Tennessee Supreme Court in State v. Middlebrooks, 840 S.W.2d 317 (Tenn. 1992), cert. dismissed as improvidently granted, 114 S. Ct. 651 (1993) and by the Wyoming Supreme Court in Engberg v. Meyer, 820 P.2d 70 (Wyo. 1991) The definitions of capital felony murder at issue in Middlebrooks and Engberg did not have the attendant circumstance of the "under circumstances manifesting extreme indifference to the value of human life," much less an interpretation of that attendant circumstance that treated it as the equivalent of the culpable mental state of intent. The definition of capital felony murder at issue in Middlebrooks defined the offense, in pertinent part, as, "[e]very murder . . . committed in the perpetration of, or attempt to perpetrate, any murder in the first degree, arson, rape, robbery, burglary, larceny, kidnapping, aircraft piracy, or the unlawful throwing, placing or discharging of a destructive device or bomb." Middlebrooks, 840 S.W.2d at 335-36. The definition of capital robbery murder at issue in Engberg defined the offense as, "[w]hoever . . . in the perpetration of, or attempt to perpetrate, any . . . robbery

. . . kills any human being . . . is guilty of murder in the first degree." Engberg 820 P.2d at 87. Given the interpretation of the attendant circumstance, "under circumstances manifesting extreme indifference to the value of human life" by this Court in Nolen and Vowell, Arkansas' definition of capital felony murder is substantially narrower than the definition of capital felony murder at issue in Middlebrooks and at issue in Engberg.

Reams makes much of the fact that Arkansas has a "weighing" component in its death penalty sentencing procedure. By statute Arkansas requires that jurors who are deliberating whether to impose the death penalty on a defendant weigh the aggravating circumstances present and also requires that the jurors unanimously conclude that the aggravating circumstances outweigh the mitigating circumstances beyond a reasonable doubt. Arkansas Code Annotated § 5-4-603(a)(2) (Repl. 1993). This balancing component is not required by the Eighth Amendment. See Harris v. Alabama, 115 S. Ct. 1031, 1035-36 (1995) and Zant v. Stephens, 462 U.S. 862, 875 n.13 (1983). Reams uses the United States Supreme Court's decision in Stringer v. Black, 503 U.S. ___, 112 S. Ct. 1130, 117 L.Ed.2d 367 (1992) as the spearhead of his attack.

In Stringer v. Black the issue was whether the Supreme Court's decisions in Maynard v. Cartwright, 486 U.S. 356 (1988) and Clemons v. Mississippi, 494 U.S. 738 (1990)

established a "new rule" for purposes of the application of the retroactivity doctrine set forth in Teague v. Lane, 489 U.S. 288 (1989) with regard to the claim by a Mississippi death row inmate that his death sentence was invalid because the jury that sentenced him to death had weighed an invalid aggravating circumstance. In Stringer v. Black the Supreme Court held that Maynard v. Cartwright and Clemons v. Mississippi did not establish a "new rule" for Teague v. Lane retroactivity purposes and, therefore, the defendant's death sentence was violative of the Eighth Amendment because the jury weighed an invalid aggravating circumstances. In its opinion in Stringer v. Black the Supreme Court noted that the issue present in the case had little to do with the "genuine narrowing" issue that was decided in Lowenfield v. Phelps. Stringer v. Black, 112 S. Ct. at 1139, 117 L.Ed.2d at 382. Appellee Norris makes the same observation about the argument based on Stringer v. Black presented by Reams, it has very little to do with the Eighth Amendment genuine narrowing issue that is before this Court in the instant case.

The "weighing" component of the various capital punishment sentencing procedures that were at issue in Stringer v. Black and the Supreme Court's prior decisions leading to Stringer v. Black were the focus of Eighth Amendment analysis by the Supreme Court solely because the jurors' weighing of aggravating circumstances in the respective cases was alleged to be violative of the Eighth

Amendment because, in each case, the jury had considered an invalid aggravating circumstance. The invalid circumstance at issue in Stringer v. Black, in Maynard v. Cartwright and in Clemons v. Mississippi was the aggravating circumstance of "especially heinous, atrocious, or cruel." In Maynard v. Cartwright the Supreme Court had held that this aggravating circumstance was invalid because it was so vague that a person of ordinary sensibility could find the aggravating circumstance present in almost every murder. Maynard v. Cartwright, 486 U.S. at 363-64. Whatever else Reams has had to say about the aggravating circumstances of "murder committed for pecuniary gain," the aggravating circumstance involved in the instant case, Reams has not stated that it was so vague that a person of ordinary sensibility could find it present in almost every murder.

If, as the State contends, the statutory definition of robbery-murder set forth in Ark. Code Ann. § 5-10-101(a)(2) (Repl. 1993) performs the genuine narrowing required by the Eighth Amendment, then the "weighing" component of Arkansas' death penalty sentencing procedure is not tainted. If the statutory definition of robbery-murder performs the genuine narrowing required by the Eighth Amendment, then "pecuniary gain" need not perform any further "genuine narrowing"

function.[2] If valid aggravating circumstances are weighed by the jury, then Stringer v. Black and the Supreme Court's decisions leading to it are not applicable.

IV.

THIS COURT DOES NOT CONDUCT A PROPORTIONALITY REVIEW OF DEATH SENTENCES.

For his fourth allegation of error appellant Reams asserts that his death sentence is invalid because it is unduly harsh in that it is out of proportion to his participation in the murder at issue. In his brief invites this Court to compare the facts of his case to those of other cases in which this Court has invalidated death sentences on the basis that the death sentence was too harsh, given the defendant's relatively less culpable role in the murder at issue. See, e.g., Henry v. State, 278 Ark. 478, 488-89, 647 S.W.2d 419, 425, cert. denied, 464 U.S. 835 (1983).

Reams' contention that the death sentence imposed on him, when compared to the death sentences imposed on the

---

[2]"Pecuniary gain" is a valid aggravating circumstance. See Woodard v. State, 261 Ark. 895, 905-06, 557 S.W.2d 259, 265 (1977), cert. denied, 439 U.S. 1122 (1979) and Neal v. State, 259 Ark. 27, 32, 531 S.W.2d 17, 20 (1979). See generally James R. Acker and C.S. Lanier, "Passing This Lexicon of Death": Aggravating Factors in Capital Sentencing Statutes, 30 Crim. Law Bulletin 107, 135-38 (1994).

1513

other inmates on Arkansas' Death Row, is unduly harsh is not an allegation of error that Reams can pursue before this Court. This Court has recently held that it will no longer conduct comparative review of death sentences. Sasser v. State, CR 94-933, slip op. at 13-4 (July 17, 1995) and Williams v. State, CR 93-988 slip op. at 10-11 (July 10, 1995). Comparative review of death sentences by an appellate court is not required by the Eighth and Fourteenth Amendments' prohibition against cruel and unusual punishment. Pulley v. Harris, 465 U.S. 37 (1984) and Wainwright v. Norris, 872 F. Supp. 574, 596 (E.D. Ark. 1994).

V.

THE JURY GAVE ADEQUATE CONSIDERATION TO THE MITIGATING CIRCUMSTANCE OF APPELLANT REAMS' AGE.

For his fifth allegation of error appellant Reams asserts that the jury erred in its penalty phase deliberations when it concluded that Reams had introduced some evidence of his youth but that this evidence did not amount to a mitigating circumstance. (R. 161-62) In his brief Reams asserts that the jury was required to find that Reams' age at the time he committed the murder at issue, eighteen years of age, was a mitigating circumstance. During the guilt/innocence phase of the trial, Reams testified that he was then eighteen years of age and that he had been born on December 21, 1974. Reams' trial was held in Jefferson County Circuit Court on December 13-5, 1993. Therefore, at the time of his trial Reams was approximately one week away

from his nineteenth birthday and at the time he committed the murder at issue, May 5, 1993, he had been eighteen years of age for approximately four and one-half months.

Reams is procedurally barred from obtaining relief from this Court on the basis of this allegation of error. In any event, Reams' contention that the jury was required to conclude that his age was a mitigating circumstance is erroneous.

Reams is procedurally barred from obtaining relief on the basis of this allegation of error because he never raised it at the trial court level. Reams could have raised this issue at the time the trial court asked Reams ". . . is there any legal reason that you can think of that the Court should not impose sentence at this time?" (R. 917) Reams did not take advantage of his opportunity to object to his death sentence on the basis that the jury had erred in failing to determine that proof of his age amounted to an aggravating circumstance. Because Reams never raised this issue before the trial court, he is procedurally barred from obtaining relief from this Court on the basis of this allegation of error. Even in death penalty cases, in order to preserve allegations of error for review by this Court, a defendant must have raised the allegation of error at the trial court level by having made a specific, timely objection. See Parker v. State, 292 Ark. 421, 436, 731 S.W.2d 756, 764 (1987) and Fretwell v. State, 289 Ark. 91, 98, 708 S.W.2d

630, 634 (1986).

In any event, Reams' allegation of error is meritless. Reams' argument amounts to an assertion that the defendant's youth is an "automatic" mitigating circumstance that the jury must find if the defendant introduces proof that he is a teenager. The defendant's relative youth is not an "automatic" mitigating circumstance. This Court has specifically held that if a defendant in a death penalty case introduces proof of his youth, the jury is not required to find that the defendant's youth was a mitigating circumstance. Hill v. State, 289 Ark. 387, 396, 703 S.W.2d 233, 237-38 (1986), cert. denied, 479 U.S. 1101 (1987).

VI.

THE VERDICT FORM FILLED OUT BY THE JURY IN THE PENALTY PHASE OF APPELLANT REAMS' TRIAL DID NOT LEAVE MEMBERS OF THE JURY WITH THE IMPRESSION THAT EACH JUROR COULD NOT CONSIDER EVIDENCE OF A MITIGATING CIRCUMSTANCE UNLESS THE JURY UNANAMOUSLY AGREED THAT THE EVIDENCE PROVED THE MITIGATING CIRCUMSTANCE EXISTED.

For his sixth allegation of error appellant Reams asserts that the part of the verdict form that the trial court gave the jury in the penalty phase of his trial that sets forth the mitigating circumstances was a violative of the Eighth and Fourteenth Amendments. According to Reams, the verdict form that the trial court gave the jury regarding mitigating circumstances was phrased in such a way so as to inform each juror that he or she could not consider evidence of a mitigating circumstance unless all the jurors unanimously agreed that the evidence supported the finding of

the mitigating circumstance. Reams cites as authority for this argument the United States Supreme Court decision in Mills v. Maryland, 486 U.S. 367 (1988). In Mills v. Maryland the United States Supreme Court held that the Eighth and Fourteenth Amendments' prohibition against cruel and unusual punishment prohibited a trial court from instructing the jurors in the penalty phase of a death penalty case that each juror could not consider evidence of a mitigating circumstance unless all the jurors unanimously agreed that the mitigating evidence amounted to a mitigating circumstance.

Reams is procedurally barred from obtaining relief from this Court on the basis of this allegation of error. In any event, this allegation of error is meritless.

Reams' counsel never made a Mills v. Maryland-based objection at the trial court level to the verdict form or the jury instructions pertaining to mitigating circumstances. Because Reams' trial counsel did not make this objection at the trial court level, Reams is procedurally barred from obtaining relief on the basis of this allegation of error. See Parker v. State, 292 Ark. 421, 436, 731 S.W.2d 756, 764 (1987) and Fretwell v. State, 289 Ark. 91, 98, 708 S.W.2d 630, 634 (1986). In any event, had Reams' counsel made a Mills v. Maryland-based objection to the instructions that the trial court gave the jury defining mitigating circumstances, such an objection would have been meritless.

This Court has specifically rejected a Mills v. Maryland-based challenge to the standard jury instructions and verdict forms that are given to juries in Arkansas death penalty cases. Pickens v. State, 301 Ark. 244, 249, 783 S.W.2d 341, 344, cert. denied, 497 U.S. 1011 (1990). Accord Ruiz v. Norris, 868 F. Supp. 1471, 1533-48 (E.D. Ark. 1994) and Parker v. Norris, 859 F. Supp. 1203, 1223-24 (E.D. Ark. 1994).

VII.

THE JURY RECEIVED ADEQUATE INSTRUCTIONS REGARDING ITS CONSIDERATION OF NONSTATUTORY MITIGATING EVIDENCE.

For his seventh allegation of error appellant Reams asserts that the verdict form that the trial court gave the jury during the penalty phase of his trial pertaining to mitigating circumstances was violative of the Eighth and Fourteenth Amendments. According to Reams, the verdict form that the trial court gave the jury regarding mitigating circumstances was phrased in such a way so as to preclude the jurors from considering evidence of mitigating circumstances that were not specifically listed on the verdict form.

Appellant Reams is procedurally barred from obtaining relief from this Court on the basis of this allegation of error. In any event, this allegation of error is meritless.

Reams' counsel never objected at the trial court level to the part of the verdict form pertaining to mitigating circumstances nor did Reams' counsel object to the trial court's instructions to the jury pertaining to mitigating

circumstances on the basis that either the verdict form or the jury instructions were phrased in such a way that the jury was prohibited from considering evidence of mitigating circumstances unless those circumstances were specifically listed on the verdict form. Because Reams' trial counsel did not make an objection on this basis at the trial court level, Reams is procedurally barred from obtaining relief on the basis of this allegation of error. See Parker v. State, 292 Ark. 421, 436, 731 S.W.2d 756, 764 (1987) and Fretwell v. State, 289 Ark. 91, 98, 708 S.W.2d 630, 634 (1986).

In any event, had Reams' counsel objected to the part of the verdict form pertaining to mitigating circumstances or had Reams' counsel objected to the trial court's instructions to the jury pertaining to mitigating circumstances on the basis that either was phrased in such a way so as to preclude the jurors from considering evidence of a mitigating circumstance unless that circumstance was listed on the verdict form, such allegation of error would have been meritless. This Court has specifically rejected this attack on the standard jury instructions and the verdict forms pertaining to mitigating circumstances that are given to juries in Arkansas death penalty cases. Dansby v. State, 319 Ark. 506, 525-29, 893 S.W.2d 331, 341-43 (1995).

VIII.

THE JURY DID NOT ERR IN EVALUATING THE STATE'S PROOF OF AGGRAVATING CIRCUMSTANCES AND APPELLANT REAMS' PROOF OF MITIGATING CIRCUMSTANCES.

If this Court affirms Reams' death sentence, then this Court could compare Reams' death sentence to that received by other inmates on death row in order to make certain that Reams' death sentence is proportional when compared to death sentences received by other inmates on death row who committed murders similar to that committed by Reams. However, this Court has recently held that it will no longer conduct proportionality review of death sentences. Sasser v. State, CR 94-933, slip op. at 13-4 (July 17, 1995). But, this Court has stated that in death penalty cases it will continue to review ". . . the aggravating and mitigating circumstances presented to the jury and a harmless error review of the jury's findings." Williams v. State, CR 93-988, slip op. at 10-11 (July 10, 1995). The State submits that the jury properly evaluated the State's proof of aggravating circumstances and Reams' proof of mitigating circumstances.

In the penalty phase of Reams' trial the jury found two aggravating circumstances: 1) that Reams had committed the murder at issue in order to realize a pecuniary gain and 2) that Reams had previously committed another felony, an element of which was the use or threat of violence to another person for the creation of a substantial risk of death or serious physical injury to another person. (R. 158) The "pecuniary gain" aggravating circumstance is set forth in Ark. Code Ann. § 5-4-604(6) (Repl. 1993). There was

substantial evidence before the jury from which it could infer that Reams was an accomplice to the murder at issue and that the motive for Reams and his co-defendant to commit the murder was their desire to steal cash from the victim. In the guilt/innocence phase of the trial, Reams himself took the stand and admitted that he and his co-defendant planned to commit an aggravated robbery at a bank automatic teller machine because his co-defendant had told him (Reams) ". . . he needed the money for his graduation." (R. 731) Reams testified further that he and his co-defendant, who was armed with a .32 revolver waited at a local automatic teller machine for someone to drive up so they could rob them. (R. 734-36) Reams testified further that:

> . . . about three or four minutes later someone was pulling up to the teller machine. We looked up and Alford (Reams' co-defendant) said, "This is a lick right there. Let's do this person. Let's rob this person." So we got up. We walked across the street. Alford was in front. We walked across the street towards the man in the truck.

(R. 736)

The aggravating circumstance of "prior violent felony" is set forth in Ark. Code Ann. § 5-4-604(3) (Repl. 1993). During the penalty phase of Reams' trial the State introduced proof that Reams had two prior convictions for aggravated robbery. (R. 849-50; 973-74) This Court has held that the State's proof that the defendant has prior convictions for robbery constitutes proof of the "prior violent felony"

aggravating circumstance because the threat of violence is inherent in the definition of robbery. See Whitmore v. State, 296 Ark. 308, 314, 756 S.W.2d 890, 894 (1988); Henderson v. State, 281 Ark. 406, 410-11, 664 S.W.2d 451, 454 (1984); and Hill v. State, 278 Ark. 194, 200-01, 644 S.W.2d 282, 285 (1983). Moreover, the prior felony that the State proved Reams had committed two times previously, aggravated robbery, is defined in Ark. Code Ann. § 5-12-103(a) (Repl. 1993) in such a way that a defendant cannot commit this offense unless he is armed with a deadly weapon or represents that he is so armed or inflicts or attempts to inflict death or serious physical injury upon another person.[3]

The State submits that examination of the part of the verdict form pertaining to mitigating circumstances that the jury filled out during its penalty phase deliberation reveals that the jury carefully weighed the mitigating evidence that

---

[3]Arkansas Code Annotated § 5-12-103(a) (Repl. 1993) defines aggravated robbery as follows:

> A person commits aggravated robbery if he commits robbery as defined in § 5-12-102, and he:
>
> Is armed with a deadly weapon or represents by word or conduct that he is so armed; or
>
> Inflicts or attempts to inflict death or serious physical injury upon another person.

Reams had introduced. The part of the verdict form that pertains to mitigating circumstances appears in the abstract that Reams has prepared at pages xxxv-xxxvi and at R. 159-163. Examination of the part of the verdict form dealing with mitigating circumstances that the jury filled out during its penalty phase deliberations reveals that the jurors carefully evaluated Reams' mitigating evidence. The jury did not unanimously find that Reams' mitigating evidence amounted to a mitigating circumstance or circumstances. (R. 159-60) However, one or more members of the jury did find that Reams put on sufficient mitigating evidence to prove the mitigating circumstances that the murder was committed while Reams' capacity to appreciate the wrongfulness of his conduct was impaired as a result of mental defect, intoxication or drug abuse and that Reams has abilities that would allow him to be a productive member of society even in prison. (R. 160-61) Moreover, some members of the jury found there was some evidence of six mitigating circumstances, but the jury unanimously agreed that this mitigating evidence did not amount to proof of any of the mitigating circumstances. (R. 161-62) The mitigating circumstances that Reams did not prove, but that he at least put on some evidence of, were as follows: 1) the capital murder was committed while Reams was under extreme mental or emotional disturbance; 2) the capital murder was committed while Reams was acting under unusual pressures or influences or under the domination of another

Ark. Code Ann. § 16-91-113(a) (1987), Arkansas Rule of Criminal Procedure 36.24 and Arkansas Supreme Court Rule 4-3(h), the State has reviewed the entire record of appellant Reams's trial in Jefferson County Circuit Court. Pursuant to the authority noted above, appellant Reams has presented with his brief an abstract that sets forth all the rulings made by the Jefferson County Circuit Court that were adverse to him. The State has prepared a brief supplemental abstract. Pursuant to the authority noted above, the State has briefed the seven issues raised by appellant Reams. The State has added an additional issue in which the State discusses the jury's evaluation during the penalty phase of Reams' trial of the State's proof of aggravating circumstances and Reams' proof of mitigating circumstances. Based upon its counsel's examination of the entire record in the instant case, the State believes that there are no other issues in this case, other than those addressed by the parties, that involve potentially prejudicial error to appellant Reams.

In closing, the State notes that, pursuant to the authorities noted above, its obligation to assist this Court in reviewing appellant Reams' trial to make certain that no prejudicial error occurred extends only to actual rulings made by the trial court that were adverse to Reams and does not extend to potential errors that could have been brought to the trial court's attention in a specific, timely manner, but were not. It is well established that defendants in

cases reviewed pursuant to the authorities noted above must make proper contemporaneous objections at trial in order to preserve claims of error for review by this Court on direct appeal. Greene v. State, 317 Ark. 350, 353, 878 S.W.2d 384, 386 (1994); Parker v. State, 292 Ark. 421, 436, 731 S.W.2d 756, 764 (1987); and Fretwell v. State, 289 Ark. 91, 98, 708 S.W.2d 630, 634 (1986).

IN THE SUPREME COURT OF ARKANSAS

KENNETH REAMS APPELLANT

v. CR 94-558

STATE OF ARKANSAS APPELLEE

PETITION FOR REHEARING

Comes now the appellant, by and through counsel, Maxie G. Kizer, and for his petition for rehearing, states:

I.

In its November 6 opinion affirming the conviction and sentence in this case, the court made several errors of law and fact in its ruling on the argument based on *Batson v. Kentucky*, 476 U.S. 79 (1986). The first error is the court's application of *Franklin v. State*, 314 Ark. 329, 863 S.W.2d 268 (1993). That case was cited by the appellant for the proposition that one peremptory strike exercised for racial reasons was enough to make out a prima facie case under *Batson*. In *Franklin* the first black venire person called was struck by the state in a case where there were racial overtones. It was the appellant's position that the same thing happened in this case. As noted on page 6 of the appellant's brief, there were racial overtones in this case, also. It was known by the parties during voire that the victim was white and the appellant black and that there would be testimony later that the co-defendant, the actual shooter, told the appellant that he shot the victim because the white victim called him a "nigger." (T. 740)

The court misunderstood the point being made when on page 6 of the opinion it distinguished *Franklin* by saying that in that case the first black venire person was not the first venire person called and that this court's decision was based on the eventual seating of an all white jury. First of all, it makes no difference to the decision in *Franklin* or here whether the first black venire person called is

III.

Pursuant to Ark.Sup.Ct.R. 2-3(g), the case is not be reargued in a petition for rehearing. Errors of law and fact are to be pointed out. Further, pursuant to Ark.Sup.Ct.R. 2-3(h), errors of fact said to have been overlooked are not to be pointed out unless those facts were properly abstracted in accordance with the rules of this court. The appellant has pointed out both legal and factual errors in the court's opinion, and the facts referred to were clearly abstracted.

WHEREFORE, the appellant respectfully prays the court to grant his petition for rehearing, vacate its opinion and reverse and remand this case to the lower court for a new trial.

Respectfully submitted,

Maxie G. Kizer, Esq.
Ark. Bar Reg. No. 83101
721 Pine Street - Post Office Box 7423
Pine Bluff, Arkansas 71611
(501) 534-7004

*Attorney for Appellant*

CERTIFICATE OF MERIT

I, Maxie G. Kizer, do hereby certify my belief that there is merit in this petition and further state that it is not filed for the purpose of delay.

Maxie G. Kizer

CERTIFICATE OF SERVICE

I, Maxie G. Kizer, do hereby certify that I have served this petition on the appellee herein by placing a copy of the same in the box in the office of the clerk used by the Attorney General's office to accept service of pleadings on this 22th day of November, 1995.

Maxie G. Kizer

IN THE SUPREME COURT OF ARKANSAS

KENNETH REAMS APPELLANT

v. CR 94-558

STATE OF ARKANSAS APPELLEE

PETITION FOR REHEARING

Comes now the appellant, by and through counsel, Maxie G. Kizer, and for his petition for rehearing, states:

I.

In its November 6 opinion affirming the conviction and sentence in this case, the court made several errors of law and fact in its ruling on the argument based on *Batson v. Kentucky*, 476 U.S. 79 (1986). The first error is the court's application of *Franklin v. State*, 314 Ark. 329, 863 S.W.2d 268 (1993). That case was cited by the appellant for the proposition that one peremptory strike exercised for racial reasons was enough to make out a prima facie case under *Batson*. In *Franklin* the first black venire person called was struck by the state in a case where there were racial overtones. It was the appellant's position that the same thing happened in this case. As noted on page 6 of the appellant's brief, there were racial overtones in this case, also. It was known by the parties during voire that the victim was white and the appellant black and that there would be testimony later that the co-defendant, the actual shooter, told the appellant that he shot the victim because the white victim called him a "nigger." (T. 740)

The court misunderstood the point being made when on page 6 of the opinion it distinguished *Franklin* by saying that in that case the first black venire person was not the first venire person called and that this court's decision was based on the eventual seating of an all white jury. First of all, it makes no difference to the decision in *Franklin* or here whether the first black venire person called is

the first venire person called or not. The point of the decision is that exercising a peremptory strike in such a racially charged atmosphere established a prima facie case of the unconstitutional use of peremptory strikes along racial lines. Granted, the jury in *Franklin* was all white, but it was not all white at the time a prima facie case under *Batson* was made, and it was held to have been made after the first black venire person was struck by use of a peremptory.

II.

The court next made a factual error in its treatment of the *voire dire* examination of Venireman Matthew Henry, one of two blacks the appellant contends was unconstitutionally excluded by the use of a peremptory challenge for racial reasons. Although it is not completely clear, it appears that on pages 7 and 8 of the opinion that the court found that Mr. Henry actually said that he could not impose the death penalty if the appellant were not shown to have been the trigger man. That is not a conclusion that is supported by the record. As noted on page 2 of the appellant's brief, when asked by the prosecutor if he would require the state to show that the appellant had been the person who pulled the trigger in this case, Mr. Henry stated, "That wouldn't be necessary." (T. 451, 452) When the trial court stated that it was not satisfied with the state's so-called race neutral explanation, it was obviously as much a ruling on the examination of Mr. Henry and the facts in that regard as it was of the prosecutor's explanation.

By ruling as it did, the court disregarded an implicit ruling of the trial court that Mr. Henry did not say that he would require the state to prove the appellant to have been the trigger man in order to impose the death penalty. As is so fundamental as to require no citation of authority, this court does not overturn the exercise of a trial court's discretion in the absence of a clear abuse thereof. In this case, where the trial court heard and saw this venire person examined, it cannot be said that the trial court's ruling in this regard was an abuse of discretion.

III.

Pursuant to Ark.Sup.Ct.R. 2-3(g), the case is not be reargued in a petition for rehearing. Errors of law and fact are to be pointed out. Further, pursuant to Ark.Sup.Ct.R. 2-3(h), errors of fact said to have been overlooked are not to be pointed out unless those facts were properly abstracted in accordance with the rules of this court. The appellant has pointed out both legal and factual errors in the court's opinion, and the facts referred to were clearly abstracted.

WHEREFORE, the appellant respectfully prays the court to grant his petition for rehearing, vacate its opinion and reverse and remand this case to the lower court for a new trial.

Respectfully submitted,

Maxie G. Kizer, Esq.
Ark. Bar Reg. No. 83101
721 Pine Street - Post Office Box 7423
Pine Bluff, Arkansas 71611
(501) 534-7004

*Attorney for Appellant*

CERTIFICATE OF MERIT

I, Maxie G. Kizer, do hereby certify my belief that there is merit in this petition and further state that it is not filed for the purpose of delay.

Maxie G. Kizer

CERTIFICATE OF SERVICE

I, Maxie G. Kizer, do hereby certify that I have served this petition on the appellee herein by placing a copy of the same in the box in the office of the clerk used by the Attorney General's office to accept service of pleadings on this 22th day of November, 1995.

Maxie G. Kizer

IN THE SUPREME COURT OF ARKANSAS

KENNETH REAMS — APPELLANT

V. — NO. CR 94-558

STATE OF ARKANSAS — APPELLEE

**MOTION FOR ENTRY OF APPEARANCE**

Comes Deborah Sallings of the Arkansas Capital Resource Center, Inc., and moves this Court to enter her appearance as counsel in the above-styled case. Ms. Sallings is authorized to state that Appellant's attorney in the appeal of this matter, Maxie G. Kizer, does not object to the entry of her appearance.

This entry of appearance does not constitute a request for authorization for public funds to be allotted to Ms. Sallings for her work on the above-styled case.

WHEREFORE, Deborah Sallings respectfully requests that this Court enter her appearance as counsel for Kenneth Reams in this case.

KENNETH REAMS

By: Deborah Sallings

Deborah Sallings
Ark. Bar No. 80127
Ark. Capital Resource Center, Inc.
1500 Riverfront Dr., Suite 118
Little Rock, AR 72202
(501) 663-1440

1995 NOV 22 AM 10: 42
LESLIE W. STEEN, CLERK
RECEIVED SUPREME COURT OF ARKANSAS

**CERTIFICATE OF SERVICE**

I hereby certify that true and correct copy of the foregoing Motion for Entry of Appearance was hand delivered to the attorney for Appellee, Hon. Winston Bryant, Attorney General., 200 Tower Building, 323 Center Street, Little Rock, AR 72201, this 22nd day of November, 1995.

Deborah Sallings
Deborah Sallings

IN THE SUPREME COURT OF ARKANSAS

KENNETH REAMS APPELLANT

V. NO. CR 94-558

STATE OF ARKANSAS APPELLEE

'95 NOV 22 AM 10:42

PETITION FOR STAY OF MANDATE

Comes Kenneth Reams, by and through his attorney, Deborah Sallings, and for his Petition to Stay Mandate states:

1. Appellant's conviction and sentence of death for capital murder were affirmed by this Court by opinion rendered on November 6, 1995. A timely petition for rehearing was filed in this case on November 22, 1995, and is pending.

2. If the Petition for Rehearing is denied, or if the judment of this Court is affirmed after reharing, Appellant plans to petition the United States Supreme Court for a writ of certiorari. The time for filing a petition for writ of certiorari will not expire until ninety days after this Court issues its decision on the rehearing petition.

3. The undersigned certifies to the Court that a petition for writ of certiorari will be filed within the time permitted by the Rules of the United States Supreme Court.

4. The petition for writ of certiorari is meritorious and is not brought for purposes of delay. Among the issues to be raised will be whether the State unconstitutionally used its peremptory challenges to exclude blacks from Appellant's jury, in violation of the rule in *Hernandez v. New York*, 500 U.S. 352 (1991), and various other issues.

5. Counsel is authorized to state that she has spoken with counsel for the Respondent, Clint Miller, Senior Assistant Attorney General, who has stated that the State does not oppose the granting of a stay of mandate to petition for a writ of certiorari.

6. Appellant therefore requests that, if rehearing is denied, or if the judgment of the Court is affirmed on rehearing, the mandate of this Court be stayed pending resolution of his petition for writ of certiorari to be filed in the United States Supreme Court.

WHEREFORE, Appellant prays that the mandate of this Court be stayed until a final decision by the United States Supreme Court in Appellant's case.

KENNETH REAMS

By: Deborah Sallings
Deborah Sallings
Ark. Bar No. 80127
Ark. Capital Resource Center, Inc.
1500 Riverfront Dr., Suite 118
Little Rock, AR 72202
(501) 663-1440

**ATTORNEY FOR APPELLANT**

**CERTIFICATE OF SERVICE**

I hereby certify that true and correct copy of the foregoing Petition for Stay of Mandate was hand delivered to counsel for Appellee, Hon. Winston Bryant, Attorney General, Tower Building, 323 Center Street, Little Rock, AR 72201, this 22nd day of November, 1995.

Deborah Sallings
Deborah Sallings

IN THE SUPREME COURT OF ARKANSAS

KENNETH REAMS APPELLANT

V. NO. CR 94-558

STATE OF ARKANSAS APPELLEE

PETITION FOR STAY OF MANDATE

Comes Kenneth Reams, by and through his attorney, Deborah Sallings, and for his Petition to Stay Mandate states:

1. Appellant's conviction and sentence of death for capital murder were affirmed by this Court by opinion rendered on November 6, 1995. A timely petition for rehearing was filed in this case on November 22, 1995, and is pending.

2. If the Petition for Rehearing is denied, or if the judment of this Court is affirmed after reharing, Appellant plans to petition the United States Supreme Court for a writ of certiorari. The time for filing a petition for writ of certiorari will not expire until ninety days after this Court issues its decision on the rehearing petition.

3. The undersigned certifies to the Court that a petition for writ of certiorari will be filed within the time permitted by the Rules of the United States Supreme Court.

4. The petition for writ of certiorari is meritorious and is not brought for purposes of delay. Among the issues to be raised will be whether the State unconstitutionally used its peremptory challenges to exclude blacks from Appellant's jury, in violation of the rule in *Hernandez v. New York*, 500 U.S. 352 (1991), and various other issues.

5. Counsel is authorized to state that she has spoken with counsel for the Respondent, Clint Miller, Senior Assistant Attorney General, who has stated that the State does not oppose the granting of a stay of mandate to petition for a writ of certiorari.

6. Appellant therefore requests that, if rehearing is denied, or if the judgment of the Court is affirmed on rehearing, the mandate of this Court be stayed pending resolution of his petition for writ of certiorari to be filed in the United States Supreme Court.

WHEREFORE, Appellant prays that the mandate of this Court be stayed until a final decision by the United States Supreme Court in Appellant's case.

KENNETH REAMS

By: [signature]
Deborah Sallings
Ark. Bar No. 80127
Ark. Capital Resource Center, Inc.
1500 Riverfront Dr., Suite 118
Little Rock, AR 72202
(501) 663-1440

**ATTORNEY FOR APPELLANT**

**CERTIFICATE OF SERVICE**

I hereby certify that true and correct copy of the foregoing Petition for Stay of Mandate was hand delivered to counsel for Appellee, Hon. Winston Bryant, Attorney General, Tower Building, 323 Center Street, Little Rock, AR 72201, this 22nd day of November, 1995.

[signature]
Deborah Sallings

IN THE SUPREME COURT OF ARKANSAS

KENNETH REAMS PETITIONER/APPELLANT

V. CASE NO. CR 94-558

STATE OF ARKANSAS RESPONDENT/APPELLEE

**RESPONSE TO PETITION FOR REHEARING**

Comes now the State, as respondent/appellee, by and through counsel, Winston Bryant, Attorney General, and Clint Miller, Deputy Attorney General, and for its response to petitioner/appellant Reams' petition for rehearing, states:

I.

On November 6, 1995, this Court handed down an opinion in the above-styled case. In this Court's November 6, 1995 opinion, this Court affirmed petitioner/appellant Reams' capital murder conviction and death sentence. Reams has filed a petition for rehearing in which he asked this Court to reconsider its affirmance of his capital murder conviction and death sentence. The State, as respondent/appellee, respectfully submits that this Court should deny Reams' petition for rehearing.

This Court should deny Reams' petition for rehearing because it is meritless. In his petition Reams asserts that this Court erred in rejecting his allegation of error that the trial court had erred in denying his challenge to the State's exercise of two of its peremptory challenges to remove two venire-persons who were black, Irma Johnson and Matthew Henry. In his petition for rehearing, petitioner/appellant Reams argues, in effect, that the State

established a pattern of using its peremptory challenges in a discriminatory manner when the State peremptorily excused venirewoman Irma Johnson and Matthew Henry.

In his petition for rehearing, petitioner/appellant Reams argues, in effect, that the State established a pattern of using its peremptory challenges in a discriminatory manner when the State peremptorily excused venirewoman Irma Johnson, the first venireperson that the State excused peremptorily. According to Reams, the State's strike of Ms. Johnson established a pattern of discriminatory use by the State of its peremptory challenges despite the fact that Ms. Johnson was the first black person peremptorily excused by the State, because Reams' capital murder trial had "racial overtones." Reams cites no authority in support of this proposition of law and the State is unaware of any such case authority.

With regard to the State's peremptory excusal of venireperson Matthew Henry, petitioner/appellant Reams asserts in his petition that this Court simply misinterpreted the answers that Mr. Henry gave during voir dire when asked whether he could impose the death penalty on a defendant who was the accomplice of a co-defendant who actually killed the victim. The State submits that this Court did not err in its evaluation of the answers that Matthew Henry gave with regard to whether he could impose the death penalty on an accomplice in a capital murder case who did not actually kill the victim. This Court correctly pointed out in its November 6, 1995, opinion that Mr. Henry

consistently stated that he would attach significance to the possible difference in the state of mind of the principal and the accomplice with regard to the principal's causing the death of the victim. This Court correctly concluded that these answers given by Mr. Henry provided a race neutral basis for the State to peremptorily excuse him.

II.

WHEREFORE, the State, as respondent/appellee, respectfully requests that the Court deny petitioner/appellant Reams' petition for rehearing. The State respectfully requests further that this Court deny Reams any relief whatsoever.

Respectfully submitted,

WINSTON BRYANT
Attorney General

BY: [signature]
CLINT MILLER
Deputy Attorney General
Arkansas Bar No. 83126
200 Tower Building
323 Center Street
Little Rock, Arkansas 72201
(501) 682-3657

ATTORNEYS FOR
RESPONDENT/APPELLEE

CERTIFICATE OF SERVICE

I, Clint Miller, Deputy Attorney General, do hereby certify that I have served a copy of the foregoing pleading for respondent/appellee, by mailing a copy of same, by U.S. Mail, postage prepaid, to Maxie G. Kizer, Attorney at Law, 721 Pine Street, P.O. Box 7423, Pine Bluff, Arkansas 71611, and Debbie

Sallings, Attorney at Law, 1500 Riverfront Drive, Suite 118, Little Rock, Arkansas 72202, this 7th day of December, 1995.

CLINT MILLER

4

1540

7225 Respondent's Exhibit E

Office of The Clerk
Supreme Court of The State of Arkansas
Arkansas Court of Appeals
Justice Building
625 Marshall Street
Little Rock, AR 72201

DECEMBER 11, 1995

Leslie W. Steen
Clerk

Robin Horne
Chief Deputy Clerk

Melissa Fuller
Chief Deputy Clerk

Janie Owen
Office Administrator

Jeanne Matthews
Records Supervisor

Deputy Clerks:
Denise Parks
Greta Houston
Daniel Dodson
Holli North
Ginger Mullins
Todd Hill
Joan Owens

Maxie G. Kizer
Attorney at Law
721 Pine St.
Pine Bluff, AR 71611

RE: CR 94 00558 KENNETH REAMS v.
STATE OF ARKANSAS

Dear Mr. Kizer:

The Arkansas Supreme Court made the following order today in the above styled case:

"Petition for rehearing is denied."

Sincerely,

Leslie W. Steen, Clerk

LWS:rh

cc: Clint Miller
Deborah Sallings
Jeanette Hence, Clerk
(#CR-93-301-3)

1541

LAW OR CHANCERY MANDATE

STATE OF ARKANSAS, )
) SCT.
In the Supreme Court)

**BE IT REMEMBERED**, That at a session of the Supreme Court of the State of Arkansas, begun and held in the City of Little Rock, on the 11th day of December, 1995, amongst others were the following proceedings, to-wit:

No. CR 94 00558

KENNETH REAMS
Appellant(s)

vs. Appeal from Jefferson Circuit - (CR-93-301-3)

STATE OF ARKANSAS
Appellee(s)

Motion for entry of appearance is granted.
Petition for stay of mandate is granted.

IN TESTIMONY, That the above is a true copy of the order of said Supreme Court, rendered in the case herein stated, I, Leslie W. Steen, Clerk of said Supreme Court, hereunto set my hand and affix the seal of said Supreme Court, at my office in the city of Little Rock, this 11th day of December, 1995.

[signature]
**CLERK**

**BY** ______________________ **D.C.**

Original to Clerk
CC: Deborah Sallings
Maxie G. Kizer
Clint Miller
Hon. Fred D. Davis

Office of the Clerk
Supreme Court of the State of Arkansas

Arkansas Court of Appeals
Justice Building
625 Marshall Street
Little Rock, Arkansas 72201

Leslie W. Steen
Clerk

Robin Horne
Chief Deputy Clerk

Melissa Fuller
Chief Deputy Clerk

Janie Owen
Office Administrator

Jeanne Matthews
Records Supervisor

Deputy Clerks:
Denise Parks
Greta Houston
Daniel Dodson
Holli North
Ginger Mullins
Joan Owens
Scott Gross
Denise Callaway

DECEMBER 6, 1996

Circuit Clerk

Jefferson County, Arkansas

Dear Sir or Madam:

Enclosed is the mandate of the Arkansas Supreme Court in the case of Kenneth Reams v. State of Arkansas, wherein the judgment of the trial court was affirmed.

You will notice that the terms of the mandate are that the defendant shall surrender forthwith to the Sheriff of Jefferson County, Arkansas.

Leslie W. Steen, Clerk

1543

M A N D A T E

A F F I R M E D C R I M I N A L

STATE OF ARKANSAS,

In the Supreme Court

BE IT REMEMBERED, That at a term of the Supreme Court of the State of Arkansas, begun and held at the Court Room in the City of Little Rock, on the 2nd Day, being the first Monday of October, A.D. 1995, amongst others were the following proceedings: on the 6th day of November, A.D. 1995, a day of said term:

CR94-558
KENNETH REAMS APPELLANT

V. Appeal from Jefferson Circuit
(CR93-301-3)

STATE OF ARKANSAS APPELLEE

This cause came on to be heard upon the transcript of the record of the Circuit Court of Jefferson County, and was argued by counsel; on consideration whereof it is the opinion of the Court that there is no error in the proceedings and judgment of said Circuit Court in this cause.

It is therefore considered by the Court that the judgment of said Circuit Court in this cause rendered be, and the same is hereby in all things affirmed and that unless appellant shall forthwith surrender himself to the Sheriff of Jefferson County in execution of said judgment, his bond be declared as forfeited.

IN TESTIMONY, that the above is a true copy of the judgment of said Supreme Court in the case therein stated. I, Leslie W. Steen, Clerk of said Supreme Court, hereto set my hand and affix the seal of said Court, at my office in the City of Little Rock, this 6th day of December, A.D. 1996.

Leslie W. Steen
Clerk

1541

CASE NUMBER - CR 94 00558 CASE FILED - 05/26/1

KENNETH REAMS
VS.
STATE OF ARKANSAS

05/26/1994 Lower Court Information
Lower Court - 351111 Jefferson Circuit
Case Number - CR-93-301-3
Judge Name - FRED D. DAVIS

Print Case Card

Transcript Filed
Nbr of Volumes - 004
Exhibits Filed - N

Criminal Notice of Transcript Filed

06/01/1994 Transcript Checkout by Atty. of Record
KENNETH REAMS - Primary Appellant
MR. MAXIE GENE KIZER
4 vols.

06/24/1994 Motion for Extension to File Brief
KENNETH REAMS - Primary Appellant
MR. MAXIE GENE KIZER
Action Date - 06/27/1994
Action - Granted
Extension Date - 09/03/1994

08/22/1994 Motion for Extension to File Brief
KENNETH REAMS - Primary Appellant
MR. MAXIE GENE KIZER
Action Date - 08/24/1994
Action - Granted
Extension Date - 10/03/1994

10/03/1994 Appellant's Brief Tendered
KENNETH REAMS - Primary Appellant
MR. MAXIE GENE KIZER
Enlarged and Belated.

Motion to File Enlarged Brief
KENNETH REAMS - Primary Appellant
MR. MAXIE GENE KIZER
Submit Date - 10/17/1994
Action Date - 10/24/1994
Action - Granted

10/04/1994 Motion to File Belated Brief
KENNETH REAMS - Primary Appellant
MR. MAXIE GENE KIZER

CA NUMBER - CR 94 00558 CASE FILED - 05/26/1994

KENNETH REAMS
VS.
STATE OF ARKANSAS

Submit Date - 10/10/1994
Action Date - 10/17/1994
Action - Granted

10/17/1994 Letter Orders - Supreme Court

10/24/1994 Appellant's Brief (Typed) Filed
KENNETH REAMS - Primary Appellant
MR. MAXIE GENE KIZER

Letter Orders - Supreme Court

11/07/1994 Appellant's Brief (Printed) Filed
KENNETH REAMS - Primary Appellant
MR. MAXIE GENE KIZER

11/14/1994 Motion for Extension to File Brief
STATE OF ARKANSAS - Primary Appellee
MR. J. WINSTON BRYANT
Action Date - 11/15/1994
Action - Granted
Extension Date - 01/06/1995

01/03/1995 Motion for Extension to File Brief
STATE OF ARKANSAS - Primary Appellee
MR. J. WINSTON BRYANT
Action Date - 01/04/1995
Action - Granted
Extension Date - 03/03/1995

02/28/1995 Motion for Extension to File Brief
STATE OF ARKANSAS - Primary Appellee
MR. J. WINSTON BRYANT
Action Date - 03/06/1995
Action - Granted
Extension Date - 03/24/1995

03/22/1995 Motion for Extension to File Brief
STATE OF ARKANSAS - Primary Appellee
MR. J. WINSTON BRYANT
Action Date - 03/24/1995
Action - Granted
Extension Date - 04/21/1995

0 7/1995 Motion for Extension to File Brief
STATE OF ARKANSAS - Primary Appellee

C̈SE NUMBER - CR 94 00558 CASE FILED - 05/26/1.

KENNETH REAMS
VS.
STATE OF ARKANSAS

MR. J. WINSTON BRYANT
Action Date - 04/17/1995
Action - Granted
Extension Date - 05/12/1995

05/12/1995 Motion for Extension to File Brief
STATE OF ARKANSAS - Primary Appellee
MR. J. WINSTON BRYANT
Action Date - 05/12/1995
Action - Granted
Extension Date - 05/26/1995

05/25/1995 Motion for Extension to File Brief
STATE OF ARKANSAS - Primary Appellee
MR. J. WINSTON BRYANT
Action Date - 05/31/1995
Action - Granted
Extension Date - 06/16/1995

'16/1995 Motion for Extension to File Brief
STATE OF ARKANSAS - Primary Appellee
MR. J. WINSTON BRYANT
Action Date - 06/19/1995
Action - Granted
Extension Date - 07/07/1995

07/06/1995 Motion for Extension to File Brief
STATE OF ARKANSAS - Primary Appellee
MR. J. WINSTON BRYANT
Action Date - 07/07/1995
Action - Granted
Extension Date - 07/14/1995

07/14/1995 Motion for Extension to File Brief
STATE OF ARKANSAS - Primary Appellee
MR. J. WINSTON BRYANT
Action Date - 07/17/1995
Action - Granted
Extension Date - 07/28/1995

07/28/1995 Appellee's Brief Tendered
STATE OF ARKANSAS - Primary Appellee
MR. J. WINSTON BRYANT

Motion to File Enlarged Brief
STATE OF ARKANSAS - Primary Appellee

'' 'UMBER - CR 94 00558 CASE FILED - 05/26/1994

KENNETH REAMS
VS.
STATE OF ARKANSAS

MR. J. WINSTON BRYANT
9-11-95. Appellee's motion to file enlarged brief is granted.
Submit Date - 09/05/1995
Action Date - 09/11/1995
Action - Granted

09/11/1995 Letter Orders - Supreme Court

09/12/1995 Appellee's Brief Filed
STATE OF ARKANSAS - Primary Appellee
MR. J. WINSTON BRYANT

10/16/1995 Case Submitted
Docket Type - Regular Docket
Argument Type - Case Submitted

11/06/1995 Majority Opinion
Opinion Date - 11/06/1995
Publish - Y
Author Name - TOM GLAZE
Opinion Code - Affirmed

11/07/1995 Front Sheets - Mead

Front Sheets - West

11/22/1995 Petition for Rehearing
KENNETH REAMS - Primary Appellant
MR. MAXIE GENE KIZER
12-11-95. Petition for rehearing denied.
Submit Date - 12/04/1995
Action Date - 12/11/1995
Action - Denied

Motion for Entry of Appearance
Motion for Entry of Appearance by Deborah Sallings of the Arkansas Capitol Resource Center, Inc. Served.
12-4-95. Motion submitted.
12-11-95. Motion for entry of appearance is granted.

Tendered- Petition for Stay of Mandate
Tendered- Petition for Stay of Mandate by Deborah Sallings of the Arkansas Capitol Resource Center, Inc. Served.

' ҈ NUMBER - CR 94 00558 CASE FILED - 05/26/1(

KENNETH REAMS
/S.
STATE OF ARKANSAS

12-4-95. Motion submitted.
12-11-95. Petition for stay of mandate is granted

12/11/1995 MANDATE STAYED
MANDATE STAYED

Letter Orders - Supreme Court

Formal Orders - Supreme Court

)1/02/1996 Motion for Attorney's Fees
KENNETH REAMS - Primary Appellant
MR. MAXIE GENE KIZER
Maxie G. Kizer allowed $3,600.00 in attorney's fees and $59.40 in costs for a total of $3,659.40.
2-20-96. Invoice received.
Submit Date - 01/24/1996
Action Date - 02/16/1996
Action - Granted

)2/16/1996 Attorney's Fees and Costs - Supreme Court

)3/06/1996 Extension of time granted in U.S. Supreme Court
Extension of time granted in U.S. Supreme Court for filing Petition for Writ of Certiorari to May 9, 1996.

)5/20/1996 Notice of Filing Petition in U. S. Supreme Court

**** END OF DOCKET LISTING ****

**RESPONDENT'S EXHIBIT 3**

CORRESPONDENCE --

ARKANSAS DEATH PENALTY RESOURCE CENTER, INC.

FROM DEBORAH R. SALLINGS

DATED 11/02/93

[2 PAGES]

**ARKANSAS DEATH PENALTY RESOURCE CENTER, INC.**

1500 Riverfront Drive, Suite 118
Little Rock, Arkansas 72202

Al Schay, Executive Director

(501) 663-1440
Fax (501) 663-2612

Staff Attorney
Deborah R. Sallings

Tommy Crosthwait
Investigator

November 2, 1993

Ms. Amelia Reams
308 Roxie Dr.
Poplar Bluff, MO 63901

Re: Kenneth Reams

Dear Ms. Reams:

Our office is consulting with your nephew Kenneth Reams's lawyer, Mr. Maxie Kizer, in his representation of Kenneth on capital murder charges in Pine Bluff, Arkansas. In order to prepare for his trial, it is essential that I talk with you as soon as possible. The charge is very serious, and your help is needed to prepare a case for Kenneth.

I would like for you to call me as soon as possible so that we can discuss Kenneth's case and what can be done for him. Please call me, collect, any time. My number at the office is 663-1440, and I am here between 8:00 and 5:00. My home number for the next week or so is 663-9587. After that it will be 330-2686. Please try both home numbers, because I will be moving some time soon but I am not exactly sure when.

It is very important to Kenneth that I talk wit you. I will be waiting for your call.

Very truly yours,

Deborah Sallings

Deborah R. Sallings

DRS/dr

cc: Maxie Kizer, Esq.

377

RESPONDENT'S
EXHIBIT
3

Respondent's Exhibit E

CERTIFICATE

I, JERRY R. LAWSON, Official Court Reporter for the Circuit Court, Sixth Division of the Eleventh Judicial District West of Arkansas, certify that I recorded the proceedings by machine shorthand in the case of KENNETH REAMS versus STATE OF ARKANSAS, Jefferson County Circuit Number 35CR-1993-301-3-6, August 20-23, 2007, before the Honorable Thomas Brown, Circuit Judge thereof, at Pine Bluff, Arkansas; that said recording has been reduced to a transcription by me, and the foregoing pages numbered 1 through 1581, 2576 through 3112, and 4559 through 7234, constitute a true and correct transcript of the proceedings held, to the best of my ability, along with all items of evidence admitted into evidence.

WITNESS MY HAND AND SEAL as such Court Reporter on the 2nd day of August, 2017.

Jerry R. Lawson
Supreme Court Certified Reporter No. 579

CERTIFIED COURT REPORTER
ARKANSAS SUPREME COURT
CERTIFICATE NO. 579

Respondent's Exhibit E

CERTIFICATE

I, JERRI M. SMITH, a Certified Court Reporter in and for the State of Arkansas, certify that I made a record of the proceedings by voice recording, testimony of Beatrice Whiteside, Kenneth Reams vs. State of Arkansas, Jefferson County Circuit Court Case No. CR-1993-301-3, April 1-3, 2014, before the Honorable John Cole, Special Circuit Judge thereof, at Pine Bluff, Arkansas; that said record has been reduced to writing by myself, and the foregoing pages numbered 1,582-2,575 constitute a true and correct transcript of the proceedings held to the best of my ability along with all **original** items of evidence, pages 3,113-4,558; 7,235-7,237, admitted into the record, which has been requested by Petitioner Kenneth Reams.

WITNESS MY HAND AND SEAL as such Court Reporter on 31st day of July, 2017.

STATE OF ARKANSAS
JERRI M. SMITH #713
CERTIFIED COURT REPORTER

Jerri M. Smith, CCR
Arkansas Supreme Court
Certificate No. 713

STATEMENT OF COSTS

PAID TO THE REPORTER, JERRY LAWSON $10,140.10

TOTAL AMOUNT PAID $10,140.10

CERTIFICATE OF CLERK

STATE OF ARKANSAS }

COUNTY OF JEFFERSON}

I, LAFAYETTE WOODS, SR., Clerk of the Circuit Court in and for the County and State aforesaid, do hereby certify that the above amounts are the costs of the foregoing transcript.

LAFAYETTE WOODS, SR., CIRCUIT CLERK

BY: [signature] DEPUTY CLERK

STATEMENT OF COSTS

| | |
|---|---|
| PAID TO THE REPORTER, JERRI SMITH | $7,469.00 |
| TOTAL AMOUNT PAID | $7,469.00 |

CERTIFICATE OF CLERK

STATE OF ARKANSAS }

COUNTY OF JEFFERSON}

I, LAFAYETTE WOODS, SR., Clerk of the Circuit Court in and for the County and State aforesaid, do hereby certify that the above amounts are the costs of the foregoing transcript.

LAFAYETTE WOODS, SR.,CIRCUIT CLERK

BY: [signature] DEPUTY CLERK

SEAL OF THE CIRCUIT COURT JEFFERSON COUNTY, AR.

CERTIFICATE OF CLERK

STATE OF ARKANSAS }
COUNTY OF JEFFERSON}

I, LAFAYETTE WOODS, SR., Clerk of the Circuit Court for the County and State aforesaid, do hereby certify that the foregoing 7240 pages of typewriting contains a true and complete transcript of the record and proceedings in the Jefferson County Circuit Court in the cause hereinabove stated.

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed the seal of this court this the 2nd day of August, 2017.

LAFAYETTE WOODS, SR., CIRCUIT CLERK
BY: _______________ DEPUTY CLERK

SEAL OF THE CIRCUIT COURT JEFFERSON COUNTY, AR.