ELECTRONICALLY FILED
Arkansas Supreme Court
Stacey Pectol, Clerk of the Courts
2018-Jan-22  17:10:08
CR-17-654
33 Pages

# CR-17-654

## IN THE SUPREME COURT OF ARKANSAS

| KENNETH REAMS | APPELLANT/CROSS-APPELLEE |
|---|---|
| VS. | CASE NO. CR-17-654 |
| STATE OF ARKANSAS | APPELLEE/CROSS-APPELLANT |

**AN APPEAL FROM THE
JEFFERSON COUNTY CIRCUIT COURT**

**THE HONORABLE JOHN W. COLE
SPECIAL JUDGE**

**BRIEF OF APPELLEE/CROSS-APPELLANT**

Respectfully submitted,

LESLIE RUTLEDGE
Attorney General

BY:  DAVID R. RAUPP
Arkansas Bar No. 89228
Senior Assistant Attorney General
323 Center Street, Suite 200
Little Rock, Arkansas 72201
(501) 682-3657 [phone]
(501) 682-2083 [fax]
david.raupp@arkansasag.gov

ATTORNEYS FOR APPELLEE/
CROSS-APPELLANT

Respondent's Exhibit G

## IN THE SUPREME COURT OF ARKANSAS

**KENNETH REAMS**                                       **APPELLANT/CROSS-**
                                                                        **APPELLEE**

**VS.**                         **CASE NO. CR-17-654**

                                                        **APPELLEE/CROSS-**
**STATE OF ARKANSAS**                                  **APPELLANT**

**AN APPEAL FROM THE**
**JEFFERSON COUNTY CIRCUIT COURT**

**THE HONORABLE JOHN W. COLE**
**SPECIAL JUDGE**

**BRIEF OF APPELLEE/CROSS-APPELLANT**

Respondent's Exhibit G

## <u>TABLE OF CONTENTS</u>

<u>**PAGE**</u>

TABLE OF CONTENTS ..................................................................... i

INFORMATIONAL STATEMENT ................................................ ii

CROSS-APPELLANT'S JURISDICTIONAL STATEMENT ...................... v

POINTS TO BE RELIED UPON ................................................. vii

POINT TO BE RELIED UPON ON CROSS-APPEAL ............................. vii

TABLE OF AUTHORITIES ...................................................... viii

CROSS-APPELLANT'S STATEMENT OF THE CASE ........................... x

ARGUMENT ......................................................................... 1

CONCLUSION ..................................................................... 20

CERTIFICATE OF SERVICE .................................................... 21

i

## <u>INFORMATIONAL STATEMENT</u>

I.    ANY RELATED OR PRIOR APPEAL  (Identify) *Reams v. State*, 322 Ark. 336, 909 S.W.2d 324 (1995).

II.   BASIS OF SUPREME COURT JURISDICTION  (see Rule 1-2 (a))

(__)  Check here if no basis for Supreme Court Jurisdiction is being asserted, or check below all applicable grounds on which Supreme Court Jurisdiction is asserted.

(1)    ___ Construction of Constitution of Arkansas

(2)    _X_ Death penalty, life imprisonment

(3)    ___ Extraordinary writs

(4)    ___ Elections and election procedures

(5)    ___ Discipline of attorneys

(6)    ___ Discipline and disability of judges

(7)    _X_ Previous appeal in Supreme Court

(8)    _X_ Appeal to Supreme Court by law **(*See* A.R.A.P.—Crim.  3(c) (2017))**

III.  NATURE OF APPEAL

(1)    ___ Administrative or regulatory action

(2)    _X_ Rule 37

(3)    ___ Rule on Clerk

ii

(4) ___ Interlocutory appeal

(5) ___ Usury

(6) ___ Products liability

(7) ___ Oil, gas, or mineral rights

(8) ___ Torts

(9) ___ Construction of deed or will

(10) ___ Contract

(11) _X_ Criminal

[Write a brief statement limited to the space provided describing the case on appeal, and set out the causes of action (i.e., in a civil case, tort, contract, etc., or in a criminal case, the convicted offenses, whether felony or misdemeanor, and the punishment) underlying the judgment from which the appeal is taken.]

This is an appeal by the appellant of the circuit court's Rule 37 order denying relief at the guilt phase of a capital case.  The State cross-appeals the grant of relief at the penalty phase, seeking to have the cross-appellee's death sentence reinstated.

IV.    IS THE ONLY ISSUE ON APPEAL WHETHER THE EVIDENCE IS SUFFICIENT TO SUPPORT THE JUDGMENT?

**No.**

V.    EXTRAORDINARY ISSUES.  (Check if applicable, and discuss in PARAGRAPH 2 of the Jurisdictional Statement.)

(  )    appeal presents issue of first impression,

iii

( )   appeal involves issue upon which there is a perceived inconsistency in the decisions of the Court of Appeals or Supreme Court,

( )   appeal involves federal constitutional interpretation,

(**X**)   appeal is of substantial public interest,

( )   appeal involves significant issue needing clarification or development of the law, or overruling of precedent.

( )   appeal involves significant issue concerning construction of statute, ordinance, rule, or regulation.

IV.   CONFIDENTIAL INFORMATION.

1.   Does the appeal involve confidential information as defined by Sections III (A) (11) and VII (A) of Administrative Order 19?

   **No.**

2.   If the answer is "yes," then does this brief comply with Rule 4-1 (d)?

   _____ Yes       _____ No

## CROSS-APPELLANT'S JURISDICTIONAL STATEMENT

### I.

This is a timely cross appeal from an order granting Rule 37 relief.  This Court affirmed the appellant/cross-appellee's (Kenneth Reams) capital-murder conviction and death sentence in 1995.  *See generally Reams v. State*, 322 Ark. 336, 909 S.W.2d (1995).  After a hearing spanning a number of years, the circuit court (while correctly denying relief at the guilt phase) erroneously granted relief at the penalty phase.  (Add. 517-22, R. 864-69).  The circuit court found that Reams' death sentence was unreliable due to trial counsel's deficient performance and resulting prejudice at the penalty phase for not securing the testimony the codefendant, Alford Goodwin.    (Add. 521-22, R. 868-69).  The circuit court's interpretation of *Strickland v. Washington*, 466 U.S. 668 (1984), as to both performance and prejudice was incorrect.

### II.

Pursuant to Arkansas Supreme Court Rule 1-2(c)(1)(B)(ii) (2017), I, Senior Assistant Attorney General David R. Raupp, express a belief, based on a reasoned and studied professional judgment, that this appeal raises the following questions of legal significance for jurisdictional purposes under Arkansas Supreme Court Rule 1-2(b)(4):  (1) the foregoing issue of law affects an issue of substantial public interest, in that it raises a Sixth Amendment question as to the adequacy of trial

counsel's performance at the penalty phase of a capital trial and interpretation which will be instructive to the bench and bar.[1]

Respectfully submitted,

LESLIE RUTLEDGE

Attorney General

BY: /s/ David R. Raupp

DAVID R. RAUPP
Arkansas Bar No. 89228
Senior Assistant Attorney General
323 Center Street, Suite 200
Little Rock, Arkansas 72201
(501) 682-8108 [phone]
(501) 682-2083 [fax]
david.raupp@arkansasag.gov

**ATTORNEYS FOR APPELLEE/
CROSS-APPELLANT**

---

[1] Although this case is docketed with a "CR" number, the State need not satisfy the requirements of Arkansas Rule of Appellate Procedure—Criminal 3(c) (2017), governing State appeals in criminal cases, because this case is neither a direct nor interlocutory appeal following a prosecution, but is a civil appeal arising under A.R.Cr.P. 37.  *See*, *e.g.*, *State v. Brown*, 2009 Ark. 201, at 1, 307 S.W.3d 587, 589.

vi

## POINTS TO BE RELIED UPON ON APPEAL

### I.

The circuit court's denials of relief on Reams guilt-phase claims of ineffective assistance of counsel as to other-crimes and fair cross-section were not clearly erroneous ............................................................................4

### II.

The circuit court was correct that Reams' *Batson* and *Duren* claims are not cognizable in these proceedings...................................................................12

## POINT TO BE RELIED UPON ON CROSS-APPEAL

### I.

The circuit court's finding that Reams was denied effective assistance at the penalty phase was clearly erroneous.................................................14

Respondent's Exhibit G

# TABLE OF AUTHORITIES

<u>**CASES**</u>                                                          <u>**PAGE**</u>

*Anderson v. State*, 357 Ark. 180, 163 S.W.3d 33 (2004)......................................7

*Batson v. Kentucky*, 476 U.S. 79 (1986) ...........................................2, 9, 10, 12

*Berghuis v. Smith*, 559 U.S. 314, 130 S. Ct. 1382 (2010)..................................11

*Collins v. State*, 324 Ark. 322, 920 S.W.2d 846 (1996) ...................................13

*Decay v. State*, 2014 Ark. 387, 441 S.W.3d 909 ................................................7

*Dixon v. State*, 2014 Ark. 97 (per curiam) ......................................................7

*Duren v. Missouri*, 439 U.S. 357 (1979)...........................................2, 9, 10, 12

*Echols v. State*, 354 Ark. 530, 127 S.W.3d 486 (2003).......................................3

*Fletcher v. State*, 2015 Ark. 106, 458 S.W.3d 234 (per curiam)........................14

*Flores v. State*, 350 Ark. 198, 85 S.W.3d 896 (2002) ........................................3

*Greene v. State*, 356 Ark. 59, 146 S.W.3d 871 (2004).................................2, 3, 4

*Howard v. State*, 367 Ark. 18, 238 S.W.3d 28 (2006) ......................................13

*Jackson v. State*, 375 Ark. 321, 290 S.W.3d 574 (2009) ..................................14

*Johnson v. State*, 2018 Ark. 6 (2018) ...............................................................9

*Lee v. State*, 327 Ark. 692, 942 S.W.2d 231 (1997) .........................................13

*Lee v. State*, 343 Ark. 702, 38 S.W.3d 334 (2001) .............................................4

*Mitchell v. State*, 299 Ark. 566, 776 S.W.2d 332 (1989)..................................11

*Reams v. State*, 322 Ark. 336, 909 S.W.2d 324 (1995) .............................. passim

*Robbins v. State*, 2012 Ark. 312 ......................................................................4

*Sasser v. State*, 338 Ark. 375, 993 S.W.2d 901 (1999) (per curiam)..................13

Respondent's Exhibit G                                          10

*Sheridan v. State*, 313 Ark. 23, 852 S.W.2d 772 (1993) ................................... 12

*State v. Brown*, 2009 Ark. 201, 307 S.W.3d 587 ................................................ vi

*State v. Franklin*, 351 Ark. 131, 89 S.W.3d 865 (2002) ..................................... 3

*Strickland v. Washington*, 466 U.S. 668 (1984) ...................................... passim

*Thomas v. State*, 330 Ark. 442, 954 S.W.2d 255 (1997) ..................................... 4

*Thomas v. State*, 370 Ark. 70, 257 S.W.3d 92 (2007) ...................................... 11

*Tison v. Arizona*, 481 U.S. 137 (1987) ........................................................... 19

*Turner v. State*, 2016 Ark. 96, 486 S.W.3d 757 ................................................ 9

*Wainwright v. State*, 307 Ark. 569, 823 S.W.2d 449 (1992) (per curiam) ......10, 14

*Wooten v. State*, 351 Ark. 241, 91 S.W.3d 63 (2002) ........................................ 9

## STATUTES AND RULES

Arkansas Rule of Appellate Procedure—Criminal 3(c) (2015) ....................... vi, 4

A.R.Cr.P. 37 ......................................................................... passim

A.R.Cr.P. 37.5(i) ...................................................................... 4

A.R.E. 404(b) ......................................................................... 8

Arkansas Supreme Court Rule 1-2(b)(4) ........................................... v

Arkansas Supreme Court Rule 1-2(c)(1)(B)(ii) (2017) ...................... v

## CONSTITUTIONAL PROVISIONS

Sixth Amendment..................................................................... v, 3

Respondent's Exhibit G

## CROSS-APPELLANT'S STATEMENT OF THE CASE

Despite its vintage, this case has been fully briefed to this Court only once, which in 1995 upheld Reams' capital-murder conviction and death sentence. After nearly two decades in Rule 37 proceedings during which various judges recused and other delays in hearing the matter, the circuit court decided the several discrete claims on which there was testimony at the hearing.

That court, in the person of Special Circuit Judge John Cole, issued an order in April 2015, denied the guilt-phase claims, but granted one penalty-phase claim. (Add. 517-22, R. 864-69). The State timely filed its notice of cross-appeal. (Add. 528-29, R. 876-77) Thus, for the State's purpose as cross-appellant, that penalty claim was wrongly resolved by the circuit court as explained throughout the cross-appellant's briefing now.

x

# ARGUMENT

## Introduction

More than two decades ago, the appellant/cross-appellee (Reams) was convicted of capital murder and sentenced to death for the cold-blooded 1993 murder of Gary Turner in an ATM robbery in Pine Bluff planned by him and his codefendant with a firearm stolen by Reams in another crime; all to "get money for graduation." *Reams v. State*, 322 Ark. 336, 339, 909 S.W.2d 324, 326 (1995).  In this senseless crime, the two killed Turner out of abject indifference to the value of his life in their desire to rob him of the money they sought.  Reams admitted at his trial that he planned and committed the crime following his crime spree in Pine Bluff in which he stole the gun that killed Mr. Turner. (A. 1267-99, R. 5293-5346)

Those are the immutable circumstances that faced Reams' trial counsel, Maxie Kizer, as he defended him at trial.  Capital murder was an inescapable verdict; a death sentence was hardly less likely.  Still, Kizer did well with the case he had, particularly in the face of Reams' admitted commission of the crime.  Unsurprisingly, Reams' jury ultimately sentenced him to death for his terrible crime.  His direct appeal failed.  He next sought relief under A.R.Cr.P. 37, raising mostly non-cognizable claims and cursorily faulting Kizer for his performance in abbreviated claims of ineffective assistance of counsel (IAC) under *Strickland v. Washington*, 466 U.S. 668 (1984).

1

After many years in circuit court proceedings developing and resolving those claims with the services of highly skilled counsel, Reams' guilt-phase challenges were rejected, but, nevertheless, he obtained relief from his penalty-phase death sentence. This appeal follows the order to that effect. Reams complains of two rulings from the guilt phase of his trial and of the rejection of two other claims as non-cognizable. The State, in turn, cross-appeals the circuit court's conclusion that Reams demonstrated his counsel failed to prevent him from being sentenced to death.

Despite the voluminous post-conviction record, this appeal is straightforward as to the three discrete issues this Court must resolve. First, Reams' trial counsel was not ineffective as to the admission at trial of evidence of his other crimes or as to his jury fair cross-section claim. Second, the circuit court correctly concluded that Reams' jury claims under *Batson* and *Duren* were not cognizable. Finally, as to the State's cross-appeal, the circuit court was clearly erroneous that Kizer was ineffective as to Reams' death sentence.

Standards of Review

A denial of post-conviction relief is not reversed unless the circuit court's findings are clearly erroneous or clearly against the preponderance of the evidence. *E.g.*, *Greene v. State*, 356 Ark. 59, 64, 146 S.W.3d 871, 876 (2004). After reviewing the entire evidence, if the appellate court is left with the definite and

2

firm conviction that a mistake has been committed, then a finding is clearly erroneous, even though there is evidence to support the finding. *E.g.*, *Flores v. State*, 350 Ark. 198, 206, 85 S.W.3d 896, 901 (2002). The effectiveness of counsel's performance is judged by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a showing (1) that counsel's performance was unreasonably deficient and contained errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment, and (2) that counsel's deficient performance prejudiced his defense so that he was deprived of a fair trial. *E.g.*, *Flores*, 350 Ark. at 205-06, 85 S.W.3d at 901.

This Court indulges a strong presumption that trial counsel's conduct fell within the wide range of reasonable professional assistance, and, to rebut that presumption, the appellant must show that, but for counsel's errors, the outcome of the trial would have been different. *E.g.*, *Echols v. State*, 354 Ark. 530, 552, 127 S.W.3d 486, 500 (2003). A reasonable probability is one that undermines confidence in the outcome of the trial. *Id.*

This Court considers the totality of the evidence before the circuit court in determining a claim of ineffective assistance of counsel. *E.g.*, *Greene*, 356 Ark. at 64, 146 S.W.3d at 876. It also defers to the circuit court's findings regarding the credibility of witnesses. *E.g.*, *State v. Franklin*, 351 Ark. 131, 136, 89 S.W.3d 865, 867 (2002). Ineffective assistance of counsel cannot be established by a mere

3

showing of error by counsel. *E.g.*, *Thomas v. State*, 330 Ark. 442, 448, 954 S.W.2d 255, 258 (1997). Matters of trial tactics and strategy, even if proven unwise, are not usually grounds for post-conviction relief. *E.g.*, *Greene*, 356 Ark. at 67, 146 S.W.3d at 878. The conduct of trial counsel must be evaluated from counsel's perspective at the time of trial. *E.g.*, *Lee v. State*, 343 Ark. 702, 709, 38 S.W.3d 334, 339 (2001). "[E]very effort must be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from counsel's perspective at the time." *Thomas*, 330 Ark at 447, 965 S.W.2d at 257. Under these standards, the circuit court's order should be affirmed as to the guilt phase, rejecting Reams' arguments on appeal because the order was not clearly erroneous, but reversed as to the penalty phase on cross-appeal because the circuit court's grant of relief there was clearly erroneous.

## I.

The circuit court's denials of relief on Reams' guilt-phase claims of ineffective assistance of counsel as to other-crimes evidence and fair cross-section were not clearly erroneous.[2]

---

[2]Reams' IAC claims are as lettered in his briefing argument at "B." and "D." His global claim at "A." is not a ground for reversal. It was not made or ruled on in circuit court. *See generally*, *e.g.*, A.R.Cr.P. 37.5(i) (2017) (decision on claims from petition); *cf. generally*, *e.g.*, *Robbins v. State*, 2012 Ark. 312, at 2-3 & n.2

4

A.  Other-Crimes Evidence

Reams' capital crime was the tragic culmination of his crime spree, and his trial counsel could not have kept it from the jury.  He was not deficient for not doing so.  Even had he kept out such plainly admissible evidence, however, there is not a reasonable probability that the jury would have acquitted Reams of capital murder given the brutal, ugly facts of that crime and his unquestionable participation in it.  The circuit court's denial of relief by making the latter finding was not clearly erroneous, and this Court should affirm the denial of relief.

1.     While Reams failed to demonstrate either of the *Strickland* criteria for measuring ineffective assistance of counsel, this Court need only conclude he failed one.  As *Strickland* itself advises, prejudice is usually the more straightforward criteria for a court to evaluate.  As the Court said there:

> [A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.  The object of an ineffectiveness claim is not to grade counsel's performance.  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

---

(rulings on allegedly omitted issue not kind of pleading, and relief from death penalty obviated need for greater scrutiny).  His lettered claims "C." and "E." are just iterations of the prejudice component of *Strickland* and this Court's appellate review standard for post-conviction claims reiterated *supra*.

5

*Id*. 466 U.S. at 697.

Even a cursory examination of the proof as recounted by this Court on direct appeal over two decades ago settles the question against Reams.  As the Court recounted the crime, Reams was convicted of capital murder and sentenced to death for the cold-blooded 1993 murder of Gary Turner in an ATM robbery in Pine Bluff planned by him and his codefendant, Alford Goodwin, with a firearm stolen by Reams in another crime; all to "get money for graduation."  *Reams*, 322 Ark. at 339, 909 S.W.2d at 326.

Reams himself testified at trial at some length about his crime spree and this murder.  (Ab. 1267-1299; R. 5297-5346)  He acknowledged he was in prison at the time of trial for pleading guilty to aggravated robberies, burglary, and theft of property.  (A. 1270, R. 5303-04)  He admitted he obtained the fatal weapon in one of those robberies and scratched the serial number off of it the night of the killing; and he confirmed for the jury that it was loaded, although he said did not plan to fire a round.  (A. 1271, 1273; R. 5306-07, 5309-10)  Although he gave Goodwin the pistol, Reams also testified that they concocted an alibi after the crime (A. 1277; R. 5315, and he later told the police that he had had the pistol.  (A. 1277, 1285; R. 5315, 5327-29)  Remarkably, he nevertheless improbably testified, despite all that, that he did not think about the possibility that someone would be shot in the robbery.  (A. 1299, R. 5346)

2.     Even while the Court need not consider the deficiency argument made by Reams, it is readily refuted by law and logic.  Defense counsel was defending the robbery and killing of a stranger at gunpoint at an ATM.  Evidence of Reams' other crimes was part of the *res gestae* of this crime, *see Dixon v. State*, 2014 Ark. 97, at 7-8 (per curiam), particularly given the use of the stolen gun, to say nothing of evidence of aggravating circumstances.  *See generally Anderson v. State*, 357 Ark. 180, 197-201, 163 S.W.3d 33, 341-45 (2004).  Finally, as in *Decay v. State*, 2014 Ark. 387, at 12-13, 441 S.W.3d at 909, counsel's strategic decisions were readily defensible with respect to that evidence in defending the crime as a performance matter.

At the Rule 37 hearing, Reams' defense counsel, Maxie Kizer, explained how he prepared Reams' defense case.  His testimony included, *inter alia*, his utilization of the staff attorneys at the Death Penalty Resource Center, who could not formally represent Reams, but, nevertheless, consulted with Kizer, his staff, and key defense witnesses; his attendance at continuing legal education seminars that included courses specifically related to capital litigation and mental-health issues, (A. 16-19, R. 902-07); and, his retention of additional support staff and investigator.  (A. 24-25, R. 914-17, 29-33, R. 924-29, A. 100-11, R. 1055-64)

With regard to "other-crimes evidence," Kizer explained that Arkansas law did not permit the admissions of a defendant's prior convictions in the guilt phase

7

of a trial when the defendant has elected not to take the stand.  (A. 70-71, R. 992-93)  However, he correctly contrasted the inadmissibility of prior convictions in the State's case with the permissible admission of "other-crimes evidence" that is either part of the *res gestae* of the charged crime, or, pursuant to A.R.E. 404(b), to explain a defendant's plan or motive.  Thus, Kizer testified that Reams' admission to police that he had obtained the firearm used to kill Turner in his burglary of the Pine Bluff Dry Cleaners a week prior to Turner's murder, and, prior to the murder, used it to commit an additional aggravated robbery at the Greyhound Bus Station, was clearly admissible and any motion seeking to exclude it clearly would have failed.  (A. 71-75, R. 994-99)

Furthermore, Kizer noted that, from a strategic point of view, Reams' admission to the other crimes tended to bolster the credibility of the defense theory when arguing that Reams had not been the person who had fired the fatal shot.  (A. 75, R. 999)  Kizer laid the foundation for this argument during the cross-examination of the police officer to whom Reams had admitted the burglary and aggravated robbery in the week before Turner's murder.  (A. 75-76, R. 998-99)  This strategy dovetailed with his overall strategy that the prosecution "couldn't prove who shot the individual who was shot."  (A. 93, R. 1028)  Kizer believed that, given the overwhelming evidence of Reams' guilt, the better strategy was that there was no robbery attempt or that Reams was not the triggerman.  *Id*.

In sum, Kizer could hardly have been ineffective for not pursuing meritless objections and merely pursuing a strategy that did not succeed.  *See*, *e.g.*, *Johnson v. State*, 2018 Ark. 6, at 6 (2018) (citing *Turner v. State*, 2016 Ark. 96, at 4, 486 S.W.3d 757, 760).  Thus, the Court should reject Reams' arguments for reversible error on this issue under both *Strickland* criteria, and affirm the circuit court's denial of relief as not clearly erroneous.[3]

B.  Fair Cross-Section Claim

1.     As considered in the circuit court, this claim was a combination of two separate claims (as to *Batson v. Kentucky*, 476 U.S. 79 (1986), and *Duren v. Missouri*, 439 U.S. 357 (1979)) that court concluded must be considered together. (Add. 518, R. 865; Amended Record, 12-14)  Like the first claim, this one may more readily decided (and rejected) for want of prejudice under *Strickland*, as the circuit court disposed of it.  (Add. 519-20, R. 866-67).

Given that the *Batson* rulings were affirmed on direct appeal, *see Reams*, 322 Ark. at 340-43, 909 S.W.2d at 327-328, Reams cannot demonstrate that his hearing proof would have led to a different ruling.  *See Wooten v. State*, 351 Ark. 241, 247-48, 91 S.W.3d 63, 67 (2002) (failure to show relief would have been

_____

[3]Finally, Reams' reliance on various other case authorities is simply inapposite, as *Strickland* and Arkansas authorities recounted, *supra*, settle this point against him so plainly.

granted had *Batson* challenge been made).  Consequently, he alleges prejudice from the failure to seat African-American jurors who he claims would have concluded that he did not act with extreme indifference.

There, however, is not a reasonable probability as to *Strickland* prejudice that a juror of any race (however drawn from a venire) would have come to that conclusion given the trial proof as recounted above with respect to the first claim. Indeed, Reams' testimony recounted there illustrates that—despite introducing the loaded pistol into this crime, defacing it, and concocting an alibi—it had not occurred to him that anybody would be shot.  (A. 1271, 1273, 1299; R. 5306-07-5309-10, 5346)  Such callous use of a firearm in those circumstances is the sine qua non of deliberate indifference to the value of human life.  The Court should affirm as there is no reasonable probability of *Strickland* prejudice on this point as tried to any jury.

Thus, the circuit court was not clearly erroneous in concluding that Reams' claims that counsel was ineffective with respect to challenges to the jury panel under *Batson* and a fair-cross-section claim under *Duren*, fail for want of a showing of prejudice.  *See Wainwright v. State*, 307 Ark. 569, 577-78, 823 S.W.2d 449, 453 (1992) (per curiam) (fair-cross-section ineffective-assistance claim fails in absence of showing of prejudice).  In sum, there is not a reasonable probability

that a juror of any race (however drawn from a venire) would have acquitted
Reams of capital murder.

2.      Additionally, the claim may be rejected on the performance criteria as
well.  Even while the Court need not reach it, it is readily refutable on the law and
proof.  While the State may not deliberately or systematically deny to members of
the defendant's race the right to serve on a jury, *e.g.*, *Thomas v. State*, 370 Ark. 70,
77-78, 257 S.W.3d 92, 98-99 (2007), there is no requirement that the jury mirror
the community and reflect the various distinctive groups in the population.  *Id.*
The defendant must prove that the underrepresentation of a distinctive group is due
to **systematic** exclusion of the group in the jury-selection process.  *Id.*  Where,
however, the venire is randomly selected by voter rolls as here and race is not
identified, the mere showing that the venire was not representative of the racial
composition of the population does not make a prima facie showing of racial
discrimination.  *Id.*  (computer program drawing without African Americans
chosen failed to show prima facie case).  *See Mitchell v. State*, 299 Ark. 566, 568,
776 S.W.2d 332, 333 (1989) (holding absence of African Americans on venire
does not demonstrate selection was not from fair cross-section of community); *cf.*
*generally Berghuis v. Smith*, 559 U.S. 314, 130 S. Ct. 1382, 1393-95 (2010) (no
particular analysis of statistical disparity controls a court's ultimate conclusion
whether exclusion is systematic).

Respondent's Exhibit G

Indeed, Reams' hearing proof did not make out a fair cross-section claim that counsel failed to raise at trial.  To the contrary, the testimony of Flora Cook at the hearing was that the petitioner's jury was drawn from voter-registration rolls without any indication of race (A. 937-40, R. 5250-5259), a long-standing, acceptable method under fair cross-section analysis.  *E.g.*, *Sheridan v. State*, 313 Ark. 23, 38-39, 852 S.W.2d 772, 780 (1993).  Moreover, Cook's testimony at the Rule 37 hearing suggested non-systemic (but rather individual, idiosyncratic reasons) arising from personal circumstances that could explain descriptive disparities in racial composition.  (A. 937-40, R. 5250-59)

In short, **disparity** of racial composition as a descriptive matter is not a demonstration of **systematic** exclusion by race that violates the constitution as a normative matter which trial counsel should have pursued.[4]

## II.

The circuit court was correct that Reams' *Batson* and *Duren* claims are not cognizable in these proceedings.

---

[4]Finally, here again, Reams' reliance on many outside authorities is simply inapposite, as *Strickland* and Arkansas authorities recounted, *supra*, fully settle this point against him.

Claims that could have been raised at trial and on direct appeal generally are not cognizable in proceedings under Rule 37.  *See*, *e.g.*, *Howard v. State*, 367 Ark. 18, 29, 238 S.W.3d 28, 33 (2006).  The circuit court rightly concluded as much, and first did so when it set the parameters of the hearing below as to claims of ineffective assistance of counsel.  (Add. 517-22, R. 864-69)  The final order adopting that decade-earlier finding was plainly correct.  Reams attempt to obtain direct review of his juror challenges—laying to one side that he was indulged their review as claims of ineffective assistance of counsel—was rightly rejected and should be affirmed.

The very narrow circumstances in which the Court will consider direct challenges do not encompass the claims Reams makes here.  Such a direct challenge can be made at trial and on direct appeal, *see*, *e.g.*, *Lee v. State*, 327 Ark. 692, 698-99, 942 S.W.2d 231, 233-34 (1997); thus, it generally is not directly cognizable in Rule 37 proceedings.  *See*, *e.g.*, *Sasser v. State*, 338 Ark. 375, 383, 993 S.W.2d 901, 906 (1999) (per curiam).[5]

─────────────────────

[5]*Sasser* admits of an exception for fundamental or structural errors, such as the state constitutional right to trial by a twelve-person jury.  *Id.*, 338 Ark. at 383-84, 993 S.W.3d at 906 (citing *Collins v. State*, 324 Ark. 322, 920 S.W.2d 846 (1996)).  While the petitioner argues a fair cross-section error is structural and requires no showing of prejudice, to the State's knowledge, this Court had not so

13

In short, the circuit court was correct to conclude that an expansion of Reams' direct-appeals claims was beyond its ken to award to him.  This Court should affirm.

## **CROSS-APPEAL**

### I.

### The circuit court's finding that Reams was denied effective assistance at the penalty phase was clearly erroneous.

### Introduction

---

held when the circuit court reached it decision.  It would be unfair to fault that court in such circumstances now, particularly when the law does not suggest such an expansion.  After all, this Court has concluded other federal constitutional rights are not cognizable directly in Rule 37 proceedings, including the right to a speedy trial, which also arises from Sixth Amendment, *see*, *e.g.*, *Fletcher v. State*, 2015 Ark. 106, at 3, 458 S.W.3d 234, 238 (per curiam), and it has held that prejudice must be shown with respect to a claim that counsel failed to make a fair-cross-section claim.  *See Wainwright,* 307 Ark. at 577-78, 823 S.W.2d at 453; *cf. also Jackson v. State*, 375 Ark. 321, 330-31 & n. 6, 290 S.W.3d 574, 581 & n. 6 (2009) (fair-cross-section claim untimely in motion for new trial and cannot be raised for first time on appeal).

14

Reams introduced the gun into the equation that lies at the bottom of this crime and fully explains his death sentence.  That simple fact lies at the core of why the circuit court's grant of relief was clearly erroneous as to both *Strickland* criteria.

The Court should conclude that Mr. Kizer was not ineffective in that respect for two reasons.  First, it is dubious that Goodwin would have testified at the petitioner's trial in 1993, undercutting the credibility (and utility) of Curry's claim that Goodwin had admitted being the shooter.  Thus, although Kizer admitted in the Rule 37 hearing that Curry's testimony might have been helpful, he was not deficient considering the circumstances from his perspective at the time of trial under *Strickland*.[6]

---

[6]Reams has pointed to Alford Goodwin's alleged admission to Phillip Curry that he was the shooter, faulting Mr. Kizer for not interviewing Curry or Goodwin. The circuit court sought additional briefing only on whether Goodwin's admission should have been used at the penalty phase.  It is unclear whether that court faulted trial counsel as to calling both Curry and Goodwin.  (Add. 521-22, R. 868-69)  In either case, the State disputes that testimony from Curry or Goodwin can support relief on the claim to relief from the death sentence.

15

Second, even if Goodwin and Curry had testified at trial that Goodwin was the shooter to support a mitigating circumstance, the question was not beyond dispute, particularly considering the petitioner's responsibility for procuring the firearm and his complicity—as the shooter or an accomplice—in its use in the capital murder.  In other words, the petitioner cannot show prejudice under *Strickland*, because there is not a reasonable probability that the jury would not have sentenced him to death in light of the proof that he and Goodwin <u>together</u> committed the capital murder of Mr. Turner, without respect to which one fired the fatal shot.  In sum, even if the jury believed that Goodwin was the shooter, it still could (and would) have sentenced the petitioner to death for his crime.

### Kizer was not deficient.

The Rule 37 hearing proof does not demonstrate that the testimony given by Curry and Goodwin in that proceeding would have been fully available or of the certain utility to mitigation at the petitioner's 1993 trial as he propounded it at the Rule 37 hearing.

**First**, it is a dubious proposition that Goodwin would have testified in 1993 at all.  At the Rule 37 hearing he acknowledged that he did not know if he would have testified given his state of mind at that time.  (A. 658-61, R. 2022-35).

**Second**, his claim to being the shooter was readily disputable.  As he testified at the Rule 37 hearing, his version of the shooting provided in a 1996

16

affidavit and the version he testified to at the hearing were contradictory as to from which side of the vehicle the shot was fired; he did not provide the gun for the crime; he never told anybody that he was the shooter when pleading guilty; and he had written letters to a school principal and the Turner family saying he was not the shooter.  (*Id.*)

**Third**, while Curry's implication of Goodwin was available, its utility to mitigation would have been less than certain.  After all, there were contradictory stories related to police and others about who committed the crime and fired the fatal shot.  (*E.g.*, A. 145, R. 1122)  In other words, Curry's story would not have stood alone.  Indeed, even while Mr. Kizer acknowledged its possible utility at the hearing, it is not a foregone conclusion that he would have called either Curry or Goodwin.  With so much evidence pointing away from Goodwin, which a reasonable jury could credit, it was not unreasonable not to call Goodwin or Curry as conflicting testimony certainly supported Reams' liability as an accomplice.  In short, even if one could conclude that Mr. Kizer should have investigated Curry and Goodwin and considered using them in mitigation, he also would have had to consider the evidence contradicting Goodwin's claim to being the shooter recounted above.  Thus, his performance was not unreasonably deficient.

From that perspective, reasonable defense counsel well could have concluded that exposing the jury to more contradictory evidence as to whether

17

Goodwin was the shooter would undermine the effort on Reams' behalf to have the jury find the mitigation circumstance that the petitioner was an accomplice. Moreover, as it was, the jury found there was evidence that he was an accomplice without Curry or Goodwin, but unanimously found the mitigating circumstance did not exist. *See Reams*, 322 Ark. at 339 n.1, 909 S.W.2d at 326 n.1.  Given that, it is not evident that Mr. Kizer (from his perspective in 1993) was deficient for not investigating and introducing further contradictory evidence on the petitioner's purported role as an accomplice.

For all these reasons, the Court should conclude that the circuit court was clearly erroneous because Mr. Kizer was not deficient.  Consequently, he did not render ineffective assistance of counsel at the penalty phase, and the grant of relief should be reversed.

**The jury would have sentenced Reams to death even as an accomplice.**

Even if the Court concludes that Mr. Kizer was deficient under *Strickland*, it should deny relief because the petitioner has not demonstrated the reasonable probability that he would not have been sentenced to death even had his jury considered testimony from Curry and Goodwin.  It is long settled (and was before the trial here) that even an accomplice to capital murder such as the one committed by Reams and Goodwin can be sentenced to death knowing the firearm is present.

Respondent's Exhibit G                                                    30

*See generally Tison v. Arizona*, 481 U.S. 137 (1987).  The question for the Court is not what charge or penalty might be pursued today against the petitioner for his crime, but whether there is a reasonable probability that in 1993 his jury would not have sentenced him to death had it considered testimony from Curry and Goodwin. The hearing proof does not support such a conclusion.

Given the law of *Tison* and its progeny, Reams failed to establish *Strickland* prejudice for two reasons.  First, as explained above, neither Curry's nor Goodwin's testimony was indisputable.  Among other things, the petitioner introduced the firearm to the crime and Goodwin had denied being the shooter. Just as Mr. Kizer might have been skeptical about the utility of their testimony in mitigation, the jury could have been equally skeptical of its veracity when considering the mitigating circumstance that the petitioner was an accomplice (which ultimately the jury concluded did not exist).

Second, even if the jury fully credited testimony from Curry and Goodwin and found the mitigating circumstance, there is not a reasonable probability it would have concluded the aggravating circumstances (pecuniary gain and prior violent crime did not outweigh that mitigating circumstance.  This is so, particularly in view of the circumstances of the crime to which Reams testified at trial and recounted throughout this brief.  He admitted to the planning and commission of the crime—the robbery at gunpoint of a stranger at an ATM at

night resulting in his shooting death.  *See Reams*, 322 Ark. at 339, 909 S.W.2d at 326.

In short, and again, he introduced the firearm into the equation.[7]  The jury could well conclude on all the evidence that even if he did not pull the trigger, given the senseless, callous killing for lucre, Reams' crime justly called for a sentence of death.

## CONCLUSION

For the reasons stated herein and based on the authorities cited, the State respectfully submits that this case should be affirmed on direct appeal as to the guilt-phase claims and reversed on cross-appeal as to the penalty-phase claim.

---

[7]At the end of the day, Reams and the circuit court essentially believe that some measure of comparative sentencing calls for relief with the advantage of hindsight and doubt whether Reams pulled the trigger, but that is wrong.  Indeed, on direct appeal the Court rejected proportional review.  *Reams*, 322 Ark. at 338, 909 S.W.2d at 325.

Respondent's Exhibit G                                                    32

## <u>CERTIFICATE OF SERVICE</u>

I, David R. Raupp, certify that on January 22, 2018, I electronically filed the foregoing document with the Clerk of the Court using the eFlex system which shall send notification of such filing, which is deemed service, to:

Jin Hee Lee Esq.
Attorney at Law
NAACP Legal Defense & Ed. Fund
40 Rector Street, Fifth Floor
New York, NY 10006

Ajmel Quereshi
Christopher Kemmitt
Attorneys at Law
NAACP Legal Defense & Ed. Fund
1441 I Street, NW 10th Floor
Washington, DC  20005

Amanda Wofford
ROSE LAW FIRM
120 E. 4th
Little Rock, AR 72201

George H. Kendall
Corinne A. Irish
Attorneys at Law
Squire Patton Boggs
30 Rockefeller Plaza
New York, NY  10112

John W. Walker
JOHN W. WALKER, P.A.
1723 Broadway
Little Rock, AR 72206

I further certify that the foregoing document has been mailed, by United States Postal Service, postage prepaid, to:

Honorable John W. Cole
Jefferson County Special Circuit Judge
2644 Shoemaker Road
Sheridan, AR 72150

/s/David R. Raupp
DAVID R. RAUPP

21