KeyCite Yellow Flag - Negative Treatment
Distinguished by Antoniello v. Kelley, E.D.Ark., May 30, 2019

2018 Ark. 324
**Supreme Court of Arkansas.**

Kenneth REAMS,
Appellant/Cross-Appellee
v.
STATE of Arkansas,
Appellee/Cross-Appellant

No. CR-17-654
|
Opinion Delivered: November 8, 2018
|
Rehearing Denied December 20, 2018

**Synopsis**
**Background:** Following affirmance of murder conviction and death sentence, 322 Ark. 336, 909 S.W.2d 324, defendant filed petition for postconviction relief. The Circuit Court, Jefferson County, John W. Cole, J., granted petition in part and denied petition in part. Defendant appealed and the State cross-appealed.

**Holdings:** The Supreme Court, Karen R. Baker, J., held that:

defendant was not prejudiced by any deficient failure of trial counsel to object to the admission of evidence of his other crimes;

a fair-cross-section-of-the-jury violation is structural and therefore cognizable in postconviction proceedings;

where a fair-cross section violation is established, prejudice is presumed on a claim that counsel was ineffective in failing to pursue the claim; and

trial counsel's failure to attempt to present codefendant's testimony at penalty phase was ineffective assistance of counsel.

Affirmed in part, reversed in part, and remanded on direct appeal; affirmed on cross-appeal.

Josephine Linker Hart, J., concurred in part, dissented in part, and filed opinion

Rhonda K. Wood, J., filed dissenting opinion.

Shawn A. Womack, J., filed dissenting opinion.

**Procedural Posture(s):** Appellate Review; Post-Conviction Review.

**\*\*444** APPEAL FROM THE JEFFERSON COUNTY CIRCUIT COURT [NO. 35CR-1993-301], HONORABLE JOHN W. COLE, JUDGE

**Attorneys and Law Firms**

O'Melveny & Myers LLP (New York), by: Danielle C. Gray, pro hac vice, amicus curiae for National Association for Public Defense.

Leslie Rutledge, Att'y Gen., by: David Raupp, Sr. Ass't Att'y Gen.; and Kent G.

<u>Holt</u>, Ass't Att'y Gen., for appellee.

**Opinion**

<u>KAREN R. BAKER</u>, Associate Justice

**\*\*445 \*1** A Jefferson County Circuit Court jury found appellant, Kenneth Reams, guilty of capital murder. Reams was sentenced to death for his capital-murder conviction. We affirmed his conviction and sentence in <u>Reams v. State</u>, 322 Ark. 336, 909 S.W.2d 324 (1995). Subsequently, Reams filed an unverified petition for postconviction relief pursuant to Rule 37 of the Arkansas Rules of Criminal Procedure. The circuit court denied Reams's petition in part and granted it in part. Reams now brings this appeal, and the State has filed a cross-appeal. Our jurisdiction is pursuant to Rule 37 and <u>Arkansas Supreme Court Rule 1-2(a)(8)</u>.

**\*2** The following facts are pertinent to this appeal. Reams's conviction and sentence stem from the May 5, 1993 shooting death of Gary Turner. As recounted by this court on direct appeal, Reams, charged as an accomplice of Alford Goodwin's in the murder of Turner, testified that he and Goodwin planned to commit aggravated robbery at an ATM in Pine Bluff because Goodwin "needed the money for graduation." Reams admitted that he and Goodwin, who was armed with a .32 revolver, waited at a local ATM for someone to drive up so they could rob them. Reams further testified that he and Goodwin approached Turner's vehicle at the ATM and that Goodwin shot Turner. On December 1, 1993, prior to Reams's trial,

Goodwin pleaded guilty to capital murder and was sentenced to life without parole. After a three-day trial, Reams was convicted of capital murder and sentenced to death on December 15, 1993.

On January 31, 1997, Reams filed his petition for postconviction relief under Rule 37 of the Arkansas Rules of Criminal Procedure. In his petition, Reams asserted 14 claims: (1) the trial court failed to move Reams's case to a jurisdiction that was not contaminated with prejudicial publicity and gossip; (2) Reams's arrest by Pine Bluff authorities occurred in the absence of sufficient and reliable information; (3) evidence illegally seized from Reams's home was admitted at his trial; (4) Reams's custodial statements were improperly admitted because they were involuntary; (5) Reams's involvement in several unrelated crimes was improperly admitted; (6) prejudicial hearsay was improperly admitted at his trial; (7) the jury system in Jefferson County systematically underrepresented African American citizens in trial jury venires, including the venire at **\*3** Reams's trial; (8) in this mixed-race case, the prosecution exercised its peremptory challenges in a racially discriminatory manner; (9) the prosecution failed to prove the extreme-indifference element of capital murder; (10) the trial court failed to instruct the jury on what constitutes "extreme indifference" under the capital-murder statute; (11) Reams is ineligible for the death penalty due to his intellectual disability; (12) the jury's reliance on the pecuniary-gain aggravating circumstance was an improper "double counting" on that circumstance; (13) the jury improperly failed to consider and weigh the unrebutted

mitigating evidence that Reams was mentally retarded and only eighteen years old at the time of the offense; and (14) Reams received ineffective assistance of counsel both at trial and on appeal. On March 28, 1997, the State filed its response to Reams's Rule 37 petition, asserting that Reams's only cognizable claim was his ineffective-assistance-of-counsel claim. However, the State argued that his ineffective-assistance claim was improperly raised in his petition.

On October 13, 2006, Reams filed his supplement and memorandum of law in support of his previously filed Rule 37 petition, which provided additional details about the claims Reams had raised in his **446 1997 petition and added a new claim regarding execution by lethal injection. The State responded on November 13, 2006. On December 29, 2006, Reams replied and requested summary judgment on his intellectual-disability claim. On April 25, 2007, the circuit court denied Reams's motion for summary judgment. The circuit court also noted that Rule 37(d) of the Arkansas Rules of Criminal Procedure directs the clerk not to accept for filing any petition that fails to comply with the *4 affidavit requirement of subsection (c). However, the circuit court acknowledged that, despite this mandatory language, the clerk "has accepted and filed what seems to be an unverified Petition." Reams verified his petition on May 31, 2007.

After a hearing held on May 1, 2007, the circuit court entered a written order on May 31, 2007. The order scheduled an evidentiary hearing on Reams's Rule 37 petition to begin on August 20, 2007. The circuit court ruled that several of Reams's claims were not cognizable under Rule 37 and limited the evidentiary hearing to Reams's claim of mental retardation and ineffective assistance of counsel.

The evidentiary hearing on Reams's Rule 37 petition commenced on August 20, 2007, and concluded on January 5, 2015.[1] At the hearing, Maxie Kizer, Reams's trial counsel, testified that in 1993 he was a part-time public defender and also had a part-time civil practice. Kizer testified that his caseload covered "sixty-percent of the filings in Jefferson County where people ended up ... being found indigent and afforded an attorney." Kizer testified that he has handled approximately eight to ten death-penalty cases but stated, "I can't remember ... This may have been my first one, to tell you the truth." Kizer testified that he did not start "the basic stuff" for Reams's trial until *5 November 1993, or one month before Reams's trial. Kizer testified that "[his] theory of defense is that they couldn't prove who shot the individual who was shot." When asked whether Kizer sought to interview witnesses to support the non-triggerman theory, Kizer testified that Alford Goodwin was represented by counsel. Kizer further testified that he did not recall whether he had approached counsel for Goodwin but that he did not have a good working relationship with Goodwin's counsel.

Gene McKissic, a Jefferson County attorney who previously worked in the prosecutor's office, testified about the custom and practice of racial discrimination in the jury selection. Specifically, McKissic testified that while he was a prosecutor in Jefferson

County, it was the practice of the prosecutor's office to exercise peremptory strikes to exclude African Americans from juries. McKissic testified that, to avoid the appearance of racism, it was common to select at least one African American juror who the prosecutors knew would vote a particular way.

Jesse Kearney, another Jefferson County attorney and former circuit court judge, testified regarding jury composition and the juror-selection process in Jefferson County. Kearney testified that in the courtrooms of the two Caucasian judges with Caucasian bailiffs, African Americans were underrepresented on venires. However, **447 in the courtroom of the only African American judge with an African American bailiff, the jury pool more closely reflected a fair cross-section of Jefferson County's population. Kearney testified that "it wouldn't take long for a bailiff to start recognizing names that they've used ... the purpose would be to get good jurors. And I would guess that the bailiff knows certain *6 people and think they're good jurors and would just tend to call them. Black bailiff [sic] would tend to call people who were black that they know and trust them as good jurors; white bailiffs tended to call white people."

Goodwin, Reams's codefendant testified, that on May 5, 1993, he shot Turner. Goodwin testified that before Turner's arrival at the ATM, Reams gave Goodwin the gun. Originally, the plan was for Goodwin to go to the passenger side and try to turn the vehicle off, and Reams was supposed to go the driver's side and hold the driver up with the gun. However, Goodwin

testified that when a big truck pulled up, "I told [Reams] that he was too little because he ain't going to be able to reach the window, so give me the gun." Goodwin testified that, based on their prior plans, once Goodwin gained possession of the gun, Reams automatically knew he would need to position himself by the passenger-side door. Goodwin testified that when Turner pulled up to the ATM, Goodwin went around to the driver's side and Reams went around to the passenger side. When Goodwin walked up, Turner looked at Goodwin and asked, "What the hell you want?" At this point, Turner did not see Reams entering from the passenger side. As Reams got into Turner's truck, Turner turned his head toward Reams, and Goodwin shot him. Goodwin testified that he initially told police that he did not shoot Turner and also sent letters to Turner's family stating that he did not shoot Turner. Goodwin's August 14, 1996 affidavit and a transcribed interview from the same day were entered into evidence. In his 1996 interview and affidavit, Goodwin admitted that he had shot Turner. Goodwin further stated that his lawyer never told him that Kizer was trying to get in touch with him about what happened *7 on May 5, 1993. Further, no one asked Goodwin to testify in Reams's case. Goodwin testified that if he had been asked to testify in 1993, he would like to think that he would have testified that he was the shooter. However, he testified that he was a different person back then. On cross-examination, Goodwin testified that he was not asked to testify, but if he had been asked, he would have testified. Goodwin further testified, "Just like I told [Reams's] legal team, I was such a different person back then ... I couldn't honestly just sit here and tell you what I would've said because of

the type of person I was then."

Goodwin's friend Phillip Curry also testified that Goodwin had killed Turner. Curry was not present when Turner was killed; however, pursuant to his testimony at the 2014 Rule 37 hearing and his November 21, 2006 affidavit, Curry discussed the shooting with Reams and Goodwin the day after the shooting. Curry testified that Reams told him that while he was trying to turn the car off, he heard a gunshot. Curry testified that Goodwin told him that Reams and Turner were "tussling in the car, and [he] couldn't see what was going on, and [he] just shot."

The State presented one witness, Flora Cook, who is the Chief Deputy Clerk of the Jefferson County Circuit Clerk's Office. Cook testified that the initial selection of jurors is through voter-registration rolls and the use of a jury wheel.

Following the Rule 37 hearing, both Reams and the State submitted posthearing briefs from September 30, 2015, **448** through September 23, 2016. On April 13, 2017, the circuit court entered its order granting in part Reams's Rule 37 petition. Pertinent to the present appeal, the circuit court denied Reams's claims that counsel was ineffective during **8** the guilt/innocence phase. With regard to Reams's claims that counsel was ineffective during the penalty phase of trial, the circuit granted his petition and vacated Reams's death sentence.

On May 10, 2017, Reams timely filed his notice of appeal, and the State timely filed its notice of cross-appeal on May 12, 2017. With this lengthy procedural history in mind, we move to the merits of Reams's appeal and the State's cross-appeal.

## I. *Standard of Review*

When reviewing a circuit court's ruling on a petitioner's request for Rule 37 relief, this court will not reverse the circuit court's decision granting or denying postconviction relief unless it is clearly erroneous. *Kemp v. State*, 347 Ark. 52, 55, 60 S.W.3d 404, 406 (2001). A finding is clearly erroneous when, although there is evidence to support it, the appellate court after reviewing the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Id.* "The benchmark for judging a claim of ineffective assistance of counsel must be 'whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.' *Strickland [v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ]." *Henington v. State*, 2012 Ark. 181, at 3–4, 403 S.W.3d 55, 58. Pursuant to *Strickland*, we assess the effectiveness of counsel under a two-prong standard. First, a petitioner raising a claim of ineffective assistance must show that counsel made errors so serious that counsel was not **9** functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment to the United States Constitution. *Williams v. State*, 369 Ark. 104, 251 S.W.3d 290 (2007). A petitioner making an ineffective-assistance-of-counsel claim must show that his counsel's performance fell below an objective standard of reasonableness. *Springs v. State*, 2012 Ark.

87, 387 S.W.3d 143. A court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.*

Second, the petitioner must show that counsel's deficient performance so prejudiced petitioner's defense that he was deprived of a fair trial. *Id.* The petitioner must show there is a reasonable probability that, but for counsel's errors, the fact-finder would have had a reasonable doubt respecting guilt, i.e., the decision reached would have been different absent the errors. *Howard v. State*, 367 Ark. 18, 238 S.W.3d 24 (2006). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Id.* Unless a petitioner makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Id.* Additionally, conclusory statements that counsel was ineffective cannot be the basis for postconviction relief. 🚩 *Anderson v. State*, 2011 Ark. 488, 385 S.W.3d 783.

## II. *Guilt/Innocence Phase*

On direct appeal, Reams presents two arguments regarding the guilt/innocence phase of his trial: (1) his trial counsel was ineffective during the guilt/innocence phase of trial, and thus, he must receive a new trial; and (2) his claims of jury discrimination were cognizable in his Rule 37 proceedings.

**\*10** As to Reams's arguments regarding trial

counsel's ineffectiveness during the guilt/innocence phase, only two of **\*\*449** his subpoints are properly before us: (1) trial counsel was ineffective at trial for failing to object to evidence of other crimes; and (2) trial counsel was ineffective for failing to challenge the systematic underrepresentation of African American potential jurors pursuant to 🚩 *Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979).[3] With regard to these claims, the circuit court specifically found as follows:

> The 2006 Memorandum of Law contains 14 claims lettered "a" through "n." The first 13 of these repeat claims made in the original Rule 37 petition, and none of them is cognizable because they are claims that could have been raised at trial and on direct appeal. *See generally, e.g., Howard v. State*, 367 Ark. 18, 26, 238 S.W.3d 24, 32 (2006). Even as ineffective-assistance allegations, however, they do not support relief as they are conclusory. *See, e.g., Jackson v. State*, 352 Ark. 359, 371, 105 S.W.3d 352, 360 (2003). The petitioner's mere addition of a sentence that counsel was ineffective with respect to these many otherwise-not-cognizable claims cannot support relief. Thus, these claims ("a" through "m") are denied for that reason.[3]

**\*11** ....

Given the petitioner's trial testimony admitting to the planning and commission of the crime—the robbery at gunpoint of a stranger at an ATM at night resulting in his shooting death—(Tr. R. 731-79), 🚩 *Reams v. State*, 322 Ark. 336, 339, 909 S.W.2d 324, 326 (1995), his guilt-phase

ineffective-assistance claims do not merit any relief. In the face of such an admission, there simply is nothing to suggest the reasonable probability of a different outcome—i.e., acquittal of capital murder. *Cf. generally* ⚑ *Strickland v. Washington*, 466 U.S. 668, 697 [104 S.Ct. 2052, 80 L.Ed.2d 674] (1984) ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."). All of the petitioner's guilt-phase claims are rejected for want of a showing of prejudice generally in light of his admission at trial to his complicity in the crime.

**\*\*450** ....

d. 404(b), Prior Crimes Evidence ...; *Dixon v. State*, 2014 Ark. 97, at 7–8 [2014 WL 805350] (per curiam) (where evidence admissible as *res gestae*, counsel not ineffective); ⚑ *Sasser v. State*, 338 Ark. 375, 391–92, 993 S.W.2d 901, 910–11 (1999) (per curiam) (objection to prior-evidence as to 404(b) not deficient for failure to independently raise due-process objection).

....

f. Fair cross section – Jury Challenges ...*Wainwright v. State*, 307 Ark. 569, 577-78, 823 S.W.2d 449, 453 (1992) (per curiam) (fair cross section ineffective-assistance claim fails in absence of showing of prejudice).

⚑ *Batson* – Jury Challenges ...*Wooten v. State*, 351 Ark. 241, 247-48, 91 S.W.3d 63, 67 (2002) (failure to show relief would have been granted had ⚑ *Batson* challenge been made); ⚑ *Reams*, 322 Ark. at 340-43, 909 S.W.2d at 327-328 (⚑ *Batson* claim raised on direct appeal).

(Footnotes omitted.)

**\*12** With regard to both jury challenges in subsection "f," the order contained the following footnote: "Judge Brown ruled that the claims in "f" must succeed together in order for the petitioner to obtain relief on them. As each fails on its own, they also fail together."

A. Other Crimes

For his first point on appeal from the guilt/innocence phase of his trial, Reams argues that his trial counsel was ineffective for failing to object to the admission of evidence of his other crimes. Reams asserts that references to his involvement in crimes unrelated to the capital-murder charge—the burglary of the dry cleaners, the robbery of a bus station, and the robbery at an ATM—were featured prominently throughout the guilt/innocence phase of his trial. Reams argues that the jury should never have heard any of this prejudicial, other-crimes evidence during the

guilt/innocence phase of his trial. To support his position, Reams argues that this court has made clear that, under Rule 404(b) of the Arkansas Rules of Evidence,[4] other-crimes evidence can be admitted only if it is "independently relevant to the main issue, in that it tends to prove some material point rather than merely proving that the defendant is a criminal." *Lockhart v. State*, 2010 Ark. 278, at 9, 367 S.W.3d 530, 536.

**\*13** As quoted above, the circuit court found that Reams failed to demonstrate that he had been prejudiced. We agree that given Reams's trial testimony admitting the planning and commission of the crime, Reams has failed to demonstrate prejudice under the 🚩 *Strickland* analysis. To establish prejudice, Reams must show a reasonable probability that the jury's decision would have been different absent counsel's alleged errors. *Howard, supra.* If a claim fails under the prejudice prong of 🚩 *Strickland*, it is unnecessary to first evaluate whether counsel's performance was deficient in some respect. 🚩*Strickland*, 466 U.S. at 697, 104 S.Ct. 2052 (stating that "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies"). Given Reams's testimony regarding his involvement in the planning and commission of the robbery **\*\*451** and shooting death of the victim at an ATM, and given the circuit court's reliance on Reams's own testimony, we cannot say that the circuit court erred in its ruling. Thus, the circuit court did not clearly err in finding that Reams failed to demonstrate a reasonable probability that the jury's decision would have been different had the

evidence of his other crimes been excluded. We affirm on this point.

## B. Jury Composition

We now turn to the remainder of Reams's arguments on direct appeal, which occurred during the guilt/innocence phase of his trial and involve jury challenges. First, Reams argues that trial counsel was ineffective for failing to raise the fair-cross-section-of-the-jury violation based on the systematic underrepresentation of African American potential jurors pursuant to 🚩 *Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979). Second, Reams **\*14** contends that the circuit court committed clear error in ruling that only Reams's claims of ineffective assistance of counsel were cognizable in his Rule 37 proceedings. Specifically, Reams argues that his 🚩*Duren* and 🚩*Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), claims are cognizable because they are structural in nature. Thus, Reams urges this court to reverse the circuit court's ruling that his Rule 37 claims are limited to ineffective assistance of counsel and remand for adjudication of his 🚩 *Duren* and 🚩*Batson* claims.

### 1. 🚩*Batson*

We first consider Reams's 🚩*Batson* claim. Reams has already presented 🚩 *Batson* arguments on direct appeal, which were

rejected by this court. However, Reams contends that his new 🚩*Batson* claim is structural in nature and cognizable because new evidence in support of this claim was obtained from the Rule 37 proceedings. However, we hold that Reams has already argued 🚩*Batson* challenges before this court, which were rejected in his direct appeal, and we decline to revisit his claims. *See* 🚩*Reams, 322 Ark. 336, 909 S.W.2d 324*. Because Reams's 🚩*Batson* claims were raised in his direct appeal and rejected by this court, Rule 37 does not provide an opportunity to reargue settled points. 🚩*Coulter v. State, 343 Ark. 22, 31 S.W.3d 826 (2000)* (citing *Trimble v. State, 336 Ark. 437, 986 S.W.2d 392 (1999)* (per curiam); 🚩*Hall v. State, 326 Ark. 318, 933 S.W.2d 363 (1996)*; *Dunham v. State, 315 Ark. 580, 868 S.W.2d 496 (1994)* ).


## 2. 🚩*Duren*

We now turn to Reams's fair-cross-section-of-the-jury claims pursuant to 🚩*Duren*. His argument on appeal is twofold. First, Reams argues that he was tried, convicted, and **\*15** sentenced to death by a predominantly Caucasian jury that was drawn from a mostly Caucasian jury pool and did not come close to reflecting a fair cross-section of the Jefferson County community. Reams argues that trial counsel was constitutionally deficient because he knew that the jury pools in Jefferson County were not representative of the community and knew the likely reason for it—racially discretionary selection by the courtroom bailiffs—yet trial counsel failed to engage in reasonable advocacy to ensure that Reams's Sixth Amendment rights were protected. Regarding the prejudice prong, Reams argues that the circuit court erroneously denied relief on the ground that Reams failed to prove that a jury not tainted by discrimination would have likely reached a different verdict. Reams contends that the only "prejudice" he had to demonstrate was that his underlying fair-cross-section claim had merit but was not raised because of trial counsel's deficient performance. For his second fair-cross-section **\*\*452** claim, Reams argues that the circuit court committed clear error in ruling that only his claim of ineffective assistance of counsel was cognizable in these Rule 37 proceedings. Specifically, Reams argues that his fair-cross-section claim is cognizable because it is structural in nature. Reams argues that he should therefore be permitted to raise a 🚩*Duren* claim in his Rule 37 proceeding.

Upon our review, we note that Reams recognizes that, generally, a petition under Rule 37 does not provide a remedy when an issue could have been raised at trial or argued on appeal. *E.g.*, *Springs v. State, 2012 Ark. 87, at 14, 387 S.W.3d 143, 154*; *see also* 🚩*Sasser v. State, 338 Ark. 375, 383–84, 993 S.W.2d 901, 906 (1999)* (stating that even constitutional issues must be raised in the circuit court and on direct appeal rather than in Rule 37 **\*16** proceedings). Rule 37 is a postconviction remedy and, as such, does not provide a method for the review of mere error in the conduct of the trial or to serve as a substitute for appeal. 🚩*Hulsey v. State, 268 Ark. 312, 595 S.W.2d 934 (1980)*. However, we have

made an exception for errors that are so fundamental as to render the judgment of conviction void and subject to collateral attack. 🚩 _Collins v. State_, 324 Ark. 322, 920 S.W.2d 846 (1996). When we review a "fundamental" or "structural" error either on direct appeal or through the exception described above, the fundamental nature of the error precludes application of the "harmless-error" analysis. 🚩 _Sasser_, 338 Ark. at 384, 993 S.W.2d at 906.

With respect to fundamental errors, we have held that the right to trial by a twelve-member jury is a fundamental right that falls within the above-stated exception. 🚩 _Collins, supra._ We have also held that double-jeopardy protection is a fundamental right that can be raised in a Rule 37.1 proceeding. 🚩 _Rowbottom v. State_, 341 Ark. 33, 13 S.W.3d 904 (2000). Additionally, the United States Supreme Court has determined that errors are structural in very limited cases. _See_ 🚩 _United States v. Gonzalez-Lopez_, 548 U.S. 140, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006) (erroneous deprivation of the right to counsel of choice); 🚩 _Sullivan v. Louisiana_, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) (right to trial by jury denied by giving defective reasonable-doubt instruction); 🚩 _Vasquez v. Hillery_, 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986) (discriminatory exclusion of African American grand jurors); 🚩 _Waller v. Georgia_, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984) (denial of the right to public trial); 🚩 _McKaskle v. Wiggins_, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984) (denial of the right to self-representation); 🚩 _Gideon v._

_Wainwright_, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (denial of right to counsel). The Court has explained that these structural defects "defy analysis by 'harmless-error' standards" because they "affec[t] **17** the framework within which the trial proceeds," and are not "simply an error in the trial process itself." 🚩 _Gonzalez-Lopez_, 548 U.S. at 148–49, 126 S.Ct. 2557 (citing 🚩 ⚠ _Arizona v. Fulminante_, 499 U.S. 279, 310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991) ).

Thus, the issue for our consideration is whether Reams's alleged fair-cross-section-of-the-jury violation falls within the very narrow structural- or fundamental-error exception. The United States Supreme Court has held that "[t]he American concept of the jury trial contemplates a jury drawn from a fair cross section of the community." 🚩 _Taylor v. Louisiana_, 419 U.S. 522, 527, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). Under the Sixth Amendment, "petit juries must be drawn from a source fairly representative of the community"; however, an accused is "not entitled to a jury of any particular composition." **453** 🚩 _Id._ at 538, 95 S.Ct. 692. The Court explained further,

> We accept the fair-cross-section requirement as fundamental to the jury trial guaranteed by the Sixth Amendment and are convinced that the requirement has solid foundation. The purpose of a jury is to guard against the exercise of arbitrary power—to make available the commonsense judgment of the community as a hedge against the overzealous or mistaken prosecutor and in preference to the professional or perhaps

overconditioned or biased response of a judge. 🚩*Duncan v. Louisiana*, 391 U.S. [145] at 155—156, 88 S.Ct. [1444] at 1450–1451 [20 L.Ed.2d 491 (1968) ]. This prophylactic vehicle is not provided if the jury pool is made up of only special segments of the populace or if large, distinctive groups are excluded from the pool. Community participation in the administration of the criminal law, moreover, is not only consistent with our democratic heritage but is also critical to public confidence in the fairness of the criminal justice system. Restricting jury service to only special groups or excluding identifiable segments playing major roles in the community cannot be squared with the constitutional concept of jury trial. 'Trial by jury presupposes a jury drawn from a pool broadly representative of the community as well as impartial in a specific case.... (T)he broad representative character of the jury should be maintained, partly as assurance of a diffused impartiality and partly because sharing in the administration of justice is a phase of civic responsibility.' 🚩*Thiel v. Southern Pacific Co.*, 328 U.S. 217, 227, 66 S.Ct. 984, 90 L.Ed. 1181 (1946) (Frankfurter, J., dissenting).

🚩 419 U.S. at 530–31, 95 S.Ct. 692 (alteration in original).

**\*18** Based on 🚩*Duren*, to establish a prima facie violation of the fair-cross-section requirement, a litigant must demonstrate (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number

of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process. 🚩439 U.S. 357, 364, 99 S.Ct. 664.

In 🚩 *Grinning v. City of Pine Bluff*, 322 Ark. 45, 907 S.W.2d 690 (1995), this court considered Grinning's conviction for disorderly conduct that was tried before a six-member jury. On appeal, Grinning challenged the constitutionality of her jury. The State contended that Grinning had waived any objection and urged this court to hold that the issue had not been preserved for review. Relying on 🚩*Winkle v. State*, 310 Ark. 713, 841 S.W.2d 589 (1992), and 🚩*Wicks v. State*, 270 Ark. 781, 606 S.W.2d 366 (1980), we reached the merits in Grinning's appeal and reversed the circuit court:

> In both cases, neither the appellants nor their counsel objected to the violation of their jury trial right. In 🚩 *Winkle*, this court stated that denial of the right to trial by jury in a criminal case, without the requisite waiver in accordance with the law, is a serious error for which the trial court should intervene, and is therefore an exception to the contemporaneous objection rule. 🚩*Winkle*, 310 Ark. 713, 717, 841 S.W.2d 589, 591 (citing

⚑*Wicks v. State*, 270 Ark. 781, 606 S.W.2d 366 (1980) ).

⚑*Grinning*, 322 Ark. at 49, 907 S.W.2d at 692. ⚑*Grinning* extended ⚑*Winkle* by holding that the right to a jury trial included not only having a jury, but also having a jury composed of twelve members rather than **454 only six. *Id.* Almost a decade later, in ⚑ *19 *Anderson v. State*, 353 Ark. 384, 397, 108 S.W.3d 592, 600 (2003), we again addressed the significance of a right to a jury trial and explained,

> The right to jury trial is part of the basic structure of our courts. Every judge, on his own motion, should accord such a basic right. In ⚑*Wicks v. State*, *supra*, we set out various exceptions to the contemporaneous objection rule, and we provided that the rule is not applicable when the trial court should intervene on its own motion to correct a serious error. This is such a serious error. The right to a trial by jury in a criminal case is a fundamental right of our jurisprudence and is recognized by the Magna Charta, the Declaration of Independence, the federal constitution, and our state

constitution.

⚑*Anderson*, 353 Ark. at 398, 108 S.W.3d at 600 (citing ⚑*Winkle*, 310 Ark. at 717–18, 841 S.W.2d at 591).

Based on our discussion above, the law is clear: the right to a jury trial is part of the basic structure of our courts. Here, in addressing Reams's argument regarding the composition of his jury, we hold that a twelve-member jury is meant to include twelve members who represent a fair cross-section of the community. In reaching this conclusion, we are mindful that this extension is supported by our case law. As we explained in ⚑*Grinning*, "We are well aware of the view expressed by the state that some abuse of the criminal justice system could result from our construction of the Arkansas Constitution and the Arkansas Rules of Criminal Procedure. However ... this may be the price the judicial system must pay to ensure that a defendant is not deprived of his fundamental constitutional right to a trial by jury." ⚑322 Ark. at 50, 907 S.W.2d at 692 (internal citations omitted). Accordingly, we hold that a fair-cross-section-of-the-jury violation is structural and therefore cognizable in Rule 37 proceedings.

*20 Having found that a fair-cross-section claim is structural in nature, we now turn to the circuit court's denial of Reams's ineffective-assistance claim on the basis that Reams failed to demonstrate the ⚑*Strickland* prejudice prong. Again, the circuit court found as follows:

f. Fair cross section – Jury Challenges ...*Wainwright v. State*, 307 Ark. 569, 577-78, 823 S.W.2d 449, 453 (1992) (per curiam) (fair cross section ineffective-assistance claim fails in absence of showing of prejudice).

The United States Supreme Court has held that in certain Sixth Amendment contexts, prejudice is presumed. *Strickland*, 466 U.S. at 692, 104 S.Ct. 2052. In *Weaver v. Massachusetts*, ⸺ U.S. ⸺, 137 S.Ct. 1899, 198 L.Ed.2d 420 (2017), the United States Supreme Court addressed the issue of whether a defendant must demonstrate prejudice when a structural error is raised in the context of an ineffective-assistance-of-counsel claim. In *Weaver*, the Court specifically found that a violation of the right to a public trial, which has been deemed structural in nature, does not necessarily lead to a fundamentally unfair trial. *Id.* at 1911. Therefore, with regard to prejudice, the Court held that a defendant must demonstrate either a reasonable probability of a different outcome in his or her case or that the structural error was so serious as to render his or her trial fundamentally unfair. *Id.* The Court explained that "[n]either the reasoning nor the holding here calls into question the Court's precedents determining that certain errors are deemed structural and require reversal because they cause fundamental unfairness, either to the defendant in the specific case or by pervasive undermining of the systemic requirements of a **455 fair and open judicial process." *Id.* The Court cited *21 *Vasquez v. Hillery, supra*, which holds that the exclusion of African Americans from grand juries is a structural error.[5]

Based on our discussion above and a review of the appeal before us, we hold that Reams's fair-cross-section claim is analogous to the structural error of excluding African Americans from grand juries. *See* *Hillery*. Unlike the public-trial violation in *Weaver*, a fair-cross-section violation necessarily renders one's trial fundamentally unfair. This holding is likewise consistent with our decision in *Wainwright v. State*, 307 Ark. 569, 823 S.W.2d 449 (1992) (per curiam). The parties dispute the meaning of our reference to prejudice in *Wainwright*. The State contends that *Wainwright* supports its position that fair-cross-section violations are not structural errors and that prejudice is still required to show ineffective assistance of counsel. In that case, the petitioner alleged that trial counsel was ineffective for failing to timely object to the makeup of the jury panel before voir dire began or in failing to present evidence to show that the panel did not represent a fair cross-section of the community. We explained that the "petitioner has not shown that he was *prejudiced* in that he has not demonstrated that the jury which tried him was not selected in accordance with the requirements of the Sixth Amendment." *Id.* at 577–78, 823 S.W.2d at 453–54 (emphasis added). Reams contends that this language indicates that "this Court has made *22 clear that ineffective assistance of counsel claims based on the failure to litigate fair cross-section violation must employ the

prejudice test reserved for structural errors—that is, the Court must ask whether an error occurred rather than ask whether a reasonable probability exists that the error affected the outcome." We agree with Reams's interpretation of _Wainwright_ and take this opportunity to clarify that the prejudice prong of 🚩_Strickland_ is demonstrated through the existence of a fair-cross-section violation. Stated differently, prejudice is presumed if a fair-cross-section violation is established. Accordingly, we hold that the circuit court clearly erred by requiring Reams to prove that he was prejudiced by his counsel's failure to pursue the fair-cross-section claim. We reverse and remand for further findings as to whether Reams has established a valid 🚩_Duren_ claim using the three-prong test set forth above.

### III. _Penalty Phase_

On cross-appeal, the State argues that the circuit court's finding that Reams was denied effective assistance of counsel during the penalty phase of his trial was clearly erroneous. The State urges this court to conclude that trial counsel was not ineffective during the penalty phase for two reasons. First, the State argues that it is dubious that Goodwin would have testified at Reams's trial in 1993, undercutting the credibility and utility of Curry's claim that Goodwin admitted having been the shooter.[6] Second, the **\*\*456 \*23** State argues that even if Goodwin and Curry had testified that Goodwin was the shooter to support the mitigating circumstance, the question was

not beyond dispute, particularly considering Reams's responsibility for procuring the firearm and his complicity—as the shooter or as an accomplice—in its use in the capital murder. Finally, the State argues that Reams cannot show prejudice under 🚩_Strickland_, because there is not a reasonable probability that the jury would not have sentenced him to death in light of the proof that he and Goodwin together committed the capital murder of Turner, without respect to which one had fired the fatal shot.

With regard to trial counsel's ineffectiveness during Reams's penalty phase, the circuit court found:

> The question is whether he has shown evidence now that his trial counsel did not which would cast doubt on the reliability of his death sentence. The Court concludes that he has with respect to his co-defendant Alford Goodwin's admission to being the shooter. In other words, the Court concludes that he has shown the reasonable probability of a different outcome—that is, his trial jury would not have imposed a death sentence, despite its finding two aggravating circumstances, one for pecuniary gain and one for a previous violent felony. He has made that demonstration on the totality of the evidence, _see_, _e.g._, _Howard_, 367 Ark. at 45, 238 S.W.3d at 44, as to whether he fired the fatal shot. The Rule 37 hearing testimony has left the Court with doubts that the petitioner fired the fatal shot. The Court concludes those doubts as demonstrated at the hearing would have caused at least one reasonable juror to have doubt that the petitioner should be sentenced to death, despite his

unquestionable complicity in the capital murder.

**\*24** Consequently, his sentence of death is vacated, and the case to be set for a new trial should the State seek to pursue a sentence other than life imprisonment without parole.

In 🚩 *Wiggins v. Smith*, the United States Supreme Court explained that trial counsel's failure to investigate and present substantial mitigating evidence during the sentencing phase of a capital-murder trial can constitute ineffective assistance of counsel. 🚩 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003). With respect to an ineffective-assistance-of-counsel claim regarding the decision of trial counsel to call a witness, such matters are generally trial strategy and outside the purview of Rule 37.1. *Banks v. State*, 2013 Ark. 147, 2013 WL 1491272. When a petitioner alleges ineffective assistance of counsel for failure to call witnesses, it is incumbent on the petitioner to name the witness, provide a summary of the testimony, and establish that the testimony would have been admissible into evidence. *Wertz v. State*, 2014 Ark. 240, at 4, 434 S.W.3d 895, 900 (citing *Moten v. State*, 2013 Ark. 503, 2013 WL 6327549 (per curiam) ). To demonstrate prejudice, the petitioner is required to establish that there was a reasonable probability that, had counsel performed further investigation and presented the witness, the outcome of the trial would have been different. *Hickey v. State*, 2013 Ark. 237, 428 S.W.3d 446. Trial counsel must use his or her best judgment to determine which witnesses will be beneficial to the client. *Id.* Nonetheless, such strategic decisions must still be supported by

reasonable professional judgment. *Id.* Finally, "[w]hen assessing an attorney's decision not to call a particular witness, it must be taken into account that the decision **\*\*457** is largely a matter of professional judgment which experienced advocates could endlessly debate, and the fact that there was a witness or witnesses that could have offered testimony beneficial to the defense is not in **\*25** itself proof of counsel's ineffectiveness." *Johnson v. State*, 325 Ark. 44, 49, 924 S.W.2d 233, 236 (1996) (internal citations omitted). To review the circuit court's order and correctly determine this issue, we must look at all the evidence adduced at trial and at the Rule 37 hearing. *Howard*, 367 Ark. 18, 238 S.W.3d 24.

As for the State's assertion that it was dubious that Goodwin would have testified at Reams's trial, we disagree. Goodwin pleaded guilty to capital murder and was sentenced to life without parole on December 1, 1993. Reams's trial commenced on December 12, 1993. Thus, at the time of Reams's trial, Goodwin had already pleaded guilty to capital murder and had already been sentenced. At the Rule 37 hearing, Goodwin testified that he took the life of another human being on the night of May 5, 1993. Goodwin testified that he and Reams went to an ATM to rob someone and that person turned out to be Turner. Further, Goodwin testified that he shot Turner during the process of the robbery.

Throughout the trial, trial counsel's theory was that Goodwin had shot and killed Turner. Despite this defense theory, trial counsel testified at the Rule 37 hearing that he could not talk to Goodwin because

Goodwin was represented by counsel. Trial counsel testified that he did not recall whether he had approached counsel for Goodwin but that he did not have a good working relationship with Goodwin's counsel. Trial counsel further testified that "[he didn't] know when [Goodwin] pled in relation to [Reams's] trial."

Based on the above testimony and in light of the defense's theory that Goodwin shot Turner, there is no strategic reason not to at least investigate and attempt to present Goodwin at trial to corroborate Reams's defense that he was not the shooter. Accordingly, **\*26** we hold that trial counsel's failure to at least attempt to present Goodwin's testimony during the penalty phase of trial constitutes deficient performance. Stated differently, Reams has demonstrated that his trial counsel's performance fell below an objective standard of reasonableness and has thus satisfied the performance prong of _Strickland_.

Turning to the _Strickland_ prejudice prong, we agree with the circuit court's determination that Reams "has shown the reasonable probability of a different outcome—that is, his trial jury would not have imposed a death sentence." We hold that trial counsel's error was sufficient to undermine confidence in the jury's decision to sentence Reams to death.

We conclude that trial counsel's failure to, at a minimum, attempt to present Goodwin's testimony during the penalty phase of trial constitutes ineffectiveness. Therefore, based on our standard of review, we cannot say that the circuit court clearly erred in its

determination that trial counsel was ineffective for his failure to call Goodwin as a witness during the penalty phase. We affirm the circuit court's decision to vacate Reams's death sentence.

Affirmed in part and reversed and remanded in part on direct appeal; affirmed on cross-appeal.

Hart, J., concurs in part and dissents in part.

Wood and Womack, JJ., dissent.

Josephine Linker Hart, Justice, concurring in part and dissenting in part.

**\*27** I agree with the majority's conclusion in Reams's appeal that the circuit court **\*\*458** erred in rejecting his _Duren_ claim as uncognizable in Rule 37 proceedings. I also agree with the majority's decision in the State's cross-appeal to affirm the circuit court's finding that Reams is entitled to a new penalty-phase trial because his counsel failed to conduct an adequate investigation before his capital murder trial. I write separately to address Reams's argument that his trial counsel was ineffective during the guilt-phase of his capital murder trial for failing to investigate, interview, or present the testimony of either Alford Goodwin or Phillip Curry to support Reams's averment that Goodwin, and not Reams, was the one who shot and killed Gary Turner (hereafter, the "Goodwin-Curry Guilt-Phase Argument"). The majority disposes of the Goodwin-Curry Guilt-Phase Argument in a

footnote, reading as follows:

> The State correctly notes that not all of Reams's arguments on appeal were raised below or addressed by the circuit court. Specifically, as to the guilt/innocence phase, arguments regarding Phillip Curry, Alford Goodwin, and trial counsel's unpreparedness are not preserved.

Pages 449, Majority Opinion, fn. 2. I disagree with the majority's conclusion that this argument is not preserved for our review. As set forth in the following paragraphs, not only is it apparent from the record that this argument was raised, litigated, and ruled on below, but the parties and the circuit court also stipulated that this argument and others would be considered on appellate review. Furthermore, because my acceptance of this **\*28** argument would impact upon my opinion as to the proper disposition of this case, I address the argument on its merits.

Finally, I disagree with the majority's treatment of Reams's ⚑ _Batson_ claim. I would not limit this court's remand to the substance of Reams's ⚑ _Duren_ claim, but would direct the circuit court to consider the merits of Reams's ⚑ _Batson_ claim as well, in light of newly presented evidence.

## I. _Preservation of the Goodwin-Curry Guilt-Phase Argument_

First, contrary to the intimations contained in the majority opinion, the State does not allege that the Goodwin-Curry Guilt-Phase argument is not preserved for our review. While the State does argue on appeal that some of Reams's arguments are not preserved for our review, the Goodwin-Curry Guilt-Phase Argument is not one of them.[1] This omission appears to have been entirely deliberate on the State's part, as set forth in the following paragraphs.

**\*29** Second, the pleadings and the circuit court's final order reveal that this argument was raised, litigated, and ruled on below, making this issue ripe for our review. While it is true that the Goodwin-Curry Guilt-Phase Argument was not fully set out in the initially filed Rule 37 Petition, Reams did amend his petition after **\*\*459** the parties exchanged discovery materials to include Curry's affidavit as an exhibit to support the arguments already raised in the petition. The original Rule 37 Petition, even before the attachment of the Curry affidavit, did plead that "Counsel failed to conduct a reasonably adequate guilt phase investigation, so he could subject the state's case-in-chief to meaningful adversarial testing[,]" though the original Petition went on to list investigative failures not directly related to Goodwin or Curry. Then on January 9, 2007, Reams attached to his Petition the Curry affidavit, which spelled

out the details of Curry's knowledge about the case (particularly that Goodwin, and not Reams, was the shooter) and his availability to testify at Reams's capital murder trial. It is also apparent from Reams's motion filed on August 10, 2007 and the circuit court's order issued the same day that Reams had obtained Goodwin's presence from the Arkansas Department of Corrections to testify in the Rule 37 hearing, which began on August 20, 2007. All of this had transpired nearly ten (10) years before the Rule 37 trial judge issued its final order on April 13, 2017, which provided that "[a]ll of petitioner's guilt-phase claims are rejected for want of a showing of prejudice generally in light of his admission at trial to his complicity in the crime."

Third, not only does Reams's Petition with the attached Curry affidavit independently preserve the issue for our review, but the parties also stipulated at the **\*30** conclusion of the Rule 37 hearing that any issues raised in post-hearing briefs would be ruled upon by the circuit court and preserved for appellate preview, in light of the protracted nature of the Rule 37 proceedings. What follows is an excerpt of the discussion between the parties and the circuit court at the conclusion of the Rule 37 hearing:

> THE COURT: Frankly, I would prefer it be done by written brief.
>
> [PROSECUTION]: Right. The State's fine with that. I agree with [Ream's postconviction counsel] completely about, you know, sort of a timing of it. And, perhaps, we can get together and give the Court a, sort of -- you know, as part of the brief, sort of a snap-shot as

to what happened before. Make sure we have a record that has both of our court reporters. And then you might want to consider -- I mean, you might want to reraise the whatever -- remember the -- Judge Brown, that order that he gave. It was pretty -- I mean, it wasn't real limiting, but there were things in there that, you know could flesh out.

> It is an important case, and whatever issue that procedurally is a cognizable issue in Rule 37 that they raise, we want the Court to consider, you know. We don't want a record for federal habeas purposes, we don't want a record here in state court that leaves something undecided.
>
> THE COURT: Yes, sir.
>
> [PROSECUTION]: I mean, we have as much of an interest as they do in having every issue that they raise decided.
>
> THE COURT: Yeah, a real conclusion of the case.

*End of excerpt.*

The Goodwin-Curry Guilt-Phase Argument is one of the issues Reams raised and argued in his post-hearing briefs. The State's post-hearing briefs responded to the Goodwin-Curry Guilt-Phase Argument on its merits, asserting specifically that the **\*31** argument fails for want of prejudice in light of Reams's testimony during the guilt-phase acknowledging his complicity in the robbery, mirroring the circuit court's order. The circuit court's basis for rejecting all of Reams's                    guilt-phase

ineffective-assistance-of-counsel **\*\*460** arguments appears to have been literally "cut and pasted" from this section of the State's post-hearing brief. At no point before this court or the circuit court below has the State argued that the Goodwin-Curry Guilt-Phase Argument should not be addressed.

For these reasons, I would hold that the Goodwin-Curry Guilt-Phase Argument is properly preserved for our review. The inadequacy of Reams's trial counsel's pre-trial investigation has been a primary subject of the parties' postconviction litigation ever since it began back in 1997, with the focus specifically on the failure to call Goodwin and Curry since at least early 2007, before the Rule 37 hearing ever began, then continuing through the hearing itself and the parties' post-hearing briefing.[2] The majority entombs its lone allusion to and erroneous dismissal of this argument in a single footnote. This is beyond **\*32** troubling, especially considering the impact this argument could have upon the disposition of this case.

Per the majority opinion, Reams has established that he is entitled to a new penalty-phase trial; the circuit court reached that decision based upon Reams's argument that his trial counsel was ineffective for failing to investigate, interview, or obtain the testimony of Alford Goodwin, and we affirm that decision here. However, whether Reams will receive a new guilt-phase trial is a remaining question. The majority remands this case to the circuit court for further proceedings on Reams's ⚑ *Duren* claim, and Reams may or may not receive a new guilt-phase trial based upon the outcome of

those proceedings. However, in my view, Reams has already established that he is entitled to a new guilt-phase trial because the Goodwin-Curry Guilt-Phase Argument, which the majority does not address, is meritorious. The circuit court's rejection of this argument as to the guilt-phase was clear error. There is simply no basis for treating this argument as preserved and meritorious for purposes of the penalty-phase of Reams's capital murder trial, but somehow not preserved or non-meritorious as to the guilt-phase of the same trial.

## II. *Merits of the Goodwin-Curry Guilt-Phase Argument for Ineffective Assistance of Counsel*

Claims of ineffective assistance of counsel are governed by the two-prong analysis in ⚑ *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) "the petitioner must show ... that counsel's performance was deficient"; and (2) "the petitioner must show that the deficient performance prejudiced the defense." ⚑⚠ **\*33** *Sparkman v. State*, 373 Ark. 45, 49, 281 S.W.3d 277, 281 (2008) (citations omitted). In order to establish prejudice, the petitioner must show a "reasonable probability" that but for counsel's unprofessional errors, the result of the proceeding would have been different. ⚑ **\*\*461** *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.

*Lasiter v. State*, 290 Ark. 96, 98, 717 S.W.2d 198, 199 (1986) (quoting *Mason v. State*, 289 Ark. 299, 301–02, 712 S.W.2d 275, 276 (1986) ). In order to demonstrate prejudice for failing to present a witness, there must exist "a reasonable probability that, had counsel performed further investigation and presented the witness, the outcome of the trial would have been different." *Smith v. State*, 2015 Ark. 165, at 9, 459 S.W.3d 806, 813 (citation omitted).

Turning to the case at hand, it is plain that the Goodwin-Curry Guilt-Phase Argument satisfies both prongs of the 🚩 *Strickland* analysis. At the Rule 37 hearing, both Goodwin and Curry testified that Goodwin (from whom the prosecution and the circuit court accepted a plea before Reams's trial, and against whom the prosecution elected not to seek the death penalty), and not Reams, was the one who shot and killed the victim, and that neither of them were ever contacted by Reams's trial counsel. Their testimony, had it been secured for the guilt-phase of Reams's capital murder trial, would have corroborated Reams's ostensibly self-serving averments that he was not the shooter, that his and Goodwin's plan was only to rob the victim, and that there was never any plan or discussion of killing anyone. Reams's trial counsel's failure to even explore this information before Reams was convicted and sentenced to death was inescapably deficient and cannot be attributed to any reasonable trial strategy. *See* 🚩 **\*34** *Farmer v. State*, 321 Ark. 283, 287-88, 902 S.W.2d 209, 212 (1995) (counsel ineffective for "fail[ing] to secure the testimony of the only witnesses available who could corroborate his client's version of the facts"); *see also* 🚩 *State v. Dillard*, 338 Ark. 571, 573, 998 S.W.2d 750, 751 (1999) (counsel ineffective for failing to interview or subpoena potential defense witnesses); 🚩 *Russell v. State*, 302 Ark. 274, 277, 789 S.W.2d 720, 722 (1990) (counsel, who had no reason not to call defense witness, found ineffective).

This deficiency prejudiced Reams during the guilt-phase of his murder trial. Contrary to the analysis contained in the circuit court's order, the fact that Reams acknowledged complicity in the robbery during his testimony at trial does not obviate the realization of any deficient-counsel-related prejudice for the guilt-phase. While testimony from Goodwin and Curry during the guilt-phase of Reams's trial may not have led to Reams being acquitted of all charges, it certainly could have meant the difference between a conviction for capital felony murder and a conviction for first-degree felony murder. In Arkansas, the elements for capital felony murder are exactly the same as the elements for first-degree felony murder, and the jury was free to convict Reams of either of these offenses during the guilt-phase of Reams's capital murder trial. *See, e.g.*, *Ray v. State*, 342 Ark. 180, 181-82, 27 S.W.3d 384, 384–85 (2000) (defendant convicted of first-degree murder, but acquitted of capital murder, in pre-planned armed robbery ambush where defendant provided the murder weapon but was not the shooter), *O'Neal v. State*, 321 Ark. 626, 628-29, 907 S.W.2d 116, 117 (1995) (defendant found guilty of robbery, burglary, and first-degree murder, but acquitted of capital murder, for being accomplice to **\*35** burglary/robbery, rape, and murder of 92-year-old woman), *Thompson v. State*, 2015 Ark. 271, at 1-2,

548 S.W.3d 129, 130 (defendant convicted of robbery and first-degree murder, but acquitted of capital murder, for attempt to rob victim outside a nightclub, where codefendant shot and killed a second victim who intervened in robbery attempt).

The significance of this circumstance cannot be overstated in light of these **462 crimes' respective sentences. 🚩Ark. Code Ann. § 5-10-101(c)(1) provides that capital murder is punishable by death or life imprisonment without the possibility of parole, while Ark. Code Ann. § 5-4-401(a)(1) provides that a Class Y felony, such as first-degree felony murder, is punishable by a sentence of "not less than ten (10) years and not more than forty (40) years, or life[.]" Accordingly, this question dictates whether a so-situated individual will be sentenced to death by lethal injection (or, at the very least, to spending the rest of his or her life in prison without possibility of release), or instead will be sentenced to a term of years in prison, after which one could potentially see again the light of day. *See* 🚩*Sanders v. State,* 305 Ark. 112, 805 S.W.2d 953 (1991) ("[W]e have held in cases where the statutes overlap and both instructions are required, the jury may refuse consideration of both the death penalty and life without parole by returning a guilty verdict as to the charge of murder in the first degree."). This question literally represents the difference between life and death.

Here, the prosecution pursued a conviction against Reams, who was eighteen years old at the time of the crime, for capital felony murder, specifically under the theory that Reams was the one who shot and killed the victim. Central to this theory was the **36

prosecution's assertion that Reams was lying in his testimony that Goodwin, and not Reams, was the one who shot and killed the victim. Under this theory, the jury convicted Reams of capital felony murder.

The fact that the jury reached this determination without the benefit of testimony from either Goodwin or Curry "undermines confidence" in its decision to convict Reams of capital felony murder, and not the lesser charge of first-degree felony murder. If Reams's counsel had done an adequate investigation and presented the testimony from Goodwin and Curry during the guilt-phase, there is at least a "reasonable probability" that the outcome would have been different, i.e., that the jury would have returned a conviction for first-degree felony murder instead of capital felony murder, which would have taken the death penalty off the table. This should be a basic point. If the failure to procure these witnesses' testimony was sufficiently prejudicial as to warrant relief for the penalty-phase of Reams's capital murder trial, as the circuit court found and this court affirms, then it was sufficiently prejudicial as to warrant relief for the guilt-phase as well. Accordingly, I would hold that Reams has already established that he is entitled to a new guilt-phase trial under 🚩*Strickland*, which would render any remand for further proceedings on Reams's 🚩*Duren* claim unnecessary.

**37 III. *Reams's   Batson Claim*

I also disagree with the majority's handling of Reams's 🚩*Batson* claim. Like Reams's 🚩*Duren* claim, the 🚩*Batson* claim is "structural" in nature, and therefore can be addressed for the first time in post-conviction proceedings. Furthermore, the fact that this court addressed a version of Reams's 🚩*Batson* argument (as developed and presented by the same attorney who represented Reams at trial) over two decades ago in his direct appeal does not prevent Reams from raising the claim in these Rule 37 proceedings. Although Rule 37.2(b) ordinarily precludes the consideration of claims adjudicated at trial or on direct appeal, that principle is inapplicable when, as here, the petitioner presents substantial new evidence that fundamentally changes the nature of the claim. *See* 🚩*Cullen v. Pinholster*, 563 U.S. 170, 186 n.10, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011) (recognizing that substantial new evidence **463** in support of a previously adjudicated claim may in fact "present a new claim").

At the Rule 37 hearing, Gene McKissic, who worked in the Jefferson County Prosecuting Attorney's Office and then had a private criminal practice in Jefferson County for nearly three decades, testified that the office's "custom and practice was to save strikes to exclude African-Americans." Mr. McKissic also explained that he observed significant discrimination against African Americans in the jury selection process by his fellow Jefferson County prosecutors. Mr. McKissic's testimony—along with statements from his law partner, Jesse Kearney, who is a former Circuit Court Judge in the Eleventh Judicial District, which includes Jefferson County—would have supported the averment from Reams that there existed a custom and practice of racial discrimination in jury selection by **38** Jefferson County prosecutors at the time of his trial. All of this evidence is in addition to the facts presented in support of Reams's 🚩*Duren* claim, which have only been raised for the first time by Reams's postconviction counsel and which surely would have colored any consideration of his 🚩*Batson* claim.

Due process requires effective corrective procedures to protect Mr. Reams's liberty and life interests, which means that state postconviction procedures must comport with principles of "fundamental fairness." *See, e.g.,* 🚩⚠*Ford v. Wainwright*, 477 U.S. 399, 417–18, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986) (finding Florida's postconviction procedures for determining sanity of death row prisoner was not adequate to afford a full and fair hearing on a critical issue in the case). Accordingly, I would not limit this court's remand to the substance of Reams's 🚩*Duren* claim, but would direct the circuit court to consider the merits of Reams's 🚩*Batson* claim as well, in light of the newly presented evidence.

Rhonda K. Wood, Justice, dissenting.

The majority misconstrues multiple cases in overturning *Wainwright v. State*, 307 Ark. 569, 823 S.W.2d 449 (1992) (per curiam).[1] The majority concedes that Reams failed to demonstrate a reasonable probability that he was prejudiced "[g]iven Reams's testimony regarding his involvement in the planning

and commission of the robbery and shooting death of the victim at an ATM." Majority opinion, *supra*, at 450–51. I would affirm on that basis.

**\*39** The majority's decision has created an entirely new avenue for Rule 37 relief. Under this decision, we apparently no longer require that fair cross-section-of-the-jury claims be raised and preserved on direct appeal under *Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979), or be subject to a finding of prejudice under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The majority's analysis is flawed. It erroneously equates this case to other cases and constrains these cases to reach the conclusion that prejudice now is presumed. A thorough and honest comparison of these cases to Reams is therefore required.

First, the majority erroneously relies on *Collins v. State* to extend the exception to our requirement that constitutional errors be raised at trial and on direct appeal for "errors so fundamental as to render the judgment of conviction *void*." 324 Ark. 322, 326, 920 S.W.2d 846, 848 (1996) (emphasis added). *Collins* is distinguishable from this case because Collins was convicted by an eleven-member jury, instead of twelve. *Id.* Court rules at that time required the defendant **\*\*464** to waive his right to trial by a jury of twelve in writing or personally in open court, which undisputedly did not occur. *Id.* Consequently, being tried by an eleven-member jury was "a serious error for which the trial court should intervene and is an exception to the contemporaneous exception rule." *Id.* at 327, 920 S.W.2d at

849. We have repeatedly failed to extend *Collins*. *See, e.g.*, *Swain v. State*, 2017 Ark. 117, at 5–6, 515 S.W.3d 580, 585; *Springs v. State*, 2012 Ark. 87, at 15, 387 S.W.3d 143, 154; *Howard v. State*, 367 Ark. 18, 27, 238 S.W.3d 24, 32 (2006) (declining to extend for allegations of prosecutorial misconduct).

**\*40** Second, the majority cites to *Rowbottom v. State* as a reason for overruling our precedent. 341 Ark. 33, 13 S.W.3d 904 (2000). Again, the facts here are distinguishable. In *Rowbottom*, the issue was whether the defendant could raise double jeopardy in a Rule 37 proceeding without having previously raised it. *Id.* A double jeopardy violation is one that voids the judgment, which is completely different from the issue here. "A ground sufficient to void a judgment of conviction must be one so basic that it renders the judgment a complete nullity, for example, a judgment obtained in a court lacking jurisdiction to try the accused, or a conviction obtained in violation of an accused's rights against double jeopardy." *Jeffers v. State*, 301 Ark. 590, 591, 786 S.W.2d 114, 114 (1990). There is no allegation that Reams's judgment is void.

Finally, the majority defends its decision to overturn precedent with the Supreme Court's decision in *United States v. Gonzalez-Lopez*, 548 U.S. 140, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006). The majority uses *Gonzalez-Lopez* to advance its proposition that some errors are so fundamental as to be considered structural. Yet, an analysis of *Gonzalez-Lopez* suggests the opposite result from that which

the majority reaches in this case.

In 🚩 *Gonzalez-Lopez*, the defendant was denied the counsel of his choice. The federal district court then sanctioned the defendant's desired counsel for communicating with the defendant following its denial. The defendant was found guilty and appealed. Although the majority is correct that the Supreme Court held that a defendant's Sixth Amendment right to counsel of choice was structural in nature, it misapplied the Supreme Court's reasoning. In 🚩 *Gonzalez-Lopez*, the government argued that such a denial was subject to **\*41** review on direct appeal for harmless error. The Supreme Court disagreed, explaining that a right to counsel of choice impacts every stage of the proceedings and thus qualified as a structural error.

> Different attorneys will pursue different strategies with regard to investigation and discovery, development of the theory of defense, selection of the jury, presentation of the witnesses, and style of witness examination and jury argument. And the choice of an attorney will affect whether and on what terms the defendant cooperates with the prosecution, plea bargains, or decides instead to go to trial. In light of these myriad aspects of representation, the

> erroneous denial of counsel bears directly on the framework within which the trial proceeds, or indeed on whether it proceeds at all. Harmless-error analysis in such a context would be a speculative inquiry into what might have occurred in an alternate universe.

🚩 *Id.* at 150, 126 S.Ct. 2557 (cleaned up).

Clearly, 🚩 *Gonzalez-Lopez* is different from the present case. Every case the majority cites to reach its conclusion fails to support it. The majority is straining to provide analysis to overturn precedent.

**\*\*465** Here, Reams testified at trial that he participated in the ATM robbery that resulted in a death. He admitted at trial that the gun used to commit the murder came from him. The majority even affirms the circuit court's decision that there was no prejudice because there was no reasonable probability that, despite any alleged errors his counsel might have made, a jury would have reached a different outcome. This is not 🚩 *Gonzalez-Lopez*. The majority's decision that we will "presume" prejudice in this case necessarily presumes that a jury consisting of a different racial composition would have reached a different decision. Regardless of juror race, the jury would not have reached a different decision when they **\*42** heard the defendant's own incriminating testimony. The circuit court's decision was correct. For these reasons, I dissent.

Shawn A. Womack, Justice, dissenting.

I believe that the majority's decision to declare that a 🚩 _Duren_ violation is a structural error, and that we will presume prejudice when it occurs, is premature. Therefore, I must respectfully dissent. When ruling on a Rule 37 petition, the circuit court "shall determine the issues and make written findings of fact and conclusions of law with respect thereto." Ark. R. Crim. P. 37.3(c) (2017). In this case, the circuit court made virtually no written findings on Reams's 🚩 _Duren_ claim and instead made a single-sentence conclusion that his claim fails in the absence of a showing of prejudice. The circuit court's conclusory findings are not adequate for us to properly review this issue on appeal. _See Pigg v._

_State_, 2016 Ark. 108, at 2, 486 S.W.3d 751, 753 (per curiam). The appropriate response is for this court to remand the case to the circuit court to properly consider and analyze Reams's 🚩 _Duren_ claims before we take further action. I therefore dissent.

_Jin Hee Lee_, NAACP Legal Defense & Educational Fund, Inc. (New York), _pro hac vice_; _Christopher Kemmitt_ and _Ajmel Quereshi_, NAACP Legal Defense & Educational Fund, Inc. (Washington DC), _pro hac vice_; _Squire Patton Boggs (US) LLP_, by: _George H. Kendell_ and _Corrine Irish_, _pro hac vice_; and _John W. Walker, P.A._, by: _John W. Walker_, for appellant.

**All Citations**

2018 Ark. 324, 560 S.W.3d 441

**Footnotes**

1    On September 12, 2007, Judge Thomas Brown, sua sponte entered an order of recusal. Judge Brown's order explained that his decision to recuse was based on his wife's past friendship with the victim's wife and because the claims of systematic exclusion of African American jurors in that judicial district was contrary to his own experiences as both a prosecuting attorney and a defense attorney during the periods of time in question. Special Judge John Cole was assigned to the case and the Rule 37 hearing was continued in 2014 and eventually concluded in January 2015.

2    The State correctly notes that not all of Reams's arguments on appeal were raised below or addressed by the circuit court. Specifically, as to the guilt/innocence phase, arguments regarding Phillip Curry, Alford Goodwin, and trial counsel's unpreparedness are not preserved. An appellant in a Rule 37.1 proceeding is limited to the scope and nature of

his arguments below, and he cannot raise new arguments on appeal. _Hogan v. State_, 2013 Ark. 223, 2013 WL 2295431 (per curiam). In an appeal of the denial of a Rule 37.1 petition, failure to obtain a ruling on an issue, including a constitutional issue, precludes review on appeal. _Norris v. State_, 2013 Ark. 205, 427 S.W.3d 626 (per curiam). Accordingly, we limit our review of Reams's arguments to those that were ruled on by the circuit court.

[3]   Claims "a" through "m" are as follows: (a) failure to change venue; (b) arrest based upon unreliable, insufficient information; (c) admission of illegally seized tangible evidence; (d) admission of unlawfully obtained custodial statements; (e) admission of other-crimes evidence during the guilt phase; (f) admission of inadmissible, prejudicial hearsay; (g) underrepresentation of African Americans in the jury system; (h) discriminatory exercise of peremptory challenges; (i) insufficient evidence on extreme indifference; (j) absence of crucial jury instruction; (k) failure of the State to demonstrate death eligibility; (l) double-counting of circumstance; (m) arbitrary failure to consider mitigating evidence.

[4]   Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, intent, or absence of mistake or accident. Ark. R. Evid. 404(b).

[5]   We recognize that the Court noted that the errors in the enumerated cases necessitated automatic reversal after they were preserved and raised on direct appeal. We are likewise mindful that the Court specifically explained that the opinion did not address whether the result should be any different if the errors were raised instead in an ineffective-assistance claim on collateral review.

[6]   The State notes in its brief that it is unclear whether the circuit court faulted trial counsel for failing to call both Curry and Goodwin. However, we note that in the April 13, 2017 order granting Reams's petition in part, the circuit court's decision to grant Rule 37 relief as to ineffective assistance of counsel during the penalty phase appears to specifically hinge on Alford Goodwin's admission that he was the shooter. Absent from the order is any specific reliance on Phillip Curry's testimony.

[1]    In a footnote on pp. 4–5 of the State's brief, the State states as follows:

Reams' IAC claims are as lettered in his briefing argument at "B." and "D." His global claim at "A." is not a ground for reversal. It was not made or ruled on in circuit court. See generally, e.g., A. R. Cr. P. 37.5(i) (2017) (decision on claims from petition); cf. generally, e.g., Robbins v. State, 2012 Ark. 312, at 2-3 & n.2 (rulings on allegedly omitted issue not kind of pleading, and relief from death penalty obviated need for greater scrutiny). His lettered claims "C." and "E." are just iterations of the prejudice component of Strickland and this Court's appellate review standard for post-conviction claims reiterated *supra*.

Absent from this excerpt is any suggestion that the "IAC Claim" set out at "I.B" in Reams's brief (the Goodwin-Curry Guilt-Phase Argument) is not preserved for review.

[2]    Even if Reams had entirely omitted the Goodwin-Curry Guilt-Phase Argument from any of his pleadings, it remains indisputable that the parties actually tried the issue at the Rule 37 hearing. *See* Ark. R. Civ. Proc. 15(b) ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings"); *see also Barker v. State*, 2014 Ark. 467, 4, 448 S.W.3d 197, 199 ("In any event, postconviction matters are considered civil in nature, and there is no absolute right to appointment of counsel."), *Brady v. State*, 346 Ark. 298, 301, 57 S.W.3d 691 (2001) ("Rule 37 proceedings are civil in nature, and this court has referred to and applied the Rules of Appellate Procedure–Civil when necessary in criminal appeals."), *State v. Estrada*, 2013 Ark. 89, 2, 426 S.W.3d 405, 407 ("We have held, however, that the State is entitled to appeal from a circuit court's grant of a Rule 37.1 petition, because such postconviction proceedings under Rule 37.1 are civil in nature.").

[1]    Although the majority suggests that it is merely "clarifying" *Wainwright*, by eliminating a prejudice finding, it is overturning *Wainwright*.

                                   © 2022 Thomson Reuters. No claim to original U.S. Government Works.

Respondent's Exhibit H                                27