IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

| | |
|---|---|
| KENNETH REAMS, ) | |
| ) | |
| Petitioner ) | Case No. 4:22-cv-00699-KGB |
| ) | |
| v. ) | |
| ) | |
| JAMES GIBSON, Warden and ) | |
| DEXTER PAYNE, Director, Arkansas ) | |
| Division of Correction, ) | |
| ) | |
| Respondents. ) | |

MOTION FOR LEAVE TO FILE
*AMICUS CURIAE BRIEF* ON BEHALF OF PETITIONER
ON WRIT OF HABEAS CORPUS-STATE PRISONER

Comes *Amicus Curiae,* d/b/a Law Offices of Kandice A. Bell, P.A., pursuant to Federal Rule of Appellate Procedure 29, for her Motion for Leave to file an *Amicus Curiae Brief* on behalf of Petitioner, states the following:

BACKGROUND:

1. This Court has Federal Question jurisdiction under 28 U.S.C. § 2254, et seq. and venue is proper in this Court.

2. *Amicus Curiae*, Kandice A. Bell, a licensed attorney in the State of Arkansas since 1998, moves for permission from this Honorable Court to file an *Amicus Curiae Brief. See* Attached Proposed Brief filed separately.

3. Amicus is a resident of Jefferson County, Arkansas, where she has managed a solo private practice for over a decade. As a law student, amicus's first summer job in 1994 was in the county

prosecutor's office. Unbeknownst to amicus, the office, just six months prior, had secured a guilty verdict and death sentence against Petitioner for capital murder.

4. Three decades later, in 2022, while attending a law school reunion, amicus, serendipitously, learned about the curious case of Kenneth Reams at a symposium. Amicus learned that in 1993, Reams, who two courts since recognized did not shoot the victim, became the youngest person on death row in Arkansas and the United States.

5. A student organization, actively involved in Mr. Reams's case, were co-sponsors of the symposium. After Petitioner's death sentence was vacated for a sentence of life in prison without the possibility of parole, the students were eager to help him file an application for Executive Clemency in the Governor's Office.

6. Coincidentally, at this same time, amicus was Senior Counselor to the Governor and assigned to the Criminal Law Section.

7. After amicus's job expired at the end of the Governor's term, a law student emphatically encouraged amicus to remain involved and provide professional legal assistance in the case since amicus had returned to the private sector. This brief represents that commitment.

INTEREST OF AMICUS CURIAE:

8. Meanwhile, amicus recalled the lingering questions after reading the Arkansas Supreme Court's 2018 opinion, where the court placed emphasis on Mr. Reams's in-court "confession," that amicus remained curious.

9. It seemed outside constitutional norms for any defendant, absent mental retardation, coercion, or both, for example, to allegedly confess, voluntarily, from the witness stand to capital murder, especially when charged as an accomplice.

10. Among amicus's concerns were these phenomena, which, coincidentally, are both issues in this case.

11. Yet it was not until fall 2024, when the name Kenneth Reams resurfaced at a death penalty seminar amicus attended in Northwest Arkansas. Reams's name, among other condemned inmates, appeared on a list formulated by a former Assistant Attorney General who presented cases that he said had significant issues "worthy of further consideration."

12. A couple of weeks later, amicus requested Reams's trial record from the Clerk of the Arkansas Supreme Court. After combing the record and studying the state court filings, amicus later learned about the federal habeas petition in 2025.

INTEREST TO THE PUBLIC, LEGAL EDUCATION, AND LEGAL PROFESSION:

13. As a newly minted legal scholar in 2023, amicus had set out to write scholarship on the troubling constitutional issues amicus had discovered while studying the case. But it later became apparent that what amicus learned through her research and writing needed to be presented in the current format as well.

14. Amicus also believes that a case of this magnitude has great academic, public policy, and training value to state and federal government officials and the public in general. It also has great value to legal scholars studying American law, government, wrongful conviction, death penalty law, and humanitarian issues at institutions across the United States and abroad.

15. Most importantly, amicus believes this brief will be helpful to the court's understanding, the legal profession, and students learning Black Letter Law. This brief demonstrates the intersectionality of state and federal civil and criminal law and rules of procedure; constitutional law; state Rule 37 collateral review and federal habeas law; and state or federal appellate law.

AMICUS'S SPECIFIC REQUESTS:

16. Because so many of the claims raised in this brief were not developed in the lower courts, amicus had to spend more time developing the issues since they have never been briefed or reviewed by any court.

17. But, this brief more closely resembles a cross between the appellant's opening brief and perhaps a scholarly article. In any event, the intent behind this effort is to provide additional perspective, interpretation, and analysis important to Petitioner's case.

18. For the foregoing reasons, amicus requests permission to extend the page length from what is prescribed for briefs in Fed. R. App. P. 32(a)(7) and 29(d). This brief is lengthy because it explains procedures and new substantive claims that were not previously briefed and may not be heard again before this Court makes a decision.

19. Moreover, if these issues were missed by a team of postconviction counselors and attorneys prosecuting this appeal and habeas case from the Arkansas Attorney General's Office, whose duty it was to "…brief…any other points that appear to involve prejudicial error." Ark. S. Ct. R.4-3(i) (Lexis Nexis 2017) (1987), then it is reasonable to believe that amicus's brief would have a lot of ground to cover.

20. Amicus further requests she be permitted to use a smaller font, 12 pt, rather than 14 pt, to keep the page count to a minimum. Fed. R. App. P. 29(a)(4), (b)(4) and 32(a)(5).

21. Due to what amicus views as extraordinary, if not exigent circumstances, the Court invoke all equitable doctrines and discretion as may be necessary and appropriate to permit this filing. When balancing the equities, consider Mr. Reams's rights to due process and equal protection of the laws. U.S. Const. amend. XIV (1868).

22. Finally, pursuant to Fed. R. App. P. 29(g), amicus curiae requests permission to participate in oral argument should the Court find argument is appropriate and it appropriate for amicus's participation as an oralist in the proceedings.

**WHEREFORE**, Amicus prays this Honorable Court accept for filing the *Amicus Curiae Brief* in Support of Petitioner attached herewith because the issues are meritorious, and the brief will be helpful to the Court's understanding of the complex procedural and substantive issues involved in this case;[1] permit the extension of the page length for the reasons stated in this motion; and permit amicus to participate in oral argument and for all other good and proper relief to which the Petitioner may be entitled.

Respectfully submitted,

By:    /s/ *Kandice A. Bell*
Kandice A. Bell, **Amicus Curiae**, *for the Petitioner*
Ark. Bar. No. 98190
Law Offices of Kandice A. Bell, P.A.
815-A West Sixth Ave.
Pine Bluff, AR  71601
Bellka33@aol.com
(870) 692-7418
P.O. Box 21521
White Hall, AR  71612
Bsupremek9@gmail.com
(501) 517-9392

CERTIFICATE OF SERVICE

This motion has been filed in the court's ECF system on this __6th__ day of March, 2026, noticing all parties of record.

/s/ *Kandice A. Bell*

---

[1] *See supra* Exhibit 1, Proposed Brief of Amicus Curiae in Support of Petitioner, Interest of Amicus Curiae 1 (detailing the undersigned's qualifications to serve as *Amicus Curiae*).